**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE URETHANE ANTITRUST LITIGATION | Master Docket No. 08-5169 (WJM)(MF) |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION**
***IN LIMINE* TO LIMIT THE TESTIMONY OF**
**PROFESSOR KENNETH G. ELZINGA**

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ  07068-1739
(973) 994-1700

Jeffrey M. Johnson
Richard J. Leveridge
Elaine Metlin
James R. Martin
Adam Proujansky
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
(202) 420-2200

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 4

      A.    Professor Elzinga Files His Initial Liability Report in the MDL Cases ................ 4

      B.    The Class Action Jury Finds the Existence of a Conspiracy Involving Dow
           To Manipulate Urethane Prices ................................................................ 5

      C.    Professor Elzinga "Supplements" His Expert Report After the Class Trial,
           But Ignores the Jury Verdict ..................................................................... 6

LEGAL ARGUMENT ............................................................................................... 6

I.     DOW CANNOT MEET ITS BURDEN OF ESTABLISHING THAT PROFESSOR
      ELZINGA'S PROFFERED TESTIMONY COMPLIES WITH RULE 702 .................... 6

      A.    Professor Elzinga is an Expert in Applied Micro-Economics Only ...................... 7

      B.    Dow Cannot Show That Professor Elzinga Used a Reliable Method To
           Support His Proffered Testimony As Required by Rule 702(c) ........................... 7

      C.    Dow Cannot Establish That Professor Elzinga Based His Opinion on
           Sufficient Facts or Data As Required by Rule 702(b) ........................................ 10

      D.    Dow Cannot Show That Professor Elzinga Reliably Applied the
           Principles and Methods of Science to the Facts of This Case As Required
           by Rule 702(d) ....................................................................................... 13

      E.    Dow Cannot Meet Its Burden of Showing That Professor Elzinga's Proffered
           Testimony Would Help the Jury Understand the Evidence or Determine a
           Fact in Issue As Required by Rule 702(a) ....................................................... 13

           1.    Professor Elzinga's "Review" of Marketwide Prices
                 Should Be Excluded ..................................................................... 15

           2.    Professor Elzinga's Opinion That Price Announcements Were
                 "Ineffectual" Should Be Excluded ................................................... 16

           3.    Professor Elzinga's Opinion That the Price Increase Announcements
                 Were Not "False and Pretextual" Should Be Excluded ........................... 18

i

      4.      Professor Elzinga Should Be Precluded From Providing a Taxonomy of a Biased Selection of Business Records ................................................ 18

II.    EVEN IF THE PROFFERED TESTIMONY COULD BE DEEMED RELEVANT AND PERMISSIBLE UNDER RULE 702, IT SHOULD NEVERTHELESS BE EXCLUDED UNDER RULE 403 .................................................................................... 19

III.   DOW'S BELATED EFFORT TO ASK PROFESSOR ELZINGA TO CORROBORATE DR. UGONE'S TESTIMONY SHOULD BE REJECTED ............... 21

CONCLUSION .................................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                                      PAGE(S)

*Adami v. Cardo Windows, Inc.*, 2015 WL 1471844 (D.N.J. Mar. 31, 2015) ..............................14

*Am. Med. Sys., Inc. v. Laser Peripherals, LLC*, 712 F. Supp. 2d 885 (D. Minn. 2010) ...............................................................................................................................15

*Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006) .................................14

*Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325 (3d Cir. 2002) .................................16

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384 (D.N.J. 2009) ...............................................................................................................................3, 17

*Braun v. Lorillard Inc.*, 84 F.3d 230 (7th Cir. 1996) ....................................................3

*Cage v. City of Chi.*, 979 F. Supp. 2d 787 (N.D. Ill. 2013) .........................................12

*Coleman v. Home Depot, Inc.*, 306 F.3d 1333 (3d Cir. 2002).....................................19

*Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir. 2000)................1, 12

*Crowley v. Chait*, 322 F. Supp. 2d 530 (D.N.J. 2004)................................................17

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) .................................3, 7, 8

*Daubert v. Merrell Dow Pharms., Inc. (Daubert II)*, 43 F.3d 1311 (9th Cir. 1995) ............8, 9, 13

*DeLuca v. Merrell Dow Pharms., Inc.*, 911 F.2d 941 (3d Cir. 1990)...........................21

*Elcock v. K-Mart Corp.*, 233 F.3d 734 (3d Cir. 2000).................................................20

*Furlan v. Schindler Elevator Corp.*, 864 F. Supp. 2d 291 (E.D. Pa. 2012)...................8

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ........................................................1, 8

*In re Actiq Sales & Mktg. Practices Litig.*, 2014 WL 3572932 (E.D. Pa. July 21, 2014) ...............................................................................................................................16

*In re Fresh Del Monte Pineapples Antitrust Litig.*, 2009 WL 3241401 (S.D.N.Y. Sept. 30, 2009) ...................................................................................................................12

*In re Gabapentin Patent Litig.*, 395 F. Supp. 2d 153 (D.N.J. 2005)...............................8

*In re Human Tissues Prods. Liability Litig.*, 582 F. Supp. 2d 644 (D.N.J. 2008) (Martini, J.) ...............................................................................................................7

*In re Intel Corp. Microprocesser Antitrust Litig.*, 2014 WL 6601941 (D. Del. Aug. 6, 2014) ..............................................................................................16

*In re Linerboard Antitrust Litig.*, 504 F. Supp. 2d 38 (E.D. Pa. 2007)...........................................14

*In re Novatel Wireless Sec. Litig.*, 2012 WL 678227 (S.D. Cal. Mar. 1, 2012) ...........................15

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994) .....................................................19

*In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51 (2d Cir. 2012)..............................................2, 14

*In re TMI Litig.*, 193 F.3d 613 (3d Cir. 1999) ..............................................................................8

*In re Urethane Antitrust Litig.*, 768 F.3d 1245 (10th Cir. 2014) ...................................................5

*In re Urethane Antitrust Litig.*, 913 F. Supp. 2d 1145 (D. Kan. 2012)........................................18

*Kia v. Imaging Sciences Int'l, Inc.*, 2010 WL 3431745 (E.D. Pa. Aug. 30, 2010).......................17

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ....................................................................7

*Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584 (D.N.J. 2002) ...............................................................................................................10

*Major Tours, Inc. v. Colorel*, 799 F. Supp. 2d 376 (D.N.J. 2011)................................................14

*Mercado v. Ahmed*, 974 F.2d 863 (7th Cir. 1992) ........................................................................15

*Modica v. Maple Meadows Homeowners Ass'n*, 2014 WL 1663150 (E.D. Pa. Apr. 2, 2014) ...............................................................................................................17

*Nye v. Ingersoll Rand Co.*, 2011 WL 4017741 (D.N.J. Sept. 8, 2011).........................................19

*Oddi v. Ford Motor Co.*, 234 F.3d 136 (3d Cir. 2000) ............................................................1, 10

*P.S. ex rel. Nelson v. The Farm, Inc.*, 658 F. Supp. 2d 1281 (D. Kan. 2009)..............................10

*Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412 (3d Cir. 1999) .........................................................7

*Pappas v. Sony Elecs., Inc.*, 136 F. Supp. 2d 413 (W.D. Pa. 2000) ..............................................8

*Patrick v. Moorman*, 536 F. App'x 255 (3d Cir. 2013) ...............................................................14

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993) ...............................................................................................................3, 16

*Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159 (3d Cir. 2001) .......................................................17

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396 (3d Cir. 2003)..............................13

*Senese v. Liberty Mut., Inc.*, 2014 WL 4088499 (E.D. Pa. Aug. 19, 2014)...................................19

*Snodgrass v. Ford Motor Co.*, 2002 WL 485688 (D.N.J. Mar. 28, 2002).......................................12

*Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434 (W.D. Pa. 2003)..........................................8

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 173 F.R.D. 675 (D. Kan. 1997) ...................................................................................................................10

*United States v. Ford*, 481 F.3d 215 (3d Cir. 2007) ...................................................13

*United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) ........................................3, 17

*United States v. Leo*, 941 F.2d 181 (3d Cir.1991) ...................................................14

*United States v. Mitchell*, 365 F.3d 215 (3d Cir. 2004) ..............................................8

*United States v. Schiff*, 602 F.3d 152 (3d Cir. 2010) ...................................................7

*Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 98 F. Supp. 2d 729 (W.D. Va. 2000) ......................12

*Waldorf v. Shuta*, 142 F.3d 601 (3d Cir. 1998)..........................................................16

*Warner Chilcott Labs. Ir., Ltd. v Impax Labs., Inc.*, 2012 WL 1551709 (D.N.J. Apr. 30, 2012) (Martini, J.)...........................................................................3

*ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012)....................................12

**RULES**

Fed. R. Evid. 403 ..............................................................................13, 17, 19, 21

Fed. R. Evid. 702 ...................................................................................... passim

**OTHER AUTHORITIES**

4 Weinstein's Federal Evidence § 702.03 (2d ed. 2009) .............................................15

4 Weinstein's Federal Evidence § 704.04 (2d ed. 2009) .............................................14

ABA Model Jury Instructions in Civil Antitrust Cases (2005).......................................14

Black's Law Dictionary (6th ed. 1990)..................................................................10

Charles Wright & Victor James Gold, 29 Fed. Prac. & Proc. § 6266 (Supp. 2004) ...................12

Christopher R. Leslie, *Trust, Distrust, and Antitrust*, 82 Tex. L. Rev. 515 (2004) .......................9

Leslie Marx & Robert Marshall, *The Economics of Collusion:  Cartels and
Bidding Rings* (2012) ..........................................................................................9

Margaret C. Levenstein & Valerie Y. Suslow, *What Determines Cartel Success?*,
44 J. Econ. Literature 43 (2006) .......................................................................9

Richard A. Posner, *Antitrust Law* (2d ed. 2001) ...........................................................9

William E. Kovacic et al., *Plus Factors and Agreement in Antitrust Law*, 110
Mich. L. Rev. 393 (2011)....................................................................................9

## INTRODUCTION

Plaintiffs respectfully submit this brief in support of their motion *in limine* to exclude the testimony of Kenneth G. Elzinga, Ph.D., a college professor with expertise in applied microeconomics whom Defendant Dow Chemical Company ("Dow") seeks to call at trial to "opine" that Dow did not participate in a conspiracy to manipulate the price of urethane chemicals and that, in fact, no such conspiracy ever existed. The proffered testimony should be excluded for several independent reasons.

First, Dow cannot meet its burden of establishing that the proffered testimony is the product of reliable principles and methods. *See* Fed. R. Evid. 702(c). Professor Elzinga did not cite a single article, treatise, or other objective source to support his opinion. He identified no methodology used by an expert in the field of economics. The law is clear that Dow must come forward with proof of a valid methodology. *Ipse dixit* is not sufficient to get past the gatekeeper. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Oddi v. Ford Motor Co.*, 234 F.3d 136, 158 (3d Cir. 2000).

Second, Professor Elzinga failed to base his opinion on sufficient facts or data. *See* Fed. R. Evid. 702(b). ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████ Economic Expert Report of Professor Kenneth G. Elzinga University of Virginia, Mar. 23, 2012 [hereinafter "Initial Elzinga Rep."], at 29 (filed under seal with the final pretrial order). Juries should not be exposed to experts that disregard "inconvenient evidence" simply to advocate a party's position. *See, e.g., Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2000).

Third, Professor Elzinga's proffered opinion conflicts with the legal standard that the jury must apply, and would confuse, not assist, the jury. Dow would ask Professor Elzinga to testify (again using his unsupported "method") that "antitrust economists" reject an inference of conspiracy unless they find evidence that could *only* be the result of an agreement. Thus, Professor Elzinga will opine as to what inferences he believes should be drawn from the evidence based on a standard that is in conflict with the law the jury must apply. The jury may find the existence of a conspiracy if that is *one* reasonable inference to be drawn from the *totality* of the evidence — Plaintiffs need not prove that conspiracy is the "sole inference" to be drawn from that evidence. *See In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 63 (2d Cir. 2012).

Because Professor Elzinga's proffered testimony is premised on a supposed standard that is stricter than the law requires, Dow cannot meet its burden of showing that the proffered testimony would help the jury understand the evidence or determine a fact in issue. *See* Fed. R. Evid. 702(a). Similarly, Professor Elzinga's specialized knowledge of applied microeconomics would not help the jury to understand the evidence because he would merely make the same arguments that Dow's counsel will make in closing arguments. ████████████████████ ██████████████████████████████████████████████████████████████████████

*See, e.g.*, Elzinga Dep. vol. 3, 43:24–44:7, Feb. 26, 2014 (Ex. A).

Fourth, Professor Elzinga is not qualified to opine that ████████████████████████ ████████████████████████████ Supplemental Report of Kenneth Elzinga, Ph.D., Dec. 18, 2013 [hereinafter "Elzinga Suppl. Rep."], at 3 (filed under seal with the final pretrial order), or to otherwise render an opinion on causation. In price-fixing cases, causation and damages are addressed primarily through the opinions of qualified statisticians and econometricians who apply a rigorous analysis to isolate the effects of the alleged conspiracy on price. Indeed, the

Third Circuit allows economists to testify about pricing data only where the expert can help make sense out of pricing data through a meaningful statistical study. *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1238 (3d Cir. 1993). Professor Elzinga did not perform any such study and admits that he lacks a specialized expertise in statistics. In fact, Dow has proffered another expert, Keith Ugone, Ph.D., with a stated expertise in statistical analysis, to testify on causation and damages.

Ultimately, Professor Elzinga's proffered testimony is nothing more than argument cloaked in the guise of expert opinion. The law does not permit expert testimony when "it offers nothing more than what lawyers for the parties can argue in closing arguments." *United States v. Frazier*, 387 F.3d 1244, 1262–63 (11th Cir. 2004) (en banc); *see also Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 442 (D.N.J. 2009) ("to the extent that Mr. Russell's testimony reflected no more than his summary of, and spin on, internal GEH documents, the court finds that such testimony is unhelpful to the Court as the trier of fact and excludes such testimony from the record"). Permitting Dow to present Professor Elzinga as an expert would thus allow the very abuse that the Supreme Court aimed to remedy in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), namely "the hiring of reputable scientists, impressively credentialed, to testify for a fee to propositions that they have not arrived at through the methods that they use when they are doing their regular professional work [and instead, merely paying such scientists] to give an opinion helpful to one side in a lawsuit." *Warner Chilcott Labs. Ir., Ltd. v Impax Labs., Inc.*, 2012 WL 1551709, at *23 (D.N.J. Apr. 30, 2012) (Martini, J.) (alteration in original) (quoting *Braun v. Lorillard Inc.*, 84 F.3d 230, 235 (7th Cir. 1996)), *aff'd sub nom. Warner Chilcott Co., LLC v. Impax Labs., Inc.*, 478 F. App'x 672 (Fed. Cir. 2012).

## FACTUAL BACKGROUND

Beginning in 2004, class actions were filed alleging that Dow and other producers of certain urethane chemicals (TDI, MDI, and polyether polyols) participated in a price-fixing conspiracy from 1999–2003.   The class actions were certified, and in 2008–2009, several members of the class opted out and filed direct actions.   Pretrial Order of the Transferee Court Regarding Cases Ready for Remand, July 1, 2104 [hereinafter "Remand Order"], Doc. No. 3202, at 3.[1]   Like the class actions, Direct Action Plaintiffs ("Plaintiffs") alleged that Dow and the other defendants conspired from 1999–2003.   *Id.* at 3, 8.   Plaintiffs, however, alleged that the conspiracy actually began in 1994.   *Id.* at 8.

### A.      Professor Elzinga Files His Initial Liability Report in the MDL Cases

On March 23, 2012, Professor Elzinga filed a 139-page report in which he opined that ███████████████████████████████████████████  Initial Elzinga Rep. at 29.   Professor Elzinga ████████████████████████████████████████████████████████████████████ ████████████████████████  *Id.* at 1 n.2.

Professor Elzinga's report is broken into sections.   ███████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████ █ ███████████████████████████████████ ███████████████████████████████   ██████████████████████████████

---

[1]      Unless otherwise specified, citations to court documents are to the *Urethanes* docket before the United States District Court for the District of Kansas.

[2]      Plaintiffs do not challenge Professor Elzinga's ability to testify on the *structure* of the urethanes market, *i.e.*, whether it was conducive to collusion, but Dow has said that it would not call him to testify on that topic alone because it would be "useless," as "most industries with the kind of capital and technology requirements that prevail across the chemical sector would be conducive to collusion under textbook economics."   Dow's Opp'n To Direct Action Pls.' Mot. *In Limine* Limit Testimony of Professor Kenneth G. Elzinga, Oct. 05, 2012 [hereinafter "Dow Elzinga Opp'n"], Doc. No. 2455, at 8 n.8.



Elzinga Dep. vol. 1, 79:16–81:2, May 3, 2012 (Ex. B).

*Id.* 322:17–330:6.

**B.    The Class Action Jury Finds the Existence of a Conspiracy Involving Dow To Manipulate Urethane Prices**

The class action was tried before a jury in the District of Kansas in early 2013.  Professor Elzinga testified at that trial, admitting at one point that if the jury found that there was a cartel, it would be "inconsistent with my finding."  Trial Proceedings before Hon. John W. Lungstrum Tr. vol. 16, 4569:10–12, Feb. 13, 2013 [hereinafter "Elzinga Trial Tr."] (Ex. C).  The jury returned a verdict for the class plaintiffs, finding that "Dow participated in a conspiracy to fix, raise, or stabilize prices for urethanes chemicals."  Verdict Form at 1, Feb. 20, 2013, Doc. No. 2799.  On May 15, 2013, the trial court entered judgment against Dow pursuant to the jury's verdict (Doc. No. 2880), and the Tenth Circuit affirmed the verdict on September 29, 2014, *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1269 (10th Cir. 2014).[3]

---

[3]    Dow filed a petition for a writ of certiorari which raises only class action issues that have no impact on Plaintiffs' direct action claims.  The petition remains pending in the United States Supreme Court.

C.    **Professor Elzinga "Supplements" His Expert Report After the Class Trial, But Ignores the Jury Verdict**

After the class action trial, Plaintiffs' damages expert, Matthew Raiff, Ph.D., fell ill, and Plaintiffs moved to substitute a new expert in his place.  Mot. Substitute Expert Witness, June 28, 2013, Doc. No. 2930.  Judge Lungstrum approved the request, and Plaintiffs served Dow with the Rule 26 Disclosure of their substitute expert, Leslie Marx, Ph.D.  Dr. Marx endorsed the fulsome econometric analysis that Dr. Raiff performed, which showed that cost and demand factors could not fully explain the movement of urethanes prices during the conspiracy period. *See* Mem. and Order, Aug. 13, 2013, Doc. No. 2974; Mem. and Order, May 16, 2014, Doc. No. 3193.

Also after the class action trial, Dow submitted a 34-page "Supplemental Report" on behalf of Professor Elzinga that ███████████████████████████████████████████ Elzinga Suppl. Rep. at 18. ██████████████████████████████████████ ███████████████████████████████████████████ *Id.* █████████████████████ ████████████████████

Plaintiffs deposed Professor Elzinga in February 2014. █████████████████████ ██████████████████████████████████████ Elzinga Dep. vol. 3, 29:17 (Ex. A). ███████████████████████████████████████████████████████████ ███████████████████████████████████████ *Id.* 32:22–34:3, 38:7–11.

## LEGAL ARGUMENT

## I.    DOW CANNOT MEET ITS BURDEN OF ESTABLISHING THAT PROFESSOR ELZINGA'S PROFFERED TESTIMONY COMPLIES WITH RULE 702

A witness qualified as an expert by knowledge, skill, experience, training, or education may offer opinion evidence if (1) the testimony is the product of reliable principles and methods,

(2) the testimony is based on sufficient facts or data, (3) the expert has reliably applied the principles and methods to the facts of the case, and (4) the expert's knowledge will help the jury understand the evidence or determine a fact in issue.  Fed. R. Evid. 702.  District courts ensure that these requirements are met by acting as a "gatekeeper" between expert evidence and the trier of fact, carefully inspecting opinion evidence to determine whether it should be allowed to make its way to the jury because expert evidence presents a unique risk that juries will give it greater weight than it deserves.  *Daubert*, 509 U.S. at 589; *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010).

Dow bears the burden of establishing by a preponderance of the evidence that the proffered testimony meets *all* of the above factors set forth in Rule 702.  *In re Human Tissues Prods. Liability Litig.*, 582 F. Supp. 2d 644, 655 (D.N.J. 2008) (Martini, J.) (citing *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 417–18 (3d Cir. 1999)).  Dow can establish none of them.

### A.    Professor Elzinga is an Expert in Applied Micro-Economics Only



Elzinga Dep. vol. 1, 163:18–165:9 (Ex. B).

*Id.* 28:9.  Thus, Dow must establish both that Professor Elzinga's proffered opinions fall within this area of expertise and that his expertise will help jurors understand evidence outside of their ordinary experience.

### B.    Dow Cannot Show That Professor Elzinga Used a Reliable Method To Support His Proffered Testimony As Required by Rule 702(c)

In order to be reliable, expert testimony must have "a grounding in the methods and procedures of science."  *Daubert*, 509 U.S. at 590.  Dow must establish that Professor Elzinga engaged "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  *Daubert* and its

progeny require that the party offering the testimony must "come forward with proof of a valid methodology based on more than just the *ipse dixit* of the expert." *Furlan v. Schindler Elevator Corp.*, 864 F. Supp. 2d 291, 298 (E.D. Pa. 2012) (quoting *Pappas v. Sony Elecs., Inc.*, 136 F. Supp. 2d 413, 426 (W.D. Pa. 2000)), *aff'd*, 516 F. App'x 201 (3d Cir. 2013); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "[S]omething doesn't become 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were 'derived by the scientific method'" justify admissibility. *In re TMI Litig.*, 193 F.3d 613, 687 (3d Cir. 1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.* (*Daubert II*), 43 F.3d 1311, 1315–16 (9th Cir. 1995)), *amended on other grounds by* 199 F.3d 158 (3d Cir. 2000). Expert opinions generated for litigation are inherently more suspect than opinions generated as the result of academic or independent research. *Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 527 (W.D. Pa. 2003) (citing *Daubert*, 509 U.S. at 593); *see also In re Gabapentin Patent Litig.*, 395 F. Supp. 2d 153, 159 (D.N.J. 2005) (cautioning that expert testimony may be less reliable as a result of being generated for the purpose of litigation), *aff'd*, 503 F.3d 1254 (Fed. Cir. 2007).[4]

███████████████████████████████████████████████████

███████

████████████████████████████████████

---

[4]   Relying on both *Daubert* and its own precedent, the Third Circuit has articulated eight non-exclusive elements to consider when deciding whether a proposed method is "reliable": (1) whether the method consists of a testable hypothesis; (2) whether it has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. *United States v. Mitchell*, 365 F.3d 215, 235 (3d Cir. 2004).



Dow Elzinga Opp'n at 4–5 (citing Initial Elzinga Rep. at 29).

[black redaction bar]

[black redaction bar]

[black redaction bar]

[black redaction bar] *Id.*; *see also Daubert II*, 43 F.3d at 1317, 1319 (proponent of opinion testimony must prove that expert followed a "scientific method, as it is practiced by (at least) a recognized minority of scientists in their field").  By comparison, there are several peer-reviewed articles and texts that show what an objective, scientific analysis of economic evidence on the question of collusion might look like.  For example, Judge Posner devoted a chapter of his book *Antitrust Law* to "Price Fixing and the Oligopoly Problem."  Richard A. Posner, *Antitrust Law* 51–100 (2d ed. 2001) (attached as excerpted as Ex. D).  There, he identified a list of factors to consider in evaluating the possibility of unlawful price-fixing.  That chapter has seventy-three substantive footnotes with authorities and a discussion of economic principles and how those principles might be used to address specific issues in conspiracy cases.[6]

---

[5] [black redaction bar] Elzinga Dep. vol. 1, 106:23–107:4 (Ex. B).

[6]    Other examples of peer-reviewed publications include the following:  Leslie Marx & Robert Marshall, *The Economics of Collusion:  Cartels and Bidding Rings* (2012) (Ex. E); William E. Kovacic et al., *Plus Factors and Agreement in Antitrust Law*, 110 Mich. L. Rev. 393 (2011) (Ex. F); Christopher R. Leslie, *Trust, Distrust, and Antitrust*, 82 Tex. L. Rev. 515 (2004) (Ex. G); Margaret C. Levenstein & Valerie Y. Suslow, *What Determines Cartel Success?*, 44 J. Econ. Literature 43 (2006) (Ex. H).

The proffered testimony is therefore prototypical *ipse dixit*.[7]  Dow has offered "simply nothing to counter the possibility that [Professor Elzinga] simply made up these opinions and method from whole cloth."  *P.S. ex rel. Nelson v. The Farm, Inc.*, 658 F. Supp. 2d 1281, 1288 (D. Kan. 2009).

For that reason alone, the Court should exclude Professor Elzinga's testimony.  *See, e.g.*, *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 608 (D.N.J. 2002), *aff'd*, 68 F. App'x 356 (3d Cir. 2003) (excluding expert's testimony where proffered opinion was based on expert's "judgment" without explanation of the methodology upon which he relied); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 173 F.R.D. 675, 686–87 (D. Kan. 1997) (excluding testimony of expert who failed to cite a single economic treatise or article to support his methodology).  *Oddi v. Ford Motor Co*., 234 F.3d 136, 146 (3d Cir. 2000) is instructive in this regard.  In *Oddi*, the Third Circuit upheld the exclusion of an engineer's opinion that a truck was defectively designed because the engineer used "little, if any, methodology beyond his own intuition" and failed to consider alternative explanations.  *Id*. at 158.  The same result should follow here.

## C.    Dow Cannot Establish That Professor Elzinga Based His Opinion on Sufficient Facts or Data As Required by Rule 702(b)

Because Professor Elzinga failed to employ an accepted methodology, Dow cannot establish that he based his opinion on sufficient facts or data to meet the requirements of *Daubert*.  Fed. R. Evid. 702(b).  Unable to point to any other authority that discusses what facts or data an "applied microeconomist" would consider in reaching an opinion on the existence or non-existence of a conspiracy, Dow cannot possibly say what facts or data *would* be sufficient.

---

[7]    *See* Black's Law Dictionary 828 (6th ed. 1990) (defining "*ipse dixit*" as "a bare assertion resting on the authority of an individual").

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████ Initial Elzinga

Rep. at 29. █████████████████████████████████████████████

██████████████████████████████████████ Elzinga Dep. vol. 1, 79:16–80:2 (Ex. B);

*see also* Elzinga Trial Tr. 4589:12–25, 4590:1–5 (Ex. C). ██████████████████████

██████████████████████████ *Id.* 4590:6-12.

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████ Elzinga Dep. vol. 1, 69:5–70:7 (Ex. B). ████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████ *See* Elzinga Dep. vol. 1, 69:5–17 (Ex. B).  Moreover, Professor Elzinga declined to

consider documents showing defendant executives telephoning their urethanes competitors from

pay phones and meeting in coffee shops to discuss pricing and exchanging confidential business

information.   Elzinga Trial Tr. 4609:11–4610:7 (Ex. C). ████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ *See* Initial Elzinga Rep., App. C

("Materials Relied Upon"). █████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

Elzinga Suppl. Rep. at 8–9; Initial Elzinga Rep., App. C; *see also* Elzinga Trial Tr. 4609:11–

4610:7 (Ex. C).

Professor Elzinga's refusal to look for evidence of "business conduct that cannot be explained" by independent behavior — the very evidence that *he said* an "antitrust economist" would have to consider — shows that he failed to meet the minimum threshold for admissibility under Federal Rule of Evidence 702(b).  *See, e.g.*, *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 290 (3d Cir. 2012) ("In an antitrust case, an expert opinion generally must incorporate all aspects of the economic reality of the relevant market." (internal quotation marks omitted)); *In re Fresh Del Monte Pineapples Antitrust Litig.,* 2009 WL 3241401, at *16 (S.D.N.Y. Sept. 30, 2009) (precluding expert from offering "his own legal conclusions" regarding existence of anticompetitive conduct that were based on "selective facts in the record"), *aff'd sub nom. Am. Banana Co. v. J. Bonafede Co.*, 407 F. App'x 520, 523 (2d Cir. 2010); *Snodgrass v. Ford Motor Co.*, 2002 WL 485688, at *12–13 (D.N.J. Mar. 28, 2002) (excluding statistical expert's opinion as unreliable where conclusions were based solely on a database compiled by plaintiff for the purpose of the litigation and reflected a subgrouping methodology that could not be methodologically justified, suggesting to the court that the data was manipulated to achieve a desired result).

In *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir. 2000), the Eighth Circuit held that expert testimony should have been excluded because the expert "ignored inconvenient evidence."  *Id.* at 1056.  Similarly, in *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.*, 98 F. Supp. 2d 729 (W.D. Va. 2000), the trial court excluded testimony of an expert economist who failed to identify and consider alternatives to the expert's preconceived hypothesis.  *Id.* at 736–37; *see also Cage v. City of Chi.*, 979 F. Supp. 2d 787, 831–32 (N.D. Ill. 2013) (failure to consider alternative explanations rendered opinion inadmissible because expert did not "consider enough information to make the proffered opinion reliable" (citing Charles

12

Wright & Victor James Gold, 29 Fed. Prac. & Proc. § 6266, at 41 (Supp. 2004))).  Indeed, the advisory committee notes to Rule 702 instruct the Court to consider "whether the expert has adequately accounted for obvious alternative explanations."

Dow's inability to establish that Professor Elzinga relied on sufficient facts or data provides an independent reason to exclude his testimony under Federal Rule of Evidence 702.

### D. Dow Cannot Show That Professor Elzinga Reliably Applied the Principles and Methods of Science to the Facts of This Case As Required by Rule 702(d)

Federal Rule of Evidence 702(d) requires Dow to show that Professor Elzinga "reliably applied" a proper methodology to the facts of the case.  Because Professor Elzinga did not employ any reliable principles and methods, Dow cannot even begin to establish that Professor Elzinga "reliably applied" such principles and methods.

### E. Dow Cannot Meet Its Burden of Showing That Professor Elzinga's Proffered Testimony Would Help the Jury Understand the Evidence or Determine a Fact in Issue As Required by Rule 702(a)

In addition to meeting the requirements above, Dow must further establish that the proffered testimony will help the jury understand the evidence or determine a fact in issue.  Fed. R. Evid. 702(a).  This requirement is often referred to as the "fit" requirement.  *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).  Because expert testimony can mislead a jury, in *Daubert II*, the Ninth Circuit held that courts should exclude proffered expert testimony under Federal Rules of Evidence 702 and 403 if they are not persuaded "that it speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury." *Daubert II*, 43 F.3d at 1321 n.17.  The Third Circuit later agreed with the "spirit" of the Ninth Circuit's analysis in *Daubert II* and instructed district courts to carefully evaluate proffered expert testimony.  *United States v. Ford*, 481 F.3d 215, 221 n.6 (3d Cir. 2007).

Professor Elzinga premised his opinion on a supposed standard (which has no basis in economics) that squarely conflicts with the law. ████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████ Initial Elzinga Rep. at 29. However, the legal standard that the jury must apply to the facts is very different. Courts have explained that plaintiffs need not exclude or dispel the possibility of independent action. *In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 63 (2d Cir. 2012). The existence of a conspiracy must only be *one* reasonable inference that the jury could draw from the evidence when viewed *as a whole. Id.*; *see also, e.g.*, *In re Linerboard Antitrust Litig.*, 504 F. Supp. 2d 38, 52–60 (E.D. Pa. 2007); ABA Model Jury Instructions in Civil Antitrust Cases B-4 (2005).

The Third Circuit prohibits experts from "opining about the ultimate legal conclusion or the law or legal standards." *Patrick v. Moorman*, 536 F. App'x 255, 258 (3d Cir. 2013) (citing *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006)); *see also United States v. Leo*, 941 F.2d 181, 196–97 (3d Cir.1991) (explaining that opinion as to whether officer acted "reasonably" in civil rights action was properly excluded by the trial court as a legal conclusion). Such testimony does not help the jury and usurps the court's vital role in explaining the law to the jury. *Berckeley*, 455 F.3d at 217; 4 Weinstein's Federal Evidence § 704.04 (2d ed. 2009).

By employing an unsupportable "economic" standard that is far more onerous than required by the law, Professor Elzinga's testimony would be both unhelpful and confusing to the jury. This provides an independent basis to exclude the proffered testimony. *See Adami v. Cardo Windows, Inc.*, 2015 WL 1471844, at *12 (D.N.J. Mar. 31, 2015) (excluding expert's opinion on hours of overtime and compensations due under the Fair Labor Standards Act where the expert's report was "faulty in its methodology under the [Act]"); *Major Tours, Inc. v.*

14

*Colorel*, 799 F. Supp. 2d 376, 409 (D.N.J. 2011) (excluding survey design expert's reports regarding motor vehicle commission data on commercial bus inspections because expert's definition of "similarly-situated companies" was incorrect as matter of law); *see also In re Novatel Wireless Sec. Litig.*, 2012 WL 678227, at *2 (S.D. Cal. Mar. 1, 2012) (excluding entirety of expert's testimony where "erroneous legal conclusions form[ed] the basis of" expert's opinions); *Am. Med. Sys., Inc. v. Laser Peripherals, LLC*, 712 F. Supp. 2d 885, 901 (D. Minn. 2010) (holding expert's opinions "inadmissible because they are based on incorrect legal standards").

Moreover, expert testimony is not permitted when it would not assist the jury — beyond the assistance that counsel could provide during closing arguments — because it involves issues that lay people can resolve based on their ordinary knowledge and experience. 4 Weinstein's Federal Evidence § 702.03 (2d ed. 2009). "A witness who knows no more than the average person is not an expert. The theory upon which expert testimony is admitted is that such testimony serves to inform the court about affairs not within the full understanding of the average man." *Mercado v. Ahmed*, 974 F.2d 863, 870 (7th Cir. 1992). As shown below, much of Professor Elzinga's proffered testimony should be excluded on this basis as well.

      **1.      Professor Elzinga's "Review" of Marketwide Prices Should Be Excluded**



*Id.* at 63, 73.

15

Courts in this Circuit allow economists to testify about pricing data only where the expert is needed to help the jury make sense of the data through statistical analysis. *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1238 (3d Cir. 1993); *cf. Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 335 (3d Cir. 2002) (Rule 702 requires the witness to have specialized knowledge "regarding the area of testimony." (quoting *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998))); *In re Intel Corp. Microprocesser Antitrust Litig.*, 2014 WL 6601941, at *9 (D. Del. Aug. 6, 2014) (regression analysis is a generally accepted methodology to assess impact); *In re Actiq Sales & Mktg. Practices Litig.*, 2014 WL 3572932, at *15 (E.D. Pa. July 21, 2014) (expert testified that regression analysis is the "standard approach" for economists on causation). Professor Elzinga is not an expert in statistical analysis and does not purport to perform a statistical analysis of the data. The jury is capable of "eyeballing" the data, and counsel will have an opportunity to provide argument as to what the data means, and to assist the jury in drawing permissible inferences from the data. Because Professor Elzinga's "opinions" offer no more than that which Dow's counsel can (and presumably will) argue in closing argument, this aspect of Professor Elzinga's opinion should be precluded. In fact, Dow has designated another expert, Keith Ugone, Ph.D, a statistician, to perform a statistical analysis and testify about the effectiveness of the alleged conspiracy and whether it caused damages to the Plaintiffs.

### 2.    Professor Elzinga's Opinion That Price Announcements Were "Ineffectual" Should Be Excluded



For the same reasons, Professor Elzinga's "opinion" that ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ Initial Elzinga Rep. at 73–90, cannot withstand analysis under Federal Rule of Evidence 702. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ *See* Elzinga Dep. vol. 2, 388:15–389:5, May 4, 2012 (Ex. B); Elzinga Dep.

vol. 3, 299:13–23 (Ex. A).  He did no statistical work or other econometric exercise to support his opinion.  Thus, Professor Elzinga is not offering any expert testimony that could assist the jury.  Indeed, the jury is far *more* capable of looking at this data in the context of the evidence as a whole (and not in the isolated, superficial manner done by Professor Elzinga).  Professor Elzinga's proffered testimony is little more than attorney argument couched as purported expert opinion.  *See United States v. Frazier*, 387 F.3d 1244, 1262–63 (11th Cir. 2004) (en banc) ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."); *see also Modica v. Maple Meadows Homeowners Ass'n*, 2014 WL 1663150, at *1 (E.D. Pa. Apr. 2, 2014) ("[A] party may not filter fact evidence and testimony through his expert merely to lend credence to the same nor may expert testimony be used merely to repeat or summarize what the jury independently has the ability to understand."  (alteration in original) (quoting *Kia v. Imaging Sciences Int'l, Inc.*, 2010 WL 3431745, at *5 (E.D. Pa. Aug. 30, 2010))); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 442 (D.N.J. 2009) (holding expert's testimony inadmissible to the extent that it "reflected no more than his summary of, and spin on," the defendants' internal documents); *Crowley v. Chait*, 322 F. Supp. 2d 530, 553 (D.N.J. 2004) (limiting expert's testimony insofar as to prevent testimony that "simply summarize[s] the facts and the depositions of others," as such testimony "comes dangerously close to usurping the jury's function and implicates Rule 403 as a needless presentation of cumulative evidence and a waste of time." (internal quotation marks omitted)); *cf. Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 170 (3d Cir. 2001) (holding that trial court did not abuse its discretion in excluding expert testimony where the expert "addressed the same issues" as another witness).

### 3.    Professor Elzinga's Opinion That the Price Increase Announcements Were Not "False and Pretextual" Should Be Excluded

Over five pages of his initial report, Professor Elzinga ███████████████

████████████████████████████████████████████████████████████

██████████████████████████████████  However, as Judge

Lungstrum noted in denying Dow's summary judgment motion, Plaintiffs do not argue that the

conspirators falsely stated that costs were rising or that other market conditions existed, but

rather that the conspirators falsely stated that prices were being raised *because of* those

conditions, when in fact they were raising prices in furtherance of a price-fixing conspiracy.  *In

re Urethane Antitrust Litig.*, 913 F. Supp. 2d 1145, 1164 (D. Kan. 2012).  Thus, Professor

Elzinga's conclusion that the alleged conspirators were not raising prices in furtherance of a

price-fixing conspiracy does not logically follow from his observation that the stated reasons for

price increases were "consistent" with record evidence.  This is nothing more than an "expert"

opinion stating that defendants' explanations in the record as to why they were raising prices

were consistent with themselves.  More to the point, such an observation would not assist the

jury because Professor Elzinga did not engage in any statistical analysis to make this

observation, nor did he do anything else that the jury could not do in evaluating the record

evidence.  Thus, this aspect of Professor Elzinga's testimony should be excluded.

### 4.    Professor Elzinga Should Be Precluded From Providing a Taxonomy of a Biased Selection of Business Records

Professor Elzinga ████████████████████████████████████

████████████████████████████████████  Initial Elzinga Rep. at 95–106; *Id.*

App. E; *see also* Elzinga Suppl. Rep. at 19–20. ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████ Elzinga

Suppl. Rep. at 16–23.   While an expert may consider deposition testimony in forming an opinion, that opinion must not simply parrot the testimony without any application of scientific, technical, or specialized knowledge.  *Senese v. Liberty Mut., Inc.*, 2014 WL 4088499, at *3 (E.D. Pa. Aug. 19, 2014).   Thus, as with the other aspects of his opinion, Professor Elzinga's proffered testimony on these subjects offers the jury nothing that Dow's counsel cannot offer in closing argument.   The jury is every bit as capable as Professor Elzinga of listening to the testimony and drawing inferences in the context of all of the facts admitted at trial.

## II.   EVEN IF THE PROFFERED TESTIMONY COULD BE DEEMED RELEVANT AND PERMISSIBLE UNDER RULE 702, IT SHOULD NEVERTHELESS BE EXCLUDED UNDER RULE 403

Even assuming, *arguendo*, that Professor Elzinga's proffered testimony is capable of withstanding *Daubert* scrutiny, it should still be excluded under Federal Rule of Evidence 403. Rule 403 permits a court to exclude relevant evidence where the "probative value is substantially outweighed" by the danger of unfair prejudice, confusing the issues, misleading the jury, or wasting trial time.  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 746–47 (3d Cir. 1994).   "Rule [403] directs the court to perform a 'cost/benefit analysis' concerning the likely proper and improper uses of the proffered material and exclude evidence where 'its probative value is not worth the problems that its admission may cause.'"   *Nye v. Ingersoll Rand Co.*, 2011 WL 4017741, at *6 (D.N.J. Sept. 8, 2011) (quoting *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1344 (3d Cir. 2002)), *as clarified on other grounds*, 2011 WL 5513190 (D.N.J. Nov. 9, 2011).

In this case, Professor Elzinga ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████ Elzinga Dep. vol. 1, 251:20–252:20 (Ex. B);

Initial Elzinga Rep. at 27. ███████████████████████████████████████

███████████████████, Elzinga Dep. vol. 1, 84:6–8, but a jury has now determined that a

conspiracy *did* exist in the urethanes industry and that Dow *did* participate in that conspiracy. █

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████ Thus, by

his own standards, the value of his expert testimony on the existence of a conspiracy has, at best,

minimal probative value.

Given the many problems with Professor Elzinga's proffered testimony, its "benefit"

cannot warrant the time in which it would take for it to be offered, crossed,[8] and rebutted.

Indeed, as shown above, Professor Elzinga's testimony would be highly duplicative of the

evidence admitted through business records, percipient witnesses, and qualified econometricians.

On the other hand, Professor Elzinga's credentials create a risk that the jury will give his

testimony undue weight. *See, e.g.*, *Elcock v. K-Mart Corp.*, 233 F.3d 734, 756 n.13 (3d Cir.

2000) ("Permitting such a witness to offer an opinion unsupported by a sufficient factual

---

[8]    If Professor Elzinga is allowed to testify, he will be subject to significant cross-examination regarding, *inter alia*, his failure to consider facts that a reasonable economist would take into account when asked to determine the existence or non-existence of a conspiracy and how he can reconcile his opinion with the jury verdict in the class case and other conspiracies in which there was evidence of cheating, flat prices, and other factors that he would say rule out the possibility of a conspiracy. When asked whether a reasonable economist would take the jury verdict into account in this case, Professor Elzinga testified "I just don't know the answer to that" and there "may" be circumstances in which a reasonable economist "might" take the verdict into account. Elzinga Dep. vol. 3, 35:7–39:9 (Ex. A).

foundation would significantly increase the risk of misleading the jury and confusing the issues, the very dangers against which Rule 403 defends."); *DeLuca v. Merrell Dow Pharms., Inc.*, 911 F.2d 941, 952 (3d Cir. 1990) (observing the "potential for abuse" always exists whenever expert witnesses are allowed to testify to unreliable opinions). On balance, considerations regarding waste of time and cumulative evidence and the significant danger of unfair prejudice greatly outweigh any possible minimal relevance of his proffered testimony.

## III.   DOW'S BELATED EFFORT TO ASK PROFESSOR ELZINGA TO CORROBORATE DR. UGONE'S TESTIMONY SHOULD BE REJECTED

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████   Elzinga Suppl. Rep. at 11–12. Professor Elzinga was not proffered as an expert on Dr. Ugone's opinions and his testimony on this topic would be cumulative, wasteful, and unduly prejudicial.

<u>CONCLUSION</u>

For all these reasons, Plaintiffs respectfully request that Professor Elzinga be precluded from testifying at trial.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
*Attorneys for Plaintiffs*

By:___/s/ James E. Cecchi_____
       JAMES E. CECCHI

DATED:  August 31, 2015

Jeffrey M. Johnson
Richard J. Leveridge
Elaine Metlin
James R. Martin
Adam Proujansky
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
(202) 420-2200

*Attorneys for Plaintiffs*