**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| IN RE URETHANE ANTITRUST LITIGATION | Master Docket No. 08- 5169 (WJM)(MF)<br><br>*Document Filed Under Seal* |
|---|---|

# DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND ARGUMENT RELATED TO FIFTH AMENDMENT INVOCATIONS (DKT. 95)

Lawrence S. Lustberg
Daniel J. McGrady
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
llustberg@gibbonslaw.com
dmcgrady@gibbonslaw.com

David M. Bernick (*admitted pro hac vice*)
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
David.bernick@dechert.com

*Attorneys for Defendant*
*The Dow Chemical Company*

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 1

ARGUMENT ..... 3

I. FAIRNESS DICTATES THAT A JURY SHOULD LEARN OF FIFTH AMENDMENT INVOCATIONS WHERE THOSE INVOCATIONS HAVE DEPRIVED A PARTY ACCESS TO RELEVANT INFORMATION ..... 3

II. THE JURY SHOULD BE MADE AWARE THAT PLAINTIFFS DENIED DOW ACCESS TO RELEVANT TESTIMONY THROUGH THEIR EMPLOYEES' FIFTH AMENDMENT INVOCATIONS ..... 4

A. The Carpenter Witnesses' Strategic Invocation of the Fifth Amendment Is Permissible Impeachment Evidence ..... 4

B. The Jury Should Also Be Informed That Key Vita And Woodbridge Witnesses Refused To Participate In Discovery In This Case ..... 8

III. THE CLASS TRIAL HAS NO BEARING ON THE ISSUE BEFORE THE COURT ..... 10

CONCLUSION ..... 11

**TABLE OF AUTHORITIES**

*Adkins v. Sogliuzzo*,
No. 14-2649, 2015 WL 4720244 (3d Cir. Aug. 10, 2015) ....................................................3

*Baxter v. Palmigano*,
425 U.S. 308 (1976)....................................................................................................3, 9

*Davis v. Mutual Life Ins. Co. of N.Y.*,
*6 F.3d 367* (6th Cir. 1993) ................................................................................................3

*Hartford Steam Boiler Inspection & Ins. Co. v. Int'l Glass Products, LLC*,
No. 08-1564, 2014 WL 109078 (W.D. Pa. Jan. 10, 2014) .............................................4, 10

*Huaman v. Sirois*,
No. 13-484 DJS, 2015 WL 1806660 (D. Conn. Apr. 21, 2015)..........................................10

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1059 (N.D. Cal. 2007) ..............................................................................3

*In re Winstar Communications, Inc.*,
348 B.R. 234 (Bankr. D. Del. 2005) ..................................................................................3

*LiButti v. United States*,
107 F.3d 110 (2d Cir. 1997)..............................................................................................11

*McMullen v. Bay Ship Mgmt.*,
335 F.3d 215 (3d Cir. 2003)................................................................................................4

*Penfield v. Venuti*,
589 F. Supp 250 (D. Conn. 1984)....................................................................................7, 8

*Rad Servs., Inc. v. Aetna Cas. & Sur. Co.*,
808 F.2d 271 (3d Cir. 1986)............................................................................................3, 8

*S.E.C. v. Dibella*,
No. 04-1342 (EBB), 2007 WL 1395105 (D. Conn. May 8, 2007) ..........................................7

*S.E.C. v. Monterosso*,
746 F. Supp. 2d 1253 (S.D. Fla. 2010) ...............................................................................3

*S.E.C v. Graystone Nash, Inc.*,
25 F.3d 187 (3d Cir. 1994)..................................................................................................4

*Serafino v. Hasbro, Inc.*,
82 F.3d 515 (1st Cir. 1996) ................................................................................................4

## INTRODUCTION

Defendant The Dow Chemical Company ("Dow") respectfully submits this brief in opposition to Plaintiffs' motion *in limine* "to preclude evidence and argument relating to Fifth Amendment invocations" (ECF No. 95).

After Plaintiffs filed this suit seeking hundreds of millions of dollars, numerous key executives from three of the largest Plaintiffs refused to participate in discovery, and in doing so meaningfully impaired Dow's ability to defend itself. Long after the close of discovery in this case, certain witnesses, all from Plaintiff Carpenter (including its CEO and only shareholder Stanley Pauley), abruptly changed course and agreed to testify. Mr. Pauley and others openly admitted at their eventual depositions that they had invoked the Fifth Amendment solely on the advice of counsel—only to reverse course for the same reason. The Vita and Woodbridge employees who invoked the Fifth Amendment *never* testified.

Now Plaintiffs want to prevent the jury from learning these basic facts. But it is well established that Fifth Amendment invocations may be relevant evidence in civil suits, and Plaintiffs' strategic use of the Fifth Amendment here is directly relevant to impeach Pauley and to shed light on his company Carpenter's incentive for bringing this suit. Moreover, the jury will surely wonder why Dow will not be presenting testimony from key Vita and Woodbridge executives, and it is far more appropriate for jurors to know the truth than to speculate that they gave testimony unhelpful to Dow. For the foregoing reasons and more explained below, the Court should deny Plaintiffs' motion *in limine* to categorically exclude all references to Fifth Amendment invocations.

## BACKGROUND

Twenty-four employees of Carpenter, Woodbridge, and Vita invoked the Fifth Amendment at their depositions and refused to answer the vast majority of questions they were

asked.[1] Later, after the close of discovery, four Carpenter employees (Pauley, Malechek, Hurst, and Yukevich) withdrew their Fifth Amendment invocations and three were deposed. *See* Pls.' Br. (ECF No. 96) at 8. The remaining twenty witnesses, including other Carpenter witnesses, did not withdraw their Fifth Amendment invocations and never testified.

As discussed below, courts have recognized that Fifth Amendment invocations may be relevant evidence in civil cases. Accordingly, in the Final Pretrial Order, Dow listed as an outstanding legal issue whether "[REDACTED]" Final Pretrial Order (ECF No. 84) § 9, at ¶ 40. [REDACTED] *Id.* § 2, at ¶ 2. During discussions between the parties on the issue, Dow's counsel reserved the right to use Stanley Pauley's "flip flop invocation . . . to impeach Carpenter's credibility."[2] Likewise, Dow reserved the right "to refer to the Fifth Amendment invocations of Carpenter witnesses . . . as well as Woodbridge and Vita witnesses."[3] Finally, in a good faith effort to resolve Plaintiffs' concerns about the use of those Fifth Amendment invocations, Dow proposed to use Messrs. Pauley and Hurst's invocations for impeachment purposes, and suggested that the jury "simply be informed that [Melvyn Himel of Vita and Robert Magee of Woodbridge] have declined to participate in this case."[4] Plaintiffs

[1] Four Woodbridge employees invoked the Fifth Amendment in response to virtually all of the questions they were asked (Robert Bisiorek, Robert Magee, Martin Mazza, and Agostino Pasquarelli). Six Carpenter employees (Frank Hurst, Mark Kane, Edwin Malechek, Stanley Pauley, Max Ten-Pow, and Stanley Yukevich) and fourteen Vita employees (Frank Donato, Peter Farah, Filip Fonseca, Ted Giroux, Gerald Hannah, Hendrick Hennick, Melvyn Himel, Barry Lucas, Stanley Miller, George Newton, Steven Pendock, Timothy Prescott, Frank Roncadin, and Norman Widmer) did the same.

[2] Ex. A [May 15, 2015 Letter from D. Bernick to R. Leveridge].

[3] Ex. B [May 22, 2015 Letter from D. Bernick to J. Johnson].

[4] Ex. C [August 6, 2015 letter from D. Bernick to J. Johnson].

refused Dow's offer, and now move to exclude any evidence of any witnesses' Fifth Amendment invocation at trial.

## ARGUMENT

### I. FAIRNESS DICTATES THAT A JURY SHOULD LEARN OF FIFTH AMENDMENT INVOCATIONS WHERE THOSE INVOCATIONS HAVE DEPRIVED A PARTY ACCESS TO RELEVANT INFORMATION

It is well established that Fifth Amendment invocations may be relevant and admissible evidence in civil matters.[5] *See Baxter v. Palmigano*, 425 U.S. 308, 318 (1976). Courts allow Fifth Amendment invocations to be used as evidence because "invocation of the Fifth Amendment poses substantial problems for an adverse party who is deprived of a source of information that might conceivably be determinative in a search for the truth." *Adkins v. Sogliuzzo*, No. 14-2649, 2015 WL 4720244, at *4 (3d Cir. Aug. 10, 2015) (quoting *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994)). As the Third Circuit has observed, "because the privilege may be initially invoked and later waived at a time when an adverse party

[5] The Fifth Amendment invocations of Carpenter, Vita, and Woodbridge executives are probative evidence against the Plaintiff entities themselves. *See, e.g.*, *Rad Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 275 (3d Cir. 1986) ("[N]othing forbids imputing to a corporation the silence of its personnel."); *id*. ("The bases for admitting these vicarious admissions against the corporation also justify informing the factfinder when the corporation's agent invokes the Fifth Amendment privilege."); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1059, 1077 (N.D. Cal. 2007) (allowing adverse inference against a corporate party based on its CEO invoking the Fifth Amendment); *see also In re Winstar Communications, Inc.*, 348 B.R. 234 (Bankr. D. Del. 2005) (permitting adverse inferences against a company based on Fifth Amendment invocations of two former employees when the individuals were parties to a related S.E.C. action, employed by the company at the time of the relevant events, and refused to answer questions pertaining specifically to their actions during their employment); *Davis v. Mutual Life Ins. Co. of N.Y.*, 6 F.3d 367, 385 (6th Cir. 1993) ("[W]here the witness invoking the privilege is a former employee of the civil defendant, and where the questions that the witness refuses to answer concern the witness's activities undertaken on behalf of the employer and during the period of employment, it is proper to allow the jury to impute the witness's guilt to the defendant."); *S.E.C. v. Monterosso*, 746 F. Supp. 2d 1253, 1264 (S.D. Fla. 2010) (finding that "[a]dverse inferences drawn against the individual defendants may also be drawn against the corporate defendant because the individual defendants were acting in the scope of their employment when they engaged in the conduct they refused to testify about").

can no longer secure the benefits of discovery, the potential for exploitation is apparent." *Graystone Nash*, 25 F.3d at 190. And where, as here, a party has exploited the process and deprived its adversary of critical evidence, courts should fashion a remedy that provides "equitable treatment" to the deprived party. *McMullen v. Bay Ship Mgmt.*, 335 F.3d 215, 218 (3d Cir. 2003). Courts have wide discretion to take remedial measures, including by instructing jurors to draw adverse inferences from the invocation or even dismissing a plaintiff's case. *See, e.g.*, *Serafino v. Hasbro, Inc.*, 82 F.3d 515, 519 (1st Cir. 1996) (upholding district court's dismissal of the plaintiff's claims based on the fact that Fifth Amendment invocations denied the defendants critical evidence). "[H]ow a trial court should . . . react to any motion precipitated by a litigant's assertion of the Fifth Amendment in a civil proceeding [] necessarily depends on the precise facts and circumstances of each case." *Hartford Steam Boiler Inspection & Ins. Co. v. Int'l Glass Products, LLC*, No. 08-1564, 2014 WL 109078, at *3 (W.D. Pa. Jan. 10, 2014) (quoting *United States v. Certain Real Property & Premises Known as 4003–4005 5th Ave., Brooklyn, NY*, 55 F.3d 78, 85 (2d Cir. 1995)). But there is no basis for the kind of categorical exclusion that Plaintiffs suggest.

## II. THE JURY SHOULD BE MADE AWARE THAT PLAINTIFFS DENIED DOW ACCESS TO RELEVANT TESTIMONY THROUGH THEIR EMPLOYEES' FIFTH AMENDMENT INVOCATIONS.

### A. The Carpenter Witnesses' Strategic Invocation of the Fifth Amendment Is Permissible Impeachment Evidence.

The record in this case makes it clear that the Fifth Amendment invocations of key Carpenter witnesses were the result of calculated, lawyer-driven tactics designed to deprive Dow of access to critical evidence. Mr. Pauley, Mr. Hurst, and Mr. Malechek are among Carpenter's most important witnesses. Mr. Pauley, Carpenter's CEO, was [redacted]

[redacted]. Ex. D [Excerpt of Dep. of S. Pauley] at 117:6–17; 118:7–119:8; 123:20–124:10; 137:20–142:18. [redacted]. *See*, Ex. E [Excerpt of Dep. of F. Hurst] at 146:3–157:8. [redacted] Ex. F [Excerpt of Dep. of E. Malechek] at 11:16–17:11.

[redacted] Ex. D [Excerpt of Dep. of S. Pauley] at 14:16–16:12; 24:1–5 ([redacted]). [redacted]. *Id.* at 16:7–12. Any motivations and incentives Carpenter may have for bringing the case are inseparable from Mr. Pauley's interests.

But Plaintiffs' counsel instructed Mr. Pauley (and others) not to testify. [redacted][6] [redacted] Ex. D [Excerpt of Dep. of S. Pauley.] at 16:13–20:8. Indeed, Mr. Pauley acknowledged that "[redacted]" *Id.* at 27:6–18. [redacted]

[6] Ex. D [Excerpt of Dep. of S. Pauley] at 83:21–25 ([redacted])

[REDACTED]"

*Id.* at 110:5–24.[7]

There is no question that Dow was prejudiced by not having access to the testimony of these Carpenter witnesses, and particularly Mr. Pauley, before the close of discovery. While all three offered testimony on critically important subjects—ranging from their motivations for bringing the case,[8] [REDACTED],[9] substantive discussion on industry dynamics affecting urethanes products pricing,[10] and details of how prices were negotiated between Carpenter and suppliers including Dow[11]—because Messrs. Pauley, Hurst, and Malechek refused to testify earlier, Dow was forced to conduct other depositions in the case without the benefit of this testimony.[12] Dow was also deprived of the opportunity to make additional discovery requests based on their testimony.

Nor, contrary to Plaintiffs' assertion,[13] did the fact that Dow deposed Rule 30(b)(6) witnesses make up for the prejudice it suffered. The 30(b)(6) representatives were no substitute for the testimony lost through Plaintiffs' Fifth Amendment invocations. Paul Davidson, a 30(b)(6) witness for Carpenter, [REDACTED]

---

[7] Mr. Hurst also testified that it was [REDACTED] Ex. E [Excerpt of Dep. of F. Hurst] at 59:9–60:9.

[8] *See, e.g.*, Ex. D [Excerpt of Dep. of S. Pauley] at 100:23–108:12.

[9] *See, e.g.*, Ex. D [Excerpt of Dep. of S. Pauley] at 59:21–61:22; Ex. F [Excerpt of Dep. of E. Malechek] at 28:18–35:7; Ex. E [Excerpt of Dep. of F. Hurst] at 135:10–136:23.

[10] *See, e.g.*, Ex. D [Excerpt of Dep. of S. Pauley] at180:13–201:1; Ex. E [Excerpt of Dep. of F. Hurst] at 160:6–170:6.

[11] *See, e.g.*, Ex. E [Excerpt of Dep. of F. Hurst] at 146:3–160:5; 176:19–183:10; Ex. F [Excerpt of Dep. of E. Malechek] at 44:12–45:24.

[12] Hurst invoked the Fifth Amendment on January 13, 2012; Malechek did so on January 18, 2012; Pauley did so on January 19, 2012. The deposition of Carpenter 30(b)(6) witnesses Del Felter and Paul Davidson did not occur until February 2012.

[13] *See* Pls.' Br. (ECF No. 96) at 5.

[REDACTED]

[REDACTED] Ex. G [Excerpt of Dep. of P. Davidson] at 18:10–19:7. Likewise, Del Felter, another 30(b)(6) Carpenter witness, agreed that Frank Hurst (who had invoked the Fifth Amendment) [REDACTED] Ex. H [Excerpt of Dep. of D. Felter] at 370:24–372:1. David Wheeler, Woodbridge's 30(b)(6) witness, [REDACTED] Ex. I [Excerpt of Dep. of D. Wheeler] at 54:3–56:20. In short, the fact that Plaintiffs offered Rule 30(b)(6) witnesses could not possibly have corrected and did not undo the prejudice that Dow suffered as a result of key witnesses refusing to testify. *See S.E.C. v. Dibella*, No. 04-1342, 2007 WL 1395105, at *4 (D. Conn. May 8, 2007) ("Furthermore, despite Defendants' assertion that the S.E.C. had other resources from which to glean information, that does not relieve Defendants of their duty to provide meaningful discovery . . . a 'party who asserts the privilege must bear the consequences of lack of evidence.'").

Further, the fact that Messrs. Pauley, Malechek, and Hurst *eventually* testified does not mean that they should get a free pass for denying Dow evidence during discovery. *See Penfield v. Venuti*, 589 F. Supp 250 (D. Conn. 1984). In *Penfield,* the defendant initially asserted the Fifth Amendment during discovery but eventually testified at a later deposition. The district court permitted plaintiff to refer during trial to the earlier Fifth Amendment invocation, concluding that "his willingness to respond to similar lines of questioning at a second deposition two years later [did not] significantly diminish the probative value of his refusal to answer." *Id.* at 256. The court observed that "[a] trier of fact could ... infer that [defendant's]

later responses were a more recent fabrication." *Id.* Here, the jury should likewise have the chance to assess whether Mr. Pauley's lawyer-driven invocation of the Fifth Amendment undermines his credibility, and evidence of his Fifth Amendment invocations should be permitted as impeachment evidence.[14]

**B. The Jury Should Also Be Informed That Key Vita And Woodbridge Witnesses Refused To Participate In Discovery In This Case.**

The reasons for informing the jury of Mr. Pauley's Fifth Amendment invocations apply with even greater force for Woodbridge and Vita witnesses. As discussed above, Dow was at least belatedly able to secure key testimony from Mr. Pauley, Mr. Hurst, and Mr. Malechek after they withdrew their Fifth Amendment invocations. But Dow *never* had the opportunity to gather evidence in its defense from key Vita and Woodbridge executives, and in particular Mr. Magee (President and CEO of Woodbridge) and Mr. Himel (former President of Vitafoam Canada). As a consequence, Dow was denied critical relevant testimony.

For example, Plaintiffs' list of contested facts in the Final Pretrial Order includes allegations that "



" and that "

" Final Pretrial Order (ECF No. 84) § 4A, at ¶¶ 528, 532. Anticipating this issue, Dow sought testimony regarding whether Plaintiffs had

[14] Dow has listed Mr. Pauley as a live witness. Final Pretrial Order (ECF No. 84) § 5B. Mr. Pauley's lawyer-driven invocation of the Fifth Amendment to gain a strategic advantage in this litigation plainly impacts his credibility, and the jury should have the opportunity to assess whether his later explanations for invoking the privilege should be believed. Plaintiffs, of course, are free to argue to the jury that it should not draw any adverse inference from those invocations. *See Rad Servs.*, 808 F.2d 271 at 276 ("[C]ounsel may argue to the jury concerning the weight which it should afford the invocation and any inferences therefrom.").



undertaken independent, contemporaneous efforts to verify that Dow's price increase letters were in fact truthful and not pretextual. For instance, Robert Magee was asked whether Woodbridge was " " but he refused to respond. Ex. J [Excerpt of Dep. of R. Magee] at 162:2–10. Peter Farah, a long-time Woodbridge executive and current President and CEO of Vita Canada, refused to answer whether it was true that " " Ex. K [Excerpt of Dep. of P. Farah] at 104:9–18. Likewise, when asked whether it was true that " " Melvyn Himel (Vita) refused to answer. Ex. L [Excerpt of Dep. of M. Himel] at 123:8–15.

The list goes on, establishing that Dow was deprived of plainly relevant evidence regarding Plaintiffs' knowledge of the truthfulness of the justifications contained in Dow's price increase announcements.[15] To help alleviate the prejudice Dow suffered, and to prevent further prejudice, the jury should be informed that Dow was denied the opportunity to gather evidence because key witnesses refused to testify on matters relevant to Dow's defense. *See Baxter*, v. 425 U.S. at 319 (discussing Fifth Amendment invocations and noting that "[s]ilence is often evidence of the most persuasive character"). Absent such a result, the jury would surely wonder

[15] Dow was also denied the opportunity to assess Vita and Woodbridge's motivations and incentives for bringing the suit against Dow in the first place. Mr. Magee, Woodbridge's President and CEO, refused to testify regarding his involvement in Woodbridge's decision to bring suit against Dow. *See* Ex. J [Excerpt of Dep. of R. Magee] at 46:3–14. Mr. Himel likewise refused to discuss his involvement in the decision by Vita Canada to bring a lawsuit against Dow. Ex. L [Excerpt of Dep. of M. Himel] at 66:22–67:4.

why Dow did not present the testimony of such witnesses, and speculate that their testimony must have been unfavorable to Dow.

Plaintiffs' various arguments against a limited jury instruction regarding Woodbridge and Vita's failure to cooperate are also without merit. First, Plaintiffs argue at length that Dow should not be able to use the Fifth Amendment invocations to impeach Vita and Woodbridge witnesses. *See* Pls.' Br. (ECF No. 96) at 12–13. But as noted above, Dow has already proposed a jury instruction in lieu of using the testimony for impeachment purposes. Ex. C [Aug. 6, 2015 Letter from D. Bernick to J. Johnson]. Second, Plaintiffs argue that Fifth Amendment invocations have "no probative value" and are outweighed by unfair prejudice. *See* Pls.' Br. (ECF No. 96) at 13. But it is well-settled (and Plaintiffs' cases acknowledge as much) that such invocations can be relevant, admissible evidence. *See, e.g.*, *Huaman v. Sirois*, No. 3:13CV484 DJS, 2015 WL 1806660, at *5 (D. Conn. Apr. 21, 2015) ("In an instance where a party stands on an invocation of the Fifth Amendment privilege made during discovery, fairness dictates that the jury be informed of the invocation of the privilege and permitted to draw an adverse inference from this fact."). Finally, discussing Dow's proposed jury instruction, Plaintiffs suggest without explanation that a jury would be "likely to give this fact far greater weight than it deserves." Pls.' Br. (ECF No. 96) at 14. But such concerns should be addressed in the context of actually evaluating and formulating such an instruction at trial. *See Hartford Steam Boiler Inspection & Ins. Co. v. Int'l Glass Products, LLC*, No. 2:08CV1564, 2014 WL 109078, at *5 (reserving judgment on claims of prejudice related to Fifth Amendment invocations until they arise in a "more concrete and particularized setting.")

## III. THE CLASS TRIAL HAS NO BEARING ON THE ISSUE BEFORE THE COURT.

Finally, while Plaintiffs argue otherwise,[16] the exclusion at the class trial of former co-defendant Bayer's Fifth Amendment invocation has nothing to do with the question at issue here. The MDL Court applied a test from *LiButti v. United States*, 107 F.3d 110 (2d Cir. 1997), which turns on such factors as: (1) the nature of the relevant relationships between the non-party and the party against whom the evidence is offered; (2) the degree of control of the party over the non-party witness; (3) the compatibility of the interests of the party and the non-party witness in the outcome of the litigation; and (4) the role of the non-party witness in the litigation. *See LiButti*, 107 F.3d at 123–24. In the class case, these factors weighed in favor of exclusion. *See* Ex. M (MDL Dkt. No. 2682) [April 5, 2011 Mem. and Order] at 3 (noting that the Bayer "witnesses had no relationship to Dow, against whom this evidence is offered"). Here, by contrast, the witnesses who invoked the Fifth Amendment were closely affiliated with Plaintiffs—indeed, the interests of Mr. Pauley, Carpenter's sole shareholder, can hardly be distinguished from those of the corporation he owns. Furthermore, the class plaintiffs sought a negative inference that the witnesses invoked the Fifth Amendment "in order to avoid admitting that the alleged conspiracy existed"—the same conspiracy that is at the center of this case. *Id.* at 5. Here, on the other hand, Dow seeks to use Plaintiffs' Fifth Amendment invocations for the far more limited purpose of informing the jury that certain Plaintiffs refused to provide relevant information to Dow.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion *in limine* to preclude evidence and argument relating to Plaintiffs' Fifth Amendment invocations (ECF No. 95) should be denied.

---

16 *See* Pls.' Br. (ECF No. 96) at 9–10.

Respectfully submitted,

Dated: September 30, 2015
Newark, New Jersey

By: s/ Lawrence S. Lustberg

Lawrence S. Lustberg
Daniel J. McGrady
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102
Telephone: (973) 596-4500
Facsimile: (973) 596-0545

David M. Bernick (admitted *pro hac vice*)
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3551
Facsimile: (212) 698-3599

*Attorneys for Defendant*
*The Dow Chemical Company*

**CERTIFICATE OF SERVICE**

On September 30, 2015, a copy of the foregoing was served on all counsel of record via email.

/s/ Daniel J. McGrady
Attorney for The Dow Chemical Company