UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IN RE URETHANE ANTITRUST
LITIGATION

Master Docket No. 08-5169 (WJM) (MF)

*Document Filed Electronically*

**DEFENDANT THE DOW CHEMICAL COMPANY'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* "TO PRECLUDE EVIDENCE AND ARGUMENT RELATED TO PLAINTIFFS' CONDUCT IN DOWNSTREAM MARKETS" (DKT. 93)**

Lawrence S. Lustberg
Daniel J. McGrady
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102
Telephone:  (973) 596-4500
Facsimile:  (973) 596-0545
llustberg@gibbonslaw.com
dmcgrady@gibbonslaw.com

David M. Bernick (*admitted pro hac vice*)
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile:  (212) 698-3599
david.bernick@dechert.com

*Attorneys for Defendant
The Dow Chemical Company*

## **TABLE OF CONTENTS**

                                        **Page**

INTRODUCTION ............................................................................................................. 1
BACKGROUND ............................................................................................................... 1
ARGUMENT ..................................................................................................................... 5
    I.     EVIDENCE REGARDING PLAINTIFFS' OWN SALES AND PRICING CONDUCT, AND THEIR INTERACTIONS WITH THEIR COMPETITORS, IS HIGHLY RELEVANT ............................................................................................ 6
    II.    THERE IS NO MEANINGFUL RISK OF UNFAIR PREJUDICE OR JURY CONFUSION................................................................................................. 8
    III.   PLAINTIFFS' REMAINING ARGUMENTS HAVE NO MERIT ................................ 10
CONCLUSION................................................................................................................ 11

## **TABLE OF AUTHORITIES**

**CASES**                                                          **PAGE(S)**

*Beattie v. Monongahela R. Co.*,
    122 F. Supp. 803 (W.D. Pa. 1954) ...................................................................................... 11

*Burlington Indus. v. Milliken & Co.*,
    690 F.2d 380 (4th Cir. 1982) ................................................................................................ 6

*Hayman Cash Register Co. v. Sarokin*,
    669 F.2d 162 (3d Cir. 1982) ................................................................................................. 7

*Hildebrandt v. W.R. Grace & Co.*,
    492 F. Supp. 2d 516 (D. Md. 2007) ................................................................................... 11

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    06-MD-1175, 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) .............................................. 10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    301 F.R.D. 449 (N.D. Cal. 2014) ......................................................................................... 8

*In re Pharmacy Benefit Managers Antitrust Litig.*,
    582 F.3d 432 (3d Cir. 2009) ................................................................................................. 6

*Neider v. Chrysler Corp.*,
    361 F. Supp. 320 (E.D. Pa. 1973) ...................................................................................... 11

*Robinson v. Air & Liquid Sys. Corp.*,
    No. 11-4078, 2014 WL 3673030 (D.N.J. Jul. 23, 2014) ...................................................... 6

*United States v. Bergrin*,
    682 F.3d 261 (3d Cir. 2012) ................................................................................................. 8

*United States v. Cruz-Garcia*,
    344 F.3d 951 (9th Cir. 2003) ............................................................................................... 9

*United States v. Lopez*,
    271 F.3d 472 (3d Cir. 2001) ............................................................................................... 10

*United States v. Starnes*,
    583 F.3d 196 (3d Cir. 2009) ............................................................................................ 7, 9

*Wong v. Thomas*,
    No. 05-2588, 2008 WL 4224923 (D.N.J. Sept. 10, 2008) ................................................... 7

**OTHER AUTHORITIES**

Fed. R. Evid. 401 .......................................................................................................................... 7

Fed. R. Evid. 403 ................................................................................................................8

## INTRODUCTION

Plaintiffs' conspiracy claim against Dow is based in large part on Dow having engaged in legitimate and everyday business activities such as issuing price increase announcements at or around the same time its competitors did, gathering competitive intelligence, and attending trade association meetings. But Plaintiffs' counsel seek to preclude Dow from demonstrating at trial that Plaintiffs' own witnesses view these activities as normal, common business practices—ones in which they themselves engage—and are in no way indicative of an unlawful price-fixing conspiracy. As explained below, Dow's proposed evidence on this point is relevant—as the MDL Court already held, rejecting the very arguments Plaintiffs now make. And admitting the proposed evidence will not be *unfairly* prejudicial to Plaintiffs. Plaintiffs' motion should be denied.

## BACKGROUND

In pretrial proceedings in this case, Plaintiffs objected to any discovery of their own sales and pricing practices and interactions with their competitors—what they characterized as "downstream" discovery. Dow filed a motion to compel, and Plaintiffs opposed the motion on the very same grounds they now raise in their motion *in limine*. In particular, Plaintiffs argued, among other things, that the requested discovery was irrelevant because (1) there is no "pass-on" defense to an antitrust claim, and (2) *in pari delicto* and unclean hands are not defenses to an antitrust claim, so even if Plaintiffs' business practices were unlawful that would not excuse Dow from liability. *See generally* Ex. A (MDL Dkt. No. 1877) [Dec. 10, 2010 Mem. Op. and Order] at 2–7, 8–14, 17 (describing procedural history and Plaintiffs' arguments).

Because it related to discovery, the motion to compel was considered by the Magistrate Judge in the District of Kansas in the first instance. On December 10, 2010, in an exhaustively researched and well-reasoned opinion, Magistrate Judge O'Hara rejected each of Plaintiffs'

arguments and granted Dow's motion to compel. *See id.* First, after carefully reviewing the case law, he concluded that, notwithstanding the general rule against using plaintiffs' "downstream" conduct as a complete or partial bar to antitrust claims, evidence of such conduct could be relevant for other purposes. *Id.* at 9–14. For example, if discovery showed that Plaintiffs issued parallel price increase announcements, communicated with their competitors, and/or attended trade association meetings, and considered those business practices to be normal, legitimate business activities rather than indicative of collusion, that evidence would be relevant to rebut Plaintiffs' assertions that the same practices, when engaged in by Dow, tended to prove the existence of a price-fixing conspiracy. *See id.* at 12 ("The court agrees . . . plaintiffs' parallel price increases and communications with competitors in setting the price of foam could possibly bear on plaintiffs' claims that similar actions by defendants are indicative of a urethane conspiracy."); *see also id.* (discovery of Plaintiffs' business practices could lead to relevant evidence "such as possible statements by plaintiffs that such conduct is consistent with legal business behavior").

The Magistrate Judge also reasoned that in this case so-called "downstream" discovery "could bear on the reason for defendants' prices, which defendants assert were influenced by demand for plaintiffs' products and plaintiffs' ability to raise the prices thereof, not defendants' collusion." *Id.* at 12–13. Finally, he held that the requested discovery was relevant to Plaintiffs' claims of fraudulent concealment. *See id.* at 10–11 ("[I]f the discovery defendants seek indicates plaintiffs solicited price hikes from defendants, encouraged defendants to standardize their prices, or closely followed and discussed increases in raw material costs for [urethane chemicals], then plaintiffs' allegations of reliance may be effectively attacked.").

2

As was their right, Plaintiffs objected to the Magistrate Judge's order, and so the District Court (the "MDL Court") reviewed it.  *See generally* Ex. B (MDL Dkt. No. 1970) [April 5, 2011 Mem. and Order].  After its own careful analysis, the MDL Court agreed that there is no *per se* prohibition against "downstream" discovery, and that such discovery may be relevant for purposes other than asserting a "pass-on," *in pari delicto*, or unclean hands defense.  *Id.* at 12.  In particular, in this case, the MDL Court held, "evidence that plaintiffs solicited or welcomed standardized price increases by defendants would be relevant to rebut plaintiffs' argument that defendants' parallel price increases indicate the presence of a price fixing-conspiracy, as defendants would be able to argue that any successful increases resulted from plaintiffs' actions and not a conspiracy."  *Id.*  The MDL Court also held that "[P]laintiffs' own parallel price increases, communications with competitors, and attendance at trade association meetings ***would be relevant to rebut plaintiffs' position that such conduct by defendants provides some circumstantial evidence of a conspiracy***. . . . [I]f plaintiffs' own conduct was innocent, then that supports defendants' argument that their own conduct was innocent . . . ."  *Id.* at 14 (emphasis added).

Discovery revealed that Plaintiffs did in fact engage in their "own parallel price increases, communications with competitors, and attendance at trade association meetings," *id.*, and that they viewed these practices as common, legitimate business activities which should not give rise to any inference of conspiracy.  For example, in his deposition, Stanley Pauley, the chief executive officer and sole shareholder of Plaintiff Carpenter, testified as follows:

[redacted]

3



Ex. C [Excerpt of Dep. of S. Pauley] at 80:10–81:14 (objections and identifications omitted); *see also* Ex. D [Excerpt of Dep. of P. Davidson] at 98:2–99:2 ▮ ; *id.* at 123:4–124:20 ▮ ▮

Other witnesses provided similar testimony. For instance, Jeffrey Briney of Flexible Foam testified ▮ Ex. E [Excerpt of Dep. of J. Briney] at 75:1–76:16; and ▮ *id.* at 78:5–23. He also testified that ▮ ▮ *Id.* at 122:20–123:17, 130:18–131:24; *see also* Ex. F [Excerpt of Dep. of M. Crowell] at 69:18–72:14 ▮ ; *id.* at 74:19–75:16 ▮

4

███████████████████████████████████████████████████

███ Thomas Laursen from Vitafoam likewise testified ████████████████

███████████████████████████████████████████████████
███████████████████████████████████████████████████

███ Ex. G [Excerpt of Dep. of T. Laursen] at 73:9–77:18; *see also* Ex. H [Excerpt of Dep. of D. Wheeler] at 367:18–371:16 ████████████████████████████
█████

Despite the obvious relevance to Dow's defense that Plaintiffs' own employees have admitted that such business practices are ***not*** indicative of collusion, Plaintiffs now seek this Court's approval in barring that evidence in its entirety.

## ARGUMENT

Plaintiffs' motion to exclude all evidence of their "downstream" conduct should be denied for at least two reasons.  First, to the extent that Plaintiffs argue that the evidence is irrelevant, that argument was rejected by the MDL Court, and its ruling is law of the case.  Even if the decision were not binding, it is compelling persuasive authority, and this Court should reach the same result.  Second, in the circumstances of this case, there is no meaningful risk that admission of the evidence would unfairly prejudice Plaintiffs or cause jury confusion.  To the contrary, the ***exclusion*** of the evidence would certainly impede Dow's ability to present a full and fair defense.  Plaintiffs also raise a host of other miscellaneous arguments, but these are likewise meritless.  Plaintiffs' motion should be denied.

## I. EVIDENCE REGARDING PLAINTIFFS' OWN SALES AND PRICING CONDUCT, AND THEIR INTERACTIONS WITH THEIR COMPETITORS, IS HIGHLY RELEVANT.

Plaintiffs repeatedly accuse Dow of trying to use Plaintiffs' "downstream" conduct for improper purposes, such as asserting a "pass-on," *in pari delicto*, or unclean hands defense.[1] *See, e.g.*, Pls.' Br. (ECF No. 94) at 4 n.2, 9–12.  Dow has stated before, and states again here, that it does not intend to use evidence of Plaintiffs' "downstream" business activities for those purposes.  Nor does Dow intend to argue that Plaintiffs were "engaged in an antitrust conspiracy in the downstream foam market." *Id.* at 2 n.1.  In fact, Dow takes Plaintiffs at their word that they were ***not*** engaged in any such conspiracy.

What matters here is that, as the MDL Court previously held, what Plaintiffs call evidence of "downstream" conduct—evidence of their own sales and pricing practices and interactions with their competitors—is relevant for ***other*** purposes.  *See supra* at 2–3.  This ruling is law of the case and as such is binding on Plaintiffs. *See, e.g.*, *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 442–43 (3d Cir. 2009) (holding district judge's vacating of an earlier order from the multidistrict litigation judge "violated the law of the case doctrine");[2] *Robinson v. Air & Liquid Sys. Corp.*, No. 11-4078, 2014 WL 3673030, at *1 n.2 (D.N.J. Jul. 23, 2014) (finding order from multidistrict judge dispositive on remand because it was "law of the

---

[1]  To be clear, Dow does not necessarily agree that those would be improper purposes. Pass-on matters in some contexts; and at least one court has recognized that the doctrine of *in pari delicto* still has a "narrow application in the antitrust setting," *Burlington Indus. v. Milliken & Co.*, 690 F.2d 380, 387 (4th Cir. 1982).

[2]  The fact that Plaintiffs' arguments here are virtually identical to those advanced (and rejected) four years ago gives weight to the principle that, "given the havoc and potential delay and confusion" caused by the relitigation of every issue contested by the parties, "[t]he rule of the law of case . . . is particularly applicable to multidistrict litigation in which the presence of a large number of diverse parties might otherwise result in constant relitigation of the same legal issue." *In re Pharmacy Benefit Managers*, 582 F.3d at 443 (omission in original) (quoting *In re Upjohn Co. Antibiotic Cleocin Prods. Liability Litig.*, 644 F.2d 114, 119 (6th Cir. 1981)).

case"); *see also Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 169 (3d Cir. 1982) ("law of the case principles" and "principles of comity among courts of the same level of the federal system provide a further reason why the [later] court should not independently re-examine an issue already decided by a court of equal authority").[3]

Moreover, the challenged evidence certainly meets the standard for relevance. Relevancy is a low bar. *See United States v. Starnes*, 583 F.3d 196, 214 (3d Cir. 2009) ("Rule 401 does not raise a high standard."). Thus, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also, e.g.*, *Wong v. Thomas*, No. 05-2588, 2008 WL 4224923, at *2 (D.N.J. Sept. 10, 2008) (evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); *Starnes*, 583 F.2d at 214 ("[E]vidence is irrelevant only when it has *no* tendency to prove a consequential fact." (alteration in original) (emphasis added)).

Here, evidence of Plaintiffs' own "downstream" conduct—their "own parallel price increases, communications with competitors, and attendance at trade association meetings,"

---

[3]  In a footnote, Plaintiffs argue that the MDL Court determined relevance only "for purposes of discovery," and that a different relevance standard applies to admissibility determinations. *See* Pls.' Br. (ECF No. 94) at 12 n.17. Plaintiffs are confused on this point. To be discoverable, a matter need not be ***admissible***, but it must be ***relevant***. *See* Fed. R. Civ. P. 26(b)(1) (limiting discovery to non-privileged matters "relevant to any party's claim or defense"). Plaintiffs also argue that the MDL Court's decision to allow "downstream" discovery was an outlier. Pls.' Br. (ECF No. 94) at 12 n.17. But even if that were the case (which it is not), Plaintiffs do not show that the decision was clearly erroneous, as would be required to overcome the law of the case doctrine. Nor could Plaintiffs make such a showing, given the abundant authority supporting the MDL Court's ruling. *See generally* Ex. A (MDL Dkt. No. 1877) [Dec. 10, 2010 Mem. Op. and Order] at 12–17 (citing cases); *see also* Ex. B (MDL Dkt. No. 1970) [April 5, 2011 Mem. and Order] at 12–15 ("Plaintiffs have not provided any authority suggesting that downstream discovery may never be obtained for any purpose; to the contrary, plaintiffs concede that there is no *per se* prohibition against this type of discovery.").

Ex. B (MDL Dkt. No. 1970) [April 5, 2011 Mem. and Order] at 14—readily meets the standard for relevance. As the MDL Court explained, that evidence, the existence of which has now been confirmed by discovery, is "relevant to rebut plaintiffs' position that such conduct by defendants provides some circumstantial evidence of a conspiracy." *Id.* Put another way, "if plaintiffs' own conduct was innocent, then that supports defendants' argument that their own conduct was innocent." *Id.* The MDL Court's reasoning would be persuasive even if it were not binding. *See also, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 301 F.R.D. 449, 454 (N.D. Cal. 2014) (finding "downstream" discovery relevant to, among other things, "rebut any argument that competitor communications and price monitoring are indicative of an improper conspiracy").

## II.  THERE IS NO MEANINGFUL RISK OF UNFAIR PREJUDICE OR JURY CONFUSION.

Plaintiffs argue that evidence of their "downstream" conduct should be excluded under Rule 403, even if relevant, because of "the risk of unfair prejudice, confusing the issues, and misleading the jury," and also "wasting trial time." Pls.' Br. (ECF No. 94) at 19–21. In the circumstances presented here, these are not valid concerns; and, in any event, they cannot substantially outweigh the considerable probative value of the challenged evidence.

Plaintiffs speculate that a jury may consider Plaintiffs "hypocritical for attempting to hold Dow liable for conduct supposedly similar to the conduct in which they themselves engaged, and which they asserted was not illegal." *Id.* at 20. Of course, if the challenged evidence weakens Plaintiffs' claim, that result is not unfair. Only "unfair" prejudice can justify exclusion under Rule 403. *See* Fed. R. Evid. 403; *see also United States v. Bergrin*, 682 F.3d 261, 279 (3d Cir. 2012) ("It must always be remembered that *unfair* prejudice is what Rule 403 is meant to guard against, that is, prejudice based on something *other* than [the evidence's] persuasive weight."

8

(alteration and emphasis in original) (internal quotation marks omitted)); *Starnes*, 583 F.3d at 215 ("[U]nfair prejudice does not simply mean damage to the opponent's cause." (internal quotation mark omitted)); *United States v. Cruz-Garcia*, 344 F.3d 951, 956 (9th Cir. 2003) ("That evidence may decimate an opponent's case is no ground for its exclusion under 403."). It in no way causes unfair prejudice for a jury to consider, in assessing the strength or weakness of Plaintiffs' claims, whether they have taken inconsistent positions. Nor does asking a jury to consider this issue invite it to render a decision "on improper grounds." Pls.' Br. (ECF No. 94) at 19.

Plaintiffs also express concern that the challenged evidence may in effect cause the jury to apply an *in pari delicto* or unclean hands defense to their claims. *Id.* at 20. Any such risk is negligible here, as Dow is not pursuing such a defense, and the Court will instruct the jury on the parties' claims and defenses and the legal standards that apply to them. Plaintiffs' concern about "an unnecessary and confusing 'mini-trial' regarding the nature and legality of Plaintiffs' conduct in the foam market," *id.*, is likewise unfounded. Based on the deposition testimony, it will be a simple matter to establish that Plaintiffs themselves issued parallel price increase announcements, gathered competitive intelligence, attended trade association meetings, and view all of these activities as common, legitimate business practices. And any questions of legality or illegality are a matter for the jury instructions.

In any event, the considerable probative value of the challenged evidence dwarfs any conceivable risk of unfair prejudice, juror confusion, or the like. Plaintiffs discount the probative value of the challenged evidence—they accord it "minimal" if any weight. *Id.* at 20. They are wrong: as explained above, the challenged evidence rebuts Plaintiffs' assertions that parallel price increase announcements, competitive intelligence gathering, and trade association meetings

9

are indicative of conspiracy. Because this evidence has a significant tendency to affect how the jury will view such everyday business activities, the evidence is highly relevant. *See supra* at 6–8.

For all of these reasons, Rule 403's balancing test weighs in favor of admission, not exclusion.[4]

### III. PLAINTIFFS' REMAINING ARGUMENTS HAVE NO MERIT.

Other portions of Plaintiffs' brief argue that "Dow's conduct occurred in a different market than Plaintiffs' conduct (not to mention in a different time period and/or geographic region)," that there are meaningful differences between the markets, and that Plaintiffs' conspiracy allegations are based on more than simply "having communications with competitors, issuing parallel price announcements, and obtaining competitive intelligence." *See* Pls.' Br. (ECF No. 94) at 13–17. These are not arguments about irrelevance or prejudice. At best they raise issues that go to weight rather than admissibility and that the jury may consider; they do not provide any basis for exclusion. *See, e.g.*, *See United States v. Lopez*, 271 F.3d 472, 485 (3d Cir. 2001) ("Any concerns regarding conditions or circumstances that might bear on reliability are matters going to the weight of the evidence, which can be addressed on cross-examination, and should not affect the admissibility of the statement."); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 06-MD-1175, 2014 WL 7882100, at *7 (E.D.N.Y. Oct. 15, 2014) ("gaps or inconsistencies" in analytical relevance of testimony are related "to the weight of the evidence, not its admissibility," and should be address on cross examination or the presentation of contrary evidence).

---

[4] In fact, exclusion of the challenged evidence would unfairly prejudice Dow, because it would invite the jury to reach decision on snippets of evidence without understanding the context provided by Plaintiffs' own conduct and their views of such conduct in the normal course of business.

Finally, Plaintiffs assert that the challenged evidence is inadmissible lay opinion testimony. *See* Pls.' Br. (ECF No. 94) at 18. In particular, they contend that the evidence involves witness testimony "as to whether certain conduct was (or should be seen as) illegal." *Id.* But that is simply not the case. The evidence at issue involves testimony regarding whether Plaintiffs did or did not engage in certain business practices, and whether they considered those practices common and appropriate (not whether they actually were legal). *See supra* at 3–5. These are facts, not opinions. *See Hildebrandt v. W.R. Grace & Co.*, 492 F. Supp. 2d 516, 523 (D. Md. 2007) (an employee's "historical account of his performance is not properly viewed as . . . *opinion* testimony, but may be accepted by a fact finder as *first hand testimony based on personal knowledge*"—*i.e.*, "'fact'" (emphasis in original)); *Neider v. Chrysler Corp.*, 361 F. Supp. 320, 324 (E.D. Pa. 1973) (testimony was fact, not opinion, where witness testified as to what he did); *Beattie v. Monongahela R. Co.*, 122 F. Supp. 803, 803–06 (W.D. Pa. 1954) ("testimony relative to a frequent practice or routine" is fact rather than opinion testimony).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion *in limine* "to preclude evidence and argument related to Plaintiffs' conduct in downstream markets."

                    Respectfully submitted,

Dated: September 30, 2015          s/ Lawrence S. Lustberg
Newark, New Jersey                Lawrence S. Lustberg
                                       Daniel J. McGrady
                                       **GIBBONS P.C.**
                                       One Gateway Center
                                       Newark, NJ 07102
                                       Telephone: (973) 596-4500
                                       Facsimile: (973) 596-0545

                                       David M. Bernick (*admitted pro hac vice*)
                                       **DECHERT LLP**
                                       1095 Avenue of the Americas
                                       New York, NY 10036
                                       Telephone: (212) 698-3500
                                       Facsimile: (212) 698-3599

                                     *Attorneys for Defendant*
                                     *The Dow Chemical Company*

## **CERTIFICATE OF SERVICE**

On September 30, 2015, a copy of the foregoing was served on all counsel of record via ECF.

/s/ Daniel J. McGrady
Attorney for The Dow Chemical Company