**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| IN RE URETHANE ANTITRUST LITIGATION | Master Docket No. 08-5169 (WJM)(MF) |
|---|---|

# PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT DOW CHEMICAL COMPANY'S MOTION *IN LIMINE* TO PRECLUDE REFERENCES TO OTHER ANTITRUST CASES


James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELL, P.C.
5 Becker Farm Road
Roseland, NJ 07068-1739
(973) 994-1700

Jeffrey M. Johnson
Richard J. Leveridge
Elaine Metlin
James R. Martin
Adam Proujansky
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
(202) 420-2200

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

LEGAL ARGUMENT ..... 3

I. DOW AFFIRMATIVELY PUT OTHER PRICE-FIXING CONSPIRACIES AT ISSUE THROUGH ITS EXPERTS ..... 3

II. THE RAIDS ON BAYER AND SUBSEQUENT INVESTIGATIONS INTO THE CHEMICALS AND URETHANES INDUSTRY ARE HIGHLY RELEVANT TO SIGNIFICANT ISSUES IN THIS CASE ..... 6

III. RULE 404(b) DOES NOT APPLY TO DR. MARX'S PROFFERED TESTIMONY ..... 8

CONCLUSION ..... 9

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*E.E.O.C. v. FAPS, Inc.*, 2014 WL 4798802 (D.N.J. Sept. 26, 2014)....................5

*Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*, 2008 WL 4126602 (D.N.J. Aug. 27, 2008)....................8

*Ford v. Cnty. of Hudson*, 2014 WL 2039987 (D.N.J. May 16, 2014)....................5

*In re Urethane Antitrust Litig.*, 232 F.R.D. 681 (D. Kan. 2005)....................8

*United States v. Gaev*, 1993 WL 147186 (E.D. Pa. 1993)....................6

*Walker v. Gordon*, 46 F. App'x 691 (3d Cir. 2002)....................5

**RULES**

Fed. R. Evid. 404(b)....................8

**INTRODUCTION**

Dow's motion *in limine* to preclude reference to other antitrust cases should be rejected for two reasons. First, the motion is premised on the hypocritical view that *Dow's* proffered experts can talk about "usual" conspiracies in vague, unsupported ways, but Plaintiffs' expert cannot respond with specifics regarding conspiracies that refute the assertions about conspiracies made by Dow's experts. It was *Dow's* experts, not Plaintiffs' experts, who first raised the subject of other conspiracies. That is why Dow's motion *in limine* cites only to opinions of Plaintiffs' experts raised in *reply* to assertions made by Dow's experts. Def. Dow Chemical Co.'s Br. Supp. Mot. *In Limine* to Preclude References to Other Antitrust Cases at 3, Doc. No. 115 (citing Revised Reply Report of Matthew Raiff, Ph.D. ("Raiff Reply") and Dr. Marx's discussion of the Raiff Reply Report in Rule 26 Disclosure of Leslie M. Marx, Ph.D. ("Marx Discl.")).

Dow cannot have it both ways. It cannot affirmatively introduce expert evidence about other conspiracies — whether based on generalizations regarding the supposed behavior of or circumstances surrounding "all," "most," or "typical" cartels, or tied to specific cartels — and preclude Plaintiffs from showing, by reference to other conspiracies, that Dow's characterizations are wrong.

For example, Dow's proffered damages expert, Keith R. Ugone, Ph.D., wrote, [redacted] Rebuttal Expert Report of Keith R. Ugone, Ph.D., Responding to Expert Report of Dr. Raiff ¶ 66 [hereinafter "Ugone Rep."] (filed under seal with the Final Pretrial Order (July 1, 2015), Doc. No. 84) (emphasis added). Similarly, Dow's proffered liability expert, Prof. Kenneth Elzinga, wrote that [redacted]

[redacted] Economic Expert Report of Professor Kenneth G. Elzinga University of Virginia, Mar. 23, 2012, at 63-64 [hereinafter "Elzinga Rep."] (filed under seal with the Final Pretrial Order) (emphasis added). Neither expert offered any support for these facile assertions.

[redacted]

Second, the existence of other conspiracies during the last year of the cartel is relevant to other issues in the case. [redacted] Marx Discl. ¶ 63 (filed under seal with the Final Pretrial Order); Raiff Reply ¶ 17 (filed under seal with the Final Pretrial Order).[1] [redacted]

---

[1] The circumstances of the unannounced "inspections" at Dow are set forth in European Commission Decision of 29/11/2006, Case COMP/F/38.638, Butadiene Rubber and Emulsion Styrene Butadiene Rubber, Sec. 3 ¶ 314, Sec. 12 ¶ 509 (PX 565) (Ex. A).

[redacted]

These government investigations are also relevant to the credibility of the witnesses that Dow will call at trial to talk about the purported internal "investigations" that Dow conducted in 2003 and 2004. [redacted]. When viewed against the broader backdrop of multiple governmental investigations into the urethanes industry, the jury could conclude that the executives who would vouch for the sufficiency of Dow's internal investigations lack any credibility, and that the jury should not believe their self-serving attacks on Ms. Barbour.

## LEGAL ARGUMENT

### I. DOW AFFIRMATIVELY PUT OTHER PRICE-FIXING CONSPIRACIES AT ISSUE THROUGH ITS EXPERTS

Dr. Marx's opinion is fundamentally predicated on two analyses. [redacted]

[redacted]



[redacted] *See, e.g.*, Elzinga Rep. at 28, 64-66, 102; Ugone Rep. ¶¶ 52, 66, 83. [redacted] *See, e.g.*, Supplemental Report of Kenneth Elzinga, Ph.D., Dec. 18, 2013, at 18 (filed under seal with the Final Pretrial Order); Ugone Rep. ¶¶ 46, 52, 66.

[redacted] Elzinga Dep. vol. 1, 98-99, May 3, 2012 (Ex. B). [redacted] Elzinga Dep. vol. 2, 351:16-19, May 4, 2012 (Ex. B). [redacted] Elzinga Rep. at 11-12 [redacted], 28 [redacted]; Elzinga Dep. vol. 1, 98:13-24 (Ex. B) ([redacted]); Elzinga Dep. vol. 2, 407:5-14 (Ex. B) ([redacted]); Elzinga Dep. vol. 3, 314 (Ex. B) ([redacted]).

It is therefore important to allow Dr. Marx to respond to these generalized statements in a specific, targeted way, to show that Dow's experts are wrong. [redacted] Marx Discl. ¶ 45; Raiff Reply ¶ 16.

[redacted]



[redacted] Raiff Reply at 8 nn.26-27, 9 n.31, 10 n.37.

[redacted] Marx Discl. ¶ 45; Raiff Reply ¶ 17. [redacted] *Id.* To be clear, however, Plaintiffs do not intend to veer off into lengthy discussions of these identified price-fixing conspiracies. Dr. Marx will discuss them only enough to rebut the generalized assertions regarding the behavior and circumstances of cartels offered by Dow's experts.

Put simply, if Dow's experts are going to take the position that Plaintiffs' allegations and Dr. Marx's opinions are inconsistent with what occurs "generally" or with "most" other cartels, Dr. Marx should be permitted to show the jury why she is right and Dow is wrong. *See Walker v. Gordon*, 46 F. App'x 691, 695–96 (3d Cir. 2002) (version of facts relied upon by the expert is subject to cross examination); *E.E.O.C. v. FAPS, Inc.*, 2014 WL 4798802, at *7 (D.N.J. Sept. 26, 2014) (observing that a list of facts that expert allegedly did not consider in conducting his analysis went to questions of credibility and weight to be explored on cross examination); *Ford*

*v. Cnty. of Hudson*, 2014 WL 2039987, at *18 (D.N.J. May 16, 2014) (same); *United States v. Gaev*, 1993 WL 147186 (E.D. Pa. 1993) (allowing cross-examination of expert about price-fixing in an adjacent geographic region to test expert's contentions about conditions necessary for effective price-fixing).[2]

## II. THE RAIDS ON BAYER AND SUBSEQUENT INVESTIGATIONS INTO THE CHEMICALS AND URETHANES INDUSTRY ARE HIGHLY RELEVANT TO SIGNIFICANT ISSUES IN THIS CASE

[redacted] McCormick Dep. 220:10-221:24, Sept. 23, 2013 (Ex. D); *EU Raids Bayer in Rubber Chemical Price-Fixing Probe*, Dow Jones Newswires (Oct. 10, 2002) (McCormick Dep. Ex. 34, PX 21) (Ex. E). [redacted] McCormick Dep. 221:4-6 (Ex. D). Dow, in fact, was raided by regulators in March 2003 in connection with an investigation into a conspiracy to fix prices among the producers of Butadiene Rubber (BR) and/or Emulsion Styrene Butadiene Rubber (ESBR). European Commission Decision of 29/11/2006, Case

---

[2] When Dow filed a similar motion to preclude references to other conspiracies in connection with the class trial, Judge Lungstrum denied Dow's motion in relevant part, without prejudice. Judge Lungstrum concluded that experts' use of information relating to other conspiracies in forming their opinions was "probably fair game," remarking that experts in cases involving conspiracy allegations typically "consider the nature and characteristics of conspiracies" in forming their opinions. Mot. *in Limine* Conference Before Hon. John W. Lungstrum Tr. 66, Jan. 9, 2013 (Ex. C). The denial of Dow's motion in this regard was without prejudice because the court wanted to "leave open an opportunity to make a contemporaneous objection to a specific piece of testimony at the time that testimony is offered by an expert." *Id.*

COMP/F/38.638, Butadiene Rubber and Emulsion Styrene Butadiene Rubber, Sec. 3 ¶ 314, Sec. 12 ¶ 509 (PX 565) (Ex. A).

These facts provide important context for the behavior of the alleged conspirators, help explain the relative effectiveness of the price increases implemented in that time frame, [REDACTED] The evidence undercuts Dow's contention that Plaintiffs' experts' conclusion that the conspiracy ended in September of 2003 was simply a convenient date used to increase Plaintiffs' damages.

These facts are likewise relevant to [REDACTED] *See, e.g.*, Barbour Dep. vol. 1, 56:18-59:20, Sept. 14, 2010 (Ex. F). [REDACTED] The jury will thus be faced with an important credibility determination.

[REDACTED]

[redacted] McCormick Dep. 150:16-152:23 (Ex. D); *Crompton Announces Agreements in U.S. and Canadian Rubber Chemicals Investigations; Granted Conditional Amnesty in Urethanes Investigation; Completes Internal Investigation*, Business Wire (Mar. 15, 2004) (McCormick Dep. Ex. 29, PX 17) (Ex. G).[3] Considered in context, the jury could find that Schefsky wanted to create the appearance of an investigation but ensure that he found nothing that could expose Dow to criminal liability.

These are important issues because the jury will have to make pivotal credibility determinations about the veracity of Ms. Barbour and Dow's in-house counsel.

## III. RULE 404(b) DOES NOT APPLY TO DR. MARX'S PROFFERED TESTIMONY

Dow's assertion that Federal Rule of Evidence 404(b) should be applied to exclude the evidence discussed above is plainly off base. Rule 404(b) only precludes the admission of evidence of other bad acts when offered to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." As shown above, none of the evidence of other price-fixing cases is being offered for that purpose. Rule 404(b) therefore does not apply. *See Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*, 2008 WL 4126602 (D.N.J. Aug. 27, 2008) (similar cartel activities undertaken in a similar marketplace may be probative of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake).

---

[3] [redacted] *Id.* [redacted] *Id.* To be clear, Crompton produced rubber chemicals and polyester polyols, and not the polyether polyols that are the subject of this litigation. *See, e.g.*, *In re Urethane Antitrust Litig.*, 232 F.R.D. 681 (D. Kan. 2005) (denying motion of plaintiffs in polyester polyol class from amending to include allegations that would overlap with allegations of plaintiffs in polyether class).

**CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that this Court deny Dow's motion *in limine* to preclude references to other antitrust cases.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
*Attorneys for Plaintiffs*

By: /s/ James E. Cecchi
JAMES E. CECCHI

DATED: October 5, 2015

Jeffrey M. Johnson
Richard J. Leveridge
Elaine Metlin
James R. Martin
Adam Proujansky
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
Tel: (202) 420-2200
Fax: (202) 420-2201

*Attorneys for Plaintiffs*