# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE URETHANE ANTITRUST LITIGATION | Master Docket No. 08-5169 (WJM)(MF) |

# PLAINTIFFS' BRIEF IN OPPOSITION TO DOW'S MOTION *IN LIMINE* CONCERNING ANTITRUST COMPLIANCE POLICIES

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELL, P.C.
5 Becker Farm Road
Roseland, NJ 07068-1739
(973) 994-1700

Jeffrey M. Johnson
Richard J. Leveridge
Elaine Metlin
James R. Martin
Adam Proujansky
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
(202) 420-2200

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

PAGE

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ......................................................................................................1

LEGAL ARGUMENT ...............................................................................................2

I.   EVIDENCE REGARDING DOW'S ANTITRUST COMPLIANCE POLICIES IS
     RELEVANT AND ADMISSIBLE..........................................................................2

II.  EVIDENCE REGARDING THE ANTITRUST COMPLIANCE POLICIES OF
     DOW'S ALLEGED CO-CONSPIRATORS IS RELEVANT AND ADMISSIBLE........13

CONCLUSION.......................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                                                    PAGE(S)

*Brown v. Payton*, 544 U.S. 133 (2005) ...................................................................10, 11

*Crowley v. Chait*, 322 F. Supp. 2d 530 (D.N.J. 2004) ...................................................11

*English v. District of Columbia*, 651 F.3d 1 (D.C. Cir. 2011)...................................................11, 12

*In re Linerboard Antitrust Litig.*, 504 F. Supp. 2d 38 (E.D. Pa. 2007)....................................2, 6, 7

*In re Tableware Antitrust Litig.*, 2007 WL 781960 (N.D. Cal. Mar. 13, 2007) ...........................7

*J&M Distrib., Inc. v. Hearth & Home Technologies, Inc.*, 2015 WL 144797 (D. Minn. Jan. 12, 2015) ...................................................................10

*Johnson v. Liberty Mutual Fire Ins. Co.*, 648 F.3d 1162 (10th Cir. 2011)...........................12, 13

*Spruill v. Winner Ford of Dover, Ltd.*, 175 F.R.D. 194 (D. Del. 1997).......................................11

*Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006)...................................................11, 12

RULES

Fed. R. Evid. 403 ...........................................................................................2, 7, 9, 10

## <u>INTRODUCTION</u>

Plaintiffs respectfully submit this brief in opposition to Dow's motion to exclude evidence regarding the antitrust compliance policies of Dow and its alleged co-conspirators.

The gravamen of Dow's argument for exclusion is that, because it is "the province of this Court to instruct the jury on the law," any evidence involving the antitrust compliance policies of Dow and its alleged co-conspirators is irrelevant and could confuse or mislead the jury "into applying a standard inconsistent with this Court's instructions on the law" or deciding the case based on whether "Dow had the best policies, instead of whether its actions constituted an antitrust violation."  Def. Dow Chemical Co.'s Br. Supp. Mot. *In Limine* Concerning Antitrust Compliance Policies at 2, 4, 5 [hereinafter "Dow's Br."].

Contrary to what Dow suggests, however, Plaintiffs do not seek to introduce any evidence to show what the law is, or whether Dow or any other company had the "best policies." Rather, evidence relating to the antitrust compliance policies of Dow and its co-conspirators is relevant, and highly probative, because it rebuts Dow's argument that its communications with its competitors were normal, innocent and expected business practices and therefore not evidence of a price-fixing conspiracy.  The evidence Dow seeks to exclude is also independently relevant to issues such as fraudulent concealment and witness credibility.  Moreover, there is little or no chance that the admission of this evidence will cause the jury to disregard the law as instructed by this Court, or otherwise decide the case on an improper basis — and any such concerns could be easily eliminated by a brief limiting instruction.

Tellingly, Dow does not cite a single case in which evidence regarding a company's antitrust compliance policies was excluded.  The cases that Dow cites — all of which are outside the antitrust context — involved efforts to use testimony, documentary evidence or the argument of counsel to prove a principle of law, which is not the purpose for which Plaintiffs seek to

introduce the evidence that is the subject of Dow's motion.  Dow ignores the case in this Circuit that is most closely on point, *In re Linerboard Antitrust Litigation*, 504 F. Supp. 2d 38, 58 & n.13 (E.D. Pa. 2007), in which the district court rejected arguments for the exclusion of evidence relating to defendants' internal antitrust policies similar to those Dow makes here, and held that such evidence was relevant to show that defendants conspired to fix prices.  Here, the arguments for admission are even stronger than in *Linerboard*.

Dow also ignores the fact that the same document regarding Dow's antitrust compliance policies that Dow wishes to exclude from the trial in this case, Plaintiffs' Exhibit 277,[1] was admitted by Judge Lungstrum at the class trial.  Indeed, Dow stipulated to the admission of all but the last two pages of the exhibit, and Judge Lungstrum overruled Dow's relevance and Federal Rule of Evidence 403 objections relating to those two pages.

Because the evidence Dow seeks to exclude regarding the antitrust compliance policies of Dow and its alleged co-conspirators is highly relevant, and its probative value outweighs any risk of unfair prejudice or misleading the jury, Dow's motion *in limine* should be denied.

## LEGAL ARGUMENT

## I.   EVIDENCE REGARDING DOW'S ANTITRUST COMPLIANCE POLICIES IS RELEVANT AND ADMISSIBLE

Dow argues that evidence that relates to Dow's antitrust compliance policies should not be admitted because those policies touch upon legal principles, and it is the exclusive province of the Court to instruct the jury as to what the law is.  However, Plaintiffs do not seek to introduce this evidence to prove what the law is.  There are several important factual issues in this case as to which evidence regarding Dow's antitrust compliance policies is highly probative.

---

[1]     Attached hereto as Exhibit A (and also as Exhibit C to Dow's Motion).

First, the evidence is relevant to ████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████ Final Pretrial

Order § 4(B), Def. Dow Chemical Co.'s Statement of Contested Facts ¶ 29 [hereinafter "Dow

Statement of Contested Facts"], Doc. No. 84. ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████

For example, Plaintiffs' Exhibit 277 — which is the major focus of Dow's motion —

shows that ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ (emphasis added.)  According to Schefsky, the document contained

"warnings" and "guidelines" that "were not legal things," but were "communications . . . to

business people at all levels telling them what to do to avoid getting in trouble."  Trial Proc.

Before Hon. John W. Lungstrum Tr. vol. 5, 1263-64, Jan. 29, 2013 [hereinafter "Class Trial Tr."]

(Ex. B).

Schefsky testified at the class trial that communications by Dow's then-CEO Mike Parker

3

with competitors about pricing (as described in testimony by Bayer's Larry Stern) were "certainly . . . what we recommended people not to do" and agreed that Parker's conduct "contradicts exactly what the training says." *Id.* 1179:15-1180:10. Schefsky further testified, in response to questioning about communications between Dow executive David Fischer and Stern regarding pricing, that "[t]alking to customers and agreeing to price increases is a violation of the training and the law." *Id.* 1180:25-1181:1. Similarly, in answer to a question regarding Stephanie Barbour's testimony that former Dow executive Marco Levi told her that he had an agreement with Uwe Hartwig of BASF to keep urethanes prices up, Schefsky testified that "[i]f Marco had an agreement with BASF to manage prices, that's a violation of the training and the law." *Id.* 1181:11-12.

During the cross-examination of Schefsky at the class trial, counsel for Dow framed his exploration of Barbour's antitrust compliance complaints regarding Fisher's communications with competitors by eliciting testimony that these complaints occurred after Plaintiffs' Exhibit 277 was circulated, showing that Fischer and Schefsky were well aware of the policies at the time of their meetings. *Id.* 1232:9-21. On redirect, Schefsky admitted that his investigation of Barbour's complaints regarding antitrust compliance issues consisted of two brief conversations, during which Schefsky "took [Fischer's] word for it" that he did not violate Dow's policies. *Id.* 1283:1-7.

Although not mentioned in Dow's motion, there is additional evidence regarding ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████  ███  ████████████████████████████████

---

2      Attached hereto as Exhibit C.



Levi Dep. vol. 2, 495:21-496:3, May 20, 2010 (Ex. D).

*Id.* 497:1-499:24.

Fisher Dep. vol. 2, 344:10-345:23, Apr. 30, 2010 (Ex. E).

██████████████████████████████████

██████████████████████████████████

*Id.*

████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████     The decision in *Linerboard*, 504 F. Supp. 2d 38, is instructive in this regard.  In that case, antitrust defendants filed a motion to strike evidence relating to the defendants' internal antitrust policies in connection with a motion for summary judgment.  *Id.* at 58 n.13.  They argued that such evidence was irrelevant because the pertinent issue in the case was "not whether [defendants] violated their own policies but, rather whether they violated the antitrust law," and that defendants "fashioned policies that were much stricter than the antitrust laws."  *Id.*  The district court denied the motion to strike, and concluded that evidence regarding the defendants' antitrust compliance policies was relevant.  *Id.* at 58 & n.13.

The *Linerboard* court noted that the CEO of one of the defendants testified that he received a call from a competitor and that he "wasn't comfortable with this call [because the company] had a well-defined anti-trust program . . . that had the do's and don'ts including not only complying with anti-trust laws as they were written, but also staying away from gray areas" — and that in light of these "well-defined anti-trust guidelines," he "didn't think the phone call was appropriate."  *Id.* at 58.  The court held that the fact that the communications violated the defendant's policies, and thus were "highly unusual, 'inappropriate' even," supported an

inference of conspiracy.  *Id.* at 59.[3]  Likewise, in the present case, Dow's antitrust compliance policies are highly probative because they rebut Dow's claim that its communications with competitors were "legitimate," "expected," and "inevitable."

Similarly, evidence regarding Dow's antitrust compliance policies is relevant to the issues of fraudulent concealment and intent. ████████████████████████████████ ████████████████████████████████████████████████ Final Pretrial Order § 4(A), Pls.' Statement of Contested Facts ¶ 211 [hereinafter "Pls.' Statement of Contested Facts"], Doc. No. 84. ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ *Id.*

¶ 214. ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

---

[3]      In another antitrust case, *In re Tableware Antitrust Litigation*, 2007 WL 781960, at *2 (N.D. Cal. Mar. 13, 2007), the court also admitted a defendant's internal antitrust policies into evidence, rejecting objections based on relevance and Rule 403.   In that case, it was the defendant who sought to admit the policies as relevant to the issue of whether an inference of collusion was proper, on the basis that the antitrust policies accounted for the similarity of language used by the defendants and thus tended to negate an inference of coordination.  The court noted that although the evidence was "prejudicial" in the sense that it harmed plaintiffs' case, Rule 403 does not protect a party from all prejudice, only "unfair prejudice" — an undue tendency to suggest decision on an improper basis — and therefore did not bar admission of the antitrust compliance policy.

The evidence Dow seeks to exclude is also relevant to the credibility of Dow witnesses. For example, the willingness of these witnesses to violate what they knew to be the policies of their employer is relevant to these witnesses' veracity. █████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████

In sum, the evidence Dow seeks to exclude regarding its antitrust compliance policies is highly probative.  The probative value of this evidence outweighs the hypothetical risk of unfair prejudice or misleading the jury posited by Dow — that the jury would somehow think that the law it must apply is not that given by this Court in its instructions, but the antitrust principles mentioned in Plaintiffs' Exhibit 277.  Plaintiffs certainly do not intend to argue that Plaintiffs' Exhibit 277 sets forth the law that the jury should apply, and there is no logical reason to expect that the jury will disregard the Court's instructions in favor of applying legal principles summarized in one of the hundreds of exhibits that may be introduced at trial.[4]  Indeed, if Dow had been genuinely concerned that the jury might do so, it would have asked for a limiting instruction that Plaintiffs' Exhibit 277 is not being introduced to show what the law is, and that the jury is to apply the law as instructed by the Court.

Judge Lungstrum gave just such an instruction when he admitted Plaintiffs' Exhibit 277 into evidence at the class trial.  In connection with the class trial, Dow stipulated to the admission of all of the document except the last two pages — ███████████████████ ████████████████████████████████████████████████████████

---

[4]     Dow argues that a jury might be misled into believing that ███████████████████████ as set forth in Plaintiffs' Exhibit 277, was a legal requirement, █████████████████████ ██████████████████████ Dow's Br. at 3.  This is a red herring. ██████████ ███████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████ which Dow claimed

was the "section of this document that reflects legal advice" and "a statement of legal

principles." Class Trial Tr. vol. 5, 1169:6-1170:13 (Ex. B). Dow objected to this section on the

grounds of relevance and Rule 403, arguing, as it does here, that "the jury should get the law

from the court." *Id.* 1170:1-13.[5] Judge Lungstrum overruled the objection, stating that the entire

document (including the last two pages) was relevant and "I do not see a 403 problem with it."

*Id.* 1170:18-1171:4.

 After Judge Lungstrum's ruling, class plaintiffs questioned Schefsky extensively about

Dow's internal antitrust policies, including both the list of "DO's & DON'T's" and the excerpt

from Dow's code of business conduct regarding the antitrust laws. As noted above, Schefsky

testified that certain conduct by Dow employees violated Dow's compliance policies.[6] After the

document was admitted into evidence, but before testimony regarding the last two pages, Judge

---

[5] Dow claimed that both parties had agreed to the admission of the exhibit subject to the redaction of the last two pages; counsel for class plaintiffs disputed this, asserting that both parties had agreed to the admission of the entire document. Judge Lungstrum ruled that the entire document was admissible "[r]egardless of the agreement." *Id.* 1170:18-19.

[6] Later in the class trial, during the examination of former Dow executive Anthony Carbone, counsel for class plaintiffs attempted to go even further in its exploration of Dow policy violations, and Judge Lungstrum curtailed the examination. The basis for Dow's objection was that, although "any top executive knows about company policy, company practices, and to talk about those practices is obviously fair game, and there's already been that examination," it would be improper to go further and pose "what are essentially hypothetical questions to the witness" about whether particular instances of conduct would violate company policy or the law. Class Trial Tr. vol. 6, 1454:23-1455:5, Jan. 30, 2013 (Ex. B). Judge Lungstrum limited this line of questioning, which he regarded as "cumulative" of the testimony on this point from Schefsky. *Id.* 1460:8-9. During a lengthy side bar, Judge Lungstrum also reiterated that the compliance policies could not be used to show what the applicable law is, and in that context remarked that what an individual witness "thinks is illegal or even violative of Dow policy is not relevant." *Id.* 1455:19-1456:17. However, there was no dispute that the document Dow now seeks to exclude — Plaintiffs' Exhibit 277 — was properly admitted at the class trial.

Lungstrum instructed the jury:

> The Exhibit . . .  contains in a particular portion which is about to be discussed certain aspects which could be viewed as statements of what the law is.  As I instructed you to begin with, I will tell you what the law is at the conclusion of the case, and you will be guided by that.  You will not be guided by any statement as to what the law is or, put a different way, what the belief that any party may have within their own internal actions about what the law is.  They may be right, they may be wrong, but they are certainly entitled to deal with their internal operations with their views about what's prudent conduct, what's illegal or — legal or illegal in their views, but that has absolutely no bearing on what the law actually is; and that is what I will instruct you about at the end of the case.

*Id.* 1175:2-17.

Similarly, in the present case, if there is any risk that the jury might be misled or Dow might be unfairly prejudiced by the admission of the last two pages of Plaintiffs' Exhibit 277, this could be obviated by an instruction like the one given by Judge Lungstrum.  But any such risk would not justify exclusion of the entire document.[7]  Because the risk of unfair prejudice or misleading the jury does not "substantially outweigh" the probative value of the evidence at issue, Fed. R. Evid. 403, the evidence should be admitted.

The cases on which Dow relies in support of exclusion of this evidence do not support its position.  For example, in *Brown v. Payton*, 544 U.S. 133 (2005), the Supreme Court remarked that the trial judge, not counsel, is responsible for explaining the law to the jury — but went on to hold that the fact that the prosecutor had argued his interpretation of the law to the jury did not entitle the defendant to have his sentence set aside, particularly because the trial judge had cautioned the jury that the comments of counsel were not evidence.  *Id.* at 146.  To the extent

---

[7]     In *J&M Distributing, Inc. v. Hearth & Home Technologies, Inc.*, 2015 WL 144797 (D. Minn. Jan. 12, 2015), the court admitted the defendant's internal antitrust policy and guidelines, subject to a limiting instruction similar to the one given by Judge Lungstrum, and to certain redactions to the exhibits that were agreed to or requested by the parties.  *Id.* at *1-3.  The court rejected objections to the documents' admission based on relevance, unfair prejudice and jury confusion that were similar to those that Dow makes here.  *Id.* at *2.  In this case, Dow has not requested any redactions to the internal policies of Dow or its alleged co-conspirators.

that *Brown* has any application to this case, it supports the conclusion that a limiting instruction like the one Judge Lungstrum gave in the class trial will protect against any risk that the jury will be misled into applying an interpretation of the law other than that given by the Court.

Equally inapposite is *Crowley v. Chait*, 322 F. Supp. 2d 530, 550 (D.N.J. 2004), which stands merely for the uncontroversial proposition that an expert witness is precluded from testifying as to what the governing law is — but further holds that merely because an expert uses legal terminology such as "negligent" does not justify exclusion.   Thus, to the extent that *Crowley* bears on this case at all, it shows that the mere fact that evidence may touch upon certain legal concepts does not warrant its exclusion.

Also readily distinguishable is *Spruill v. Winner Ford of Dover, Ltd.*, 175 F.R.D. 194 (D. Del. 1997), a discrimination case in which the court excluded legal determinations made by the state department of labor, which concluded that there was reasonable cause to believe that the defendant had discriminated against the plaintiff.   Because the conclusions of the department of labor had no pertinence to the case other than to show what the law was and that an agency had found plaintiff's claim to be meritorious under a different legal standard, it is unsurprising that the agency's decision was excluded.   Here, by contrast, the evidence is not being offered to prove what the law is.

Finally, Dow mistakenly relies on two cases, *Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006), and *English v. District of Columbia*, 651 F.3d 1 (D.C. Cir. 2011), which held that evidence relating to police policies regarding the use of force was inadmissible in cases alleging that a police officer's use of force violated the Fourth Amendment.   Both cases are easily distinguishable.   In *Thompson*, plaintiff sought to introduce the Chicago Police Department's General Orders regarding the proper use of force for the purpose of providing the jury with

11

"objective criteria" regarding the applicable legal standard under the Fourth Amendment. 472 F.3d at 453. The Seventh Circuit held that the General Orders were inadmissible because departmental policies, which vary from time to time and place to place, cannot establish the federal constitutional standard under the Fourth Amendment — the purpose for which they were offered. *Id.* at 455. Here, again, Plaintiffs are not offering evidence of Dow's antitrust policies to supply the jury with the applicable legal standard.

Similarly, in *English*, the D.C. Circuit held that the trial court had not erred in admitting the *factual* portions of a police department report regarding the officer's use of force but excluding the report's *conclusions*. 651 F.3d at 7-8. The court ruled that these conclusions were inadmissible on a number of grounds, including that the report applied a departmental policy standard that differed from the applicable Fourth Amendment standard, that the jury could be confused by the different legal standards and give unfair weight to the report's conclusions, and that admission of the conclusions could lead to a "trial within a trial" about the validity of the report. *Id.* at 8-10. Here, the evidence that Dow seeks to exclude does not relate to administrative conclusions that might be given undue weight or require a trial within a trial; nor do Plaintiffs seek to use the evidence to prove what the law is. Indeed, in *English* the trial court admitted into evidence the portions of the report that were relevant to the *factual* issues in that case. Likewise, evidence relating to Dow's antitrust compliance policies should be admitted because it is relevant to important factual issues in the case.[8]

---

[8]     Dow's reliance on *Johnson v. Liberty Mutual Fire Insurance Co.*, 648 F.3d 1162 (10th Cir. 2011), is similarly misplaced. In *Johnson*, a plaintiff sued an insurance company for spoliation because the insurer failed to preserve evidence for two years after all existing claims were resolved. *Id.* at 1163-64. In support of this spoliation claim, plaintiff sought to show that the failure to preserve the evidence violated the insurance company's own retention policies. *Id.* at 1165. The court rejected this argument, noting that the retention policy was not pertinent either to whether the company had a legal duty to preserve the evidence or to the factual question

In sum, the evidence at issue regarding Dow's antitrust compliance policies is highly probative regarding a number of legitimate factual issues in this case, and is not being offered to show what the law is. There is little risk of unfair prejudice or misleading the jury — and any such risk can be eliminated by a limiting instruction. Therefore, the evidence should be admitted.

## II.    EVIDENCE REGARDING THE ANTITRUST COMPLIANCE POLICIES OF DOW'S ALLEGED CO-CONSPIRATORS IS RELEVANT AND ADMISSIBLE

Dow argues that evidence regarding the antitrust compliance policies of Dow's alleged co-conspirators "bears absolutely no relation to the issue of whether Dow entered into a conspiracy to fix the prices of urethanes during the alleged conspiracy period," and that the admission of such evidence would result in a "trial within a trial" regarding which company had the "best" policy regarding antitrust compliance. Dow's Br. at 4-5. Dow's arguments for exclusion are without merit.

First, it is beyond peradventure that the conduct of Dow's competitors in the urethanes market is relevant to the antitrust claim against Dow, because Plaintiffs must prove that Dow entered into a conspiracy to fix prices with these competitors. The communications between these alleged co-conspirators and Dow are therefore particularly relevant. Dow intends to argue that these intercompany communications were for legitimate business purposes and that the types of communications that occurred were inevitable in a market like the urethanes market. The antitrust compliance policies of Dow's competitors — which advise against the very types of communications in which employees of Dow's competitors engaged — rebuts Dow's argument, and supports an inference that the communications were conspiratorial rather than innocuous.

---

of whether the not-yet-filed lawsuit for which the evidence was sought was or should have been foreseen. *Id.* at 1164-65. Here, unlike *Johnson*, Plaintiffs do not seek to introduce the antitrust compliance policies to prove what the law is.

Moreover, the antitrust policies of Dow's competitors were not, as Dow suggests, markedly different from Dow's policies, giving rise to a "trial within a trial" as to which policy was "best." Rather, the policies were remarkably similar to Dow's, and they all counseled against communications with competitors regarding pricing and similar topics.

For example, 

Blumberg Dep. 44:14-18, July 21, 2010 (Ex. F).

The evidence will show that Dow's alleged co-conspirators engaged in communications that violated their own policies. For example,

Pls.' Statement of Contested Facts ¶¶ 231-39, 241-45, 281, 291-93, 340-41, 396-402, 439-47.

. *Id.* ¶ 236.



*Id.* ¶ 241.

*Id.* ¶ 242.

Dow Statement of Contested Facts ¶ 29.

Pls.' Statement of Facts ¶¶ 439-442.

*Id.* ¶ 443.

*Id.* ¶ 444.

*Id.* ¶ 445.

*Id.* ¶ 446.

*Id.* ¶ 447.

15

███████████████████████████████████████████████

████████████

In *Linerboard*, the court held that defendants' antitrust policies were relevant because they showed that the communications that took place with competitors were "highly unusual, 'inappropriate' even," rather than normal business communications. 504 F. Supp. 2d at 59. The antitrust policies of Dow's alleged co-conspirators, and the testimony regarding communications with competitors that violated those policies, show that the communications in this case were similarly — ████████████████████████ Pls.' Statement of Contested Facts ¶ 447. Thus, such evidence is relevant to show that the communications at issue were conspiratorial, rather than normal.

Moreover, because these antitrust compliance policies are not being offered to prove what the applicable antitrust law is, there is no risk that the jury will be confused or misled into disregarding the law as instructed by the Court. As with Judge Lungstrum's treatment of Dow's antitrust policies at the class trial, any such risk can be eliminated by a limiting instruction.

Therefore, because the probative value of this evidence is not "substantially outweighed" by the risk of unfair prejudice, jury confusion, or unnecessary expenditure of trial time, the evidence should be admitted.

## CONCLUSION

For the foregoing reasons, this Court should deny Dow's Motion *in Limine* Concerning

Antitrust Compliance Policies.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
*Attorneys for Plaintiffs*

By:___/s/ James E. Cecchi_____
        JAMES E. CECCHI

DATED:  October 5, 2015

Jeffrey M. Johnson
Richard J. Leveridge
Elaine Metlin
James R. Martin
Adam Proujansky
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
(202) 420-2200

*Attorneys for Plaintiffs*