**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE URETHANE ANTITRUST LITIGATION | Master Docket No. 08-5169 (WJM)(MF) |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT**
**DOW CHEMICAL COMPANY'S MOTION *IN LIMINE* TO**
**PRECLUDE REFERENCE TO THE *URETHANE* CLASS ACTION**

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELL, P.C.
5 Becker Farm Road
Roseland, NJ 07068-1739
(973) 994-1700

Jeffrey M. Johnson
Richard J. Leveridge
Elaine Metlin
James R. Martin
Adam Proujansky
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
(202) 420-2200

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...............................................................................................................1

LEGAL ARGUMENT .........................................................................................................1

I.     PROFESSOR ELZINGA COULD OPEN THE DOOR IF ALLOWED TO TESTIFY THAT "NO CARTEL" EXISTED OR HE FAILED TO IDENTIFY EVIDENCE OF A PRICE-FIXING CONSPIRACY .................................................................................1

II.    DR. UGONE COULD OPEN THE DOOR IF HE TESTIFIES THAT THERE ARE INSUFFICIENT FACTUAL BASES FOR DR. MARX TO CONCLUDE THAT A CONSPIRACY CAUSED PLAINTIFFS TO PAY OVERCHARGES .............................6

III.   DOW COULD OPEN THE DOOR THROUGH ITS CROSS-EXAMINATION OF DR. MARX .......................................................................................................................7

CONCLUSION....................................................................................................................8

# TABLE OF AUTHORITIES

**CASES**                                                                                       **PAGE(S)**

*Boykin v. W. Exp., Inc.*, 2015 WL 539423 (S.D.N.Y. Feb. 6, 2015) ................................................2

*Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir. 2000).......................................4

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) .....................................................2, 4

*E.E.O.C. v. FAPS, Inc.*, 2014 WL 4798802 (D.N.J. Sept. 26, 2014)...........................................2, 4

*Ferguson v. Valero Energy Corp.*, 2008 WL 6954190 (E.D. Pa. July 18, 2008)...........................7

*Ford v. Cnty. of Hudson*, 2014 WL 2039987 (D.N.J. May 16, 2014) ........................................2, 5

*Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 2010 WL 1553784 (D.
    Conn. Apr. 19, 2010) ..................................................................................................................1

*Petree v. Victor Fluid Power, Inc.*, 887 F.2d 34 (3d Cir. 1989) ......................................................1

*Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408 (3d Cir. 2002) .............................................1

*Tandberg v. Sholtis*, 401 F.3d 1151 (10th Cir. 2005) ......................................................................1

*United States v. Gaev*, 1993 WL 147186 (E.D. Pa. May 5, 1993) .............................................5, 6

*Walker v. Gordon*, 46 F. App'x 691 (3d Cir. 2002)....................................................................2, 4

*ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012).......................................................5

**RULES**

Fed. R. Evid. 611(b)..........................................................................................................................2

Fed. R. Evid. 702 .............................................................................................................................4

Fed. R. Evid. 703 .........................................................................................................................1, 7

**INTRODUCTION**

Dow's motion *in limine* to preclude Plaintiffs from "mentioning or referring to the existence or outcome of a class action that involved similar conspiracy allegations" is premature. It ignores the myriad ways that the class action could prove to be relevant at trial as proper cross-examination material[1] or through the affirmative introduction of evidence if Dow opens the door to that evidence.[2] Plaintiffs have already stated that they have no intention to affirmatively raise the class trial. *See* Letter from Jeffrey M. Johnson to David Bernick at 3 (Aug. 11, 2015) (Ex. A). This does not mean, however, that Dow should have *carte blanche* to pretend the verdict does not exist when presenting its experts' opinions or in attacking the opinions of Plaintiffs' expert. The discussion below addresses several situations in which the jury verdict may be highly probative.

**LEGAL ARGUMENT**

**I.   PROFESSOR ELZINGA COULD OPEN THE DOOR IF ALLOWED TO TESTIFY THAT "NO CARTEL" EXISTED OR HE FAILED TO IDENTIFY EVIDENCE OF A PRICE-FIXING CONSPIRACY**

As Judge Higginbotham stated, "[i]t is too well settled even to require citation that the law permits wide latitude in cross-examination of expert witnesses, including impeachment." *Petree v. Victor Fluid Power, Inc.*, 887 F.2d 34, 42 (3d Cir. 1989). Indeed, the preferred

---

[1]    *See, e.g.*, *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002) ("A party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weaknesses through effective cross-examination.").

[2]    *See, e.g.*, *Tandberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005) ("When a party opens the door to a topic, the admission of rebuttal evidence on that topic becomes permissible."); *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 2010 WL 1553784, at *2 (D. Conn. Apr. 19, 2010) ("Of course, an adversary's attack on an expert's basis will often open the door to a proponent's rebuttal with information that was reasonably relied upon by the expert, even if that information would not have been discloseable initially." (quoting Fed. R. Evid. 703 advisory committee's notes)).

methods of attacking expert evidence are through vigorous cross-examination and presentation of contrary evidence. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). Questions that attack the credibility of a witness are within the proper scope of cross-examination. Fed. R. Evid. 611(b). Moreover, it is appropriate for opposing counsel to explore the factual basis for an expert's opinion through cross-examination. *Boykin v. W. Exp., Inc.*, 2015 WL 539423, at *6 (S.D.N.Y. Feb. 6, 2015). A party may properly cross-examine an expert about the facts on which he or she affirmatively relied and also about the facts that he or she ignored or failed to properly consider. *See Walker v. Gordon*, 46 F. App'x 691, 695-96 (3d Cir. 2002) (version of facts relied upon by the expert is subject to cross-examination); *E.E.O.C. v. FAPS, Inc.*, 2014 WL 4798802, at *7 (D.N.J. Sept. 26, 2014) (observing that a list of facts that expert allegedly did not consider in conducting his analysis was pertinent to questions of credibility and weight that could properly be explored on cross-examination); *Ford v. Cnty. of Hudson*, 2014 WL 2039987, at *18 (D.N.J. May 16, 2014) (same).

Dow proffered Prof. Kenneth Elzinga as a liability expert in both this case and the class action case.[3] Prof. Elzinga filed a single expert report in both cases ███████████

██████████████████████████████████

███   Elzinga Dep. vol. 3, 45:24-46:1, Feb. 26, 2014 (Ex. B) (emphasis added).[4] ██████

██████████████████████████████████

---

[3]    Plaintiffs have moved to exclude Prof. Elzinga's testimony because it fails to meet the standards of science and is bereft of any identifiable methodology, and because he would not say anything that Dow could not say in closing argument. *See* Mot. *In Limine* to Limit the Testimony of Professor Kenneth G. Elzinga, Doc. No. 101; Br. Supp. of Pls.' Mot. *In Limine* to Limit the Testimony of Professor Kenneth G. Elzinga [hereinafter "Pls.' Elzinga Br."], Doc. No. 102.

[4]    Given Prof. Elzinga's testimony, the Court can easily reject Dow's suggestion that there are significant "differences between this and the class case" with respect to Prof. Elzinga's analysis and proffered testimony. Def. Dow Chemical Co.'s Br. Supp. Mot. *In Limine* Preclude Reference to *Urethanes* Class Action at 5 [hereinafter "Dow Class Action Br."], Doc. No. 119.

██████ Economic Expert Report of Professor Kenneth G. Elzinga University of Virginia, Mar. 23, 2012, at 29 [hereinafter "Elzinga Rep."] (filed under seal with the Final Pretrial Order (July 1, 2015), Doc. No. 84).[5] ████████████████████████████████████████████

████████████████████████████████████ Elzinga Dep. vol. 1, 252:9-23, May 2, 2012 (Ex. B); *see also* Elzinga Rep. at 27 ████████████████████████████████

█████████████████████████████

Prof. Elzinga testified at the class trial. The jury in the class trial found that "Dow participated in a conspiracy to fix, raise, or stabilize prices for urethane chemicals." Verdict Form at 1, Feb. 20, 2013, MDL Doc. No. 2799. The "urethane chemicals" were the same three chemicals at issue in this case, MDI, TDI, and polyols and the time period was a subset of the time period alleged by Plaintiffs. Twice, Dow incorrectly asserts that the class action plaintiffs alleged a conspiracy to fix the price of "polyether polyols systems." Dow Class Action Br. at 1, 3. That is not true. In fact, prior to the class action trial, the MDL Court granted Dow's uncontested motion *in limine* to "exclude reference to or allegations of any purported conspiracy to fix prices of polyether polyols systems." Mot. *in Limine* Conference Before Hon. John W.

---

[5]    In a footnote, Dow accuses Plaintiffs of "mischaracterizing" Prof. Elzinga's opinion ███ █████████████████ Dow Class Action Br. at 6 n.3. In fact, *Dow* is the one mischaracterizing his opinion. Prof. Elzinga's opinions are clear and a matter of record. *See* Elzinga Rep. at 29 ███████████████████████████████████████████████████████
███████████████████████████████████████████████
        Supplemental Report of Kenneth Elzinga, Ph.D., Dec. 18, 2013, at 26 [hereinafter "Elzinga Supplemental Rep."] (filed under seal with the Final Pretrial Order) ██████████████████████████████████████████ Elzinga Supplemental Rep. at 28 ████████████████████████████████████████████████████
██████████████████ ; Elzinga Dep. vol. 2, 318:21-319:4, May 4, 2012 (Ex. B)
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
██████████████████

3

Lungstrum Tr. 65:11-25, Jan. 9, 2013 (Ex. C).  As the MDL Court stated, there was "no separate

claim to be tried of a conspiracy to fix or stabilize the price of systems."  *Id.* 65:17-19.

   After the class action trial, Prof. Elzinga submitted a supplemental report in this case 

Elzinga Supplemental Rep. at 1.

*Id.* at 11.

Elzinga Dep. vol. 3, 33:11-34:3 (Ex.

B).

*Id.* 36:16-39:9.  Plaintiffs have

moved to exclude Prof. Elzinga's testimony on the ground that it fails to meet the requirements

of Federal Rule of Evidence 702 because, among other things, he "ignored inconvenient

evidence."  *See* Pls.' Elzinga Br. at 12 (quoting *Concord Boat Corp. v. Brunswick Corp.*, 207

F.3d 1039, 1056 (8th Cir. 2000)).  It is well established that if "shaky but admissible" testimony

is allowed, it should be attacked through "vigorous cross-examination."  *Daubert*, 509 U.S. at

595.

   Thus, if Prof. Elzinga is allowed to testify at trial that in his "expert" opinion, there was

no conspiracy at any time involving any of the three products at issue involving Dow, then the

jury should be allowed to consider that opinion in light of the many facts he chose to ignore

(including the jury's finding that a conspiracy did exist to manipulate prices for urethane

chemicals and Dow participated in that conspiracy), and in light of the statements he made about

the weight that *he* would put on a jury verdict. *See Walker*, 46 F. App'x at 695-96; *E.E.O.C.*, 2014 WL 4798802, at *7; *Ford*, 2014 WL 2039987, at *18. The jury verdict is not the only information he ignored. As set forth in detail in Plaintiffs' motion to exclude Prof. Elzinga's testimony, Prof. Elzinga specifically refused to look at documents and testimony showing the existence of a conspiracy. Pls.' Elzinga Br. at 11-12. It is patently unreasonable for an economist to testify that no conspiracy existed without considering known evidence to the contrary. *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 290 (3d Cir. 2012) ("In an antitrust case, an expert opinion generally must incorporate all aspects of the economic reality of the relevant market." (internal quotation marks omitted)).[6] Prof. Elzinga's intentional ignorance of facts that would undermine his opinions goes to the core of his credibility.[7]

In one *apropos* case, an economic expert testified for the defense in a criminal price-fixing case that in his opinion, no conspiracy existed in the steel drum industry in the eastern region of the United States. *United States v. Gaev*, 1993 WL 147186 (E.D. Pa. May 5, 1993). The expert testified as to ten core conditions that would have to exist to find the existence of a price-fixing conspiracy and that those conditions did not exist in the eastern region. *Id.* at *1. The prosecution sought to cross-examine the expert about a neighboring region (east-central), where companies had already pleaded guilty, to test the expert's theories. *Id.* The district court

---

[6] ⬛⬛⬛ Elzinga Supplemental Rep. at 10-11. By the same logic, though, Prof. Elzinga should have at least considered evidence of collusion (including a jury verdict) ⬛⬛⬛ *Id.* at 11.

[7] Dow asserts that the jury verdict left many questions unanswered. What was the duration of the conspiracy? Who joined Dow in it? Did it include all three products or just some subset? These are questions that one would have expected a credible economist to address in order to form a reasoned opinion on the existence or non-existence of a conspiracy. Whatever the jury left unanswered, there can be no doubt that it found that there *was* a cartel ⬛⬛⬛

5

agreed that it was "very proper" cross-examination and that it could address any concerns that the jury might misuse the information through a limiting instruction. *Id.* at \*2.

## II. DR. UGONE COULD OPEN THE DOOR IF HE TESTIFIES THAT THERE ARE INSUFFICIENT FACTUAL BASES FOR DR. MARX TO CONCLUDE THAT A CONSPIRACY CAUSED PLAINTIFFS TO PAY OVERCHARGES

Dow retained its other expert, Keith R. Ugone, Ph.D., ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████ *See* Rebuttal Expert Report of Keith R. Ugone, Ph.D.,

Responding to Expert Report of Dr. Raiff ¶¶ 1-3 [hereinafter "Ugone Rep."] (filed under seal

with the Final Pretrial Order). ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████ *See* Ugone Dep. vol. 2, 521:4-522:24, 525:6-14, 555:2-25, Apr. 17,

2012 (Ex. D).

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ *See, e.g.*, Ugone

Rep. ¶¶ 4.b.iii, 51, 79, 126; Ugone Dep. vol. 1, 217:18-22, Apr. 16, 2012 (Ex. D) ████████

████████████████████████████████████████████████████████████████

██████████; Ugone Dep. vol. 3, 744:5-24, Apr. 18, 2012 (Ex. D) ████████████████

████████████████████████████████████████████████████████████████

██████████████████████████.

Dr. Ugone's testimony would plainly open the door to cross-examination about the

evidence that he did *not* consider, namely the jury's finding that a conspiracy existed. That

finding squarely undermines Dr. Ugone's credibility and the foundation for his opinion ████

████████████████████████████████████████████████████████████████

████████████████████████ It is premature at this point to rule out this potential line of

cross-examination.[8]

## III. DOW COULD OPEN THE DOOR THROUGH ITS CROSS-EXAMINATION OF DR. MARX

For the same reasons discussed above, if Dow cross-examines Dr. Marx about the existence of facts sufficient to support her opinion that the overcharges are attributable to the conspiracy, then Dr. Marx may properly refer to the jury verdict as an additional factor supporting her opinion. It would be premature to rule at this point that Dow's cross-examination could not possibly open the door to this response.

---

[8] Should the Court choose to grant Dow's motion, Plaintiffs respectfully request that the Court limit its order to direct examination of witnesses, as opposed to Dow's request that Plaintiffs be precluded from referencing the class action verdict in "any" manner. The advisory committee's notes to Rule 703 indicate that this type of information may still be admissible if Dow opens the door: "[A]n adversary's attack on an expert's basis will often open the door to a proponent's rebuttal with information that was reasonably relied upon by the expert, even if that information would not have been discloseable initially under the balancing test provided by this amendment." Fed. R. Evid. 703 advisory committee's notes (2000); *see also Ferguson v. Valero Energy Corp.*, 2008 WL 6954190, at *1 (E.D. Pa. July 18, 2008) (excluding certain expert testimony except to the extent that defendants open the door).

## **CONCLUSION**

For the foregoing reasons, the Court should deny Dow's motion *in limine* to preclude reference to the class action.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
*Attorneys for Plaintiffs*


By:    /s/ James E. Cecchi
       JAMES E. CECCHI

DATED: October 5, 2015

Jeffrey M. Johnson
Richard J. Leveridge
Elaine Metlin
James R. Martin
Adam Proujansky
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
Tel: (202) 420-2200
Fax: (202) 420-2201

*Attorneys for Plaintiffs*