UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE URETHANE ANTITRUST LITIGATION | Master Docket No. 08-5169 (WJM)(MF) |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT DOW CHEMICAL COMPANY'S MOTION IN *LIMINE* TO PRECLUDE PLAINTIFFS' EXPERT FROM OFFERING OPINIONS OUTSIDE HER AREA OF EXPERTISE**

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELL, P.C.
5 Becker Farm Road
Roseland, NJ 07068-1739
(973) 994-1700

Jeffrey M. Johnson
Richard J. Leveridge
Elaine Metlin
James R. Martin
Adam Proujansky
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
(202) 420-2200

*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

                                                                                 **PAGE**

TABLE OF AUTHORITIES ................................................................................................... ii

LEGAL ARGUMENT ............................................................................................................. 1

I.      DOW'S MOTION IN LIMINE IS UNNECESSARY ........................................................ 2

II.     DOW'S CHALLENGE TO DR. MARX'S QUALIFICATIONS AND
         METHODOLOGY SHOULD BE REJECTED AS UNTIMELY ..................................... 3

III.    DR. MARX IS HIGHLY QUALIFIED TO RESPOND TO DOW'S CRITICISMS
         OF THE ECONOMETRIC MODELS AND THE BASES OF HER OPINION
         THAT THE ALLEGED CONSPIRACY CAUSED PLAINTIFFS TO PAY
         OVERCHARGES FOR URETHANE CHEMICALS ....................................................... 4

CONCLUSION ......................................................................................................................... 7

# **TABLE OF AUTHORITIES**

**CASES**   **PAGE(S)**

*Anspach v. City of Philadelphia*, 503 F.3d 256 (3d Cir. 2007)..........................................3

*In re Processed Egg Prods. Antitrust Litig.*, 81 F. Supp. 3d 412 (E.D. Pa. 2015) ......................6, 7

*In re Urethane Antitrust Litig.*, 2012 WL 6681783 (D. Kan. Dec. 21, 2012) ............................4, 7

*In re Urethane Antitrust Litig.*, 768 F.3d 1245 (2014) ..................................................4, 5

*In re Urethanes Antitrust Litig.*, 2014 WL 2004708 (D. Kan. May 16, 2014)................................2

*JamSports and Entm't, LLC v. Paradama Prod., Inc.*, 2005 WL 14917 (N.D. Ill. Jan. 3, 2005)..................................................................................6

*Mid–State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333 (7th Cir. 1989) ........................6

*Tuscaloosa v. Harcross Chems., Inc.*, 158 F.3d 548 (11th Cir. 1998).............................................6

**RULES**

Fed. R. Evid. 702 .............................................................................................................3

**OTHER AUTHORITIES**

Don Klawiter, *Book Review*, Comp. Law Int'l. 9(1) (Apr. 2013).....................................................2

Leslie Marx & Claudio Mezzetti, *Effects of Antitrust Leniency on Concealment Effort by Colluding Firms*, Journal of Antitrust Enforcement (2014) ......................................1

Robert C. Marshall & Leslie M. Marx, *The Economics of Collusion: Cartels and Bidding Rings* (2012) ...........................................................................................1

Robert C. Marshall, Leslie M. Marx, & Matthew E. Raiff, *Cartel Price Announcements: The Vitamins Industry,* Intn'l. Journal of Indus. Org. (May 2008) ...............................................................................................................1

William E. Kovacic, Robert C. Marshall, Leslie M. Marx, & Halbert L. White, Jr., *Plus Factors and Agreement in Antitrust Law*, 110 Mich. L. Rev. 393-436 (2011)..............................................................................................................1

William Kovacic, *Book Review*, Antitrust Source (Dec. 2012).......................................................2

**LEGAL ARGUMENT**

As shown below, Dow's motion *in limine* to preclude Plaintiffs' expert, Leslie Marx, Ph.D., from "offering opinions outside her area of expertise" suffers from at least three fatal flaws.  First, it seeks to exclude testimony that Plaintiffs have no plans to elicit.  Second, insofar as it attacks qualifications or methodology employed by Dr. Marx, it is a belated attempt to argue issues that should have been raised in Dow's *Daubert* motion and therefore should be rejected as untimely.  Finally, Dow fails to show that Dr. Marx lacks the professional qualifications to evaluate facts that support her opinion that a conspiracy caused Plaintiffs to pay more for urethane chemicals than they would have paid in the absence of a conspiracy.

In fact, Dr. Marx is one of the most qualified economists in the country regarding this issue.  She is the author of numerous peer-reviewed articles, she has won awards from three publications for academic articles on anti-competitive behavior,[1] and she recently co-authored an academic text titled *The Economics of Collusion*,[2] which Dow's proffered expert Kenneth Elzinga, Ph.D., called a "valuable piece of scholarship," one highly respected antitrust lawyer called "a competition law masterwork" that "should be studied and used by every industrial organisation economist and economics student on the planet" and a former chairman of the FTC

---

[1]   These articles are:  Robert C. Marshall, Leslie M. Marx, & Matthew E. Raiff, *Cartel Price Announcements:  The Vitamins Industry,* Intn'l. Journal of Indus. Org. (May 2008) (exploring the role of public price announcements in supporting collusive behavior), Paul Geroski Best Article Prize; Leslie Marx & Claudio Mezzetti, *Effects of Antitrust Leniency on Concealment Effort by Colluding Firms*, Journal of Antitrust Enforcement (2014), at 1-28, Best Economics Article – 2015 Antitrust Writing Awards, by the Institute of Competition Law Concurrences Journal (economic analysis of the incentives created by an antitrust leniency programs, with particular attention to incentives created for effort directed at the concealment of collusion and need for competition authorities to consider the effects of concealment when evaluating economic evidence of collusion.); William E. Kovacic, Robert C. Marshall, Leslie M. Marx, & Halbert L. White, Jr., *Plus Factors and Agreement in Antitrust Law*, 110 Mich. L. Rev. 393-436 (2011), Jerry S. Cohen Memorial Writing Award.

[2]   Robert C. Marshall & Leslie M. Marx, *The Economics of Collusion: Cartels and Bidding Rings* (2012).

called "the best single volume yet written about the formation and operation of cartels and bidding rings."[3]

## I. DOW'S MOTION *IN LIMINE* IS UNNECESSARY

The relief that Dow seeks in this motion is not entirely obvious. The motion only clearly specifies two types of purported "opinions" that are outside the "area of expertise" of Dr. Marx: (1) purported opinions about "the credibility of witnesses" and (2) "whether a particular event actually occurred." If that is all Dow seeks to preclude, then there is no need for a motion. Plaintiffs have no plans to elicit such testimony. Dr. Marx never sought to offer such testimony.

Indeed, Dow's Brief relies entirely on deposition excerpts that affirmatively show Dr. Marx will *not* be pushed into making improper characterizations of witness testimony. For example, at pages 2-4 of its Brief, the testimony that Dow quotes shows, on its face, that Dr. Marx refused to make credibility determinations. ███

███

███.[4]  Brief at 3. ███

███

---

[3] Respectively; Supplemental Expert Report of Kenneth G. Elzinga, at 26 (Dec. 18, 2013) ("Elzinga Supp. Rep") (Attachment 6.2 to Final Pretrial Order (July 1, 2015) (Dkt. 84)); Don Klawiter, *Book Review*, Comp. Law Int'l. 9(1) (Apr. 2013), http://tinyurl.com/p3ncuft (Mr. Klawiter has held several senior supervisory and litigation positions with the Antitrust Division of the US Department of Justice and currently leads Sheppard Mullin's East Coast Antitrust Practice); William Kovacic, *Book Review*, Antitrust Source (Dec. 2012), http://tinyurl.com/qe58qfb (Mr. Kovacic is a former FTC Commissioner and is currently George Washington University Law School's Global Competition Professor of Law and Policy).

[4] Dow's motion focuses on testimony that Dr. Raiff offered in his deposition. That testimony is irrelevant and should be ignored because Dr. Raiff will not testify at trial and Dr. Marx will be offering her own opinions. *In re Urethanes Antitrust Litig.*, 2014 WL 2004708, at *4 (D. Kan. May 16, 2014) (rejecting Dow's argument that Dr. Marx exceeded scope of substitution order by testifying in her own words).

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬ *Id.*; Rule 26 Disclosure of Leslie M. Marx, Ph.D. ¶ 25 (Sept. 20, 2013) ("Marx Discl.") (Attachment 6.2 to Final Pretrial Order).

There is therefore no need for a blanket order precluding Dr. Marx from opining about "the credibility of witnesses" and about "whether a particular event actually occurred," because Dr. Marx's expert report and deposition testimony make clear that she does not intend to do so, and because Plaintiffs' counsel do not intend to elicit such testimony.

## II. DOW'S CHALLENGE TO DR. MARX'S QUALIFICATIONS AND METHODOLOGY SHOULD BE REJECTED AS UNTIMELY

Dow theoretically asserts that Dr. Marx has no "scientific, technical, or other specialized knowledge" to evaluate what it calls "gumshoe evidence" (without defining that colloquial term) and she "offers no 'reliable principles and methods' to decide which evidence to accept and which to reject." Brief at 6 (quoting Fed. R. Evid. 702). To the extent Dow did not make these arguments in the 56-page *Daubert* motion it filed in 2014, it waived those arguments. *See* Pls.' Opp. to Dow's Mot. Exclude Expert Testimony of Pls.' Damages Expert Dr. Leslie Marx, at 7 (Mar. 25, 2014) (Dkt No. 3174) ("*Daubert* Opp.") (noting that Dow did not challenge Dr. Marx's qualifications); *Anspach v. City of Philadelphia*, 503 F.3d 256, 259 n. 1 (3d Cir. 2007) (observing that absent compelling circumstances "failure to raise an argument in one's opening brief waives it"). This Court should therefore reject Dow's argument as untimely.

On the other hand, to the extent that Dow raises issues that it previously raised in its *Daubert* motion, Plaintiffs have already explained why Dow is wrong. For example, Plaintiffs explained at length why Dr. Marx properly used her economic judgment to form her opinion that a price-fixing conspiracy caused the overcharges and to answer Dow's fact-based criticisms of her opinion. *See Daubert* Opp. 27-33.

3

### III. DR. MARX IS HIGHLY QUALIFIED TO RESPOND TO DOW'S CRITICISMS OF THE ECONOMETRIC MODELS AND THE BASES OF HER OPINION THAT THE ALLEGED CONSPIRACY CAUSED PLAINTIFFS TO PAY OVERCHARGES FOR URETHANE CHEMICALS

Even if this Court decides to consider on the merits Dow's conclusory argument that Dr. Marx is not qualified to offer testimony that would help a jury decide which evidence to accept and which to reject, Dow comes nowhere near meeting its burden of proof.  As noted above, Dr. Marx is one of the most qualified economists in the world to bring special expertise to explain to the jury how and why Dr. Raiff developed the econometric models which show urethane prices during the conspiracy period should have been lower than the actual prices that Plaintiffs paid.

It is equally clear that Dr. Marx's testimony will help the jury understand why she believes an alleged conspiracy, not lawful competition, caused actual prices to be higher than the "but-for" prices predicted by the models.  As the MDL Court ruled in the class action trial, while "he [the class's expert] may not give any opinion concerning the credibility of witnesses or whether a particular event actually occurred . . . it would be helpful to a jury for an expert to put events in an economic context."  *In re Urethane Antitrust Litig.*, 2012 WL 6681783, at *3 (D. Kan. Dec. 21, 2012).  Dr. Marx will provide the same type of testimony that the 10th Circuit held was sufficient to support the class action jury verdict.  *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1264-65 (2014) (rejecting Dow's argument that insufficient evidence existed to support the jury verdict because the class action statistical expert testified that plaintiffs paid more for urethane chemicals because of "something other than competition" and the class action economics expert that the record contained evidence consistent with collusion).[5]

---

[5] The class action plaintiffs called two experts to testify at trial.  The first expert, Dr. James McClave, is an expert in the field of statistics and testified about how he developed econometric models estimating "but for" prices and why he reached his opinion that something "other than competition" caused the class action plaintiffs to pay more for urethane chemicals than the predicted by his econometric models.  *Urethanes*, 768 F.3d 1251, 1265.  The second expert, Dr.

4

Indeed, Dow's criticisms of Dr. Marx's opinions largely turn on Dow's assertions that

███████████████████████████████████████████████████████████████

███████████████████████████████████████ *See, e..g,* Rebuttal Expert Rep. of

Keith R. Ugone, Ph.D. Responding to Expert Rep. of Dr. Raiff ¶¶ 4(b), 84 (Mar. 23, 2012)

(Attachment 6.9 to Final Pretrial Order) ("Ugone Rep.") ████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████, 49-83 ████████████████████████

███████████████████████████████████████████████████████████████

█████████ To provide one concrete example, █████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████ *See, e.g.*, *id.* ¶¶ 74-75;

Economic Expert Rep. Prof. Kenneth G. Elzinga, at 28, 38-40 (Mar. 23, 2012) ("Elzinga Rep.").

In response to these criticisms, Dr. Marx explained that, █████████████

███████████████████████████████████████████████████████████████

██████████████████████ Dep. Leslie Marx 318:16-319:13 (Nov. 15, 2013) (Ex. A). █

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

---

John Solow, an economic expert, testified that he conducted a full structure-conduct-performance analysis of the urethanes market and concluded that (1) the market structure was conducive to collusion, (2) the alleged conspirators' conduct was consistent with collusion and inconsistent with independent action, and (3) the market performance – artificially elevated prices – was consistent with collusion. *Id.* at 1262, 1264-65; Tr. Trial Proceedings Before Hon. John W. Lungstrum 2022:14-2023:7, 2034:18-2036:6 (Jan. 31, 2013) (Ex. B).  Dr. Solow relied on Dr. McClave's statistical analysis to support the "performance" portion of his analysis.

5

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Marx Decl. ¶ 47 n.32; Marx Dep. at 223:8-228:2.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Marx Decl. ¶ 54; Marx Dep. at 317:6-318:7.  She therefore plainly brought expertise for which she is highly qualified to her evaluation of the record. *See also Daubert* Opp. at 27-33.  Notably, Dr. Marx did not opine on the credibility of any particular witness, nor did she purport to tell the jury whether or not an event actually occurred. She simply inspected the record to determine whether the econometric model was properly designed, whether the model's results could reasonably be explained as the product of unrestrained competition, and whether Dow's criticisms of her opinions were valid.

None of the cases that Dow cites are on point.  To the contrary, one of those cases, *In re Processed Egg Prods. Antitrust Litig.*, 81 F. Supp. 3d 412 (E.D. Pa. 2015), specifically cited *The Economics of Collusion* for the proposition that "economists regularly study the conditions that give rise to collusion." *Id.* at 422 n.2.  In that same opinion, United States District Judge Gene E.K. Pratter rejected or distinguished the next three cases that Dow cites in its *in limine* motion.  Judge Pratter rejected the "passing dicta" cited by Dow in *Tuscaloosa v. Harcross Chems., Inc.*, 158 F.3d 548 (11th Cir. 1998), and chose instead to follow the "more convincing and widely followed approach" that allows economic experts to testify about whether certain conduct is indicative of collusion.[6] *Id.* at 420.  Judge Pratter similarly declined to follow *Mid–State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333 (7th Cir. 1989) and *JamSports and Entm't, LLC v. Paradama Prod., Inc.*, 2005 WL 14917, at *10 (N.D. Ill. Jan. 3, 2005), because both cases merely confirm that economists may not read and interpret evidence of

---

[6]   The expert involved in *Tuscaloosa* was the same Dr. McClave who testified in the class action.  Judge Pratter distinguished the *Tuscaloosa* opinion on the ground that Dr. McClave was not a qualified expert economist and therefore the challenged testimony was "outside his competence as a statistician." *Egg Products*, 81 F. Supp. 3d at 420-21.

6

collusion as any juror might or infer intent to collude from mere documentary evidence, unrelated to his or her economic expertise. *Id.* at 420-22.

The court, in fact, circled all the way back to the MDL court's decision in the class case for the proposition that, while "[an expert] may not give any opinion concerning the credibility of witnesses or whether a particular event actually occurred[,] . . . it would be helpful to a jury for an expert to put events in an economic context." *Id.* at 422 (quoting *Urethanes*, 2012 WL 6681783, at *3). The same ruling should apply here.

## CONCLUSION

For the foregoing reasons, the Court should deny Dow's Motion *In Limine*.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
*Attorneys for Plaintiffs*

By:   /s/ James E. Cecchi
          JAMES E. CECCHI

DATED:  October 5, 2015

Jeffrey M. Johnson
Richard J. Leveridge
Elaine Metlin
James R. Martin
Adam Proujansky
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
Tel: (202) 420-2200
Fax: (202) 420-2201

*Attorneys for Plaintiffs*

7