# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE URETHANE ANTITRUST LITIGATION | Master Docket No. 08-5169 (WJM)(MF) |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT DOW CHEMICAL COMPANY'S MOTION IN *LIMINE* TO EXCLUDE EVIDENCE RELATING TO THE INTERNAL INVESTIGATION BY BAYER'S COUNSEL

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELL, P.C.
5 Becker Farm Road
Roseland, NJ 07068-1739
(973) 994-1700

Jeffrey M. Johnson
Richard J. Leveridge
Elaine Metlin
James R. Martin
Adam Proujansky
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
(202) 420-2200

*Attorneys for Plaintiffs*

# **TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION .................................................................................................1

FACTUAL BACKGROUND .................................................................................4

    A.     The Challenged Evidence Is Highly Relevant ........................................4

    B.     The MDL Court Granted Defendants Leave to Depose Bayer's Counsel..............7

    C.     The MDL Court Denied Defendants' Summary Judgment Motion .......................7

LEGAL ARGUMENT.............................................................................................9

I.     THE TESTIMONY AND DOCUMENTS SHOULD BE ADMITTED FOR THEIR TRUTH ......................................................................................................9

    A.     The Statements from Bayer Executives to Bayer's Lawyers Are Admissible As Statements Against Interest ................................................................9

    B.     The Evidence Is Admissible Under the "Residual" Hearsay Exception.................9

        1.     Circumstantial Guarantees of Trustworthiness Support Admission of the Challenged Evidence....................................................................10

        2.     Admission of the Evidence Serves the Interests of Justice and the Purposes of the Federal Rules ...............................................................14

II.     PLAINTIFFS' EXPERT MAY TESTIFY TO INFORMATION SHE REVIEWED AND LEARNED DIRECTLY FROM BAYER'S OUTSIDE COUNSEL, EVEN IF THE COURT HYPOTHETICALLY FINDS THE EVIDENCE IS INADMISSIBLE FOR ITS TRUTH .....................................................................................16

    A.     Dr. Marx Reasonably Based Her Opinions, in Part, on the Bayer Evidence.........18

        1.     Dr. Marx Actually Relied on the Bayer Evidence .....................................18

        2.     The Bayer Evidence Directly Rebuts Dow's Criticisms That Dr. Marx Ignored Evidence of Competition and There Was No Conspiracy to Which She Could Attribute Damages.......................................................20

    B.     The Probative Value of the Information Substantially Outweighs Any Unfairly Prejudicial Effect ...................................................................21

III.    PLAINTIFFS SHOULD BE PERMITTED TO CROSS-EXAMINE DOW'S
        PROFFERED EXPERTS ABOUT THEIR FAILURE TO CONSIDER THE
        BAYER EVIDENCE ......................................................................................................... 22

CONCLUSION ............................................................................................................................. 23

## TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

*Asbury v. MNT Inc.*, 2014 WL 6674475 (D.N.M. Aug. 6, 2014) ...................................18

*Bohler–Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79 (3d Cir. 2001) ......11, 12, 14, 15

*Capobianco v. City of New York*, 422 F.3d 47 (2d Cir. 2005) ........................................12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) .........................................22

*Edwards v. Techtronic Inds. North Am., Inc.*, 2015 WL 3616558 (D. Or. June 9, 2015) .................................................................................................18

*F.T.C. v. Magazine Solutions,* 2009 WL 690613 (W.D. Pa. 2009) ...............................11

*FTC v. Figgie Int'l. Inc.*, 994 F.2d 595 (9th Cir. 1993) ..........................................11, 14

*FTC v. Ross*, 2012 WL 4018037 (D. Md. Sept. 11, 2012) ..........................................15

*Garcia v. GEICO, Ins. Co.*, 2015 WL 4923378 (11th Cir. Aug. 19, 2015)................................18

*Ibarra v. Barnes*, 2015 WL 151021 (C.D. Cal. Jan. 6, 2015)........................................18

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 681 F. Supp. 2d 141 (D. Conn. 2009) ...........................................................................9, 12, 14, 15

*In re Indus. Silicon Antitrust Litig.*, 1998 WL 1031509 (W.D. Pa. Oct. 13, 1998) ....................14

*In re Titanium Dioxide Antitrust Litig.*, 2013 WL 1855980 (D. Md. May 1, 2013).....................22

*In re Urethane Antitrust Litig.*, 2006 WL 2983047 (D. Kan. Oct. 17, 2006) ...............................11

*In re Urethane Antitrust Litig.*, 2012 WL 6681783 (D. Kan. Dec. 21, 2012) ...............................22

*In re Urethane Antitrust Litig.*, 2013 WL 65988 (D. Kan. Jan. 4, 2013) .......................................1

*In re Urethane Antitrust Litig.*, 2014 WL 2004708 (D. Kan. May 16, 2014) ...........................2, 19

*Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 435 (D. Del. 2007) ...............................................................................................21

*Jackson v. Louisville Ladder, Inc.*, 2014 WL 460849 (M.D. Pa. Feb. 5, 2014) ...........................17

*Johnson v. BAE Sys. Land & Armaments, L.P.*, 2014 WL 1714487 (N.D. Tex. Apr. 30, 2014)...........................................................................................18

*Kirouac v. Donahoe*, 2013 WL 173475 (D. Me. Jan. 16, 2013)................................................18

*Knopick v. Downey*, 2013 WL 1882983 (M.D. Pa. May 6, 2013)................................................18

*Phillips v. Morbark, Inc.*, 519 F. Supp. 2d 591 (D.S.C. 2007) ...........................................12

*Pineda v. Ford Motor Co.*, 520 F.3d 237 (3d Cir. 2008)........................................................16, 17

*Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218 (2d Cir. 1999)..............................................10

*Televisa, S.A. de C.V. v. Univision Commc'ns., Inc.*, 635 F. Supp. 2d 1106 (C.D. Cal. 2009)........................................................................................15

*Tome v. United States*, 513 U.S. 150 (1995).............................................................10

*United States v. Affleck*, 776 F.2d 1451 (10th Cir. 1985) ..............................................21

*United States v. Clarke*, 2 F.3d 81 (4th Cir. 1993) ...................................................11, 12

*United States v. Dunford*, 148 F.3d 385 (4th Cir. 1998)...............................................10

*United States v. Gatson*, 2014 WL 7182275 (Dec. 16, 2014) ...........................................3

*United States v. Harrison*, 296 F.3d 994 (10th Cir. 2002)..............................................3

*United States v. Leslie*, 542 F.2d 285 (5th Cir. 1976).................................................15

*United States v. Merchant*, 376 F. App'x 172 (3d Cir. 2010).........................................3

*United States v. Onyenso*, 2015 WL 3941446 (3d Cir. June 29, 2015)...............................3

*United States v. Stone*, 222 F.R.D. 334 (E.D. Tenn. 2004) ...........................................21

*United States v. Turner*, 718 F.3d 226 (3d. Cir. 2013) ...............................................10

*United States v. Universal Rehab. Servs., Inc. (PA)*, 205 F.3d 657 (3d Cir. 2000) ......................21

*Williams v. Illinois*, 132 S. Ct. 2221 (2012)................................................2, 17, 18, 21

## RULES

Fed. R. Evid. 703 ..................................................................................... passim

Fed. R. Evid. 804 .......................................................................................1, 9

Fed. R. Evid. 807 ..................................................................................... passim

## OTHER AUTHORITIES

2 McCormick on Evidence § 324 (4th ed. 1992).........................................................10

ABA Model Rules of Professional Conduct 3.3(a)(3).................................................11

U.S. Dept. of Justice, *Corporate Leniency Policy*,
   http://www.justice.gov/atr/corporate-leniency-policy (accessed Sept. 21,
   2015) ....................................................................................................................11

## INTRODUCTION

Defendant The Dow Chemical Company's motion to exclude "any reference" to Bayer's internal investigation (the "Bayer evidence")[1] should be rejected.  Dow's motion attacks straw-man arguments that Plaintiffs have never made, while intentionally ignoring the compelling arguments for admission of this evidence of which Dow has long been aware.

More than two years ago the MDL Court found that the evidence Dow seeks to exclude was *prima facie* admissible under the admission-against-interest and residual exceptions to the hearsay rules and provided the "most compelling" evidentiary basis for a jury to find that the conspiracy began as early as 1994.  *In re Urethane Antitrust Litig.*, 2013 WL 65988, at * 3 (D. Kan. Jan. 4, 2013) (citing Fed. R. Evid. 804(b)(3), 807).  Dow's motion makes no mention whatsoever of the MDL Court's decision or those hearsay exceptions.  Nor does Dow even acknowledge that it included three of the five challenged documents on its own trial exhibit list, thereby at least implicitly vouching for the reliability of these documents.[2]

The Bayer evidence is not only admissible for its truth under the admission-against-interest and residual exceptions, but Plaintiffs' expert should be permitted to disclose the evidence pursuant to Federal Rule of Evidence 703 to explain to the jury how she arrived at her opinions that a price-fixing conspiracy caused Plaintiffs to pay overcharges for the urethane chemicals they purchased from Dow and its co-conspirators.  The expert, Leslie Marx, Ph.D.,

---

[1]     Dow's motion addresses only the admissibility of information provided by Bayer's outside counsel.  This Opposition does likewise and does not further address the independent relevance of the publicly disclosed fact of Bayer's internal investigations to help the jury understand the events of late 2002, when regulators first raided Bayer's chemical business for evidence of price-fixing and 2004, when (1) regulators raided Bayer a second time for evidence of price-fixing in a related chemicals market and (2) Bayer sought leniency from regulators by disclosing the existence of at least one price-fixing conspiracy involving Dow that Bayer discovered through an internal investigation.

[2]     Plaintiffs attach those exhibits, labeled by Dow as DX 2410-12, as Exhibits A-C to this Opposition.

relied on documents and personal interviews with Bayer's outside counsel to determine (1) whether her predecessor properly designed econometric models that show actual urethanes prices were higher during the 1994-2003 period than they would have been had the conspirators competed the way they did in a non-collusive "benchmark" period comprised of the years 1992-93 and 2004-08 and (2) whether the conspiracy, as opposed to some other cause, provided the best explanation for the difference between actual and "but-for" prices estimated by the econometric model.  *See In re Urethane Antitrust Litig.*, 2014 WL 2004708, at *4-5 (D. Kan. May 16, 2014) (denying motion to strike Dr. Marx's opinions and finding the "essential point" of Dr. Marx's testimony is that the conspiracy, not "some other cause not addressed by the models," caused the difference).

The recent opinion in *Williams v. Illinois*, 132 S. Ct. 2221, 2233-40 (2012) (plurality), explained that juries benefit when experts are allowed to fully disclose the bases for their opinions, even if some of those bases rely on evidence that might otherwise be deemed inadmissible hearsay if offered for its truth.  An expert's credibility could be "seriously undermined" if the jury formed the mistaken view that an expert drew an "unwarranted inference" or relied on unsupported factual premises to arrive at her opinions; therefore, disclosure of the basis for the opinions under Rule 703 should be permitted to "allay these fears." *Id.* at 2240.  Indeed, Dow has said it intends to put the bases for Dr. Marx's opinion squarely at issue throughout the trial.  *See, e.g.,* Final Pretrial Order § 4(B), Dow's Statement of Contested Facts ¶¶ 34, 35 (July 1, 2015) (Dkt. 84) ("Final Pretrial Order") (asserting that Dr. Marx's opinions "are not supported by the evidence" and the econometric models fail to make any "assessment of the history of the alleged conspiracy").

On the same basis, Plaintiffs should be permitted to cross-examine Dow's proffered experts about their conscious decision to ignore the evidence supplied by Bayer in reaching their conclusions. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

The Court need not decide before, or in the middle of, trial whether it will admit the evidence for its truth under the hearsay exceptions, or pursuant to Rule 703 only. It may conditionally admit the evidence and instruct the jury as appropriate after hearing all of the evidence. *See, e.g.*, *United States v. Harrison*, 296 F.3d 994, 999, 1007 (10th Cir. 2002) (finding that district court did not abuse discretion in conditionally admitting evidence pursuant to Federal Rule of Evidence 807).[3]

---

[3]     *See also United States v. Merchant*, 376 F. App'x 172, 178 (3d Cir. 2010) (holding that district court did not abuse its discretion by conditionally admitting statements subject to the condition that other witnesses would testify at trial to give background regarding the subject of the statements at issue); *United States v. Onyenso*, 2015 WL 3941446, at *1 (3d Cir. June 29, 2015) (holding that district court did not abuse discretion by conditionally admitting co-conspirator's statements); *United States v. Gatson*, 2014 WL 7182275, at *25 (Dec. 16, 2014) (Martini, J.) ("Under Third Circuit precedent, a district court has discretion to admit co-conspirator statements conditionally, permitting the government to prove the existence of the conspiracy and the connection of those statements to the conspiracy during the course of trial.").

# FACTUAL BACKGROUND

**A.     The Challenged Evidence Is Highly Relevant**

The evidence at issue falls into two categories. ███████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████

      ████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████

      ████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████



The second category of evidence consists of five documents, ████████████

████████████ .[4]  Dow included each of these three documents on its own trial exhibit list.  *See* Exhibits A-C.

████████████ , attached as Exhibit D to this Opposition, ████████████

████████████ attached as Exhibit E to this Opposition, ████



Dep. Leslie Marx, Ph.D. 161:4-12 (Nov. 15, 2013) (Ex. F).

Ex. E.

*See* Final Pretrial Order, § 4(A), Pls.'

Stmt. Facts ¶ 116 ("Pls.' Stmt. Facts").

Dep. William Long 78:16-84:14, 86:13-88:2, 118:16-119:14

(Oct. 5, 2010) (Ex. G); Pls.' Stmt. Facts ¶¶ 120, 123.

Dep. Robert Lawrence 191:5-201:2 (Oct. 28, 2010) (Ex. H);

DX 2204 (Ex. I); Pls.' Stmt. Facts ¶ 142.



Ex. C at 2, 4.

**B.      The MDL Court Granted Defendants Leave to Depose Bayer's Counsel**

In 2010, after Plaintiffs had placed defendants on notice of the proffer by Bayer's counsel, Dow and its co-defendants moved to compel Plaintiffs to produce any notes and memoranda generated from their interviews with Bayer's outside counsel.  Mem. & Order, Feb. 14, 2011, at 1 (Dkt. No. 1957).  The MDL Court denied the motion, but granted Defendants leave to depose Bayer's counsel so that Defendants could learn the facts revealed in the Bayer proffer.  *Id.* at 11.  Dow and its co-defendants declined to do so.

**C.      The MDL Court Denied Defendants' Summary Judgment Motion**

In 2012, Dow moved for summary judgment on (1) Plaintiffs' and class plaintiffs' claims of conspiracy for the "class period" from 1999-2003 and (2) Plaintiffs' claims that the conspiracy began in 1994.  The MDL Court denied Dow's summary judgment motion on both grounds.  In ruling that whether the conspiracy extended back five years prior to the class period was a

---

[5]      ▮▮▮▮▮ Dep. Marco Levi vol. 2, 466:6-468:15, 469:3-9 (May 20, 2010) (Ex. J).

▮▮▮▮▮ Dep. Lynn Schefsky vol. 2, 38:14-40:4 (Sept. 30, 2013) (Ex. K).

question of fact for the jury, the MDL Court noted that the record contained evidence that the conspiracy was "ongoing in 1999." Mem. & Order, Jan. 4, 2013, at 6 (Dkt. No. 2678).

This evidence included testimony from former Dow executive Stephanie Barbour, who testified that in 1998 or 1999 her boss, Charles Churet, insisted on a price increase even though such an increase was not supported by supply and demand factors, and that when she questioned that decision, other Dow employees, including Marco Levi, pointed out that Churet had been at a trade association meeting the week before; and that Barbour later came to understand that that meeting provided opportunities for Churet to have discussions with competitors akin to the pricing agreements that Levi later discussed in her presence. *Id.*

The MDL Court found that the document drafted by Dr. Raiff to be the "most compelling" piece of evidence extending the conspiracy back to 1994. *Id.* at 7 (referring to DX 2412). The MDL Court observed that Dow objected generally to the memorandum, but did not address the specifics, nor "did Dow respond to plaintiffs' argument that the memorandum is trustworthy in light of Dow's opportunity to discuss the memo at Dr. Raiff's deposition and Dow's refusal to take advantage of the opportunity, granted by the Court, to depose the Bayer attorney." *Id.* The MDL Court said that while it was not ruling on eventual admissibility of that document at trial, it would admit the evidence for purposes of deciding summary judgment because the hearsay exception for statements against interest and the "residual" hearsay exception "on their face, could apply to allow for the admission of the memorandum." *Id.*

8

## LEGAL ARGUMENT

**I.     THE TESTIMONY AND DOCUMENTS SHOULD BE ADMITTED FOR THEIR
TRUTH**

>    **A.     The Statements from Bayer Executives to Bayer's Lawyers Are Admissible
>    As Statements Against Interest**

Under Fed. R. Evid. 804(b)(3), the hearsay rule does not exclude statements if the
declarant is unavailable and a reasonable person in the declarant's position would have made the
statements only if the person believed them to be true because they were contrary to the
declarant's interest or exposed the declarant to civil or criminal liability.  There is no dispute that
both elements are met here.  First, the declarants are "unavailable" because they asserted their
Fifth Amendment rights in response to all questions.  *See, e.g., In re Ethylene Propylene Diene
Monomer (EPDM) Antitrust Litig.*, 681 F. Supp. 2d 141, 150 (D. Conn. 2009) (witnesses who
invoke the Fifth Amendment are unavailable under Fed. R. Evid. 804(b)).  Indeed, the parties
stipulated that the jury in this case should be instructed that the witnesses are unavailable.
Ltr. from D. Bernick to J. Johnson 2 (Aug. 6, 2015) (Ex. L); Ltr. from J. Johnson to D. Bernick 2
(Aug. 11, 2015) (Ex. M).  Second, the declarants had a reasonable basis to believe that truthful
answers to questions about their role in the conspiracy would tend to expose them to criminal
liability.  *See* Opp. to Class Pls.' Mot. Compel Third-Party Witnesses 2-3 (Nov. 17, 2010) (Dkt.
No. 1770); Order, Jan. 10, 2011 (Dkt. No. 1917) (holding that Fifth Amendment assertions were
properly invoked).  Accordingly, the statements made by the Bayer witnesses are admissible.

>    **B.     The Evidence Is Admissible Under the "Residual" Hearsay Exception**

Fed. R. Evid. 807 allows the admission of hearsay, even if it does not fall within an
enumerated hearsay exception, if it (1) has "equivalent circumstantial guarantees of
trustworthiness," (2) "is offered as evidence of a material fact," (3) "is more probative on the
point for which it is offered than any other evidence that the proponent can obtain through

reasonable efforts," and (4) "admitting it will best serve the purposes of these rules and the interests of justice." *Id.* Some courts also require proof that the opposing party was on notice of the evidence.

Although Rule 807 is reserved for exceptional circumstances "when high degrees of probativeness and necessity are present," this case presents such circumstances because the evidence is highly probative and Plaintiffs cannot reasonably obtain the evidence from any other source because the declarants have refused to testify. *See United States v. Turner*, 718 F.3d 226, 233-35 (3d. Cir. 2013); *Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218, 221 (2d Cir. 1999) (reversing district court's refusal to admit evidence pursuant to residual exception).

There is no dispute that the testimony and documents at issue are offered to prove material facts and are more probative than any other evidence that Plaintiffs could obtain through reasonable efforts.  There is also no question, as shown above, that Dow has been on notice of the documents and testimony for years.  Thus, Dow cannot credibly dispute that the "high degrees of probativeness and necessity are present" to invoke Rule 807.  *United States v. Turner*, 718 F.3d at 243.

The discussion below focuses on the two remaining factors considered in the Rule 807 balancing, circumstantial guarantees of trustworthiness and how admission would promote the policies underlying the federal rules of evidence and the interests of justice.

      1.    Circumstantial Guarantees of Trustworthiness Support Admission of the Challenged Evidence

To decide whether evidence provides equivalent circumstantial guarantees of trustworthiness, courts look to the "totality of the circumstances" for some strong "indicia of reliability."  *Tome v. United States*, 513 U.S. 150, 166 (1995); *United States v. Dunford*, 148 F.3d 385, 393 (4th Cir. 1998) (quoting 2 McCormick on Evidence § 324, at 362

(4th ed. 1992)); *United States v. Clarke*, 2 F.3d 81, 83-84 (4th Cir. 1993).   In this case, the indicia of reliability are abundant.

First, the declarants are "known and named," and the Bayer witness statements were based on "personal observation."   *See Bohler–Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 113 (3d Cir. 2001).   As the MDL Court noted, Dow cannot complain that Bayer's outside counsel will not testify at trial because Dow made the strategic decision not to depose him after the MDL Court specifically authorized it to do so.   *See* Mem. & Order, Feb. 14, 2011, at 11 (Dkt. No. 1957).   Indeed, Dow *still* made no attempt to depose Bayer's outside counsel even after the MDL Court identified that fact as one of the reasons it chose to consider the Bayer evidence in denying summary judgment.   *See* Mem. & Order, Jan. 4, 2013, at 7 (Dkt. 2678).

Second, Bayer's outside counsel was required both by professional ethics and contractual duty to provide only truthful information.[6]   ABA Model Rules of Professional Conduct 3.3(a)(3). Bayer's counsel had no motive to lie and every incentive to report the facts truthfully. *See F.T.C. v. Magazine Solutions,* 2009 WL 690613, at *1 (W.D. Pa. 2009) (citing *FTC v. Figgie Int'l. Inc.*, 994 F.2d 595 (9th Cir. 1993) (Rule 807 applied where declarants had no motive to lie)).   Bayer's class settlement, which included a cooperation clause, involved a "substantial" payment.   *In re Urethane Antitrust Litig.*, 2006 WL 2983047, at *1 (D. Kan. Oct. 17, 2006) (approval of class action settlement with Bayer).   Dow's cynical insinuation that Plaintiffs and Bayer colluded to arrive at a low value settlement in exchange for ginned-up facts has no basis in fact.   Moreover, had Bayer remained in the case it would have been under an obligation, as a

---

[6]      Dow concedes Bayer provided the information to the United States Department of Justice ("DOJ") as part of an application for corporate leniency.   The DOJ leniency guidelines require applicants to disclose evidence of criminal antitrust violations and provide truthful cooperation. U.S. Dept. of Justice, *Corporate Leniency Policy*, http://www.justice.gov/atr/corporate-leniency-policy (accessed Sept. 21, 2015).

corporation with knowledge of facts, to provide that information in response to discovery requests.



Ex. C at 2.

*See EPDM*, 681 F. Supp. 2d at 152-53 (allowing admission of interrogatory answer of corporate defendant that summarized evidence of conspiracy based on information obtained by the corporation from employees who asserted their Fifth Amendment rights).

Third, Dow has vouched for the reliability of the evidence by including three of the challenged documents on its own trial exhibit list. *See Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) ("defendants waived any objections to the admissibility of the reports by offering them themselves"); *Phillips v. Morbark, Inc.*, 519 F. Supp. 2d 591, 596 (D.S.C. 2007) (party waived objection in part by including exhibit on its trial exhibit list).

Finally, additional guarantees of trustworthiness can be found in record evidence that corroborates, at least partially, the challenged evidence. *United States v. Clarke*, 2 F.3d 81, 85 (4th Cir.1993) (corroborating evidence provides a "ring of reliability"); *Bohler–Uddehom*, 247 F.3d at 113 (admitting evidence under Rule 807 where it was partially corroborated by record evidence). Although an exhaustive evaluation of the corroborating evidence that will be introduced at trial is beyond the scope of this Opposition, Plaintiffs provide a few examples below.



Example 1: ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████ Ex. C at 2. ██████████████████████████

██████████████████████████████████████████ Pls.' Stmt.

Facts ¶¶ 185, 201, 253. ████████████████████████████████

██████████████████████████████████ Dep. Ed Dineen 9:23-15:8

(Jan. 8, 2013) (Ex. N).

Example 2: ███████████████████████████████████████

███████████████████████████████████████████████

████████████████████ Ex. C at 2. ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████ Long Dep. 78:16-84:14, 86:13-88:2, 118:16-119:14 (Ex. G). ████

███████████████████████████████████████████████

███████

Example 3: ███████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████ Ex. D. ███████████████████████

██████████████████ Pls.' Stmt. Facts ¶ 503. ███████████████████

███████████████████████████████████████████████

█████████████████████████████████████ Dep. Uwe Hartwig vol. 2,

432:25-434:22, 435:23-438:21 (June 8, 2010) (Ex. O); Levi Dep. 433:7-437:7, 442:1-444:25 (Ex. J).[7]

Numerous additional examples exist, as will become evident throughout the course of the trial.

> 2.    Admission of the Evidence Serves the Interests of Justice and the Purposes of the Federal Rules

The "paramount goal" of the Federal Rules of Evidence is to make relevant evidence admissible.  *Figgie*, 994 F.3d at 609.  Generally, admission of relevant evidence serves the interests of justice by providing information that will help the jury determine the truth.  *Bohler–Uddehom*, 247 F.3d at 113; *In re Indus. Silicon Antitrust Litig.*, 1998 WL 1031509, at *2 (W.D. Pa. Oct. 13, 1998).  In this case, the evidence that Dow seeks to exclude would help the jury determine the truth by providing valuable context to evaluate the rest of the evidence in the case regarding allegedly conspiratorial conduct during the pre-class period.  The Bayer evidence will also help the jury evaluate the testimony of the parties' respective experts.

In an analogous situation, the district court in *In re EPDM Antitrust Litigation* admitted under Fed. R. Evid. 807 interrogatories drafted by a corporate defendant providing information it obtained from its employees through internal investigations and disclosures to authorities.  681 F. Supp. 2d at 149-50.  The court held that admission of the interrogatories promoted the interests of justice because it provided information that would be useful to the fact finder.  *Id.* at 152.  As here, in that case the individual witnesses not only exercised their Fifth Amendment rights, but the trial court declined to allow the plaintiffs to seek an adverse inference from those Fifth Amendment assertions.  *Id.* at 153-54.  The *EPDM* court found that its decision to deny

---

[7] ███████████████████████████████████████████
Hartwig Dep. 446:3-449:12 (Ex. O); Levi Dep. 448:11-449:25 (Ex. J).

Plaintiffs a chance to obtain an adverse inference weighed in favor of admissibility of the information disclosed by those unavailable witnesses. *Id.* at 150*; see also FTC v. Ross*, 2012 WL 4018037, at *3 (D. Md. Sept. 11, 2012) (allowing introduction of evidence relating to the "scope and nature of the alleged conspiracy" because, *inter alia*, the court would not allow plaintiffs to seek an adverse inference from the witness's assertion of his Fifth Amendment rights, and the Fifth Amendment invocation "limited the available evidence"). The *EPDM* court further noted that corporations must speak through authorized representatives, like (as here) their counsel. *Id.* at 152.

While this evidence is largely corroborated by record evidence, it will most certainly be challenged at trial. *See Bohler-Uddeholm*, 247 F.3d at 113 (affirming admission of evidence under Rule 807 where district court found that the opposing party's ability to rebut that evidence militated in favor of its admission). ███████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████ *See, e.g.*, Marx Dep. 139-77 (Ex. F).[8]

The jury will be instructed to consider the totality of the evidence in deciding whether a conspiracy existed, and there is thus no legitimate basis for Dow to argue that the jury will blindly accept "a one-sided view of the facts from Bayer's counsel" and ignore the other testimony and evidence. *See* Dow's Brief Support Mot. *In Limine* Exclude Bayer's Internal

---

[8]     *See also United States v. Leslie*, 542 F.2d 285, 290 (5th Cir. 1976); *Televisa, S.A. de C.V. v. Univision Commc'ns., Inc.*, 635 F. Supp. 2d 1106, 1109-10 (C.D. Cal. 2009) (relying on opportunity of opposing party to cross-examine expert witness at deposition).

Investigation 8 ("Dow Br.").  Viewed in the totality of the circumstances, the documents and testimony should be admitted into evidence for their truth under the residual hearsay exception.

## II.   PLAINTIFFS' EXPERT MAY TESTIFY TO INFORMATION SHE REVIEWED AND LEARNED DIRECTLY FROM BAYER'S OUTSIDE COUNSEL, EVEN IF THE COURT HYPOTHETICALLY FINDS THE EVIDENCE IS INADMISSIBLE FOR ITS TRUTH

Even assuming, *arguendo*, that the Court were to conclude that the hearsay exceptions do not apply to the Bayer evidence, Dr. Marx should still be permitted to disclose the facts to the jury under Fed. R. Evid. 703 to explain the bases for her opinions.  Rule 703 expressly allows experts to base opinions on inadmissible evidence, so long as they are (as here) the type of facts on which experts in the particular field would reasonably rely.  Rule 703 further states that if the facts relied upon are inadmissible for their truth, the proponent of the opinion may disclose them to the jury if their "probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."   In determining whether to permit the disclosure of such evidence, subject to a limiting instruction, the Court should balance the probative value of the evidence in assisting the jury to evaluate the expert's opinion against the risk that the jury will use the information for an improper purpose contrary to the limiting instruction.  Fed. R. Evid. 703 Advisory Comm. Notes (2000).

The Court should also take into account the fact that an adversary may "open the door" to a proponent's rebuttal with information that was reasonably relied on by the expert.  *Id.* Moreover, the proponent may properly seek during direct examination to "remove the sting from the opponent's anticipated attack" so as to "prevent the jury from drawing an unfair negative inference." *Id.*

Dow cites a footnote from a 2008 Third Circuit case for the proposition that Rule 703 "establishes a presumption against disclosure to the jury."  Dow Br. 6, *citing Pineda v. Ford*

16

*Motor Co.*, 520 F.3d 237, 247 n.14 (3d Cir. 2008).  Dow's reliance on the *Pineda* footnote is misplaced for at least two reasons.  First, Dow mischaracterizes *Pineda*.  In the same paragraph that Dow cites, the Third Circuit stated it was not expressing an opinion on the admissibility of the challenged evidence, and recognized that the Advisory Committee Notes "implicitly endorse" the admission of that evidence subject to a limiting instruction.[9]  *Id*.

Second, Dow fails to recognize the importance of *Williams v. Illinois*.  That case involved efforts by state prosecutors to introduce into evidence the conclusions of a DNA profiler through an expert who simply relied on the profiler's conclusions.  The defendant argued that the testimony violated his rights under the Confrontation Clause because he was unable to cross-examine the DNA profiler.  The Supreme Court rejected the defendant's argument and upheld the admissibility of the testimony.

The plurality opinion explained that Congress enacted Rule 703, despite some controversy, to allow the admission of "basis evidence" that will assist the jury to understand the expert's "thought process and determine what weight to give to the expert's opinion."  *Id.* at 2240.  The "probativeness or credibility" of an expert's opinion could be "seriously undermined" if, for example, the jury were to "suspect that the expert relied on factual premises with no support in the record, or that the expert drew an unwarranted inference from the premises on which the expert relied."  *Id.*  The purpose of disclosing the facts on which the expert relied is to "allay these fears—to show that the expert's reasoning was not illogical, and that the weight of

---

[9]      The only other case Dow cites is an inapposite district court decision declining to allow disclosure of evidence that the court previously ruled was "generally inadmissible as ***irrelevant***." *Jackson v. Louisville Ladder, Inc.*, 2014 WL 460849, at *6 (M.D. Pa. Feb. 5, 2014) (emphasis added).  Unlike that case, there is no question that the evidence Dow seeks to prevent Dr. Marx from affirmatively disclosing is relevant.

the expert's opinion does not depend on factual premises unsupported by other evidence in the record," not to prove the truth of the underlying facts. *Id.*

In the years after *Williams*, numerous courts have invoked Rule 703 to give experts latitude to disclose "basis evidence" to the jury.[10] Dow mentions none of these cases.

### A.      Dr. Marx Reasonably Based Her Opinions, in Part, on the Bayer Evidence



Dep. Matthew Raiff, Ph.D. vol. 1, 92:16-93:2 (May 25, 2011) (Ex. P).

#### 1.      Dr. Marx Actually Relied on the Bayer Evidence

Dow attempts to relegate Dr. Marx to a parrot reciting Dr. Raiff's report by asserting she "stepped into the shoes" of Dr. Raiff.  Dow Br. 7.  Dow's argument is essentially the same one the MDL Court rejected when it denied Dow's motion to strike Dr. Marx's expert report for purportedly exceeding the bounds of the substitution order by undertaking new and independent analyses to evaluate Dr.

---

[10]      *See, e.g., Garcia v. GEICO, Ins. Co.*, 2015 WL 4923378, at *4 n.8 (11th Cir. Aug. 19, 2015) ("the Federal Rules of Evidence specifically contemplate the admission of this type of evidence when an expert testifies"); *Edwards v. Techtronic Inds. North Am., Inc.*, 2015 WL 3616558 at *5 (D. Or. June 9, 2015) (following decisions of four other district courts); *Ibarra v. Barnes*, 2015 WL 151021 at **9-10 (C.D. Cal. Jan. 6, 2015) (citing *Williams*); *Asbury v. MNT Inc.*, 2014 WL 6674475 at *17 (D.N.M. Aug. 6, 2014); *Johnson v. BAE Sys. Land & Armaments, L.P.,* 2014 WL 1714487, at *33 (N.D. Tex. Apr. 30, 2014); *Knopick v. Downey*, 2013 WL 1882983 at *13 (M.D. Pa. May 6, 2013); *Kirouac v. Donahoe*, 2013 WL 173475, at *3 (D. Me. Jan. 16, 2013).

Raiff's opinions.  *In re Urethanes Antitrust Litig.*, 2014 WL 2004708, at *1-2 (D. Kan. May 16, 2014).  The MDL Court explained that despite its order allowing Dr. Marx to "step into" Dr. Raiff's opinions and precluding her from developing her own damage models or methodologies, it "did not preclude Dr. Marx from offering new opinions or bases to defend Dr. Raiff's models and conclusions." *Id.* at *2. ████████████████████████████████

████████████████████████████████████ *See, e.g.,* Marx Dep. 234:16-234:20 (Ex. F).[12] ███████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

███████████████████████ Marx Discl. ¶¶ 24-27.[13] ██████████

██████████████████████████████████████████████

██████████████████████████████████████████████

---

[11] ████████████████████████████████████ Rule 26 Disclosure of Leslie M. Marx, Ph.D. ¶ 8 (Sept. 20, 2013) (Attachment 6.2 to Final Pretrial Order) ("Marx Discl."). ████████████████████████████████████████████████ *Id.*

[12] *See also* Marx Dep. 234:21-235:9 (Ex. F) █████████████████████████████████████████████████████████████████████████████████████████████

[13] █████████████████████████████████████████████████████████████████████████████████████████████████ *Id.* ¶¶ 42-51.

19



*Id.* ¶ 27.

2.   The Bayer Evidence Directly Rebuts Dow's Criticisms That Dr. Marx Ignored Evidence of Competition and There Was No Conspiracy to Which She Could Attribute Damages

Dow and its experts will attack Dr. Marx's opinions by claiming that she did not properly consider all of the pertinent facts.

*See, e.g.,* Suppl. Expert Rep. Keith R. Ugone, Ph.D. ¶¶ 4.b.i-iii, 79, 126, 134-135 (Dec. 19, 2013) (Attachment 6.10 to Final Pretrial Order); *see also* Dep. Keith R. Ugone, Ph.D. vol. 2, 744-45 (Apr. 17, 2012) (Ex. Q)

Suppl. Rep. Kenneth G. Elzinga 3 (Dec. 18, 2013) (Attachment 6.7 to Final Pretrial Order).

*Id.* at 11.

**B.      The Probative Value of the Information Substantially Outweighs Any Unfairly Prejudicial Effect**

For the same reasons discussed above, the probative value of the Bayer evidence substantially outweighs the danger that a jury would, contrary to instructions, misuse that evidence for substantive purposes.   As discussed in the preceding subsection, Dow's core criticism of Dr. Marx is that she lacks sufficient factual bases to support her opinion that a *conspiracy*, not some other (lawful) reasons, caused the difference between actual and "but-for" prices predicted by the econometric model.   Thus, this presents a prototypical case in which "basis evidence" will (1) help the jury understand and evaluate Dr. Marx's testimony, (2) prevent the jury from incorrectly suspecting that she relied on unsupported factual premises to arrive at her opinions, and (3) allow Plaintiffs to take the "sting" out of Dow's stated plans to attack her opinions for lack of support.  *Williams*, 132 S. Ct. at 2240.

Dow offers nothing to support its conclusory assertion that the jury might misuse the Bayer evidence, and ignores the effect of a limiting instruction.  *See United States v. Universal Rehab. Servs., Inc. (PA)*, 205 F.3d 657, 668 (3d Cir. 2000) ("[P]rejudicial effect is typically cured through a curative instruction to the jury."); *United States v. Affleck*, 776 F.2d 1451, 1457-58 (10th Cir. 1985); *Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 435, 442-43 (D. Del. 2007) (denying motion *in limine* to exclude information expert obtained through interviews, which was otherwise inadmissible hearsay, where opponent had not demonstrated that the jury would misuse the information for substantive purposes); *United States v. Stone*, 222 F.R.D. 334, 341 (E.D. Tenn. 2004) (allowing expert to testify pursuant to Rule 703 regarding out-of-court conversations with non-testifying employees relied upon in forming her opinions).

21

### III.  PLAINTIFFS SHOULD BE PERMITTED TO CROSS-EXAMINE DOW'S PROFFERED EXPERTS ABOUT THEIR FAILURE TO CONSIDER THE BAYER EVIDENCE

One of the principal ways to attack an expert that neglected some crucial piece of evidence is "vigorous cross-examination."  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993).  Parties are permitted to probe the bases for an expert's opinion, including apparent "cherry-picking" of facts.  *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 1855980, at *9 (D. Md. May 1, 2013).  As the MDL Court noted, "the extent to which [an expert] considered the entirety of the evidence in the case is a matter for cross-examination." *In re Urethane Antitrust Litig.*, 2012 WL 6681783, at *3 (D. Kan. Dec. 21, 2012).



Ugone Dep. 557:14-560:16 (Ex.  Q). Elzinga Supp. Rep. at 26. . Rule 703 does not apply to cross-examination and therefore does not preclude Plaintiffs from impeaching the credibility of Dow's experts by pointing to the facts they consciously ignored.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Dow's motion.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
*Attorneys for Plaintiffs*


By:    /s/ James E. Cecchi
        JAMES E. CECCHI

DATED:  October 5, 2015

Jeffrey M. Johnson
Richard J. Leveridge
Elaine Metlin
James R. Martin
Adam Proujansky

DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
Tel: (202) 420-2200
Fax: (202) 420-2201

*Attorneys for Plaintiffs*

23