# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE URETHANE ANTITRUST LITIGATION | Master Docket No. 08-5169 (WJM)(MF) |

### PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND ARGUMENT RELATED TO PLAINTIFFS' CONDUCT IN DOWNSTREAM MARKETS

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068-1739
(973) 994-1700

Jeffrey M. Johnson
Richard J. Leveridge
Elaine Metlin
James R. Martin
Adam Proujansky
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
(202) 420-2200

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

PAGE

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ............................................................................................................ 1

LEGAL ARGUMENT ...................................................................................................... 3

I.      THE MDL COURT RULED THAT DOWNSTREAM EVIDENCE WAS
        DISCOVERABLE, NOT ADMISSIBLE ............................................................ 3

II.     EVIDENCE RELATING TO PLAINTIFFS' CONDUCT IN DOWNSTREAM
        MARKETS IS NOT RELEVANT ......................................................................... 5

III.    EVIDENCE REGARDING PLAINTIFFS' CONDUCT IN DOWNSTREAM
        MARKETS SHOULD BE EXCLUDED UNDER FED. R. EVID. 403 ............... 10

CONCLUSION ................................................................................................................ 12

## TABLE OF AUTHORITIES

CASES                                                                                                   PAGE(S)

*Beattie v. Monongahela R. Co.*, 122 F. Supp. 803 (W.D. Pa. 1954) ................................................9

*Copperweld v. Indep. Tube Corp.*, 467 U.S. 752 (1984) ................................................................6

*Groark v. Timek*, 989 F. Supp. 2d 378 (D.N.J. 2013) ...................................................................5

*Hildebrant v. W.R. Grace & Co.*, 492 F. Supp. 2d 516 (D. Md. 2007) ..........................................9

*In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100 (E.D.N.Y.
    Oct. 15, 2014) ......................................................................................................................8

*In re Automotive Refinishing Paint Antitrust Litig.*, 2006 WL 1479819 (E.D. Pa.
    May 26, 2006) ...................................................................................................................2, 6

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 301 F.R.D. 449 (N.D. Cal. 2014) .......................4

*In re Flat Glass Antitrust Litig.*, 385 F.3d 350 (3d Cir. 2004) ......................................................1

*In re Urethane Antitrust Litig.*, 2013 WL 65988 (D. Kan. Jan. 4, 2013) ......................................8

*In re Urethane Antitrust Litig.*, 913 F. Supp. 2d 1145 (D. Kan. 2012) .........................................8

*Jackson v. Beard*, 2014 WL 3868228 (M.D. Pa. Aug. 6, 2014) ....................................................5

*Kopacz v. Del. River & Bay Auth.*, 225 F.R.D. 494 (D.N.J. 2004) ................................................5

*Neider v. Chrysler Corp.*, 361 F. Supp. 320 (E.D. Pa. 1973) ......................................................9

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134 (1968), *overruled on
    other grounds by Copperweld v. Indep. Tube Corp.*, 467 U.S. 752 (1984)......................6, 11

*Reppert v. Marino*, 259 Fed. App'x 481 (3d Cir. 2007) ..............................................................12

*Tengood v. City of Philadelphia*, 529 F. App'x 204 (3d Cir. 2013) ............................................12

*United States v. Lopez*, 271 F.3d 472 (3d Cir. 2001) ....................................................................8

**RULES**

Fed. R. Civ. P. 26..................................................................................................................3, 5

Fed. R. Evid. 401 ......................................................................................................................5

Fed. R. Evid. 403 ....................................................................................................9, 10, 11, 12

Fed. R. Evid. 702 ......................................................................................................................8

## INTRODUCTION

Dow has repeatedly indicated that it intends to argue to the jury that Plaintiffs are employing a hypocritical "double standard," in which they seek to hold Dow liable for conduct in the market for urethane chemicals that is supposedly similar to conduct in which Plaintiffs engaged in the downstream foam market.[1]  A large percentage of the exhibits and deposition testimony Dow intends to introduce  relates to its "double standard" argument.[2]  Dow's strategy is clear:  unable to defend its own conduct, Dow seeks to make this case about Plaintiffs' conduct.  But as Plaintiffs explained, whether a given Plaintiff engaged in a particular type of conduct in a different market, at a different time, involving different products, reveals nothing about the inferences to be drawn from the conduct of Dow and its alleged co-conspirators when the evidence is properly viewed as a whole.  Pls.' Br. at 11 (citing *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 359-61 (3d Cir. 2004)).  Further, any possible probative value it might have is greatly outweighed by the risk of unfair prejudice, confusion of issues, and waste of trial time.

In its Opposition, Dow insists that it is not offering this evidence to support an "unclean hands" or *in pari delicto* defense, or to argue that Plaintiffs "passed on" artificially inflated prices to their customers.[3]  Dow nevertheless intends to base its defense at trial on Plaintiffs' conduct,

---

[1]     *E.g.*, Loftin Dep. 125:4-21 (Ex. T to Pls.' Br. Supp. Mot. *In Limine* To Preclude Evidence & Argument Related To Pls.' Conduct in Downstream Markets [hereinafter "Pls.' Br."]); Watson Dep. 107:14-108:7 (Ex. G to Pls.' Br.), 211:20-22; *see also* Letter from Lawrence S. Lustberg to Hon. Mark Falk, U.S.M.J. at 1 (Jan. 8, 2015) (Ex. A hereto).

[2]     During the meet-and-confer process, Dow even suggested that it will try to somehow use the Foam Litigation documents at trial despite the Court's order striking them from Dow's exhibit list, Letter from David Bernick to Jeffrey M. Johnson (Aug. 17, 2015) (Ex. A to Pls.' Br.), a point Plaintiffs raised in their original Brief, Pls.' Br. at 4 n.3.  Dow ignores this topic.

[3]     Contrary to Dow's claims that it does not intend to use the alleged foam conspiracy against Plaintiffs, Dow seeks to obtain an adverse inference based on the fact that certain present and former employees of Plaintiffs invoked their Fifth Amendment rights.  Def.'s Br. Opp'n Pls.' Mot. *In Limine* To Preclude Evidence Related To Fifth Amendment Invocations, D.N.J. Dkt. 137.  Furthermore, and also contrary to its assertions, Dow has included a "pass on" argument in

notwithstanding cases such as *In re Automotive Refinishing Paint Antitrust Litigation*, 2006 WL 1479819, at *8 (E.D. Pa. May 26, 2006) — which Dow ignores in its Opposition — holding that "[p]laintiffs' activities are almost wholly irrelevant in proving or disproving" an antitrust claim.

Dow's tortured theory of relevance for Plaintiffs' conduct in the downstream foam market is as follows:  (1) Plaintiffs' employees engaged in conduct in the foam market that the employees subjectively believed was legal and not independently "indicative of collusion"; (2) because Plaintiffs' employees believed that their conduct was legal and not independently indicative of collusion, it *was*; (3) some of the conduct in which Plaintiffs engaged in the foam market could be broadly characterized as "parallel price increase announcements," "competitor contacts," and "competitive intelligence;" (4) some of the conduct in which Dow engaged in the urethanes market could also be placed in the same broad categories; (5) therefore, Dow's conduct in the urethanes market was legal and not independently indicative of collusion.

As Plaintiffs explained in their original Brief, there are a number of fatal gaps in Dow's chain of reasoning, including the following:  (1) because the foam market and the urethanes markets were so different, and the nature of Plaintiffs' and Dow's conduct in those separate markets was so different, proving that specific instances of Plaintiffs' conduct in the foam market were independently legal would shed no light on whether evidence regarding the conduct of Dow and its co-conspirators, viewed as a whole, tended to prove the existence of an

---

its Statement of Contested Facts:  "Plaintiffs had varying incentives on whether to accept a given price increase announcement *and pass those costs onto their customers (perhaps with an additional markup)*, or to fight the price increase in light of their bargaining power in the then-buyers' market."  Final Pretrial Order § 4(B), Def. Dow Chem. Co. Statement of Contested Facts ¶ 24 (emphasis added).  Indeed, although Dow asserts that it will not argue *in pari delicto*, unclean hands or pass-on at trial, Dow hedges its position by asserting in its downstream conduct Opposition that it "does not necessarily agree" that it would be improper to assert these defenses. Def. Dow Chemical Co.'s Br. Opp'n Pls.' Mot. *In Limine* To Preclude Evidence and Argument Related to Pls.' Conduct in Downstream Markets [hereinafter "Opp'n"] at 6 n.1, D.N.J. Dkt. 139.

agreement to manipulate urethanes prices; (2) the belief of Plaintiffs' employees that their conduct in the foam market was legal and not indicative of collusion does not necessarily make it so, and is improper opinion testimony; (3) Dow cannot properly use the downstream evidence to "prove" that parallel price increase announcements, competitor contacts, and competitive intelligence gathering, standing alone, do not violate the antitrust laws, because the legal principle that such parallel conduct alone is not enough to establish an antitrust violation is an undisputed legal (vs. factual) point, for which no proof is necessary or permissible; and (4) under controlling precedent, Dow's antitrust liability cannot turn on a comparison of the "relative moral worth" of the parties, and introducing the downstream evidence in support of Dow's "double standard" argument would invite the jury to decide the case on that improper basis, a risk of unfair prejudice that far outweighs any probative value the evidence might have.

Dow has no real answer for any of these arguments, so it ignores or blithely dismisses them, and focuses instead on a discovery ruling by the MDL Court that Dow claims is dispositive of the present motion under the "law of the case" doctrine. This is patently false.

## LEGAL ARGUMENT

### I.   THE MDL COURT RULED THAT DOWNSTREAM EVIDENCE WAS DISCOVERABLE, NOT ADMISSIBLE

On November 8, 2010, Defendants moved to compel discovery regarding Plaintiffs' conduct in downstream markets. In its motion, Dow noted the broad scope of relevance for purposes of discovery under Federal Rule of Civil Procedure 26(b)(1), pursuant to which all evidence is deemed "relevant" for discovery purposes unless it is "clear" that the evidence "can have no possible bearing on the claim or defense of a party," regardless of whether it would be admissible at trial. Defs.' Mem. Supp. Mot. Compel Foamer Discovery at 2, D. Kan. Dkt. 1747.

Magistrate Judge O'Hara granted Defendants' motion to compel in part, expressly noting

that the Federal Rules favor "liberal discovery," on the theory "that the 'search for the truth' should be 'nearly unencumbered.'"  Mem. & Order at 7, Dec. 17, 2010, D. Kan. Dkt. 1877 (citations omitted).[4]  Because the discovery "could possibly bear on" legitimate issues, Judge O'Hara concluded that the information was discoverable.  *Id.* at 12.[5]  Judge O'Hara further stated that "at the discovery stage the focus is on placing all pertinent facts (*i.e.*, facts that may have a bearing on a claim or defense in the case) on the table.  *The admissibility of those facts, as well as the conclusions to be drawn from them, will be addressed at trial*."  *Id.* (emphasis added).[6]

Astoundingly, although Dow devotes a number of pages of its Opposition to a laborious discussion of this ruling and its purported implications, Dow *omits* the portions of the ruling in which the MDL Court expressly stated that it was only ruling on the discoverability of the evidence under the "liberal" standard for relevance at the discovery stage, and that the admissibility of the evidence "will be addressed at trial."[7]

Dow suggests — without any supporting case law — that the MDL Court's discovery order also controls admissibility (despite the MDL Court's express statement to the contrary) on

---

[4]    Judge O'Hara ruled that two categories were discoverable:  "information related to [P]laintiffs' communications with other foam manufacturers regarding any notice or price increase announcement by a defendant regarding the prices of urethane products or increases in the costs of urethane raw materials" and "information related to [P]laintiffs' communications with competitors that may indicate anticompetitive conduct by [P]laintiffs in setting the price of foam and other products manufactured with [polyether polyol products]." *Id.* at 8, 11.

[5]    Notably, Dow does not even claim that many of the hypothetical issues that Judge O'Hara speculated in 2010 that the requested discovery might possibly bear on, such as "the reason for defendants' prices" and whether "plaintiffs solicited price hikes," were ultimately borne out by the discovery that Dow sought and obtained.

[6]    Judge Lungstrum affirmed Judge O'Hara's order, holding that in light of the "governing liberal discovery standard," Judge O'Hara "did not abuse his discretion or clearly err" in granting the motion to compel in part.  Mem. & Order at 4, 11, Apr. 5, 2011, D. Kan. Dkt. 1970.

[7]    Likewise, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 301 F.R.D. 449, 454 (N.D. Cal. 2014), on which Dow also mistakenly relies, ruled that certain "downstream" evidence was *discoverable*, not that it was *admissible*.

the ground that the relevance standard for discovery under Federal Rule of Civil Procedure 26 and the relevance standard for admissibility under Federal Rule of Evidence 401 are purportedly identical.  This is plainly false, and Dow knows it is false because Plaintiffs cited case law in its original Brief holding that the standard of relevance for admissibility at trial is far stricter than the standard of relevance for discovery.  *See* Pls.' Br. at 12 n.17 (citing *Jackson v. Beard*, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014); *Kopacz v. Del. River & Bay Auth.*, 225 F.R.D. 494, 497 (D.N.J. 2004).  Dow simply ignores these cases in its Opposition.[8]

In sum, the law of the case doctrine does not apply here because the MDL Court's ruling was a discovery order, which expressly left open the question of whether the evidence would be admissible under the stricter standards of relevance applicable to admissibility at trial.[9]

## II.    EVIDENCE RELATING TO PLAINTIFFS' CONDUCT IN DOWNSTREAM MARKETS IS NOT RELEVANT

The relevance of evidence must be judged in relation to the legitimate issues in the case: only facts that are "of consequence in determining the action" are relevant under Federal Rule of Evidence 401.  As Dow has noted, "[t]*he issue in this case is whether Dow conspired with certain other urethanes manufacturers to fix the price of TDI, MDI, and/or polyether polyols in the United States from 1994 to 2003*."  Def. Dow Chemical Co.'s Br. Supp. Mot. *In Limine* To Preclude References to Other Antitrust Cases at 1, D.N.J. Dkt. 115 (emphasis added).

Evidence regarding Plaintiffs' conduct in the foam market is not pertinent to that issue, and therefore is not relevant under Rule 401.  Indeed, the Supreme Court has long rejected

---

[8]    Indeed, there are myriad cases in this District and elsewhere for this well-settled legal principle, *e.g., Groark v. Timek*, 989 F. Supp. 2d 378, 397 (D.N.J. 2013) (collecting cases), and Dow does not cite a single case holding otherwise.

[9]    None of the "law of the case" decisions on which Dow relies, Opp'n at 6-7 & n.2, suggests that a prior ruling, which expressly leaves open a question for future decision, somehow dictates the outcome of the question that it left open.

efforts to use plaintiffs' conduct as a defense in an antitrust action, and held that defenses based on the "relative moral worth of the parties" are improper. *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968), *overruled on other grounds by Copperweld v. Indep. Tube Corp.*, 467 U.S. 752 (1984).

Because Dow's "double standard" argument patently conflicts with precedents such as *Perma Life Mufflers* and *In re Automotive Refinishing Paint Antitrust Litig.*, Dow seeks to reframe its argument in its Opposition, claiming that evidence relating to Plaintiffs' conduct in the foam market is relevant because it shows that the "practices" of issuing price increase announcements at about the same time as competitors, gathering competitive intelligence, and attending trade association meetings, are "normal, common business practices." Opp'n at 1. However, even in the handful of deposition excerpts attached as exhibits to Dow's Opposition — presumably chosen because they best support Dow's arguments — the focus of Dow's questioning is not on whether certain practices are "normal, common business practices."



Briney Dep. 129 (Ex. E to Opp'n), Crowell Dep. 74 (Ex. F to Opp'n), , Davidson Dep. 98 (Ex. D to Opp'n), Laursen Dep. 76 (Ex. G to Opp'n), Wheeler Dep. 374 (Ex. H to Opp'n), Davidson Dep. 123, Davidson Dep. 99, Briney Dep. 75, 78, 122, Crowell Dep. 72, Davidson Dep. 123, Laursen Dep. 75, Wheeler Dep. 371.



Pauley Dep. 80-81 (Ex. C to Opp'n).

*Id.* 81:16-22.

. *E.g.*, Loftin Dep.
125:4-21 (Ex. T to Pls.' Br.); Watson Dep. 107:14-108:7, 211:20-22 (Ex. G to Pls.' Br.).  In sum,

Dow has mischaracterized the testimony it seeks to introduce, which has little to do with

showing that certain categories of conduct were "normal, common business practices," and

everything to do with establishing that Plaintiffs are applying a "double standard."

---

[10]     *E.g.*, Laursen Dep. 107:9-12, 123:17-21, 145:5-7 (Ex. C to Pls.' Br.); Malechek Dep. vol.
2, 85:10-15 (Ex. D to Pls.' Br.); Sasser Dep. 210:25-211:3 (Ex. E to Pls.' Br.); Simpson Dep.
226:9-11, 242:21-243:1 (Ex. I to Pls.' Br.); Hay Dep. 198:8-11 (Ex. H to Pls.' Br.); Mann Dep.
165:20-23 (Ex. P to Pls.' Br.); Hurst Dep. vol. 2, 294:2-6, Oct. 18, 2013 (Ex. R to Pls.' Br.).

[11]     *E.g.*, Davidson Dep. 123:12-15 (Ex. B to Pls.' Br.); Malechek Dep. vol. 2, 39:17-19,
50:21-25 (Ex. D to Pls.' Br.); Watson Dep. 122:6-8 (Ex. G to Pls.' Br.); York Dep. vol. 2, 59:24-
60:1, 117:7-18, 213:11-13 (Ex. J to Pls.' Br.); Scott Dep. 74:4-5, 121:4-5 171:14-16, 191:18-20,
200:8-11 (Ex. M to Pls.' Br.); Lunsford Dep. 175:7-8, 200:5-8 (Ex. O to Pls.' Br.).

Moreover, in order to establish that evidence relating to Plaintiffs' conduct in the foam market, which Dow contends was legal, is relevant to whether Dow's conduct in the urethanes market was legal, Dow would have to establish that the markets were sufficiently similar, and the conduct was sufficiently similar, for the analogy to be valid.  In their original Brief, Plaintiffs explained in detail why the enormous differences between the two markets, and the conduct of the various parties in those markets, render any such analogy impossible, and therefore make the downstream evidence irrelevant to the issue of whether Dow violated the antitrust laws.

Dow fails to address these arguments, dismissively claiming that Plaintiffs' arguments go only to the probative "weight" of the evidence and not its relevance.  This is untrue: the differences that Dow ignores mean that proving the legality of the categories of Plaintiffs' conduct in the foam market would shed no light on the question of whether conduct falling into the same categories in the urethanes market, when viewed as part of the evidence as a whole, tend to support the existence of a price-fixing agreement.  *See, e.g.*, *In re Urethane Antitrust Litig.*, 913 F. Supp. 2d 1145, 1150-56 (D. Kan. 2012); *In re Urethane Antitrust Litig.*, 2013 WL 65988, at *4 (D. Kan. Jan. 4, 2013).  Such evidence is therefore irrelevant.[12]  But even if these differences were indeed only pertinent to the probative "weight" of the evidence, that would not be a reason to ignore them — balancing the probative weight of evidence against the risk of

---

[12]    The cases on which Dow relies do not support its position.  *United States v. Lopez*, 271 F.3d 472, 485 (3d Cir. 2001), involved the admission of testimony relating to an eyewitness identification of incontestable relevance, and merely noted that matters relating to the reliability of that testimony were proper subjects for cross-examination.  *In re Air Cargo Shipping Services Antitrust Litigation*, 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014), stands for the uncontroversial proposition that *if* expert testimony meets the standards for admissibility under Federal Rule of Evidence 702, then "*other* contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony."  *Id.* at *7 (emphasis added).  Contrary to Dow's assertion that "gaps or inconsistencies" in an expert's analysis do not affect admissibility but only weight, *Air Cargo* holds that expert testimony can properly be excluded when "there is simply too great an analytical gap between the data and the opinion proffered."  *Id.*

unfair prejudice is crucial to the determination of admissibility under Rule 403, discussed below.

Furthermore, for Dow's convoluted relevance argument to work, Dow would have to establish that Plaintiffs' conduct in the foam market, which Dow hopes to analogize to its own conduct, did not establish a price-fixing agreement. ███████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████ — a question which was hotly disputed in the Foam Litigation, and was the subject of a criminal investigation, an amnesty application, a guilty plea, and numerous civil settlements. And, as Plaintiffs explained, the testimony of Plaintiffs' ██████████████████████████████████████████ is inadmissible opinion testimony — both because the witnesses are not legal experts and because even a legal expert may not testify about what the law is. Pls.' Br. at 18.

Dow disputes this, but the authorities on which it relies do not support its position. In *Hildebrant v. W.R. Grace & Co.*, 492 F. Supp. 2d 516 (D. Md. 2007), the court only admitted an employee's "historical account of his performance," not an opinion as to whether conduct was legal. *Id.* at 523. Similarly, *Neider v. Chrysler Corp.*, 361 F. Supp. 320 (E.D. Pa. 1973), simply held, unsurprisingly, that a witness's testimony in which he "merely described what he saw when he visited and observed the accident scene" was fact testimony, not opinion testimony. *Id.* at 324. Finally, *Beattie v. Monongahela R. Co.*, 122 F. Supp. 803 (W.D. Pa. 1954), decided nearly two decades before the Federal Rules of Evidence were enacted, held that a witness's testimony, based on his observation of frequent routine, that the member of a train crew who is closest to the switch should be the one to throw the switch, was not improper opinion testimony. None of these cases come close to holding that the testimony of a witness regarding the legality of his

own actions is admissible to show that those actions were legal, as Dow seeks to do here.

Moreover, Dow's suggestion that it needs to introduce this evidence to show that parallel price increase announcements, competitor contacts, and competitive intelligence are not in themselves "indicative of collusion" or a violation of the antitrust laws is also incorrect. As Plaintiffs explained, Plaintiffs do not claim that such evidence viewed in isolation proves a conspiracy. Dow therefore cannot justify the introduction of evidence to refute a position that Plaintiffs do not take. Moreover, this is a legal proposition, not a factual one, and therefore Dow cannot introduce evidence to "prove" it. The Court will instruct the jury on the law, and will explain what is and is not a violation of the antitrust laws.[13]

In sum, evidence regarding Plaintiffs' conduct in downstream markets is not relevant to what Dow itself has identified as the issue in this case: "whether Dow conspired with certain other urethanes manufacturers to fix the price of TDI, MDI, and/or polyether polyols in the United States from 1994 to 2003." Therefore, the evidence should be excluded.

## III.   EVIDENCE REGARDING PLAINTIFFS' CONDUCT IN DOWNSTREAM MARKETS SHOULD BE EXCLUDED UNDER FED. R. EVID. 403

To determine whether evidence should be excluded under Federal Rule of Evidence 403, the district court must weigh the probative value of the evidence against the risk of unfair prejudice, confusion of issues, and waste of trial time. In their original Brief, Plaintiffs explained

---

[13]       For example, in the class case, Judge Lungstrum instructed the jury that "mere similarity of conduct" or meeting together to discuss "common aims and interests" does not, by itself, establish the existence of a conspiracy. Jury Instructions, Instruction No. 14, Feb. 20, 2013, D. Kan. Dkt. 2797. He further instructed the jury that the fact that manufacturers engaged in "identical or similar business practices" does not alone establish an agreement to fix prices "because such practices may be consistent with lawful, ordinary, and proper competitive behavior in a free and open market." *Id.* Instruction No. 15. The same instruction goes on at some length to explain that "parallel conduct," including identical prices, does not violate antitrust law if the product of independent behavior. *Id.* Trade association meetings, which only present the opportunity to conspire, were the subject of a separate instruction. Instruction No. 16. In short, all of the points Dow claims it needs downstream evidence to prove are matters of law that the Court will address.

in detail why Dow's analogy between Plaintiffs' conduct in the foam market and Dow's conduct in the urethanes market is not valid.  Dow's Opposition does not substantively respond to these arguments, but dismissively asserts that they merely go to the "weight" to be accorded the evidence.  Assuming that this was true (and as explained above, it is not), assessing the probative weight of the evidence is crucial to the Rule 403 balancing test — and Plaintiffs have demonstrated, without meaningful rebuttal, that the probative weight to be accorded the evidence of Plaintiffs' downstream conduct is slight, if it has any weight at all.

On the other side of the scale, the risk of unfair prejudice is very great.  As Plaintiffs pointed out, the evidence regarding Plaintiffs' conduct will tempt the jury to decide the case on an improper basis, such as a feeling that Plaintiffs are being hypocritical for attempting to hold Dow liable for conduct supposedly similar to the conduct in which they themselves engaged.  In its Opposition, Dow does not dispute that the jury may very well decide the case on such a basis, but argues that it would be proper for the jury to do so, because it is appropriate for a jury to assess a party's "inconsistent" positions, and therefore any prejudice to Plaintiffs would not be unfair.  Opp'n at 9.  This is incorrect.  Dow cites no authority for its proposition that evidence suggesting that an antitrust plaintiff is applying a "double" or "inconsistent" standard to its own conduct and that of the defendant is somehow relevant to whether the defendant violated the antitrust laws.  Indeed, the argument Dow seeks to make is the very type of defense based on the "relative moral worth of the parties" that is forbidden by *Perma Life Mufflers* and its progeny.[14]

In short, there is a high risk that admission of the evidence at issue could "unfairly skew the jury's findings" or "unfairly tilt[] the balance of sympathies in favor of defendants."

---

[14]     Dow is being disingenuous at best when it suggests that the jury instructions on the elements of the parties' claims and defenses would prevent the jury from determining the case based on the relative moral worth of the parties, Opp'n at 9, given that this is exactly the basis on which Dow seeks to have the jury determine the case through its "double standard" argument.

*Tengood v. City of Philadelphia*, 529 F. App'x 204, 213–14 (3d Cir. 2013); *Reppert v. Marino*, 259 Fed. App'x 481, 489 (3d Cir. 2007).  Because this risk significantly outweighs any probative weight the evidence may have, it should be excluded under Rule 403.

<u>**CONCLUSION**</u>

For the foregoing reasons, and those set forth in Plaintiffs' original Brief, Plaintiffs respectfully request that the Court grant their motion *in limine* and exclude from the trial in this matter any and all evidence or argument related to Plaintiffs' conduct in downstream markets.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
*Attorneys for Plaintiffs*

By:___/s/ James E. Cecchi_____
      JAMES E. CECCHI

DATED:  October 15, 2015

Jeffrey M. Johnson
Richard J. Leveridge
Elaine Metlin
James R. Martin
Adam Proujansky
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
Tel: (202) 420-2200
Fax: (202) 420-2201
*Attorneys for Plaintiffs*