UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE URETHANE ANTITRUST LITIGATION | Master Docket No. 08-5169 (WJM)(MF) |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION *IN LIMINE* TO LIMIT THE TESTIMONY OF PROFESSOR KENNETH G. ELZINGA**

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ  07068-1739
(973) 994-1700

Jeffrey M. Johnson
Richard J. Leveridge
Elaine Metlin
James R. Martin
Adam Proujansky
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
(202) 420-2200

*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................1

LEGAL ARGUMENT ............................................................................................................2

I.      DOW BEARS THE BURDEN OF ESTABLISHING ADMISSIBILITY ..........................2

II.     THE PROFFERED TESTIMONY SHOULD BE PRECLUDED BECAUSE DOW FAILED TO ESTABLISH THE RELIABILITY OF THE METHOD PROF. ELZINGA SAID HE APPLIED ..................................................................2

        A.    Prof. Elzinga's Proffered Testimony Is Non-Scientific Ipse Dixit .........................2

        B.    Prof. Elzinga Did Not Reliably Applied His Stated Method ..................................3

        C.    Prof. Elzinga Consciously Disregarded Inconvenient Facts ...................................4

        D.    Prof. Elzinga's Proffered Testimony Would Confuse, Not Help, the Jury..............5

III.    DOW'S DESPERATE ATTEMPT TO RECAST PROF. ELZINGA'S TESTIMONY AS A COMPLETELY DIFFERENT ANALYSIS IS UNAVAILING ..................................................................................................5

        A.    Prof. Elzinga Never Purported to Apply an SCP Analysis .....................................5

        B.    Prof. Elzinga Did Not Perform a Reliable SCP Analysis ........................................7

IV.    THE COURT COULD APPLY FED. R. EVID. 403 TO PRECLUDE THE TESTIMONY ......................................................................................................10

V.     PROF. ELZINGA'S BELATED OPINIONS SHOULD BE PRECLUDED ....................11

CONCLUSION ....................................................................................................................12

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                                                             **PAGE(S)**

*Ayers v. Robinson*, 887 F. Supp. 1049 (N.D. Ill. 1995) ...................................................................9

*Braun v. Lorillard Inc.*, 84 F.3d 230 (7th Cir. 1996) ......................................................................2

*Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311 (9th Cir. 1995) ....................................1, 3, 5

*Furlan v. Schindler Elevator Corp.*, 864 F. Supp. 2d 291 (E.D. Pa. 2012) ....................................3

*In re Human Tissues Prods. Liab. Litig.*, 582 F. Supp. 2d 644, 655 (D.N.J. 2008) ........................2

*In re Processed Egg Prods. Antitrust Litig.*, 81 F. Supp. 3d 412 (E.D. Pa. 2015) ..........................9

*In re Universal Serv. Fund Tel. Billing Practices Litig.*, 2008 WL 4382141
    (D. Kan. Sept. 26, 2008) ............................................................................................................9

*In re Urethane Antitrust Litig.*, 2012 WL 6681783 (D. Kan. Dec. 21, 2012) ..........................4, 8, 9

*Kleen Prods., LLC v. Int'l Paper*, 306 F.R.D. 585 (N.D. Ill. 2015) ...............................................10

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ....................................................................3

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir. 1987) ...............................................................3

*Warner Chilcott Labs. Ir., Ltd. v Impax Labs., Inc.*, 2012 WL 1551709 (D.N.J.
    Apr. 30, 2012) ............................................................................................................................2

*ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012) .....................................................10

**RULES**

Fed. R. Civ. P. 26..............................................................................................................................2

Fed. R. Evid. 104 ............................................................................................................................10

Fed. R. Evid. 403 ............................................................................................................................10

Fed. R. Evid. 702 ...................................................................................................................1, 2, 3, 7

**OTHER AUTHORITIES**

Am. Bar Assoc., Antitrust Sec., *Proving Antitrust Damages, Legal and Economic
    Issues* (2d ed. 2010) ...................................................................................................................9

Dennis W. Carlton & Jeffrey M. Perloff, *Modern Industrial Organization* (4th ed.
    2005) ..................................................................................................................................6, 7, 8

Federal Judicial Center, *Reference Manual on Scientific Evidence* (2d ed. 2000) .......................... 9

*The Structure of American Industry* (Walter Adams & James Broke eds., 2013) .......................... 6

**INTRODUCTION**

Dow's Opposition to Plaintiffs' Motion *In Limine* to Preclude the Testimony of Professor Kenneth G. Elzinga ("Opp'n") concedes that Prof. Elzinga articulated his methodology in three unsupported sentences of his expert report. Opp'n at 5. There, Prof. Elzinga wrote, ▌

▌

▌ *Id.* Dow did not even *attempt* to argue that this statement, created for litigation, was supported by anything other than Prof. Elzinga's insufficient say so.

Instead, in what can only be interpreted as an implicit admission that Prof. Elzinga's stated methodology is inadmissible *ipse dixit*, Dow argues that Prof. Elzinga *really* applied a completely different methodology known as a "structure-conduct-performance" ("SCP") analysis. In two expert reports and three days of deposition, however, Prof. Elzinga never once claimed to employ that methodology, or even mention the "scholarly literature" that Dow says he drew upon. Opp'n at 1. That was no oversight. Prof. Elzinga testified ▌

▌ Dep. Kenneth G. Elzinga vol. 1, 268:20-271:16 (May 3, 2012) (attached as Ex. A). ▌

While Prof. Elzinga's testimony suffers from many other flaws that should result in its preclusion (as discussed more fully below), this Court need not concern itself with all of those defects because Dow did not come close to meeting its threshold burden of showing that the proffered opinion testimony would be the product of a reliable method. Fed. R. Evid. 702(c).

Dow's emphasis on Prof. Elzinga's credentials, Opp'n at 3-4, only underscores the danger inherent in his testimony. *Daubert* exists to prevent "reputable scientists" from testifying, as here, "for a fee to propositions that they have not arrived at through the methods that they use when they are doing their regular professional work . . . to give an opinion helpful

to one side in a lawsuit." *Warner Chilcott Labs. Ir., Ltd. v Impax Labs., Inc.*, 2012 WL 1551709, at \*26 (D.N.J. Apr. 30, 2012) (Martini, J.) (citing *Braun v. Lorillard Inc.*, 84 F.3d 230, 235 (7th Cir. 1996)).

## **LEGAL ARGUMENT**

### I. DOW BEARS THE BURDEN OF ESTABLISHING ADMISSIBILITY

On several occasions in its Opposition Brief, Dow improperly seeks to shift the burden of admissibility to Plaintiffs. It argues, for example, that Plaintiffs "offer no expert opinion" criticizing Prof. Elzinga's unsupported methodology. Opp'n at 2, 8, 17. Dow, however, bears the burden of establishing by a preponderance of the evidence that the proffered testimony meets every element of Fed. R. Evid. 702. *In re Human Tissues Prods. Liab. Litig.*, 582 F. Supp. 2d 644, 655 (D.N.J. 2008) (Martini, J.), *cited in* Br. in Support of Pls.' Mot. *in Limine* to Limit the Testimony of Prof. Kenneth G. Elzinga at 7 (Aug. 31, 2015) (D.N.J. Dkt. 102) ("Pls.' Br.").

### II. THE PROFFERED TESTIMONY SHOULD BE PRECLUDED BECAUSE DOW FAILED TO ESTABLISH THE RELIABILITY OF THE METHOD PROF. ELZINGA SAID HE APPLIED

#### A. Prof. Elzinga's Proffered Testimony Is Non-Scientific *Ipse Dixit*

The only methodology the Court should consider in deciding whether Dow met its burden of establishing admissibility is the one Prof. Elzinga said he used. Fed. R. Civ. P. 26(a)(2)(B)(i) (requiring expert report to provide a "complete statement" of a proffered expert's opinions and the "basis and reasons for them").

Dow's Opposition does not provide any objective source to show that any antitrust economist has endorsed Prof. Elzinga's unsupported three-sentence methodology or that it was subjected to peer review or some other non-judicial use. Pls.' Br at 7-8 (citing cases); *see also Human Tissue Prods.*, 582 F. Supp. 2d at 665-67, 670, 673-74, 676-78 (excluding proffered opinion testimony that was unsupported by peer-reviewed literature). Dow argues only that Prof.

2

Elzinga should be excused from identifying "scholarly material" because he is "one of the leading lights of the antitrust academy." Opp'n at 12, n.9.

As Plaintiffs demonstrated in their initial brief, that is plainly wrong. Pls.' Br. at 7-10 (citing numerous cases). "If *Daubert* and its progeny require anything, it is that [the proponent] come forward with proof of a valid methodology based on more than just the *ipse dixit* of the expert." *Furlan v. Schindler Elevator Corp.*, 864 F. Supp. 2d 291, 298 (E.D. Pa. 2012); *see also Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987) ("Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible."). Dow failed to meet its threshold burden of establishing that Prof. Elzinga engaged in the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field" of antitrust economics. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

### B. Prof. Elzinga Did Not Reliably Applied His Stated Method

Even if one assumed hypothetically that the unsupported three-sentence methodology Prof. Elzinga said he used was reliable, Dow still failed to show he reliably applied it. Nowhere does Dow claim that Prof. Elzinga systematically searched for the ▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ that forms the core of the supposed methodology. *See* Pls.' Br. at 10-13 (citing Econ. Expert Rep. of Prof. Kenneth G. Elzinga Univ. of Virginia, Mar. 23, 2012, at 29 ("Initial Elzinga Rep.")). Dow seeks to excuse this failure by arguing that Prof. Elzinga was only looking to disprove the "hypothesis of a cartel." Opp'n at 2, 15-16. But that argument has nothing to do with what Prof. Elzinga said he needed to look for and find. The question is whether Prof. Elzinga reliably applied *his* stated methodology to the facts of the case. *Id.*; Fed. R. Evid. 702(b), (d). He did not.

3

### C. Prof. Elzinga Consciously Disregarded Inconvenient Facts

"Gumshoe evidence" is a phrase Prof. Elzinga adopted from his background as a writer of detective fiction to describe some undefined category of facts that support the inference of collusion. Initial Elzinga Rep. at 9; Opp'n at 1, 5, 15. Prof. Elzinga did not provide an economic definition for his fiction-based phrase, nor did he provide any method to distinguish "gumshoe" evidence from important facts that antitrust economists routinely consider when studying an industry. Similarly, Dow's Opposition cites no academic authority to support the proposition that antitrust economists in the field would completely discount evidence of collusion. Again, Dow relies solely on Prof. Elzinga's *ipse dixit*. That is not enough to get past the gatekeeper.

In fact, antitrust economists routinely consider what Prof. Elzinga calls "gumshoe" evidence—not to parrot facts but to evaluate them in the context of some established economic methodology. *See* Pls.'s Br. at 9 (identifying examples of accepted methodologies and the facts antitrust economists evaluate to implement those methodologies). For example, Dr. Solow made no arbitrary distinction between "gumshoe" and "economic" evidence in conducting his analysis in the MDL case. Expressly applying an SCP methodology in a systematic, reliable way, Dr. Solow permissibly opined that particular events, "assuming they occurred," were consistent with a conspiracy. *In re Urethane Antitrust Litig.*, 2012 WL 6681783, at *3 (D. Kan. Dec. 21, 2012). These included the same facts Prof. Elzinga told his staff he did not want to see. Pls.' Br. at 11.

These events also contain the type of facts for which Prof. Elzinga apparently searches when he is hired by the other side in a price-fixing case. *See, e.g.*, *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, Defs.' Mot. to Exclude Certain Expert Testimony of Prof. Kenneth Elzinga 2-4, 7, 9, Case No. 3:07-cv-05944-SC (Dec. 5, 2014) (Doc. No. 3173-3) (redacted) (Ex. B). That is precisely why courts view opinions generated for litigation as inherently suspect

4

and demand proof that the expert applied an accepted *scientific* methodology. *See* Pls.' Br. at 7-8 (citing numerous cases).

### D. Prof. Elzinga's Proffered Testimony Would Confuse, Not Help, the Jury

Dow also fails to explain how the jury could possibly benefit from Prof. Elzinga's proffered testimony that "there was no cartel" based on his unreliable application of his unsupported methodology. Pls.' Br. at 13-19. Dow argues only in the most conclusory way that the testimony would "assist the jury in evaluating whether the economic evidence is consistent or inconsistent with Plaintiffs' cartel hypotheses—not whether Plaintiffs have met their ultimate legal burden . . . ." Opp'n at 19. How? Dow cannot say. The jury must consider the evidence "as a whole" to determine if the inference of conspiracy is more likely than not. *See* Pls.' Br. at 14. The supposed fact that an antitrust economist would require more proof, based on a review of less evidence, is at best irrelevant and at worst unfairly prejudicial.

Dow's sole source of authority for relevance is a magistrate judge's opinion issued in a case from the Eastern District of Tennessee that no other court has ever cited. Opp'n at 18-19. Dow ignores all of the legal authorities that Plaintiffs cited which make clear that testimony based on standards that conflict with the law "would only serve to confuse the jury." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 (9th Cir. 1995), *cited in* Pls.' Br. at 13.

### III. DOW'S DESPERATE ATTEMPT TO RECAST PROF. ELZINGA'S TESTIMONY AS A COMPLETELY DIFFERENT ANALYSIS IS UNAVAILING

#### A. Prof. Elzinga Never Purported to Apply an SCP Analysis

The Court should summarily reject Dow's assertion that Prof. Elzinga actually employed an SCP analysis. Not only has Dow admitted that Prof. Elzinga sought to apply a different method, but Prof. Elzinga never once claimed to use the SCP method: Not in the 128 pages of his first expert report directed at Plaintiffs; not in the 33 pages of his supplemental report he

5

wrote after Plaintiffs first sought exclusion of his unsupported methodology; not in any of the three days he sat for deposition.  Never.

That was no mere oversight.  Prof. Elzinga testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[1]  Elzinga Dep. vol. 1, 268:20-271:16 (Ex. A).  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *Id.* at 268:24-272:13.

In a transparent effort to create the impression that Prof. Elzinga sought to employ the SCP method, Dow wrote that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp'n at 9-10.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮,[2] reveals the absurdity of Dow's attempted revisionism.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Initial Elzinga Rep. at 134-35.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Elzinga Dep. vol. 1, 269:5-16 (Ex. A).  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1]  *The Structure of American Industry* (Walter Adams & James Broke eds., 2013).

[2]  Dennis W. Carlton & Jeffrey M. Perloff, *Modern Industrial Organization* (4th ed. 2005) (relevant excerpts attached as Ex. C).

6

In a footnote, Dow criticizes Plaintiffs ███████████████████████

████████████████████████████████████████████████████████████

██████████████████████ Opp'n at 10, n.7. This is wishful thinking: it is Dow's burden, not Plaintiffs', to establish the admissibility of the proffered testimony. Fed. R. Evid. 702.

### B. Prof. Elzinga Did Not Perform a Reliable SCP Analysis

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ Opp'n at 6-7. █████████████

████████████████████████████████████████████████████████████

████████████████████████████████ See Elzinga Dep. vol. 1, 268:20-271:16 (Ex. A).

For example, the textbook that Dow incorrectly says Prof. Elzinga "cited," *Modern Industrial Organization*, devotes six chapters to the theories and empirical evidence used by antitrust economists to evaluate market *structure*. Carlton & Perloff, *supra*, at 7-9. Dow claims that ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ They discuss Prof. Elzinga's view of cartel theory and review price announcements.

With regard to *conduct*, the textbook devotes four chapters to a discussion of game theory, transaction cost theory, and market strategies relating to price, output levels, and product differentiation. Carlton & Perloff, *supra*, at 9. Dow argues that ████████████████

███████████████████████████████████████ Opp'n at 6. ███████████

████████████████████████████████████████████████████████████

████████ Initial Elzinga Rep. at 123-38. █████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.* ████████

7

███████████████████████████████████████

███████████████████████████████████████

█████████ *See, e.g.*, *In re Urethane Antitrust Litig.*, 2012 WL 6681783, at *3 (D. Kan. Dec. 21, 2012) (identifying conduct evidence considered by Dr. Solow in his SCP analysis).

Finally, with regard to market *performance*, the textbook identifies two different measures that directly or indirectly reflect the profits or the relationship of price to costs commonly used to gauge how closely the industry performs compared to a competitive benchmark. Carlton & Perloff, *supra*, at 246-47. The textbook explains that properly measuring an industry's performance is critical and requires some evaluation of an *empirical* relationship between measures of performance and market structure. *Id.* at 281-82. For example,

███████████████████████████████████████

Solow Rep. ¶¶ 51-54 (relevant excerpts attached as Ex. D).

███████████████████████████████████████

███████████████████████████████████████

█████████████████ Opp'n at 7. ████████████████████

███████████████████████████████████████

████████████████████████████████████ Elzinga Dep. vol. 2, 382:1-386:9, 386:24-389:5 (May 4, 2012) (Ex. A). Dow makes no effort to show that such a shallow analysis would meet the rigorous standards required to reliably apply the SCP methodology. In fact, by his own standards, Prof. Elzinga at least would have had to examine innovation, R&D, expenditures, and new product development, which he did not do. *See* Elzinga Dep. vol. 1, 268:20-272:13 (Ex. A) (explaining Prof. Solow's study was not an SCP study because it failed to examine these factors).

8

Dow argues instead, without any attribution, that "there is no blanket requirement for a quantitative or regression analysis in similar cases." Opp'n at 14. But Prof. Elzinga had to do *something* that required economic expertise. The jury can eyeball charts, and Dow's counsel can argue the inferences to draw from them, just as well as a professor of economics. Pls.' Br. at 16; *Ayers v. Robinson*, 887 F. Supp. 1049, 1060 (N.D. Ill. 1995) ("Eyeballing may have the advantage of ease, but it surely lacks scientific reliability in the sense of producing consistent results."). Prof. Elzinga did not do anything to empirically account for the cost and demand factors that influence price which would offer the jury information outside of its common experience to evaluate market performance.

Dow also argues that "graphs are useful for revealing key characteristics" of data, as if anyone with a Microsoft Excel license may testify as an expert. Opp'n at 14. Dow plucked its quotation from the Federal Judicial Center's *Reference Manual on Scientific Evidence* (2d ed. 2000) chapter on statistics, which explains at length the technical requirements of a properly performed statistical study. *Id.* at 83-178, http://tinyurl.com/2xqc74 (last visited Oct. 13, 2015).

Indeed, none of the "similar cases" that Dow cites actually further its cause. Opp'n at 14. In the MDL case, Prof. Solow specifically relied on the class plaintiffs' damages expert's econometric models to support the performance aspect of his analysis. *In re Urethane Antitrust Litig.*, 2012 WL 6681783, at *3-4 (Dec. 21, 2012). In *In re Processed Egg Prods. Antitrust Litig.*, the expert tested his economic evaluation of the facts with "econometric and statistical evidence." 81 F. Supp. 3d 412, 425 (E.D. Pa. 2015). Finally, in *In re Universal Serv. Fund Tel. Billing Practices Litig.*, the proponent submitted affidavits of four experts specifically vouching for the reliability of the proffered testimony. 2008 WL 4382141, at *2, *6 (D. Kan. Sept. 26, 2008). *See also* Am. Bar Assoc., Antitrust Sec., *Proving Antitrust Damages, Legal and*

*Economic Issues* 125 (2d ed. 2010) ("Econometric and regression analyses are particularly useful in separating the impact of an alleged anticompetitive act on market outcomes (such as pricing) from the impact of other market outcomes."); Dep. Keith R. Ugone vol. 2, 520:12-15, 521:20-23, 522:9-14, 522:25-523:17 (Apr. 17, 2012) (Ex. E) ███████████████████████████ ███████████████████████████████████████████ *Kleen Prods., LLC v. Int'l Paper*, 306 F.R.D. 585, 597 (N.D. Ill. 2015) (liability expert relied on analysis of damages expert (who conducted regression analysis) to support performance aspect of his SCP analysis).[3]

## IV. THE COURT COULD APPLY FED. R. EVID. 403 TO PRECLUDE THE TESTIMONY

The Court is uniquely well situated to act as a gatekeeper because it knows that a jury has already rejected Prof. Elzinga's opinion once and Prof. Elzinga admitted before the jury's decision that the verdict would be "inconsistent with [his] finding" that no cartel existed. Pls.' Br. at 5-6; Tr. Trial Proc. Before Hon. John W. Lungstrum, Feb. 13, 2013, at 4568:25-4569:13 (Ex. F). ████████████████████████████████████████████████ ████████████████████████████████████████ Initial Elzinga Rep. at 27-28. A unanimous jury finding that "Dow participated in a conspiracy to fix, raise, or stabilize prices for urethane chemicals" must at least be deemed as powerful as direct evidence in this context.

Whether or not the verdict is admissible at trial, the Court may consider it in deciding whether Prof. Elzinga should be permitted to testify. Fed. R. Evid. 104. It is more than sufficient to show that the asserted probative value is, under Prof. Elzinga's own definition, of

---

[3] Dow's reliance on *ZF Meritor, LLC v. Eaton Corp.* is misplaced because that was a rule-of-reason case in which the parties did not dispute the existence of agreements (*de facto* exclusive dealing contracts). 696 F.3d 254 (3d Cir. 2012). The economist evaluated the entire factual record to determine whether the agreements unreasonably restrained competition. *Id.* at 286, n.18, 289-90. The methodology and purpose of the opinion testimony was different.

minimal value. By contrast, as shown above and in Plaintiffs' initial motion, the danger of unfair prejudice, confusion, and waste of time substantially outweigh that asserted probative value.

## V. PROF. ELZINGA'S BELATED OPINIONS SHOULD BE PRECLUDED

The MDL Court allowed Dow's experts to submit supplemental reports to address "new" opinions expressed by Dr. Marx in her Rule 26 Disclosure. *See* Mem. and Order, May 16, 2014, at 2, 4 (Doc. No. 3193). Dow submitted supplemental reports that vastly exceeded the scope of what the MDL Court allowed. *Id.* at 4-13 (striking substantial portions of Dr. Ugone's supplemental report). Plaintiffs demonstrated in their initial motion that new opinions offered by

Prof. Elzinga in his supplemental report should be excluded because he was not initially proffered to testify on causation or Dow's profitability. Indeed, those opinions went beyond the boundaries in at least two respects. In neither case did Dow claim that Prof. Elzinga was responding to "new" opinions offered by Dr. Marx.

First, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇ Opp'n at 20. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇

Second, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇ Elzinga Supp. Rep. 33-34. The MDL Court already ruled that Dr. Marx did not "open the door to new opinions" by explaining why she agreed that the alleged conspiracy was the most likely explanation for the difference between actual and but-for prices. Mem. and Order, May 16, 2014, at 5 (Doc. No. 3193). Not only did Dow proffer Prof. Elzinga's comments too late, but Prof. Elzinga stated from the outset that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

███████████████████████████████████████

███████████████████ Elzinga Dep. vol. 1, 179:3-181:24 (Ex. A).

## **CONCLUSION**

The Court should grant Plaintiffs' Motion *In Limine*.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
*Attorneys for Plaintiffs*

By:   /s/ James E. Cecchi
        JAMES E. CECCHI

DATED:  October 15, 2015

Jeffrey M. Johnson
Richard J. Leveridge
Elaine Metlin
James R. Martin
Adam Proujansky
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
Tel: (202) 420-2200
Fax: (202) 420-2201

*Attorneys for Plaintiffs*