UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE URETHANE ANTITRUST LITIGATION | Master Docket No. 08-5169 (WJM)(MF) |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION
*IN LIMINE* TO PRECLUDE REFERENCE TO HOW PLAINTIFFS
BECAME INVOLVED IN THE CASE, PLAINTIFFS' KNOWLEDGE OF THE
LITIGATION OR TO THE CASE BEING LAWYER-DRIVEN**

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ  07068-1739
(973) 994-1700

Jeffrey M. Johnson
Richard J. Leveridge
Elaine Metlin
James R. Martin
Adam Proujansky
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW.
Washington, DC 20006
(202) 420-2200

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

|  | PAGE |
|---|---|
| TABLE OF AUTHORITIES | ii |
| LEGAL ARGUMENT | 1 |
| CONCLUSION | 6 |

# **TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

*Am. Pipe Constr. Co. v. Utah*, 414 U.S. 538 (1974)......................................................................3

*Galen v. Ave. of the Stars Assocs., LLC*, 2011 U.S. Dist. LEXIS 28305 (C.D. Cal.
 March 1, 2011)......................................................................................................................6

*Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250 (S.D.N.Y. 2015) ................................5

*In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 228 (E.D. Pa. 2014) ......................................2

*Lewis v. Ethicon, Inc.*, 2014 U.S. Dist. LEXIS 14971 (S.D. W. Va. Feb. 5, 2014).........................6

*N. Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 85 F.R.D.
 249 (M.D.N.C. 1979)............................................................................................................5

*Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464 (1962)............................................................2

*Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753 (7th Cir. 2013)..........................................................5

*United States v. Xiong*, 262 F.3d 672 (7th Cir.2001)......................................................................5

*Wink v. Ott*, 2012 U.S. Dist. LEXIS 76261 (M.D. Pa. June 1, 2012).............................................6

**RULES**

Fed. R. Civ. P. 23.............................................................................................................................1

Fed. R. Evid. 402 .............................................................................................................................3

Fed. R. Evid. 403 .............................................................................................................................3

## **LEGAL ARGUMENT**

Plaintiffs respectfully submit this Reply Brief in support of their motion *in limine* to preclude reference to how Plaintiffs became involved in the case, Plaintiffs' knowledge of the litigation, or to the case being lawyer-driven.

Dow's Opposition is largely devoted to arguing about an issue that is not in dispute. Both parties agree – and Plaintiffs will stipulate – "that Plaintiffs were unaware of any wrongdoing by Dow during the alleged conspiracy." Dow's Br. in Opp'n 2 (Sept. 30, 2015) (D.N.J. Dkt. 141) ("Opp'n").[1] Plaintiffs' complaints alleged this to be true. *See* 2nd Am. Compl. ¶ 108 (Sept. 18, 2009) (D. Kan. Dkt. 1123). Indeed, it is unsurprising that Plaintiffs had no contemporaneous knowledge of the wrongdoing, given that Dow and its co-conspirators took affirmative measures to conceal it and avoid its detection.

It was only after Plaintiffs received notice in 2006 of the Bayer settlement reached in the *Urethanes* class action,[2] that Plaintiffs learned for the first time the details of the urethanes conspiracy from discussions with counsel regarding whether to opt out of the class in which, by operation of law, they had become members.

There is nothing unusual or sinister in this sequence of events; to the contrary, it is exactly what is contemplated by Fed. R. Civ. P. 23. Yet Dow continues to insist these facts undermine Plaintiffs' credibility, though Dow never explains how. Dow's motion should be seen for what it is: yet another effort to distract the jury from what Dow has conceded is "[t]he

---

[1] Plaintiffs do not oppose questions that examine Plaintiffs' "information about Dow doing anything wrong in connection with the sale of [urethane] products," knowledge "of an agreement among the manufacturers of the urethanes products to fix prices to customers," or "knowledge about any price increase announcement" being a result of "collusive activity among the Defendants. Opp'n at 3 n.1 (citing the depositions of several of Plaintiffs' employees).

[2] *See* Pls.' Mot. for Prelim. Approval of Settlement with Bayer, Conditional Cert. of a Settlement Class, & Auth. of Dissemination of Notice (Feb. 2, 2006) (D. Kan. Dkt. 203).

issue in this case" – "whether Dow conspired with certain other urethanes manufacturers to fix the price of TDI, MDI, and/or polyether polyols in the United States from 1994 to 2003," Dow's Br. in Support of Mot. *In Limine* to Preclude References to Other Antitrust Cases, at 1 (Sept. 3, 2015) (D.N.J. Dkt. 115) – and improperly focus on the conduct of Plaintiffs and their counsel. Dow's smear tactics should be rejected.[3]

In implying that there is something nefarious about how Plaintiffs learned about the urethanes conspiracy and became involved in the *Urethanes* litigation, Dow ignores the well-established principle that conspiracies operate in the dark, and that "the proof is largely in the hands of the alleged conspirators," *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962). The fact that counsel, rather than purchasers, may come to know the facts of the conspiracy is similarly unremarkable. As the Eastern District of Pennsylvania recently explained:

> [I]n an antitrust case, the facts are largely gathered by counsel based on interviewing their clients, reviewing documents produced by the opposing party, conducting investigations, and consulting experts in the field and economic data. Thus, in an antitrust case, counsel are more appropriately in possession of facts than the Plaintiffs themselves.

*In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 228, 231 (E.D. Pa. 2014) (ordering counsel to provide pretrial statements rather than interrogatory answers).

Judge Lungstrum's pithy ruling in the class action trial on this very issue, though not binding on this Court, is highly persuasive, and Dow has provided no reason that this Court

---

[3] Dow disingenuously states that the exchanges outlined in its Opposition are meant to establish "that Plaintiffs were unaware of any wrongdoing by Dow during the alleged conspiracy." Opp'n at 2. As discussed below, Dow has sanitized the excerpts to make it appear that this is all it is seeking to admit.

2

should not follow it.[4]  As noted in Plaintiffs' initial brief, Dow did not even oppose the portion of the class motion that sought to preclude reference to the case being "lawyer-driven."  In other respects, Dow made the same arguments that they make here – that the information should be admitted because it is background, that it goes to the witnesses' credibility, that it can be used for impeachment, and that there should be no categorical exclusion – and Judge Lungstrum rejected them all.  This Court should follow Judge Lungstrum's ruling.

Dow's efforts to argue that Plaintiffs' lack of personal knowledge regarding Dow's wrongdoing in this case is somehow more relevant than that of plaintiffs in the class action are unpersuasive.  There was no reason for Plaintiffs to know of the conspiracy before they received notice of the class action settlement, nor does Plaintiffs' lack of contemporaneous knowledge of Dow's wrongdoing in any way undermine Dow's antitrust liability.  Plaintiffs here were all absent members of the *Urethanes* class until they opted out after the Bayer settlement in 2006.  As absent class members, they would have no reason to know about the details of the conspiracy, or even the existence of the *Urethanes* class litigation, before that time.  *See, e.g., Am. Pipe Constr. Co. v. Utah*, 414 U.S. 538, 551-52 (1974).[5]  Thus, the manner in which Plaintiffs learned about the urethanes conspiracy has no relevance to any legitimate issue in this case.

The deposition transcript of Stanley Pauley of the Carpenter Company plainly demonstrates the irrelevant, prejudicial exchanges that this Court should preclude on a

---

[4]    Mot. *In Limine* Conf. Before Hon. John W. Lungstrum Tr. 55, Jan. 9, 2013 (Ex. C to Pls.' Br. in Support of Mot. *In Limine* to Preclude Refs. to How Pls. Became Involved in the Case, Pls.' Knowledge of the Litigation or the Case Being Lawyer-Driven (Aug. 31, 2015) (D.N.J. Dkt. 104) ("Pls.' Br.")) (granting class plaintiffs' motion under Fed. R. Evid. 402 and 403).

[5]    As *American Pipe* explains, "Not until the existence and limits of the class have been established and notice of membership has been sent does a class member have any duty to take note of the suit or to exercise any responsibility with respect to it in order to profit from the eventual outcome of the case."  414 U.S. at 552.

categorical basis. After a few questions establishing Mr. Pauley's lack of knowledge, Dow asks ever more argumentative questions about Plaintiffs' counsel:



Statements masquerading as questions aimed at a plaintiff "relying on its counsel" and just doing "what they said" are not at all relevant to whether Dow violated the antitrust laws, and are

---

[6]   Opp'n at 2-3; S. Pauley Dep. vol. 1, 60:11–62:11 (Oct. 21, 2013) (Ex. A to Opp'n).

unfairly prejudicial.[7] *See Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250 (S.D.N.Y. 2015) (granting motion in limine to preclude, *inter alia*, remarks about lawyer-driven lawsuits as being "categorically irrelevant" statements that "can serve only to confuse, inflame, and introduce unfair prejudice"); *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 761 (7th Cir. 2013) (stating that "argument aimed at a party's counsel is improper" because it "direct[s] the jury's focus away from the elements of the case to an extraneous and inflammatory consideration," and remanding for new trial); *United States v. Xiong*, 262 F.3d 672, 675 (7th Cir.2001) (noting attacks on counsel "can prejudice the [opposing party] by directing the jury's attention away from the legal issues").[8]

Dow also contends that Plaintiffs' motivations for bringing suit are relevant to credibility and impeachment,[9] and that Plaintiffs would not be unfairly prejudiced by introduction of any of the evidence Dow has designated.[10] Dow is mistaken on both counts. Plaintiffs' motives for bringing this lawsuit are irrelevant as a matter of law, and because Dow is attempting to suggest that the jury reach its decision regarding Dow's liability on an improper basis, the evidence is unfairly prejudicial. *See, e.g., N. Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 85 F.R.D. 249, 254 n.7 (M.D.N.C. 1979) ("Plaintiffs' motive in filing an antitrust action has no relevance to the existence of liability of the defendant"; informing the jury of plaintiff's motive would be unfairly prejudicial and would "pervert the Congressional purpose behind the

---

[7] *See also* Opp'n at 3 n.1 (citing R. Mehta Dep. 203:9–20 (Mar. 11, 2010) (Ex. E to Opp'n)). The sum total of the designated testimony contains far more instances of this type of inquiry than the edited portions outlined in Dow's Opposition. *See* Pls.' Br. at 2-3, n. 6.

[8] As noted in Plaintiffs' initial Brief, such arguments also cut dangerously close to infringing the attorney client privilege. Pls.' Br at 4, n.8.

[9] Opp'n at 5. As before, Dow does not explain how evidence of Plaintiffs' motivations for filing suit or interactions with their attorneys could be used to impeach them.

[10] Opp'n at 7-8.

5


antitrust laws."). Dow's cases on this point are readily distinguishable. *Wink v. Ott*, 2012 U.S. Dist. LEXIS 76261 (M.D. Pa. June 1, 2012), was an employment case where the circumstances surrounding the plaintiff's termination were directly at issue; *Galen v. Ave. of the Stars Assocs., LLC*, 2011 U.S. Dist. LEXIS 28305 (C.D. Cal. March 1, 2011), involved rescission of an agreement where the plaintiff's motive again was directly at issue; and *Lewis v. Ethicon, Inc.*, 2014 U.S. Dist. LEXIS 14971 (S.D. W. Va. Feb. 5, 2014), as Dow notes, granted a motion to preclude reference to attorney-driven suits.[11]

### CONCLUSION

For the foregoing reasons and the reasons set forth in Plaintiffs' initial brief, Dow should not be permitted to introduce evidence or argument regarding (1) the manner in which Plaintiffs became involved in this litigation; (2) Plaintiffs' knowledge of the details of the lawsuit itself; and (3) this case being "lawyer-driven" by Plaintiffs' counsel.

                        CARELLA, BYRNE, CECCHI,
                        OLSTEIN, BRODY & AGNELLO
                        *Attorneys for Plaintiffs*

                        By:   /s/ James E. Cecchi
                                JAMES E. CECCHI

DATED:  October 15, 2015

Jeffrey M. Johnson
Richard J. Leveridge
Elaine Metlin
James R. Martin
Adam Proujansky
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
(202) 420-2200

*Attorneys for Plaintiffs*

---

[11] Def's. Br. at 6 n.2. Dow strains to explain that Plaintiffs' decision to file suit in this case is analogous to *Ethicon*, where the Court allowed introduction of evidence that a television commercial prompted the plaintiff to file a lawsuit, but the analogy falls flat.