## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE URETHANE ANTITRUST LITIGATION | Master Docket No. 08-5169 (WJM)(MF) |

## REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION
## *IN LIMINE* TO LIMIT THE SCOPE OF DOW'S
## DEPOSITION COUNTER-DESIGNATIONS

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ  07068-1739
(973) 994-1700

Jeffrey M. Johnson
Richard J. Leveridge
Elaine Metlin
James R. Martin
Adam Proujansky
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
(202) 420-2200

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................. 1

LEGAL ARGUMENT ........................................................................................ 2

I.     DOW'S OVERLY BROAD DESIGNATIONS BELONG IN ITS OWN CASE-IN-CHIEF, NOT IN PLAINTIFFS' ......................................................................... 2

II.    DOW, NOT THE COURT, SHOULD HAVE NARROWED THE SCOPE OF ITS COUNTER-DESIGNATIONS ............................................................................ 6

CONCLUSION ................................................................................................. 8

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                                                    PAGE(S)

*Clark v. Allen*, 139 F.3d 888 (4th Cir. 1998) ...................................................................3

*Douglas v. Owens*, 50 F.3d 1226 (3d Cir. 1995) ............................................................3

*In Hallmark Cards, Inc. v. Monitor Clipper Partners*, LLC, No. 08-0840-CV, slip
    op. (W.D. Mo. Oct. 23, 2012)........................................................................................4

*Lyman v. St. Jude Medical S.C., Inc.*, 580 F. Supp. 2d 719 (E.D. Wis. 2008) ...............6

*NAACP v. A.A. Arms, Inc.*, 2003 WL 2003800 (E.D.N.Y. Apr. 14, 2003) ....................3

*Williams v. Giant Eagle Markets, Inc.*, 883 F.2d 1184 (3d Cir. 1989)...........................3

RULES

Fed. R. Evid. 401 ...............................................................................................................5

Fed. R. Evid. 402 ...............................................................................................................5

Fed. R. Evid. 403 ...........................................................................................................5, 8

Fed. R. Evid. 611 ......................................................................................................2, 3, 6

## INTRODUCTION

Plaintiffs respectfully submit this reply brief in support of their motion *in limine* to limit the scope of the deposition counter-designations that Dow can introduce in Plaintiffs' case-in-chief at trial.

Dow's opening gambit reveals its hand.  Rather than address the specific problems with Dow's massively overbroad counter-designations, Dow asks the Court to order the parties to "work together" to create a single videotape for each overlapping witness.  In other words, Dow wants to force Plaintiffs to play 113 hours (about 4 weeks' worth of juror time) of videotaped depositions in Plaintiffs' case-in-chief, two-thirds of which are Dow's overbroad counters.  This attempt to coopt Plaintiffs' case, and confuse and annoy the jury, all to Plaintiffs' detriment, is exactly what Dow attempted to do in the class case and which Judge Lungstrum rejected.

If Dow had any intention to "work together" with Plaintiffs, it had the opportunity to do so in the meet-and-confer process.  Instead, Dow chose not to engage in that process.[1]

Dow's alternative suggestion is to force upon the Court the burdensome exercise of individually evaluating each of the vast number of Dow's counter-designations during the course

---

[1]      As addressed in Plaintiffs motion, but ignored in Dow's opposition, on May 11, 2015 Plaintiffs sent a letter to Dow requesting that Dow narrow its counter-designations to fall within the scope of Plaintiffs' initial designations.   Ltr. from J. Johnson to D. Bernick, Meet and Confer Regarding Deposition Designations (May 11, 2015) (Ex. D to Pls.' Br. in Support of Pls.' Mot. *In Limine* to Limit the Scope of Dow's Dep. Counter-Designations (Aug. 31, 2015) (D.N.J. Dkt. 107) ("Pls.' Br.")).   Plaintiffs noted that Dow's proposed counter-designations would greatly increase the length of video testimony to be played during Plaintiffs' case.  *Id.* at 1.  Dow did not respond to Plaintiffs' letter and took no curative action in response to Plaintiffs' request.  The Court may also note that Dow's Final Exhibit List contains 8,594 exhibits — more than six times the number of exhibits on Plaintiffs' Final Exhibit List.  Attachments 8.1 & 8.2 to Final Pretrial Order (July 1, 2015) (D.N.J. Dkt. 84).  Efforts to get Dow to reduce the number of its exhibits and length of its counter-designations were futile.  Dow has no intention to "work together" with Plaintiffs.

of the trial.  This evaluation was one that should have been undertaken by Dow long ago, not one

for Dow to foist onto the Court at trial.

This Court should not adopt either of Dow's unfair and unworkable suggestions.  Instead,

it should grant Plaintiffs' motion.  The relief that Plaintiffs request would not result in any

prejudice to Dow, because Dow would not be precluded from seeking to offer the same dozens

of hours of counter-designations (if otherwise relevant and non-objectionable) in its own defense

case.

<strong><u>LEGAL ARGUMENT</u></strong>

**I.     DOW'S OVERLY BROAD DESIGNATIONS BELONG IN ITS OWN CASE-IN-CHIEF, NOT IN PLAINTIFFS'**

In its motion, Plaintiffs specifically addressed the excessiveness of Dow's counter-

designations by detailing (1) the fact that many of Dow's counter-designations are identical or

substantially similar to the designations struck by Judge Lungstrum as beyond the scope of class

plaintiffs' initial designations; (2) the fact that the length of Dow's counter-designations is many

times greater than the length of Plaintiffs' designations; and (3) the fact that in numerous cases,

Dow took its initial designations from its own defense case and merely copied them as purported

counter-designations for introduction in Plaintiffs' case.  Dow fails to respond to any of these

points.  Instead, it simply asserts that it needed "lengthy counter-designations" to provide

"adequate context" to Plaintiffs' designations.  In doing so, it contends that its counter-

designations fall within Fed. R. Evid. 611(b)'s definition of "same subject matter."  This is false.

Under Dow's definition of "same subject matter" – as evidenced by the scope of its

counter-designations – anything having to do with any of the issues in this case (as Dow

perceives them) would be appropriate counter-designations.  That is not a correct interpretation

of Rule 611(b), which limits the scope of cross-examination to "the subject matter of the direct

2

examination and matters affecting the credibility of the witness." *See also Douglas v. Owens*, 50 F.3d 1226, 1230 (3d Cir. 1995) (stating that district court may properly exercise its discretion under Rule 611(b) by imposing reasonable limits on the scope of cross-examination, weighing such factors as undue prejudice, relevancy, and delay due to repetition); *Williams v. Giant Eagle Markets, Inc.*, 883 F.2d 1184, 1189-90 (3d Cir. 1989) (in employment discrimination case, precluding former employee from cross-examining co-worker on matters that went beyond the scope of direct examination and which could have been elicited in employee's case-in-chief).

In addition, the Court "should exercise reasonable control" under Fed. R. Evid. 611(a) over the mode and presentation of evidence.  Accordingly, courts routinely limit excessive and lengthy counter-designations that might confuse or mislead a jury or unfairly prejudice a party's ability to present its facts in logical order.  *See Clark v. Allen*, 139 F.3d 888 (4th Cir. 1998) (holding that district court did not abuse its discretion in limiting the presentation of deposition testimony where after a day-long, unrestricted reading of testimony "jurors complained that they found the presentation confusing"); *NAACP v. A.A. Arms, Inc.*, 2003 WL 2003800, at *3 (E.D.N.Y. Apr. 14, 2003) (observing that "lengthy counter-designations would unfairly import excessive evidence from defendants").

Dow's suggestion that the Court require the parties to present a single video for all overlapping witnesses would allow Dow to hijack Plaintiffs' case, resulting in exactly the sort of "lengthy and potentially confusing" presentation that Judge Lungstrum condemned in the class trial.  *See* Tr. Mot. *In Limine* Conf. Before Hon. John W. Lungstrum 85:16-86:25 (Jan. 9, 2013) (Ex. B to Pls.' Br.) ("Tr. *In Limine* Conf.").  Dow would insert into Plaintiffs' case-in-chief hours and hours of cumulative, mostly irrelevant evidence, that has nothing to do with the central issue in the case, which, as Dow acknowledges, "is whether Dow conspired with certain other

urethanes manufacturers to fix the price of TDI, MDI, and/or polyether polyols in the United States from 1994 to 2003." Dow's Br. in Support of Mot. *In Limine* to Preclude References to Other Antitrust Cases, at 1 (Sept. 3, 2015) (D.N.J. Dkt. 115).   Moreover, because the presentation of a single video for each witness would not inform the jury of which party is requiring them to watch hours of irrelevant testimony, the jury would undoubtedly blame Plaintiffs for this colossal waste of their time – since all of this video would be presented in Plaintiffs' case, not Dow's.   That result is no doubt an intended feature of Dow's single videotape proposal.[2]

Among the 71 hours of testimony that Dow counter-designated, Dow points to a few lines from the depositions of Carpenter witnesses Del Felter, Stan Pauley and Frank Hurst[3] that drew scope objections.   Although at first glance these might appear to be permissible, closer examination reveals that even these few hand-picked examples are not appropriate counter-designations and that Plaintiffs' scope objections should be sustained.[4]   As to Carpenter witness

---

[2]    *In Hallmark Cards, Inc. v. Monitor Clipper Partners*, LLC, No. 08-0840-CV, slip op. (W.D. Mo. Oct. 23, 2012), *cited in* Def. Dow Chem. Co.'s Br. Opp'n Pls.' Mot. *In Limine* to Limit Scope of Dow's Dep. Counter-Designations, at 4 (Sept. 30, 2015) (D.N.J. Dkt. 143) ("Opp'n"), the court's order that the parties develop a single videotape for each witness was premised on an earlier order stating that "the time for the additional portion will come from the side that wants the additional portion played."  This suggests that the court imposed time limits on each party's trial presentation, which would effectively control the scope and length of cross-examination.  Here, the Court has imposed no such time limit.  Further, in contrast to Judge Lungstrum's decision, there is no indication in *Hallmark Cards* (an unreported opinion) how many depositions and counter-designations were at issue.

[3]    No doubt Carpenter witnesses were selected because Judge Lungstrum did not have occasion to consider Dow's counter-designations to Plaintiffs' witnesses in this case.

[4]    Charts containing the deposition designations of Messrs. Felter, Pauley and Hurst are attached as Exhibits A, B, and C, respectively. In each chart we highlight the designations selected by Dow in its Opposition and set forth the relevant objections to that testimony.  The charts reveal both that the designations at issue are not legitimate counters and that Dow's excessive counter-designations for these witnesses (as is the case with so many of the witnesses Plaintiffs intend to call by deposition) would utterly inundate Plaintiffs' case with testimony that belongs (if anywhere) in Dow's defense case.

Stan Pauley, for example, Plaintiffs designated 5 minutes of testimony, merely to establish that

████████████████████████████████████████████████████████

████████████████████████████████████████████████████, which

rebuts Dow's statute of limitations defense.   *See* Final Pretrial Statement, § 4(A), Pls.' Stmt.

Facts ¶¶ 539-540; *id.* § 4(B), Def.'s Stmt. Facts ¶¶ 4-7.  Dow "counters" with – among many

topics beyond the scope of Plaintiffs' initials – deposition excerpts intended to show that

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████ Opp'n at 7-8.[5]

In addition to the fact that the testimony is irrelevant, Dow omits to tell the Court that

Dow's counter-designations for Mr. Pauley run 150 minutes – *30 times* Plaintiffs' direct

examination.  Attached as Exhibit B is a chart containing the deposition designations for Mr.

Pauley.  The Court can see for itself the heavy imbalance between Plaintiffs designations and

Dow's "counters."[6]  Unless Plaintiffs' motion is granted, Plaintiffs' ability to present their case

will be significantly prejudiced.  Moreover, since the vast majority of the testimony that Dow

counter-designated from Mr. Pauley and Plaintiffs' other witnesses was also designated to be

introduced in Dow's defense case, the Court can safely assume that, if Plaintiffs' motion is

---

[5]      Not only is the testimony that Dow designated from Mr. Pauley's deposition beyond the scope of Plaintiffs' initials, any implication that this case is "lawyer-driven" is irrelevant and unfairly prejudicial and should be excluded under Fed. R. Evid. 401, 402, and 403.  *See* Pls.' Mot. *In Limine* to Preclude Ref. to How Pls. Became Involved in the Case, Plaintiffs' Knowledge of the Litigation or to the Case Being Lawyer Driven (Aug. 31, 2015) (D.N.J. Dkt. 103).

[6]      The charts for Carpenter witnesses Del Felter and Frank Hurst even further illustrate the disproportionality of Dow's "counters."   As to Felter, Plaintiff's designated 14 minutes of testimony. Dow responded with 173 minutes, over twelve (12) times the amount.  Ex. A.  As to Hurst, Plaintiffs also designated only 14 minutes of testimony.   Dow responded with 145 minutes, over ten (10) times the amount. Ex. C.

granted, the evidence, if otherwise relevant and non-objectionable,[7] will still be heard by the jury.  And of course, one of the primary considerations under Fed. R. Evid. 611 for calling a witness only once and allowing a party to cross-examine a witness without being limited to the matter covered on direct examination – the witness's convenience – does not apply to videotape depositions.  *See, e.g.*, *Lyman v. St. Jude Medical S.C., Inc.*, 580 F. Supp. 2d 719, 727–28 (E.D. Wis. 2008).

## II.     DOW, NOT THE COURT, SHOULD HAVE NARROWED THE SCOPE OF ITS COUNTER-DESIGNATIONS

In response to Plaintiffs' suggestion that this Court adopt Judge Lungstrum's ruling and preclude Dow from introducing overly broad counter-designations in Plaintiffs' case-in-chief, Dow urges the Court to undertake its own examination of *each* individual designation and counter-designations *each* day at the time of trial.  Opp'n at 2.  This process would not only be incredibly burdensome on the Court and likely delay the trial proceedings, but it would also reward Dow for its failure to meaningfully meet and confer with Plaintiffs to narrow the scope of their counter-designations during the Court-appointed time for such discussions (i.e., months in advance of trial).  Moreover, Dow's proposal would force Plaintiffs to prepare for trial and give an opening statement without knowing what evidence the jury will be permitted to hear.  It will also hinder Plaintiffs' ability to give a coherent, timely presentation of the evidence, inasmuch as the extent of the testimony that Plaintiffs may introduce from a witness earlier in its presentation might depend on whether Plaintiffs can introduce testimony from another witness later in the

---

[7]     It is worth observing that a substantial portion of Dow's indiscriminate and out-of-scope counter-designations are the subject of Plaintiffs' motions *in limine* addressing downstream evidence and the other impermissible and Plaintiff-focused topics that Dow seeks to interject into the case to distract and confuse the jury.

presentation.  For these reasons, Dow's proposal is unworkable and would prejudice Plaintiffs significantly.

Dow objects to the nature of the relief sought by Plaintiffs – acceptance of all of Plaintiffs' out-of-scope objections – by pointing to the designation-by-designation review that Judge Lungstrum undertook.  Apparently, however, Dow learned nothing from that exercise, instead designating all over again the same testimony that Judge Lungstrum previously precluded Dow from introducing in the class action plaintiffs' case-in-chief.  Given that Judge Lungstrum's individual review resulted in exclusion of the majority of Dow's contested counter-designations on the ground that they were overbroad and outside the scope of Plaintiffs' initial designations, there is no reason to think that a review by this Court would result in a different outcome.  Indeed, Dow not only included the counter-designations that were excluded by Judge Lungstrum in the class case, but also included many others, including purported counter-designations that were also designated as initial testimony to be used in Dow's own case-in-chief.  The Court should therefore decline Dow's request that the Court spend what will undoubtedly be an inordinate amount of time sifting through Dow's facially overbroad counter-designations to try to salvage a few that may be proper.

Put simply, this is a case where the Court should exercise its discretion to sustain all of Plaintiffs' out-of-scope objections to Dows counter-designations.  Dow ignored its meet and confer obligations.  Dow ignored Magistrate Judge Falk's scheduling order requiring the exchange of "Cross and Completeness Counter Designations."  Instead, Dow made the parties' and the Court's job harder by labeling everything "counter-designations."  For Dow to interpret the phrase for the parties to exchange "Cross and Completeness Counter Designations" as not distinguishing between the two very different counter-designations is disingenuous.  Dow also

ignored the persuasive authority of Judge Lungstrum's prior rulings – counter-designating substantially all of the testimony that Judge Lungstrum struck as beyond the scope or barred under Fed. R. Evid. 403.

Moreover, granting the motion will result in no prejudice to Dow.  As Judge Lungstrum observed, when dealing with videotapes, "the out-of-scope testimony is available to be presented in the parties' case-in-chief, and the momentary potential for effective discrediting is not lost in the same way as with a live witness.  I believe that is particularly so in this particular case."  Tr. *In Limine* Conf. 86:6-11 (Ex. B to Pls.' Br.).

## CONCLUSION

For the foregoing reasons, as well as those set forth in Plaintiffs' Motion, Plaintiffs respectfully request that this Court sustain Plaintiffs' scope objections to Dow's counter-designations, while permitting Dow to offer otherwise relevant and non-objectionable deposition testimony in its own defense case if desired.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
*Attorneys for Plaintiffs*


By:___/s/ James E. Cecchi_____
       JAMES E. CECCHI

DATED:  October 15, 2015

Jeffrey M. Johnson
Richard J. Leveridge
Elaine Metlin
James R. Martin
Adam Proujansky
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
(202) 420-2200

*Attorneys for Plaintiffs*