**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| IN RE URETHANE ANTITRUST LITIGATION | Master Docket No. 08-05169 (WJM) (MF)<br>*Document Filed Electronically* |
|---|---|

# DEFENDANT THE DOW CHEMICAL COMPANY'S REPLY IN SUPPORT OF MOTION *IN LIMINE* TO PRECLUDE REFERENCES TO OTHER ANTITRUST CASES [#1] (DKT. 114)

Lawrence S. Lustberg
Daniel J. McGrady
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
llustberg@gibbonslaw.com
dmcgrady@gibbonslaw.com

David M. Bernick (admitted *pro hac vice*)
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
david.bernick@dechert.com

*Attorneys for Defendant*
*The Dow Chemical Company*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

LEGAL ARGUMENT ..... 2

I. PLAINTIFFS' OPPOSITION FAILS TO REBUT DOW'S ARGUMENT THAT EVIDENCE OF OTHER ANTITRUST CASES INVOLVING DOW IS IRRELEVANT, PREJUDICIAL, AND CONTRARY TO RULE 404(b) ..... 2

II. PLAINTIFFS' OPPOSITION FAILS TO REBUT DOW'S ARGUMENT THAT EVIDENCE OF PRICE-FIXING CASES INVOLVING OTHER PARTIES IN OTHER INDUSTRIES IS IRRELEVANT AND PREJUDICIAL. ..... 5

CONCLUSION ..... 8

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Home Assur. Co. v. Merck & Co.*,
462 F. Supp. 2d 435 (S.D.N.Y. 2006) ........ 6

*Becker v. ARCO Chem. Co.*,
207 F.3d 176 (3d Cir. 2000) ........ 3

*Blakey v. Continental Airlines, Inc.*,
1997 U.S. Dist. LEXIS 22074 (D.N.J. Sept. 9, 1997) ........ 7

*Emerson Electric Co. v. Le Carbone Lorraine, S.A.*,
2008 U.S. Dist. LEXIS 72705 (D.N.J. Aug. 27, 2008) ........ 5

*Gov't of the Virgin Islands v. Pinney*,
967 F.2d 912 (3d Cir. 1992) ........ 3

*Lindquist v. Buckingham Twp.*,
106 F. App'x 768 (3d Cir. 2004) ........ 7

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*,
998 F.2d 1224 (3d Cir. 1993) ........ 5

*United States v. Smith*,
725 F.3d 340 (3d Cir. 2013) ........ 3

*United States Football League v. National Football League*,
634 F. Supp. 1155 (S.D.N.Y. 1986) ........ 5

*United States v. Bookman*,
278 F. App'x 181, 183 (3d Cir. 2008) ........ 1, 2

*United States v. Gaev*,
1993 U.S. Dist. LEXIS 5917 (E.D. Pa. May 5, 1993) ........ 6

*United States v. Varoudakis*,
233 F.3d 113 (1st Cir. 2000) ........ 3

**RULES**

Rule 403 ........ 7, 8

Rule 404(b) ........ 1, 3, 5

## INTRODUCTION

Defendant The Dow Chemical Company ("Dow") respectfully submits this reply brief in further support of its motion *in limine* to preclude references to other antitrust cases. (Dkt. 114). As explained in greater detail below, Plaintiffs' opposition fails to rebut the two arguments set forth in Dow's moving brief: (1) that evidence of other antitrust cases involving Dow should be held inadmissible as irrelevant, prejudicial, and contrary to Rule 404(b); and (2) that evidence of other price-fixing conspiracies involving different entities and industries is of minimal, if any, additional probative value, which is well outweighed by the risk of unfair prejudice.

Plaintiffs conflate Dow's two arguments, contending generally that evidence of other antitrust cases is relevant to provide "specific" counterexamples in response to the contentions of Dow's experts regarding expected price levels that would result if a conspiracy existed. *See* Pls.' Pls.' Opp'n Br. (Dkt. 147) at 4-5. Plaintiffs do not, however, explain, because they cannot possibly do so, why they would "genuinely need" to reference *Dow*'s involvement in certain of these other antitrust cases. *See United States v. Bookman*, 278 F. App'x 181, 183 (3d Cir. 2008) (quoting *United States v. Sriyuth*, 98 F.3d 739, 747-48 (3d Cir. 1996)). Indeed, there is no such genuine need—only a desire to adduce inappropriate and unfair propensity evidence against Dow. Likewise, though Plaintiffs contend that government investigations of Bayer and Dow in 2003 and 2004 concerning alleged conspiracies in other industries are somehow relevant to "other issues in the case," Pls.' Opp'n Br. at 2,. these contentions are devoid of substance, and are thinly veiled attempts to place before the jury evidence with minimal, if any, probative value which is substantially outweighed by the danger of unfair prejudice, waste of time, and confusing the jury. This danger is particularly acute here, where, as Plaintiffs concede, Pls.' Opp'n Br. at 8, this evidence is not admissible pursuant to Federal Rule of Evidence 404(b).

Similarly, evidence of *other* price-fixing conspiracies involving *other* parties in *other* industries is of minimal, if any, probative value, since the allegation here is that Dow conspired to fix prices in the urethanes industry. Indeed, the introduction of such evidence would necessarily devolve into lengthy mini-trials on the specifics of these other cases, which is especially unfair since many of the records in such matters are filed under seal.

## LEGAL ARGUMENT

### I. PLAINTIFFS' OPPOSITION FAILS TO REBUT DOW'S ARGUMENT THAT EVIDENCE OF OTHER ANTITRUST CASES INVOLVING DOW IS IRRELEVANT, PREJUDICIAL, AND CONTRARY TO RULE 404(b).

In assessing the admissibility of evidence under Federal Rule of Evidence 403, "[c]ourts must balance the 'genuine need for the challenged evidence' with the 'risk that the [evidence] will influence the jury on improper grounds.'" *Bookman*, 278 F. App'x at 183 (quoting *Sriyuth*, 98 F.3d at 747-48). Plaintiffs suggest several reasons why evidence of other antitrust cases involving Dow has probative value with respect to issues in this case. But, fairly assessed, these arguments do not establish a "genuine need" for this evidence, only a subterfuge for the introduction of otherwise inadmissible evidence that would certainly result in unfair prejudice to Dow, even as it risks a significant waste of time and real jury confusion.

*First*, Plaintiffs argue that evidence of other antitrust conspiracies, including other conspiracies involving Dow, is relevant because they provide "specific" examples that will serve to rebut Dow's experts' contentions regarding, for example, what typically occurs to prices as a result of price-fixing. *See* Pls.' Opp'n Br. at 4-5 (discussing, *e.g.*, a conspiracy in the emulsified styrene butadiene rubber market in which Dow purportedly participated). But even assuming that Plaintiffs may confront Dow's experts with any specific examples at all, the fact that they seek, in particular, to point to conspiracies in which Dow allegedly participated demonstrates their real motivation in adducing this evidence—to place before the jury other purported

examples of Dow's misconduct without making the showing required by Federal Rule of Evidence 404(b). *United States v. Smith*, 725 F.3d 340, 345 (3d Cir. 2013) ("[T]he proponents of Rule 404(b) evidence must do more than conjure up a proper purpose—they must also establish a chain of inferences no link of which is based on the propensity inference."). Of course, such "propensity" evidence, so obviously irrelevant and prejudicial, should not be allowed. *Id.* at 345 ("[P]roponents of Rule 404(b) evidence will normally be able to conceive of a proper purpose other than propensity. But if this were sufficient to admit the evidence, the basic idea embodied by Rule 404(b), that simply because one act was committed in the past does not mean that a like act was again committed, would be threatened."); *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 191 (3d Cir. 2000) ("[T]he evidence of ARCO's 'manner' of terminating Seaver simply is not relevant on the issue of whether ARCO discriminated against Becker absent the inference that ARCO had a propensity to act in a certain way, and that in firing Becker, it acted in conformity with its prior conduct. . . . Accordingly . . . we cannot agree that the evidence was admissible under Rule 404(b) to establish ARCO's intent to discriminate against Becker."); *Gov't of the Virgin Islands v. Pinney*, 967 F.2d 912, 917-18 (3d Cir. 1992) (overruling the trial court's admission of Rule 404(b) evidence that was ostensibly introduced for a proper purpose, since the "obvious reason the government wanted" to introduce such evidence "was because of the substantial likelihood that one or more members of the jury would use this highly inflammatory evidence for exactly the purpose Rule 404(b) declared to be improper"); *United States v. Varoudakis*, 233 F.3d 113, 122-23 (1st Cir. 2000) ("[T]he more closely the extrinsic offense resembles the charged offense, the greater the prejudice to the defendant.") (internal citation omitted).

*Second*, Plaintiffs contend that government investigations of Bayer and Dow for conduct in other industries are relevant to the conspiracy end-date. Specifically, Plaintiffs argue that these government investigations "help to explain the collapse of the conspiracy, Bayer's affirmative withdrawal in September 2003, and the alleged conspirators' pricing behavior during that time." Pls.' Opp'n Br. at 2. But here too, the unfairly prejudicial impact of such evidence, even with appropriate limiting jury instructions, is so great, and the need for such evidence so questionable, that this effort must be rejected. Thus, for example, if Bayer had withdrawn from this conspiracy by 2003, then that is something that Plaintiffs can and should prove without the need to adduce evidence, as they specifically seek to do, of raids on Dow and Bayer in 2004. Indeed, the evidence here proffered by Plaintiffs would invite a lengthy sideshow over the motivation, validity, and outcome of a government investigation concerning conduct in an unrelated industry. That cannot be allowed.

*Third*, Plaintiffs argue that evidence of the government investigation of Dow is relevant to cast aspersions on Dow's internal investigations in 2004, which Plaintiffs seek to do to bolster the testimony of Stephanie Barbour, which they will present at trial through a video deposition. Specifically, they claim that Dow's internal investigations into Ms. Barbour's allegations were "facially insufficient" because Dow only "wanted to create the appearance of an investigation but ensure [it] found nothing that could expose Dow to criminal liability." Pls.' Opp'n Br. at 7-8. Of course, if Plaintiffs really want to challenge the sufficiency of Dow's internal investigation, and if the Court deems that evidence relevant, then they may do so directly. But raising an unrelated government investigation regarding Dow's activity in a different industry is simply not "genuinely needed" for this purpose; indeed, it is a disingenuous effort to introduce highly prejudicial evidence that would otherwise be, concededly, inadmissible, and in so doing to

make this case about an entirely different conspiracy, in a different industry. The result can only be to distract and confuse the jury, to make the case larger and more complex than it already is, and to risk an unjust outcome. That should be not allowed.

Notably, as mentioned above, although Plaintiffs' purported evidence of Dow's involvement in other antitrust cases and investigations is classic "bad acts" evidence under Rule 404(b), Plaintiffs argue that "Rule 404(b) … does not apply." Pls.' Opp'n Br. at 8. In doing so, Plaintiffs rely upon *Emerson Electric Co. v. Le Carbone Lorraine, S.A.*, No. 05-6042, 2008 U.S. Dist. LEXIS 72705 (D.N.J. Aug. 27, 2008), which they say stands for the proposition that "similar cartel activities undertaken in a similar marketplace may be probative of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," which are allowable purposes under Rule 404(b). Pls.' Opp'n Br. at 8. But *Emerson* involved a motion to compel discovery, not a motion to preclude evidence at trial; indeed, the court specifically stated that "there is no determination at this time that any material will or will not be admitted at trial." *Id.* at *15 n.1. Further, Plaintiffs do not explain why the evidence at issue here is similar to *Emerson*, other than to imply it through a parenthetical. Crucially, Plaintiffs ignore Dow's cited authorities, including *United States Football League v. National Football League*, 634 F. Supp. 1155, 1173 (S.D.N.Y. 1986), where evidence relating to prior antitrust judgments was excluded in part because such references would have allowed the plaintiffs to "imply new wrongdoing from past wrongdoing."[1] In short, Plaintiffs' opposition utterly fails to rebut Dow's Rule 404(b) arguments.

[1] It should be noted that Plaintiffs fail to acknowledge or discuss, let alone distinguish, any of the cases cited by Dow in its moving brief. *See, e.g.*, Dow's Initial Br. at 1-2 (citing *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1247 (3d Cir. 1993) ("Simply because the defendants were named in past antitrust cases involving similar allegations does not make it more probable that the defendants had a motive to carry out their conspiracy."); *Am.*

## II. PLAINTIFFS' OPPOSITION FAILS TO REBUT DOW'S ARGUMENT THAT EVIDENCE OF PRICE-FIXING CASES INVOLVING OTHER PARTIES IN OTHER INDUSTRIES IS IRRELEVANT AND PREJUDICIAL.

Plaintiffs also argue that evidence of price-fixing cases involving other entities in other industries is somehow relevant to provide "specific" counterexamples to the contentions of Dow's experts regarding the expected results of price-fixing conspiracies. Pls.' Opp'n Br. at 4-5. In support of this argument, Plaintiffs rely mostly on cases from entirely different contexts that stand for the unremarkable proposition that experts may be confronted on cross-examination by facts that challenge their conclusions.[2] Indeed, Plaintiffs cite only one, unpublished district court case from the antitrust context, but it is entirely distinguishable. *See United States v. Gaev*, No. 92-457, 1993 U.S. Dist. LEXIS 5917 (E.D. Pa. May 5, 1993) (finding that the trial court's allowance of the cross-examination of an expert about price-fixing involving guilty pleas in the same industry in an adjacent geographic region did not warrant a new trial).[3] Crucially, the evidence permitted on cross-examination in *Gaev* involved other conspiracies in the same industry in an adjacent region with admissions of guilt. But that is not the case here, where Plaintiffs admittedly seek to introduce evidence of other conspiracies from other industries. *See*

---

*Home Assur. Co. v. Merck & Co.*, 462 F. Supp. 2d 435, 446 (S.D.N.Y. 2006) (granting motion to exclude reference to unrelated litigations on relevance grounds)).

[2] *See* Pls.' Opp'n Br. at 5-6 (citing cases). Notably, none of these cases involved an expert being cross-examined based on the *facts* of other cases. Therefore, these cases are completely inapposite.

[3] Plaintiffs also rely on a ruling in the class case denying a similar motion by Dow without prejudice. *See* Pls.' Opp'n Br. at 6. Notably, that motion was "granted to the extent that plaintiffs may not link Dow to other price-fixing cases . . . ." *See* Ex. A [Mot. *in Limine* Conf. Before Hon. John W. Lungstrum Tr., Jan. 9, 2013] at 66. After a lengthy discussion about the permissibility of referencing other price-fixing cases, the Court stated "I'm not making a definitive ruling on this particular subject" but suggested that before any reference to a different price-fixing case could occur, a proper foundation with regard to relevance would have to be laid. *Id.* at 66-74.

Pls.' Opp'n Br. at 5. Of course, those industries will have their own economic characteristics, which would have to be explained were this type of evidence to be admitted. Plaintiffs fail to explain why evidence of conspiracies involving other entities in other industries would not devolve into lengthy mini-trials, as Dow contended in its moving brief. Instead, Plaintiffs offer only the bare assurance that they "do not intend to veer off into lengthy discussions of these identified price-fixing conspiracies" and will "discuss them only enough to rebut the generalized assertions regarding the behavior and circumstances of cartels offered by Dow's experts." Pls.' Opp'n Br. at 5. Of course, this assurance is completely unrealistic. For each specific "counterexample" Plaintiffs introduce, the parties (and the jury) will be forced to consider the weight of the evidence adduced, including comparing the other industry to the urethanes industry, considering the existence and nature of any agreement at issue, and assessing the economic effect of the agreement.[4]

The burden that would be placed upon the Court by such trials-within-trials is both obvious and remediable under Rule 403. *See, e.g.*, *Lindquist v. Buckingham Twp.*, 106 F. App'x 768, 777 (3d Cir. 2004) (excluding evidence of a third party development in part because "ascertaining whether the [third party] development was comparable to the [plaintiff's] development in all important respects would have forced the District Court to conduct 'a trial within a trial.'"); *cf. Blakey v. Continental Airlines, Inc.*, No. 93-CV-2194, 1997 U.S. Dist. LEXIS 22074, at *31-32 (D.N.J. Sept. 9, 1997) (excluding relevant evidence of the plaintiffs' prior complaints of discrimination under Rule 403, because it "would necessitate a trial within a

[4] Tellingly, Plaintiffs are forced to clarify in a footnote to their brief that certain chemical industries are unrelated. *See* Pls.' Opp'n Br. at 8 n.3 ("To be clear, Crompton produced rubber chemicals and poly*ester* polyols, and not the poly*ether* polyols that are subject of this litigation." (emphasis added)). If Plaintiffs think the Court may not appreciate the difference between polyester polyols and polyether polyols, it is hard to imagine what a jury would make of the difference.

trial" and "would consume a great deal of time") (internal quotation marks omitted). These concerns are heightened because the records in other price-fixing cases are often filed under seal.

There is no dispute that the parties' experts are subject to challenge on cross-examination, but that does not entitle Plaintiffs to introduce extraneous price-fixing conspiracies involving other industries and entities. Plaintiffs offer no support for their contention that such evidence is of any additional probative value, and they certainly have not explained how it could withstand analysis under Rule 403.

## CONCLUSION

For the foregoing reasons, Dows' motion *in limine* "to preclude references to other antitrust cases" (Dkt. 114) should be granted.

Dated: October 15, 2015
Newark, New Jersey

Respectfully submitted,

s/ Lawrence S. Lustberg

Lawrence S. Lustberg
Daniel J. McGrady
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102
Telephone: (973) 596-4500
Facsimile: (973) 596-0545

David M. Bernick (admitted *pro hac vice*)
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3551
Facsimile: (212) 698-3599

*Attorneys for Defendant*
*The Dow Chemical Company*

**CERTIFICATE OF SERVICE**

On October 15, 2015, a copy of the foregoing was served on all counsel of record via ECF.

/s/ Daniel J. McGrady
Attorney for The Dow Chemical Company