UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE URETHANE ANTITRUST LITIGATION | Master Docket No. 08-5169 (WJM) (MF)<br><br>*Document Filed Electronically* |

**DEFENDANT THE DOW CHEMICAL COMPANY'S REPLY IN FURTHER SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATED TO BAYER'S INTERNAL INVESTIGATION [#7] (DKT. 127)**

Lawrence S. Lustberg
Daniel J. McGrady
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102
Telephone:  (973) 596-4500
Facsimile:  (973) 596-0545
llustberg@gibbonslaw.com
dmcgrady@gibbonslaw.com

David M. Bernick (*admitted pro hac vice*)
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile:  (212) 698-3599
david.bernick@dechert.com

*Attorneys for Defendant*
*The Dow Chemical Company*

**TABLE OF CONTENTS**

ARGUMENT ........................................................................................................................ 1

I.  THE MINIMAL PROBATIVE VALUE OF THE EVIDENCE IS
    SUBSTANTIALLY OUTWEIGHED BY ITS PREJUDICIAL EFFECT ON
    DOW ........................................................................................................................ 1

II. TESTIMONY AND DOCUMENTS RELATED TO BAYER'S INTERNAL
    INVESTIGATION ARE INADMISSIBLE HEARSAY .................................................... 1

    A.  The Statement-Against-Interest Exception Does Not Apply. ................................ 2

    B.  The "Residual" Hearsay Exception Does Not Apply. ........................................... 5

        1.  There Are No "Circumstantial Guarantees of Trustworthiness." .............. 6

        2.  The Evidence is Not More Probative Than Any Other Evidence
            That Plaintiffs Could Obtain Through Reasonable Efforts........................ 8

        3.  Admission Would Not Serve the Purposes of the Rules or the
            Interests of Justice..................................................................................... 8

III. RULE 703 BARS DISCLOSURE OF THE MATERIALS AT ISSUE AS
     EXPERT RELIANCE MATERIALS. ............................................................................. 9

CONCLUSION .................................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Auto. Accessories, Inc. v. Fishman*,
   979 F. Supp. 706 (N.D. Ill. 1997) ....................................................................................3

*Barry v. Trustees of Int'l Ass'n of Full-Time Salaried Officers & Employees of
   Outside Local Unions & District Counsel's (Iron Workers) Pension Plan*,
   467 F. Supp. 2d 91 (D.D.C. 2006) ................................................................................7, 8

*Brown v. Philip Morris Inc.*,
   228 F. Supp. 2d 506 (D.N.J. 2002) ..................................................................................5

*Ciccarelli v. Gichner Systems Grp.*,
   862 F. Supp. 1293 (M.D. Pa. 1992) .................................................................................4

*Fletcher v. St. Joseph Reg'l Medical Ctr.*,
   No. 10-1499, 2013 WL 3146879 (D.N.J. June 19, 2013) ................................................2

*In re Baby Food Antitrust Litig.*,
   166 F.3d 112 (3d Cir. 1999) .........................................................................................2, 8

*In re Ethylene Propylene Diene Monomer Antitrust Litig.*,
   681 F. Supp. 2d 141 (D. Conn. 2010) ..............................................................................9

*In re Japanese Elec. Prods. Antitrust Litig.*,
   723 F.2d 238 (3d Cir. 1983), *rev'd on other grounds sub nom. Matsushita
   Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .................................4

*In re Urethane Antitrust Litig.*,
   No. 04-1616, 2013 WL 65988 (D. Kan. Jan. 4, 2013) .....................................................1

*Navedo v. Primecare Med., Inc.*,
   No. 12-00888, 2014 WL 1451836 (M.D. Pa. April 14, 2014) .........................................8

*Revel v. Digugliemo*,
   No. 03-5412, 2005 WL 1677951 (E.D. Pa. July 18, 2005) .............................................3

*Rosario v. Carillo*,
   No. 08-4495, 2011 WL 4901348 (D.N.J. Oct. 13, 2011) ................................................2

*United States v. Awer*,
   770 F.3d 83 (1st Cir. 2014) ..............................................................................................3

*United States v. Manfredi*,
   No. 07-352, 2009 WL 3823230 (W.D. Pa. Nov. 13, 2009) .........................................7, 9

*United States v. Ashburn*,
   No. 11-303, 2015 WL 5098607 (E.D.N.Y. Aug. 31, 2015) ....................................................... 7

*United States v. Groce*,
   999 F.2d 1189 (7th Cir. 1993) ................................................................................................. 7

*United States v. Wilson*,
   281 F. App'x 96 (3d Cir. 2008) ............................................................................................... 6

*United States v. Wright*,
   363 F.3d 237 (3d Cir. 2004) ............................................................................................ 5, 6, 8

*United Tech. Corp. v. Mazer*,
   556 F.3d 1260 (11th Cir. 2009) .............................................................................................. 6

*Wezorek v. Allstate Ins. Co.*,
   2007 WL 1816293 (E.D. Pa. June 22, 2007) ......................................................................... 9

*Wielgus v. Ryobi Tech., Inc.*,
   893 F. Supp. 2d 920 (N.D. Ill. 2012) ..................................................................................... 7

*Williams v. Illinois*,
   132 S. Ct. 2221 (2012) .......................................................................................................... 11

*Williamson v. United States*,
   512 U.S. 594 (1998) ........................................................................................................... 4, 5

**Rules**

Fed. R. Evid. 103(d) ..................................................................................................................... 11

Fed. R. Evid. 403 ........................................................................................................................... 1

Fed. R. Evid. 703 ................................................................................................................... 10, 11

Fed. R. Evid. 804(b)(3) .................................................................................................................. 2

Fed. R. Evid. 805 ........................................................................................................................... 2

Fed. R. Evid. 807 ....................................................................................................................... 5, 7

Dow has moved to exclude any reference to an internal investigation conducted by Bayer's counsel, Phillip Proger, including statements made to and by Mr. Proger. Dow's Mot. (Dkt. 127); Dow's Initial Br. (Dkt. 128). In response, Plaintiffs state that the court that oversaw pretrial proceedings in this matter (the "MDL Court") already determined that this evidence is "*prima facie* admissible under the admission-against-interest and residual exception to the hearsay rule." Pls.' Opp'n Br. (Dkt. 160) at 1. That is false. The MDL Court considered only one piece of evidence (a memorandum authored by Dr. Raiff summarizing his meeting with Mr. Proger), and solely to decide Dow's motion for summary judgment on Plaintiffs' claim that the alleged conspiracy existed prior to 1999. *See In re Urethane Antitrust Litig.*, No. 04-1616, 2013 WL 65988, at *3 (D. Kan. Jan. 4, 2013). In doing so, the MDL Court expressly noted that it "ma[de] no pronouncement concerning the eventual admissibility of the exhibit at *trial*" but simply "deem[ed] it most appropriate *at this stage* to consider such evidence in determining whether plaintiffs' claims survive to trial." *Id.* (emphasis added). Thus, it is for this Court to determine the admissibility of this evidence.

As explained below, the evidence should be excluded under Federal Rule of Evidence 403. Furthermore, the evidence is at least double hearsay, and Plaintiffs have failed to demonstrate that any hearsay exception applies. Nor can the evidence be disclosed as material relied upon by Plaintiffs' expert because its prejudicial effect on Dow would "substantially outweigh" any probative value it might have.

**ARGUMENT**

I. **THE MINIMAL PROBATIVE VALUE OF THE EVIDENCE IS SUBSTANTIALLY OUTWEIGHED BY ITS PREJUDICIAL EFFECT ON DOW.**

This Court should exclude the evidence related to Bayer's internal investigation pursuant to Rule 403 because its negligible probative value is substantially outweighed by likely prejudice

1

to Dow. In addition to the reasons set forth in Dow's Initial Brief, the evidence has minimal probative value as to Plaintiffs' conspiracy claim because it alleges only that pricing discussions took place between Dow and its competitors, not that any agreement was reached. *See, e.g., In re Baby Food Antitrust Litig.*, 166 F. 3d 112, 117 (3d Cir. 1999) ("The existence of an agreement is the hallmark of a Section 1 [conspiracy] claim."). This minimal probative value is overwhelmingly outweighed by the danger of extreme prejudice to Dow.

## II. TESTIMONY AND DOCUMENTS RELATED TO BAYER'S INTERNAL INVESTIGATION ARE INADMISSIBLE HEARSAY.

Plaintiffs intend to offer into evidence: (1) testimony from their expert, Dr. Leslie Marx, regarding conversations she had with Mr. Proger; and (2) documents created by Dr. Marx, by Plaintiffs' former expert Dr. Raiff, and by Plaintiffs' counsel, concerning conversations they had with Mr. Proger.[1] Pls.' Opp'n Br. at 4-5. In these conversations, Mr. Proger allegedly summarized statements made by Bayer employees during Bayer's internal investigation. *Id.*

Because this evidence contains *at least* two levels of hearsay, it is inadmissible unless Plaintiffs show that each statement falls within a hearsay exception. *See* Fed. R. Evid. 805 (hearsay within hearsay is admissible only "if each part of the combined statements conforms with an exception to the rule"); *Rosario v. Carillo*, No. 08-4495, 2011 WL 4901348 (D.N.J. Oct. 13, 2011) (same). Plaintiffs have not met their burden.

### A. The Statement-Against-Interest Exception Does Not Apply.

Federal Rule of Evidence 804(b)(3) creates an exception to the hearsay rule for a statement that "a reasonable person in the declarant's position would have made only if the

---

[1] Plaintiffs note that Dow included certain of these documents in its own exhibit list. This was inadvertent and Dow withdraws them. *See Fletcher v. St. Joseph Reg'l Med. Ctr.*, No. 10-1499, 2013 WL 3146879, at *6 (D.N.J. June 19, 2013) (rejecting defendant's argument that plaintiff waived objection to admissibility of documents by including them on her exhibit list).

2

person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability."  Any statements made by Mr. Proger to Plaintiffs' experts and/or counsel were not "against interest":  they were made pursuant to a self-interested *cooperation agreement* that enabled Bayer to exit the lawsuit on a favorable basis.  Final Pretrial Order (Dkt. 84) § 4(A), ¶¶ 44-45; *see also American Auto. Accessories, Inc. v. Fishman*, 979 F. Supp. 706, 707 (N.D. Ill. 1997) (co-conspirator's statements were not admissible as statements against interest where declarant had settled with plaintiffs and so it could reasonably be inferred that the statements "were made in order to 'curry favor' with the Plaintiffs").  Such statements do not meet the standards for admission under Rule 804(b)(3), and Plaintiffs nowhere contend that they do.  *See* Pls.' Opp'n Br. at 9.

Nor can the exception apply to Bayer employees' statements to Mr. Proger.  Although Plaintiffs assert that certain declarants faced potential criminal liability because they invoked the Fifth Amendment when deposed in this case, Pls.' Opp'n Br. at 9, the relevant question under the rule is whether statements they made to Mr. Proger had a tendency to expose them to civil or criminal liability "*when made.*"  Fed. R. Evid. 804(b)(3) (emphasis added).  The answer to that question is no, because the statements were made in connection with a presumably privileged internal investigation.  *See, e.g., United States v. Awer*, 770 F.3d 83, 94 (1st Cir. 2014) ("statements to [a witness's] attorney were not against her criminal interest because, when made, they were confidential and protected by the attorney-client privilege"); *Revel v. Digugliemo*, No. 03-5412, 2005 WL 1677951, at *7 (E.D. Pa. July 18, 2005) (court "correctly held that . . . [a witness's communications with his lawyer . . . were protected by attorney-client privilege and therefore not against his penal interest"); *see also In re Japanese Elec. Prods. Antitrust Litig.*,

3

723 F.2d 238, 300 (3d Cir. 1983) (affirming exclusion of evidence where plaintiffs "made no showing from which we could infer that any of the declarants were conscious that the statements were against their personal interests"), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

Moreover, even if the statement-against-interest exception to the hearsay rule applied to aspects of the Bayer employee statements, it would not apply to any parts of those statements which implicate Dow.  *See Williamson v. United States*, 512 U.S. 594, 599 (1998) ("[t]he fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts"; statements are therefore not admissible under Rule 804(b)(3) merely because they are "collateral" to statements against interest).  *Ciccarelli v. Gichner Systems Group*, 862 F. Supp. 1293 (M.D. Pa. 1992), illustrates the point.  In that case, the defendant employer sought to admit, as a statement against interest, an affidavit signed by a deceased former executive implicating himself and the plaintiffs in fraud.  *Id.* at 1296.  The court held that because statements about third parties lack the indicia of reliability on which Rule 804(b)(3) is based, they do not fall within the exception for statements against interest merely by being included in a sentence with self-inculpatory statements.  *See id.* at 1298-99 (explaining that in a sentence stating "Matthew, Derek, and I robbed Kenneth," the references to Matthew and Derek would need to be redacted).  Thus, the portions of the affidavit implicating the plaintiffs in the fraud were inadmissible.  *Id.* at 1300.

As in *Ciccarelli*, the evidence that Plaintiffs seek to admit contains allegedly self-inculpatory statements by Bayer employees that also contain "collateral" statements related to Dow and other competitors.  *See, e.g.*, Pls' Opp'n Br., Ex. C (Dkt. 127-4) at 2 ▊

4

occurred and that "Charles Churet of Dow, Jean-Pierre Dhanis of BASF, and Patrick Thomas of ICI/Huntsman" were also present).[2]  Admitting these statements would be contrary to the Supreme Court's directive that there is "no reason why collateral statements, even ones that are neutral to interest, should be treated any differently from other hearsay statements that are generally excluded." *Williamson*, 512 U.S. at 600.  Thus, even if statements by Bayer employees about their own conduct were against interest, and even if Plaintiffs could overcome the second layer of inadmissible hearsay, any statements about Dow or others would remain inadmissible, which leaves essentially nothing to admit.

> **B.     The "Residual" Hearsay Exception Does Not Apply.**

Plaintiffs' reliance on the "residual" hearsay exception in Rule 807 is likewise misplaced.  Rule 807 applies only where the statement at issue (1) has "circumstantial guarantees of trustworthiness" equivalent to those in Rules 803 and 804, (2) "is offered as evidence of a material fact," (3) "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts," and (4) "admitting it will best serve the purposes of [the Federal Rules of Evidence] and the interests of justice."  This residual exception is very limited:  it "is 'to be used only rarely, and in exceptional circumstances,' and is meant to 'apply only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present.'"  *United States v. Wright*, 363 F.3d 237, 245 (3d Cir. 2004) (quoting *United States v. Bailey,* 581 F.2d 341, 347 (3d Cir. 1978)); *see also Brown v. Philip Morris Inc.*, 228 F. Supp. 2d 506, 511-12 (D.N.J. 2002) ("a catch-all rule such as Rule 807 must be sparingly invoked, lest its potential breadth swallow the carefully crafted narrowness of the enumerated exceptions") (internal citation and quotation marks omitted).

---

[2] Of course, Section 1 of the Sherman Act does not prohibit pricing *discussions* among competitors; to the contrary it prohibits certain types of *agreements*.

5

Because Plaintiffs have not carried their burden of demonstrating that the statements at issue meet these conditions, those statements remain inadmissible hearsay.

### 1. There Are No "Circumstantial Guarantees of Trustworthiness."

A court's "assessment of the guarantees of trustworthiness relating to any statement is necessarily highly fact-specific." *Wright*, 363 F.3d at 246. This analysis should consider whether: (1) the declarant was known and named; (2) the statement was made under oath; (3) the declarant knew the statement was subject to cross-examination; (4) the statement was based on personal knowledge; (5) the declarant had motivation to lie; (6) the statement was corroborated; and (7) the declarant was qualified to make the assertion. *United States v. Wilson*, 281 F. App'x 96, 99 (3d Cir. 2008). Here, these factors weigh heavily against admission.

The Bayer employees' statements were neither made under oath nor subject to cross-examination. The statements were not recorded verbatim, but rather paraphrased (and then paraphrased again). In many places it is unclear who the declarant was and/or whether he or she had personal knowledge. *See, e.g.*, Pls' Opp'n Br., Ex. C (Dkt. 127-4) at 4 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Plaintiffs have not demonstrated that the declarants lacked motivation to lie.³ And, as Plaintiffs point out, at least one Bayer employee recanted his admissions after making them to Bayer's counsel, and the others "were reluctant and restrained"

---

³ Plaintiffs argue that the DOJ's Corporate Leniency Policy requires "truthful cooperation," and note that the information was provided "as part of an application for corporate leniency." Pls.' Opp'n Br. at 11 n. 6. But the policy also gave declarants a potential motive to lie, because to be eligible for leniency a corporation must admit "wrongdoing," and "all directors, officers, and employees of the corporation who admit their involvement in the illegal antitrust activity" receive leniency automatically. *See, e.g.*, *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1279 (11th Cir. 2009) (statements made during government interview were not admissible under Rule 807 because the declarant's "position as a target in a criminal investigation provided him ample motivation to implicate others (even falsely)"); *Wright*, 363 F.3d at 246 (testimony lacked trustworthiness where it was made while declarant knew he was under investigation).

in their statements.[4] Pls.' Opp'n Br. at 12; *see also United States v. Groce*, 999 F.2d 1189, 1191 (7th Cir. 1993) (statement was untrustworthy where declarant later recanted it); *United States v. Ashburn*, No. 11-303, 2015 WL 5098607, at \*45 (E.D.N.Y. Aug. 31, 2015) (recanted identification "lacked any circumstantial guarantee of trustworthiness").

Nor do the statements made by Mr. Proger to Plaintiffs' experts and/or counsel possess the circumstantial guarantees of trustworthiness necessary to make this an "exceptional circumstance" such that Rule 807 should apply. Again, the statements were not recorded verbatim, but rather paraphrased, nor were they made under oath: indeed they are no more than Mr. Proger's summary of hearsay statements about which he had no personal knowledge. *See, e.g., Wielgus v. Ryobi Tech., Inc.*, 893 F. Supp. 2d 920, 928 (N.D. Ill. 2012) (declining to allow expert to discuss accident reports made by declarants who lacked personal knowledge of the underlying incident). Such evidence is inherently untrustworthy. *See, e.g.*, *Barry v. Trustees of Int'l Ass'n of Full-Time Salaried Officers & Employees of Outside Local Unions & District Counsel's (Iron Workers) Pension Plan*, 467 F. Supp. 2d 91, 102 (D.D.C. 2006).

The plaintiff in *Barry* sought to admit under Rule 807 memoranda documenting attorney interviews with directors and employers of a former defendant that occurred as part of an internal investigation. The court held that the plaintiff had "failed to carry his burden of demonstrating that the [memos] qualify for the 'extremely narrow' exception embodied in Rule 807," because the fact that "the words used in the Memos are not the exact ones employed by the speakers . . .

---

[4] Plaintiffs' alleged "corroborating evidence" does not amount to the required "guarantees of trustworthiness" in the absence of any other factors weighing in favor of admissibility. *United States v. Manfredi*, No. 07-352, 2009 WL 3823230, at \*2 (W.D. Pa. Nov. 13, 2009) ("The trustworthiness of a statement should be analyzed by evaluating not only the facts corroborating the veracity of the statement, but also the circumstances in which the declarant made the statement and the incentive he had to speak truthfully or falsely." (quoting *Bailey*, 581 F.2d at 349)).

7

combined with the fact that the Memos contain multiple instances of hearsay-within-hearsay . . . undermine[s] any quantum of reliability that the factors identified by plaintiff may have conferred upon the Memos." *Id.* at 104.

This case is remarkably similar to *Barry*. The evidence Plaintiffs seek to admit contains multiple levels of hearsay and does not reflect actual words spoken by the Bayer witnesses or by Mr. Proger. Under the circumstances, the statements at issue lack the guarantees of trustworthiness necessary for the residual hearsay exception to apply.

### 2. The Evidence Is Not More Probative Than Any Other Evidence That Plaintiffs Could Obtain Through Reasonable Efforts.

In addition to containing multiple levels of hearsay and being highly unreliable, the documents and testimony related to Bayer's investigation allege only that pricing discussions took place between Dow and its competitors, not that any agreement was reached, and therefore have minimal probative value as to Plaintiffs' conspiracy claim. *See, e.g., In re Baby Food Antitrust Litig.*, 166 F. 3d at 117. Moreover, Plaintiffs allege that "numerous" examples of corroborating evidence exist, Pls.' Opp'n Br. at 14, and have done nothing to demonstrate that the evidence related to the Bayer investigation is "more probative" than other evidence. *See Navedo v. Primecare Med. Inc.*, No. 12-00888, 2014 WL 1451836, at *2 (M.D. Pa. April 14, 2014) (declining to admit highly probative but prejudicial evidence under Rule 807 where "there are other ways to introduce Decedent's condition to the jury"). Thus, Plaintiffs have not demonstrated that the evidence possesses the "high degrees of probativeness and necessity" required for admission under Rule 807. *Wright*, 363 F.3d at 245.

### 3. Admission Would Not Serve the Purposes of the Rules or the Interests of Justice.

The purposes of the Federal Rules of Evidence are "to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the

8

law of evidence to the end that the truth may be ascertained and proceedings justly determined." *Wezorek v. Allstate Ins. Co.*, 2007 WL 1816293, at *4 (E.D. Pa. June 22, 2007) (quoting Fed. R. Evid. 102). To this end, the rules favor live testimony over hearsay, and the purposes of the rules and the interests of justice are not served by admitting testimony that lacks trustworthiness. *Manfredi*, 2009 WL 3823230, at *4. Here, the proffered evidence is inherently untrustworthy for the reasons explained above, so its admission does not further the purposes of the rules of evidence or the interests of justice.

Contrary to Plaintiffs' assertion, this case is not analogous to *In re Ethylene Propylene Diene Monomer Antitrust Litigation*, 681 F. Supp. 2d 141 (D. Conn. 2010) ("*EPDM*"). For example, the interrogatory answers at issue in *EDPM* did not contain hearsay within hearsay, as the Bayer evidence does. In addition, the answers were made while the company was still a defendant in the actions and were verified. *Id.* at 151. Because interrogatory answers are treated as judicial admissions and can be used against a party during litigation, the court concluded that they must have been "answered with a special degree of care." *Id.* With these assurances as to the truthfulness of the answers, the court found that their admission furthered the interests of justice. But none of those assurances are present here.[5]

### III.  RULE 703 BARS DISCLOSURE OF THE MATERIALS AT ISSUE AS EXPERT RELIANCE MATERIALS.

Plaintiffs also argue that Dr. Marx should be permitted to disclose evidence related to the

---

[5] The *EPDM* court also held that the case presented "unusual circumstances" because the interrogatory answers had been authored by the company, but each of the individual employees with relevant knowledge had invoked the Fifth Amendment. 681 F. Supp. 2d at 152. Because the declarant was "available" but effectively rendered speechless, the court held that admission of the answers was in the interest of justice. No similar "unusual circumstances" exist here because there are Bayer witnesses with relevant knowledge who did not invoke the Fifth Amendment, and both sides have designated depositions from such witnesses to be played at trial. *See* Final Pretrial Order (Dkt. 84) § 5 at 4, 7, 15-17.

Bayer investigation to explain the bases for her opinions. Pls.' Opp'n at 16. But they acknowledge that Rule 703 provides that if the facts or data on which an expert relied would otherwise be inadmissible, "the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.

Here, as explained above, this evidence is inherently untrustworthy, and for that reason alone its probative value is negligible. Moreover, Plaintiffs do not and cannot say that such evidence was essential to her opinions, *i.e.* that they would have been different without it, or even that such evidence was a material basis for her opinions. To the contrary, they argue only that the totality of the evidence she reviewed supports her conclusion, and that the Bayer evidence was among the materials she reviewed.[6] Pls.' Opp'n Br. at 18-20. In these circumstances, the evidence has limited if any "probative value in helping the jury evaluate [her] opinion." Fed. R. Evid. 703.

At the same time, the evidence is overwhelmingly unfairly prejudicial. *See* Dow's Initial Br. at 8. Given its inflammatory yet inherently untrustworthy nature, a limiting instruction would not begin to cure the risk that a jury would use it for impermissible purposes. *See, e.g.*,

---

[6] The text of Dr. Marx's report does not cite her interview with Mr. Proger or any memoranda related to interviews with him. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Ex. A [Rule 26 Disclosure of Leslie M. Marx, Ph.D.] App'x C. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 7-11. Not surprisingly, the sections of the Raiff report on which Dr. Marx relied likewise did not rely upon information received from Bayer's counsel, as Dr. Raiff decided to exclude the years 1994-1998 from his model's benchmark period before ever speaking with Mr. Proger. *See* Dow's Initial Br. at 7-8. In fact, Plaintiffs instructed Dr. Raiff to *assume* a conspiracy was operational from 1994-2003. Dow's Initial Br., Ex. I (Dkt. 128-6) ¶ 1▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

*Williams v. Illinois*, 132 S. Ct. 2221, 2236-37 (2012) (noting an increased risk that a jury, as opposed to a judge, will take evidence as substantive proof rather than just as expert reliance material); Fed. R. Evid. 103(d) ("To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means."). For this reason, the evidence is both inadmissible under Rule 403 and precluded from disclosure under Rule 703.[7]

The remainder of Plaintiffs' response raises quibbles concerning legal issues as to which there can be no serious dispute. For example, Plaintiffs deny that Rule 703 establishes a presumption against disclosure, Pls.' Opp'n Br. at 16-17, even though the rule's commentary clearly states it "provides a *presumption against disclosure* to the jury of information used as the basis of an expert's opinion and not admissible for any substantive purpose, when that information is offered by the proponent of the expert." Fed. R. Evid. 703 advisory committee note (2000) (emphasis added).

Plaintiffs also fault Dow for "fail[ing] to recognize the importance" of *Williams*. Pls.' Opp'n Br. at 17. But that case primarily concerned the Confrontation Clause and did not break new ground on Rule 703 or alter its plain terms. The fact that other courts, in other cases involving different facts, found that the probative value of evidence "substantially outweighed" its prejudicial effect in no way implies that the evidence Plaintiffs seek to disclose in this case meets that high standard.[8] Indeed, it does not.[9]

---

[7] The commentary to Rule 703 makes clear that a limiting instruction is necessary if evidence is *admitted* under the rule. *See* Fed. R. Evid. 703 advisory committee note (2000). It does not suggest that a limiting instruction is sufficient to deal with situations where, as here, probative value is substantially outweighed by prejudicial effect.

[8] The court in *Williams* gave great weight to the fact that the evidence had been admitted in a bench trial rather than a jury trial because "it is presumed that the judge will understand the limited reason for the disclosure of the underlying inadmissible information and will not rely on that information for any improper purpose." 132 S. Ct. at 2234-35.

11

## **CONCLUSION**

For the foregoing reasons, as well as those set forth in Dow's initial brief, the Court should grant Dow's motion to exclude evidence relating to Bayer's internal investigation.

Respectfully submitted,

Dated: October 15, 2015  
Newark, New Jersey

s/ Lawrence S. Lustberg  
Lawrence S. Lustberg  
Daniel J. McGrady  
**GIBBONS P.C.**  
One Gateway Center  
Newark, NJ 07102  
Telephone: (973) 596-4500  
Facsimile: (973) 596-0545

David M. Bernick (*admitted pro hac vice*)  
**DECHERT LLP**  
1095 Avenue of the Americas  
New York, NY 10036  
Telephone: (212) 698-3500  
Fascimile: (212) 698-3599

*Attorneys for Defendant*  
*The Dow Chemical Company*

---

[9] Plaintiffs also claim that they should be permitted to introduce the evidence to impeach the credibility of Dow's experts. Pls.' Opp'n Br. at 22. Dow's experts did not rely on this evidence because it was irrelevant to the analyses they were performing and beyond the scope of their roles as experts. *See, e.g.* Ex. B [Economic Expert Report of Professor Kenneth G. Elzinga] at 9 ███████████████████████████████████████████████████████████; Pls.' Opp'n Br. Ex. Q (Dkt. 160-15) 560:16-16. Thus, the evidence is not only highly prejudicial, it is irrelevant as to Dow's expert's opinions and Plaintiffs should not be permitted to use it for cross-examination.

## **CERTIFICATE OF SERVICE**

On October 15, 2015, a copy of the foregoing was served on all counsel of record via ECF.

/s/ Daniel J. McGrady
Attorney for The Dow Chemical Company