

LAWRENCE S. LUSTBERG
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4731 Fax: (973) 639-6285
llustberg@gibbonslaw.com

December 1, 2015

**VIA ECF**

Honorable William J. Martini
United States District Judge
Martin Luther King, Jr. Federal Courthouse
50 Walnut Street, P.O. Box 999
Newark, New Jersey 07101-0999

> Re:  *In re Urethane Antitrust Litigation*,
>      Master Docket No. 08-5169 (WJM) (MF)

Dear Judge Martini:

    As Your Honor is aware, this firm, along with Dechert LLP, represents defendant The Dow Chemical Company ("defendant" or "Dow") in the above-referenced action. The Court has now received the parties' submissions in connection with Dow's Motion to Exclude the Expert Testimony of Plaintiffs' Damages Expert Dr. Leslie Marx. Additionally, counsel for the Plaintiffs has written the Court to provide a May 16, 2014 order from Judge Lungstrum, denying the portion of that motion which was based upon proceedings in the MDL and leaving for this Court's decision all issues arising under Rule 702.

    I write on behalf of Dow in anticipation that Your Honor may wish to discuss this Motion, among other matters, at the status conference set for December 22, 2015 at 11:00 am. As their volume alone reflects, the submissions grapple with a very complex statistical model and attendant issues that go to the viability of the case as a whole. For the reasons set forth below, and as we will amplify at the status conference, we would propose that the Court consider holding an evidentiary hearing on this matter, which hearing has the potential to focus and shorten the trial, as well as to assist the Court in deciding the motion. Indeed, it is for this reason that courts addressing Rule 702 issues relating to precisely these kinds of models often have decided to hold hearings (sometimes with the experts present) in order to learn the technical methods at issue and to help clarify the scientific and legal questions to be addressed. *See, e.g.*, *In re Linerboard Antitrust Litig.*, No. 10-md-01261, July 2, 2007 Hr'g Tr. (Dkt. No. 941) (E.D. Pa.).

    In this particular case, such a hearing is warranted not only by the complexity of the unique model sponsored by Plaintiffs' expert Dr. Marx – a model that is different from the one that was utilized in the class case[1] – but also because Dr. Marx is expected to proffer factual testimony that goes beyond the model itself and thereby substantially expands the scope of the trial. The model itself has two

---

[1] Specifically, Dr. Marx's model is different from the statistical model offered by Dr. John McClave in the class case. And these differences are not merely technical, *see, e.g.*, Dow's *Daubert* Brief at 34 (noting that Plaintiffs' experts did not conduct "hold out" testing to address reliability), but reflect the fundamental differences between a class case and a case brought by individuals. Both the claims and the defenses in a class case turn on aggregated evidence regarding market-wide behavior and impact; interactions with individual purchasers may be covered in the evidence, but the jury is not asked to decide them. In the trial of individual opt out claims like this one, the reverse is true. That is, in contrast to Dr. McClave's model in the class case, the Plaintiffs' model in this case must but in the end fails to address company-by-company negotiations with each of the individual plaintiffs.

GIBBONS P.C.

Honorable William J. Martini
December 1, 2015
Page 2

different stages, each of which give rise to fundamental methodological issues laid out fully in the *Daubert* briefing. In the first stage, the model is derived (or "estimated") using selected data relating to three "benchmark" products (TDI 80/20, polymeric MDI, and CFS polyols) and covering selected "benchmark" years. The resulting model is then run using data from the years of the alleged price fixing conspiracy in order to "predict" prices for those years, and any "variance" is then determined by comparing the prices that the model "predicts" for the alleged conspiracy years with the prices actually charged. *See* Attachment A (Diagram of Four Steps of Plaintiffs' Models from Dow's *Daubert* Brief, ECF No. 198, at 22). A second, equally complex and disputed stage of the model purports to find transaction-specific variances in pricing. *See* Dow's *Daubert* Brief at 11-12.

But the two-stage model does not include the alleged conspiracy. Indeed, Dr. Marx disclaims any opinion regarding liability. Notwithstanding this disclaimer, she pursues no less than three paths that breach the boundaries of the model itself and opine upon putative evidence of conspiratorial conduct, infer its causal impact on competition, and proceed to quantify damages. Thus, Dr. Marx (1) reviews evidence of conduct during a portion (1994-1998) of the alleged conspiracy period by way of selecting a benchmark period; (2) purports to rely upon her interaction with counsel for a former defendant, Bayer, including his recital of the outcome of his "investigation" for Bayer; and (3) infers from the model that the statistical "variance" is consistent with the "evidence of collusion as a whole." As to that evidence, she relies upon the factual recitations of an expert report done by her predecessor expert that runs 137 pages (229 pages with appendices), including 355 footnotes. All of these areas of "related" testimony are addressed in the pending *Daubert* motion and related motions *in limine*. *See* Dkt. Nos. 120, 127, 198.

The Plaintiffs' unique model in this case is complicated enough on its own. Absent substantive hearings in advance of trial, it would be exceedingly difficult to appreciate how the model will be presented, justified and deployed at trial, much less make Rule 702 rulings in real time as the trial unfolds. The risk is not only the burden that will be imposed on the Court during trial, but also the practicality of making rulings as we go along. In sum, Dr. Marx's proffer of factual testimony, which includes "evidence of collusion as a whole" as well as opinions going to liability adds layers of burden, complexity and trial time. Fully airing those issues in a pretrial hearing, at which the experts themselves can assist the Court to understand how the model works and address directly the issues raised in both the *Daubert* motions and related motions *in limine* is likely to mitigate and potentially even resolve these problems. Accordingly, Dow will suggest at our status conference that the Court schedule such hearings, and will be prepared to discuss potential dates therefor.

We hope that this letter is helpful to the Court and counsel in advance of our status conference. Thank you for your kind consideration and we look forward to meeting with Your Honor.

                                                   Respectfully submitted,

                                                   s/ Lawrence S. Lustberg
                                                   Lawrence S. Lustberg

cc:       Honorable Mark Falk, U.S.M.J. (*via* Regular Mail)
           All counsel of record (*via* ECF)

# **Attachment A**



See Dow's *Daubert* Br. (ECF No. 198) at 22.