UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE URETHANE ANTITRUST LITIGATION** | Civ. No. 2:08-5169 (WJM-MF)<br><br>**OPINION & ORDER** |

**WILLIAM J. MARTINI, U.S.D.J.:**

This is an antitrust action in which Plaintiffs accuse The Dow Chemical Company ("Dow") of colluding with other businesses in order to artificially inflate the prices of urethane chemicals. This matter comes before the Court on several motions *in limine* filed by both parties. The Court writes for the benefit of the parties and assumes familiarity with both the facts of the case and the issues presented in the instant motions.

**I. DISCUSSION**

The Court will now address twelve of the motions *in limine* filed in this action.[1]

**1. Dow's Motion *in Limine* to Preclude References to Other Anti-Trust Cases [ECF 114]**

Dow seeks to preclude admission of references to various categories of antitrust cases. **First** are references to other anti-trust cases involving entities other than Dow and industries other than the urethanes market. **Second** are references to a rubber chemicals cartel anti-trust case that did allegedly involve Dow, as well as alleged co-conspirator Bayer. **Third** are references to price-fixing raids on Bayer and subsequent investigations into the chemicals and urethanes industry.

Dow's motion will be **GRANTED IN PART**. With respect to the **first category** of references (anti-trust cases that do not involve urethanes or Dow), the Court will allow such testimony only if Dow challenges Dr. Marx by arguing that a cartel will exist only where price increases stick. If Dow opens that door, Dr. Marx is entitled to respond by referencing

---

[1] The parties have filed a total of 16 motion *in limine*. Two of those motions have been already decided. *See* ECF Nos. 224 & 229.

other anti-trust cases that, in her opinion, rebut Dow's assertion. However, the Court reserves the ability to limit the scope of such testimony if it becomes apparent that Dr. Marx's references will cause a mini-trial regarding other cartels that have nothing to do with this case. With respect the **second category**, Plaintiffs are prohibited from linking Dow to other price-fixing cases. The prejudice that would result from such testimony substantially outweighs any probative value. *See* FRE 403 (court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice).[2] Therefore, to the extent that Dr. Marx wants to describe price-fixing cases in a way that links those cases to Dow, those references will be precluded. With respect to the **third category**, the Court will allow references to the Bayer raids if Dow opens the door by accusing Dr. Marx of excluding 2004 conspiracy period solely in order to increase Plaintiffs' damages. If Dow opens the door, Dr. Marx can argue that she excluded 2004 from the conspiracy period because Bayer decided to withdraw from the urethane conspiracy in 2003 after a 2002 government raid. Dow cannot challenge Dr. Marx's decision to exclude 2004 and then expect the Court to prohibit Dr. Marx from explaining the rationale behind her decision. It will therefore be up to Dow to make a tactical decision as to whether to challenge Dr. Marx's alleged conspiracy period.

## 2. Dow's Motion *in Limine* Concerning Antitrust Compliance Policies [ECF 116]

Dow seeks to exclude evidence regarding its interpretation of the antitrust laws and its internal advice to employees on how to avoid conduct that could be misconstrued as a violation of those laws. The Court agrees with Dow's position.

Dow's motion will be **GRANTED**. This case turns on whether Dow violated antitrust laws. Thus, whether Dow employees believed they violated Dow's antitrust policies is irrelevant. FRE 401. It therefore also follows that the manner in which Dow interpreted its own antitrust policies is irrelevant. *See id*. Even if such evidence were relevant, it would be substantially be outweighed by prejudice because the testimony could confuse the jury on what the governing law was. *See* FRE 403. While Plaintiffs propose that any confusion can be cured an additional jury instruction, the Court finds that a barrage of evidence concerning internal antitrust policies (as opposed to antitrust law) will create prejudice too great to be cured by a limiting instruction.

## 3. Dow's Motion *in Limine* to Preclude Reference to the Urethane Class Action [ECF No. 118]

Plaintiffs do not plan to affirmatively raise the class case (or class verdict) during trial; however, they intend (1) to cross-examine Dr. Elzinga or Dr. Ugone with the verdict in the class trial, and (2) to have their own expert characterize the class verdict as a basis for her opinions. Notwithstanding Plaintiffs' representations, Dow's motion will be granted.

---

[2] Similarly, Plaintiffs will be excluded from introducing any evidence concerning government raids on Dow or Dow's alleged involvement in any other price-fixing conspiracies. Plaintiffs have not shown that such evidence is needed to bolster Stephanie Barbour's credibility, and the prejudicial effect would substantially outweigh any probative value.

Dow's motion will be **GRANTED**. While Dow's expert, Dr. Kenneth Elzinga, plans to testify that the economic evidence is inconsistent with the existence of a conspiracy, such testimony does not somehow "open the door" to Plaintiffs introducing the class verdict. There is no way of knowing why the jury rendered its verdict; indeed, it is possible that the jury agreed with Dr. Elzinga regarding the economic evidence, but nonetheless found that the non-economic evidence supported the finding of a conspiracy. Moreover, as the MDL Court noted, "the jury [in the class case] might have found a conspiracy limited in scope in such a way that it would not fall within the particular claim alleged by any particular direct-action plaintiff." MDL Court Order dated December 16, 2013, ECF No. 3111. And even assuming the class verdict was probative in that it may undermine Dr. Elzinga's testimony, any probative value would be substantially outweighed by unfair prejudice and jury confusion. *See Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1351 (3d Cir. 1975) ("The admission of a prior verdict creates the possibility that the jury will defer to the earlier result and thus will, effectively, decide a case on evidence not before it."). These determinations with respect to the cross-examination of Dr. Elzinga apply equally to the cross-examination of Dr. Ugone.

Dr. Marx will also not be permitted to testify regarding the class case. Under Federal Rule of Evidence 703, an expert can form his opinion by relying on facts that would otherwise be inadmissible. However, if the expert plans to introduce those facts to the jury, their probative value in helping the jury evaluate the opinion must substantially outweigh their prejudicial effect. With respect to Dr. Marx's testimony, it is undisputed that Dr. Marx's report does not reference the class verdict. The Court is therefore skeptical of the class verdict having any probative value with respect to Dr. Marx's testimony. Consequently, the requirements of FRE 703 have not been met.

**4. Dow's Motion *in Limine* to Preclude References to Former Defendants as "Defendants" [ECF 120]**

The following entities were formerly named as defendants, but have since settled: BASF SE, BASF Corporation, BASF Coordination Center Comm. V., Bayer AG, Huntsman International LLC, Lyondell Chemical Company, Jeanne-Pierre Dhanis, and Uwe Hartwig. Dow has moved to preclude Plaintiffs from referring to those entities as "defendants" or "co-defendants." Dow recognizes that the deposition video testimony will sometimes refer to these entities as defendants, and does not argue that the videotapes should be edited to remove those references. Instead, Dow proposes that a jury instruction be used to correct any confusion regarding references to defendants in the video deposition testimony. However, Dow argues that, with the exception of the video deposition testimony, Plaintiffs should be precluded from referring to those entities as defendants or co-defendants.

Dow's motion *in limine* will be **GRANTED**. Referring to former defendants as "defendants" or "co-defendants" would prejudice Dow because it would potentially cause the

jury to infer that the former defendants were already held liable. It also may lead the jury to conclude that the former defendants entered into settlements with plaintiffs and therefore Dow should be required to pay too. Moreover, Plaintiffs fail to demonstrate how using the terms "defendants" or "co-defendants" would have any probative value whatsoever. With respect to the use of those terms in video deposition testimony, the Court will provide a jury instruction in order to clear any confusion.

### 5. Dow's Motion *in Limine* to Preclude Plaintiffs' Expert from Offering Opinions Outside Her Expertise [ECF 121]

The question presented by this motion is whether Plaintiffs' experts may offer opinions concerning the credibility of witnesses or whether a particular event actually occurred. According to Dow, Dr. Raiff testified in a deposition that in reaching his damages estimates, he relied on his own evaluation of other witness testimony, including his assessments regarding credibility. Also according to Dow, Dr. Marx later testified that she concurred with Dr. Raiff's assessment of the evidence. Consequently, Dow contends that Dr. Marx should be precluded from offering opinions concerning the credibility of witnesses or whether a particular event actually occurred. Plaintiffs, however, assert that Dr. Marx does not plan to offer any testimony regarding those issues.

This motion will be **DENIED WITHOUT PREJUDICE**. Dr. Marx will be a live witness at trial. If Plaintiffs' counsel begins to veer into areas concerning witness credibility or whether an event actually occurred, Dow will be permitted to object on the grounds that such testimony is inadmissible. If Dr. Marx's testimony does not touch upon those areas, no objection will be necessary.

### 6. Dow's Motion *in Limine* to Exclude Evidence Relating to Allegations of Document Destruction [ECF 125]

The Court is faced with determining whether Plaintiffs should be precluded from introducing evidence related to allegations that Dow destroyed documents revealing conspiratorial activity. This issue concerns documents belonging to three former Dow employees: Stephanie Barbour, David Fischer, and Bob Wood.

Because of the fact-specific nature of this motion, the Court will provide a brief background. Stephanie Barbour was terminated from Dow in 2004. Shortly thereafter, Barbour alleged that she was terminated in retaliation for reporting wrongdoing on the part of her supervisor, David Fischer. Because of her claims of retaliation, Dow issued a litigation hold on Barbour's documents. Dow contends that when her allegations were being investigated in 2004, Barbour did not accuse any Dow employees of engaging in price-fixing. However, in 2010 Barbour testified that she was aware of price-fixing at Dow and that she took notes regarding price-fixing while she was a Dow employee. Plaintiffs never received those notes and therefore contend that Dow destroyed them in order to cover-up the

conspiracy.  Barbour's deposition was again taken in 2013.  According to Dow, in her 2013 deposition, Barbour admitted that her notes may have been lost or deleted due to a technical malfunction.  Consequently, Dow argues, there is no basis for any conclusion that Dow destroyed her notes.

In addition to evidence concerning Barbour, Plaintiffs argue that they should be able to introduce evidence concerning the destruction of documents belonging to Dow employees David Fischer and Bob Wood.  Fischer served as Barbour's supervisor at Dow, while Wood was supervisor to Fischer.  Dow explains that, consistent with Dow's document retention policies, Fischer and Wood's documents were destroyed 35 days after Fischer and Wood were terminated in 2004.  Plaintiffs maintain that they will not introduce this evidence for spoliation purposes.  Rather, this evidence will support Plaintiffs' allegations that Dow engaged in a cover up of the conspiracy.

Dow's motion will be **GRANTED IN PART AND DENIED IN PART**:  the proposed testimony from Barbour, Fischer and Eberhart will be ruled admissible, while the proposed testimony from Wood will be ruled inadmissible.  Acts of concealment, including document destruction, are relevant for determining whether a conspiracy existed. *United States v. Smith*, 294 F.3d 473, 479 (3d Cir. 2002).  Barbour has testified that as a Dow employee she took notes concerning price-fixing activities at Dow.  Moreover, Barbour at one point testified that the relevant notes were still on her work computer the day she left Dow.  Finally, Dow admits that it retained Barbour's documents as part of a litigation hold.  Taken together, there is a plausible theory that the price-fixing documents should have still been on her computer after she departed.  During cross-examination, Dow of course may seek to undermine Barbour's testimony by testing her recollection or pointing to what she stated on the record in 2013.  But this does not preclude Plaintiffs from introducing her testimony.  Similarly, Plaintiffs have presented evidence showing that Dow was looking into allegations that Fischer engaged in improper activities with competitors.  Dow's investigation into Fischer occurred against the backdrop of government investigations concerning price-fixing in the chemicals market.  Consistent with this view, testimony from Rule 30(b)(6) witness Arthur Eberhart regarding Dow's document retention policies will also be admissible.  However, Plaintiffs have not sufficiently demonstrated that Fischer's supervisor, Bob Wood, could have been in possession of documents concerning price-fixing.  Therefore, Plaintiffs will not be allowed to introduce document destruction evidence with respect to Bob Wood.  To be clear, Plaintiffs are not permitted to introduce this evidence in order to support any spoliation arguments.  Instead, they can seek to use such evidence to support the allegation that Dow engaged in a cover-up of the conspiracy.[3]

---

[3] Plaintiffs have consented to withdrawing certain portions of Ms. Barbour's testimony.  *See* Pls. Opp. at 5 n. 5, ECF No 157.  Notwithstanding the Court's decision, Plaintiffs will be held to that representation.

**7. Dow's Motion *in Limine* to Exclude Evidence Related to Bayer's Internal Investigation [ECF 127]**

The issue here is whether Plaintiffs should be permitted to introduce evidence concerning Bayer's internal investigation into alleged price-fixing discussions that occurred between Bayer and Dow. Specifically, the issue is whether such evidence should (1) be admissible for its truth; or (2) be admissible as material on which Plaintiffs' experts relied.

Because the issues presented by this motion are fact-specific, the Court will provide a brief background. Bayer is a urethane producer that settled with Plaintiffs out of court. As part of the settlement agreement, Bayer agreed to have its counsel provide Plaintiffs with information regarding price-fixing discussions that allegedly occurred between Bayer and Dow. The Bayer employees who relayed the information to Bayer's counsel have since plead the Fifth Amendment. The evidence can be broken into two categories: (1) testimony from Dr. Marx regarding conversations she had with Bayer's counsel; and (2) documents created by Dr. Marx, Dr. Raiff (Plaintiffs' former expert), and Plaintiffs' counsel, concerning conversations they had with Bayer's counsel. Plaintiffs argue that despite involving multiple layers of hearsay, the evidence should be admissible for its truth because (1) it falls within the statement-against-interest exception; and/or (2) it falls within the "residual" hearsay exception. Plaintiffs further argue that even if the evidence is inadmissible for its truth, it should be admissible as evidence that Dr. Marx relied upon when forming her opinion.

Dow's motion will be **GRANTED IN PART**. The Court concludes that the evidence concerning Bayer's investigation is inadmissible for its truth. However, the Court will reserve on whether it is admissible as evidence upon which Dr. Marx relied when forming her opinion. The evidence will not be admitted for its truth because it is inadmissible hearsay not subject to any hearsay exceptions. First, the statements made by Bayer's counsel were not statements against interest. *See* FRE 804. Instead Bayer agreed to provide Plaintiffs with that information in connection with a settlement agreement. *American Auto Accessories, Inc. v. Fishman*, 979 F. Supp. 706, 707 (N.D. Ill. 1997) (statement-against-interest exception inapplicable where statements were made in connection with settlement agreement and defendants were seeking to "curry favor" with plaintiffs). Nor does the "residual" hearsay exception apply. The residual hearsay exception is to be used only in exceptional circumstances. *Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 112 (3d Cir. 2001). Additionally, it is to be applied only where the offered testimony contains circumstantial guarantees of trustworthiness. *See* FRE 807. Here, the evidence is not particularly trustworthy because it does not involve direct statements made by Bayer employees; rather, it consists solely of notes and summaries prepared by Plaintiffs and their experts. *Barry v. Trustees of Int'l Ass'n of Full-Time Salaried Officers & Employees of Outside Local Unions & District Counsel's (Iron Workers) Pension Plan*, 467 F.Supp. 2d 91, 102 (D.D.C. 2006).

The Court will reserve on whether Dr. Marx will be permitted to testify as to how she relied on conversations with Bayer when forming her expert opinion. Whether Dr. Marx may refer to those conversations will depend on a number of factors that are presently unknown. For example, Dow may open the door to such testimony if it challenges Dr. Marx's setting of the benchmark and conspiracy periods for her regression models.[4]

## 8. Plaintiffs' Motion *in Limine* to Preclude Evidence and Argument Related to Fifth Amendment Invocations [ECF 95]

Plaintiffs seek to preclude Dow from introducing evidence related to Plaintiffs' employees' invocation of their Fifth Amendment rights at depositions. Specifically, certain Carpenter, Vitafoam, and Woodbridge employees invoked their Fifth Amendment right not to answer any questions at their depositions, including questions about their employers' allegedly anticompetitive conduct in the downstream foam market.

**First**, the Carpenter employees later revoked their Fifth Amendment invocations and answered questions at subsequent depositions. Dow did not designate for use at trial any of the Carpenter employees' deposition testimony at issue. Dow now seeks to introduce the later-revoked Fifth Amendment invocations as impeachment evidence against the Carpenter trial witnesses. **Second**, Plaintiffs presented, pursuant to Rule 30(b)(6), other Vitafoam and Woodbridge corporate designees to answer questions on the deposition topics. The Vitafoam and Woodbridge witnesses are not on either party's witness list, but Dow now requests a jury instruction explaining that Dow was denied the opportunity to gather evidence relevant to its defense because of the Vitafoam and Woodbridge employees' Fifth Amendment invocations.

The Court will **GRANT** Plaintiffs' motion. **First**, any "potential probative value of [the Carpenter employees'] invocation of the Fifth Amendment is further reduced by the fact that [they] subsequently answered all of the questions," and "the potential prejudice . . . is high," such that it substantially outweighs any probative value. *See Harrell v. DCS Equipment Leasing Corp.*, 951 F.2d 1453, 1464-65 (5th Cir. 1992); *see also* FRE 403 (court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice). **Second**, during discovery, Dow did not challenge the adequacy of the Rule 30(b)(6) designations as a substitute for Vitafoam and Woodbridge employees' testimonies. And the MDL Court ruled that Dow had received all the discovery it was due. Dow may not now argue for a jury instruction to the contrary. Lastly, the Court has already precluded Dow from introducing evidence related to Plaintiffs' conduct in the downstream market; arguably, evidence of the Fifth Amendment invocations fall within the scope of that order.

---

[4] Plaintiffs have also indicated that Dr. Marx may refer to her conversations with Bayer's counsel when explaining why she attributes the variances detected by her models to the existence of a conspiracy. However, the Court has also reserved on whether Dr. Marx may attribute the variances to any particular cause. *See* ECF No. 229.

9. **Plaintiffs' Motion *in Limine* to Preclude Evidence and Argument Relating to the DOJ Investigation and Result [ECF 97]**

   Plaintiffs move to preclude Dow from introducing evidence relating to the DOJ's 2005 criminal investigation into Dow's pricing conduct in the urethane market, and the DOJ's ultimate decision not to prosecute Dow. Plaintiffs argue that the evidence should be categorically excluded because: (1) that fact that the DOJ chose not to prosecute Dow is not relevant to the issue of whether Dow actually committed antitrust violations; and (2) the evidence is unfairly prejudicial because it would tempt the jury to conclude that Dow is innocent in this case. Dow opposes, arguing that it seeks to introduce the evidence to impeach certain witnesses, including Lawrence Stern, the former head of Bayer, who received prosecutorial immunity in exchange for cooperating with the DOJ.

   Plaintiffs' motion *in limine* will be **GRANTED IN PART AND DENIED IN PART**. Dow is not permitted to present evidence of the DOJ's investigation or its result as part of its case-in-chief, as the risk of prejudice substantially outweighs any probative value. *See Am. Home Assurance Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321, 325 (3d Cir. 1985) (stating that the "higher burden of persuasion" in a criminal case makes "evidence of non-prosecution . . . of very limited probative value" in a subsequent civil case, and such evidence is "highly prejudicial" if it relates to a principal issue in the civil case.). However, to the extent that Dow wishes to introduce impeachment evidence of an agreement between Stern and the government that resulted in Stern's prosecutorial immunity (insofar as it does not contain references to the DOJ's investigation into Dow's conduct), Dow may do so. *See United States v. Murray*, 468 F. App'x 104, 107–08 (3d. Cir. 2012) (stating that immunity agreements properly "inform the jury's assessment of witness credibility and bias."). However, the Court advises Plaintiffs that, should they reference the DOJ investigation at trial, they could potentially open the door to the Court permitting Dow to offer evidence regarding said investigation.

10. **Plaintiffs' Motion *in Limine* to Preclude Testimony that Violates the MDL Court's Discovery Order [ECF 99]**

    Plaintiffs seek to preclude Dow from introducing portions of the deposition testimonies of former Dow attorneys Lynn Schefsky and Tom McCormick that, according to Plaintiffs, "exceed the scope" of discovery permitted by the MDL Court's July 2013 discovery order.

    As described in more detail in the portion of this Opinion and Order addressing Dow's Motion to Exclude Evidence Relating to Allegations of Document Destruction, Stephanie Barbour was terminated from Dow in 2004. Barbour alleged that she was terminated in retaliation for reporting wrongdoing on the part of her supervisor, David Fischer, to Lynn Schefsky. Dow subsequently directed Tom McCormick to conduct an internal investigation into Barbour's claims ("Dow's 2004 investigation"). During Barbour's 2010 deposition, she testified that she was aware of price-fixing at Dow and that she took notes regarding price-

fixing while she was a Dow employee. In July 2013, after the class action trial had concluded, the MDL Court modified a scheduling order to allow Dow to conduct new discovery regarding Dow's 2004 investigation. The MDL Court reasoned that good cause existed to reopen discovery because Plaintiffs had indicated an intent to pursue two new theories at trial: (1) Dow's destruction of Barbour's notes; (2) Dow's failure to investigate Barbour's antitrust allegations. The multi-district litigation court ruled that limited discovery could be conducted as to Dow's 2004 investigation, but did not "set stringent limits on the means and manner." The court directed the parties to file a motion if either side felt the other was abusing the limited extension of the discovery deadline. Neither party did so. Plaintiffs now argue that Dow violated the July 2013 discovery order by delving into topics beyond the scope of the discovery order (such as Dow's antitrust compliance program generally and Barbour's previous reports of antitrust violations) and, therefore, Dow should be precluded from using portions of the Schefsky and McCormick depositions at trial.

Plaintiffs' motion *in limine* will be **DENIED**. The challenged deposition testimony is well within the scope of discovery contemplated by the MDL Court in its July 2013 order: the testimony directly relates to Dow's 2004 investigation into Barbour's antitrust allegations. Moreover, if Plaintiffs believed that Dow's deposition designations violated the July 2013 discovery order, they should have filed a motion with the MDL Court at the time, as prescribed by the July 2013 order.

11. **Plaintiffs' Motion *in Limine* to Preclude Reference to How Plaintiffs Became Involved in the Case, Plaintiffs' Knowledge of the Litigation or the Case Being Lawyer Driven [ECF 103]**

Plaintiffs seek to preclude Dow from introducing evidence related to: **(1)** the manner in which Plaintiffs became involved in this litigation; **(2)** Plaintiffs' knowledge of the details of the lawsuit itself; and **(3)** this case being "lawyer-driven" by Plaintiffs' counsel.

Plaintiffs' motion *in limine* will be **GRANTED**. First, the evidence is irrelevant. *See* FRE 401. How Plaintiffs became involved in the litigation, the extent of Plaintiffs' employees' knowledge of the details of Dow's alleged price-fixing conspiracy, and who "drove" the litigation do not tend to prove or disprove whether Dow engaged in conduct that violated the Sherman Act. Second, such evidence is prejudicial: it carries a great risk that the jury will become distracted from the key issues in the case and decide the case on improper grounds (such as a sense that Plaintiffs were manipulated into filing suit by lawyers looking to profit from a big class action lawsuit). *See* FRE 403.

12. **Plaintiffs' Motion *in Limine* to Preclude Evidence Regarding Plaintiffs' Financial Condition [ECF 105]**

Plaintiffs seek to preclude Dow from introducing evidence regarding Plaintiffs' revenues, assets, profits (derived from their sales in the downstream foam market), or net worth. Plaintiffs

argue that this evidence is not relevant and prejudicial. Dow argues that profitability is relevant to determining Plaintiffs' injury under Section 4 of the Clayton Act.

Plaintiffs' motion *in limine* will be **GRANTED**. First, evidence of Plaintiffs' financial position is irrelevant to the question of whether Dow violated antitrust laws. *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968) (noting "as long as the seller continues to charge the illegal price, he takes from the buyer more than the law allows" and "whatever price the buyer sells, the price he pays the seller remains illegally high"). Second, such evidence carries a substantial risk of unfair prejudice: the jury may conclude that Plaintiffs don't really "need" the recovery because the companies are profitable. *See* FRE 403.

## II.   CONCLUSION

Consistent with the above determinations, **IT IS** on this 8th day of February 2016, hereby **ORDERED** that

1. Dow's Motion *in Limine* to Preclude References to Other Anti-Trust Cases [ECF 114] is **GRANTED IN PART**, with Dr. Marx retaining the right to testify regarding anti-trust cases/investigations not involving Dow in the event that Dow challenges her testimony by (1) arguing that a conspiracy will exist only if prices stick; and (2) challenging her decision to exclude 2004 from the conspiracy period.

2. Dow's Motion *in Limine* Concerning Antitrust Compliance Policies [ECF 116] is **GRANTED**.

3. Dow's Motion *in Limine* to Preclude Reference to the Urethane Class Action [ECF No. 118] is **GRANTED**.

4. Dow's Motion *in Limine* to Preclude References to Former Defendants as "Defendants" [ECF 120] is **GRANTED**.

5. Dow's Motion *in Limine* to Preclude Plaintiffs' Expert from Offering Opinions Outside Her Expertise [ECF 121] is **DENIED WITHOUT PREJUDICE**, with Dow reserving the right to re-raise its objection during Dr. Marx's testimony

6. Dow's Motion *in Limine* to Exclude Evidence Relating to Allegations of Document Destruction [ECF 125] is **GRANTED IN PART AND DENIED IN PART**.

7. Dow's Motion *in Limine* to Exclude Evidence Related to Bayer's Internal Investigation [ECF 127] is **GRANTED IN PART**, with the Court reserving on whether the evidence is admissible as material relied upon by Dr. Marx.

8. Plaintiffs' Motion *in Limine* to Preclude Evidence and Argument Related to Fifth

Amendment Invocations [ECF 95] is **GRANTED**.

9. Plaintiffs' Motion *in Limine* to Preclude Evidence and Argument Relating to the DOJ Investigation and Result [ECF 97] is **GRANTED IN PART AND DENIED IN PART**, with the Court reserving on whether the Court will permit Dow to offer evidence regarding the DOJ investigation, should Plaintiffs reference said investigation at trial.

10. Plaintiffs' Motion *in Limine* to Preclude Testimony that Violates the MDL Court's Discovery Order [ECF 99] is **DENIED**.

11. Plaintiffs' Motion *in Limine* to Preclude Reference to How Plaintiffs Became Involved in the Case, Plaintiffs' Knowledge of the Litigation or the Case Being Lawyer Driven [ECF 103] is **GRANTED**.

12. Plaintiffs' Motion *in Limine* to Preclude Evidence Regarding Plaintiffs' Financial Condition [ECF 105] is **GRANTED.**

        /s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**