UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE URETHANE ANTITRUST LITIGATION<br><br>This Document Relates to:  All Actions | Civil Action No. 08-5169 (WJM)(MF)<br><br>**PLAINTIFFS' OBJECTIONS TO**<br>**JUDGE PISANO'S FINDINGS** |

Plaintiffs hereby make the following objection(s) to Judge Pisano's findings:

**I.   BOB LAWRENCE'S TESTIMONY REGARDING EXHIBIT PX-473, AND THE EXHIBIT ITSELF, ARE ADMISSIBLE**

On February 19, 2016, Judge Pisano ruled that certain testimony from the deposition of Bob Lawrence, a BASF executive who was involved in the price-fixing conspiracy, was inadmissible on the grounds of lack of personal knowledge and lack of foundation.[1]  The testimony, found on pages 191-201 of Mr. Lawrence's October 28, 2010 deposition, relates to a document, PX-473, that Mr. Lawrence received in the course of his duties at BASF.

PX-473 is a telefax dated October 4, 1995, written by Jean-Pierre Dhanis, the head of BASF's global polyurethanes business in Brussels.  In it, Mr. Dhanis described to two U.S. BASF executives, Robert Godwin and Mr. Lawrence, a proposed "scheme of cooperation" in the "PU [polyurethane]" business, and identified two "models" for future cooperation among producers.  The telefax uses the colors "Blue" (Bayer), "Amber" (ARCO), "Orange" (Olin), and "Scarlett" (Shell) as code names for certain urethanes manufacturers.  The document also sets forth certain "basic assumptions" regarding the urethane chemicals business and its connection to

---

[1]   The transcript of the proceedings before Judge Pisano on February 19, 2016 is attached hereto as Exhibit A.  The relevant discussion and Judge Pisano's ruling can be found at pages 50-62.  The marked transcript of the deposition of Bob Lawrence that was provided to Judge Pisano with the parties' designations and objections is attached hereto as Exhibit B.  The document at issue, PX-473, is attached hereto as Exhibit C.

the U.S., and encourages the recipients of the document to discuss the proposed cooperation strategy with two of the color-coded entities. On the face of this document, it is clear that Mr. Dhanis is proposing collusion with other urethane chemicals suppliers. The parties agree that PX-473 is authentic, that it was produced from BASF's files, and that it falls within the business record exception to the hearsay rule.

Plaintiffs' counsel asked Mr. Lawrence about the document at deposition. Mr. Lawrence claimed a lack of current recollection regarding the document: "I did not recall this memo yesterday. I do not recall it now, and I do not know who Orange, Scarlet, and Blue refer to." Lawrence Dep. Tr., 192:18-20. However, he did not deny receiving the document, nor did he disavow having once had personal knowledge regarding its contents. *Id.* at 193:6-7; 197:15-198:7 (admitting that he "may have known at the time" who the colors referred to, clarifying that his testimony was that he did "not remember receiving this document," not that he did not receive it, and that "If I received this document, I would have, in all probability, known what they -- who they represented, but I don't remember").[2]

Dow objected to the admissibility of Mr. Lawrence's testimony on two grounds: "lack of personal knowledge" and "foundation." Judge Pisano sustained Dow's objections to Mr. Lawrence's testimony about the document, but also noted that the admissibility of the document itself "is a different issue all together," and that he believed the document was admissible in light of the parties' agreement that it was an authentic business record – although

---

[2] Plaintiffs did not uncover the document until after they took Mr. Dhanis' deposition, and so they did not have an opportunity to examine Mr. Dhanis about it. After Mr. Lawrence's deposition, Plaintiffs asked the Rule 30(b)(6) witness designated by BASF about the document, but that witness claimed no knowledge of the document.

acknowledging that the document's admissibility was outside his mandate, and that therefore his view that the document was admissible constituted a "gratuitous advisory opinion."

Plaintiffs object to Judge Pisano's ruling that Mr. Lawrence's testimony regarding PX-473 is inadmissible. In order to better understand why the Lawrence testimony should be admitted, it is useful to first analyze why the document to which the testimony refers is admissible. Dow objects to the admission of PX-473 on the basis of Fed. R. Evid. 402, 403, 602, 703 and 802. None of these Rules provide a valid basis for exclusion.

First, the document clearly satisfies the relevance standard set forth in Rules 401 and 402. Under the Federal Rules, evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. Plaintiffs allege that Dow and its alleged co-conspirators such as BASF entered into a conspiracy to fix the price of urethanes, and fraudulently concealed their conspiracy from Plaintiffs. The relevance of PX-473 – which reveals that BASF executives were discussing a "scheme of cooperation" among competitors whose identities were concealed by code names – is therefore beyond serious dispute.

Dow's Rule 403 objection to the document is also without merit. "'Evidence should be excluded under Rule 403 only sparingly since the evidence excluded is concededly probative.'" *Spain v. Gallegos*, 26 F.3d 439, 453 (3d Cir. 1994) (citation omitted). Rule 403 allows a court to exclude relevant evidence only if its probative value is substantially outweighed by *unfair* prejudice. *Unfair* prejudice does not mean that the evidence is damaging to a party's position, it means that the evidence would risk causing the jury to decide the case on an *improper* basis. *See United States v. Cross*, 308 F.3d 308, 324 n.23 (3d Cir. 2002); *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980); *see also Ansell v. Green Acres Contr. Co.*, 347 F.3d 515, 525 (3d Cir. 2003)

("'[P]rejudice does not simply mean damage to the opponent's cause. If it did, most relevant evidence would be deemed prejudicial.'" (citation omitted)). To be sure, PX-473 is damaging to Dow's position that there was no price-fixing conspiracy, but the fact that it tends to prove the existence of such a conspiracy is not unfairly prejudicial, in that it does not risk a finding against Dow on an improper basis. Moreover, the probative value of the exhibit is very great, and far outweighs any theoretical potential for unfair prejudice. Thus, there is no basis for exclusion under Rule 403.

Dow's Rule 602 objection to the document makes no sense. Rule 602 allows a court to exclude testimony unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter about which the witness is testifying. It has no application to the admissibility of PX-473, which is not testimony, but a business record prepared in the ordinary course of business at BASF by a person (Dhanis) with knowledge of those matters.[3]

Similarly, Dow's reliance on Rule 703 as a basis for objecting to the admission of PX-473 makes no sense. Rule 703 relates to the admissibility of expert testimony, not to the admission of a business record like PX-473.

Finally, Dow's objection to the document based on Rule 802 (hearsay) is invalid because the parties have stipulated that PX-473 fits within the hearsay exception for business records under Rule 803(6). The document also is admissible as a statement of a co-conspirator.

Thus, because none of Dow's objections to PX-473 is valid, the document should be admitted into evidence. Given that PX-473 is admissible, Dow's objections to the admission of

---

[3] Attached hereto as Exhibit D is a declaration from BASF's record custodian setting forth these criteria for PX-473, which was Ex. 5691 to the deposition of Bob Lawrence and Ex. 7078 to the BASF 30(b)(6) deposition of Ken Lane (see Schedule A-1 to the Declaration at page 4). Based on the foregoing, Dow has stipulated that PX-473 meets the criteria of a business record under Fed. R. Evid. 803(6).

4

Mr. Lawrence's deposition testimony about PX-473 on the basis of lack of personal knowledge and foundation should have been overruled.

Rule 602 states, in relevant part: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Here, the "matter" about which Mr. Lawrence is testifying is whether or not he recalls PX-473 – a matter that is within Mr. Lawrence's personal knowledge. Notably, Mr. Lawrence does not testify that he never received the document, only that he does not remember it. The fact that Mr. Lawrence claims not to recall a highly incriminating document from his superior, Mr. Dhanis, proposing a scheme of cooperation with competitors identified by code names is probative in and of itself. It is remarkable that such a document does not stand out in Mr. Lawrence's memory. The jury may also consider Mr. Lawrence's purported lack of recollection in assessing his credibility.

On the other hand, if Dow's interpretation of Rule 602 were correct, a witness' testimony that he does not remember something would always be inadmissible, even where (as here) the witness's lack of recollection is relevant to the case, or undermines the witness's credibility. This is not the law. *See Bennett v. Nucor Corp.*, 656 F.3d 802, 811-12 (8th Cir. 2011) (affirming trial court ruling admitting testimony that witness had no knowledge of document, over objections based on Rule 403 and the hearsay rule, because the witness's "apparent lack of knowledge" was highly relevant to plaintiff's claim); *In re Princeton Office Park, L.P.*, 504 B.R. 382, 390-91 (Btcy., D.N.J. 2014) (witness's purported lack of personal knowledge was relevant to his credibility), *aff'd*, 2015 WL 420171 (D.N.J. Jan. 30, 2015).

Dow's "foundation" objection to Mr. Lawrence's testimony is not explained, but appears to be substantially the same as its "personal knowledge" objection. As explained above, PX-473

5

is an authentic, relevant and admissible BASF business record on which Mr. Lawrence was cc'd, and Mr. Lawrence does not dispute that he received the document. Therefore, there is sufficient foundation for Mr. Lawrence to testify as to whether or not he remembers the document.

The real reason for Dow's effort to exclude Mr. Lawrence's testimony is Dow's erroneous position that a document that is authentic, relevant, and not barred by the hearsay rule, must be "sponsored" or "touched" by a particular witness in order to be admissible into evidence. There is no basis under the Federal Rules for Dow's purported sponsorship requirement. To be sure, if there were doubt as to the authenticity or source of a document, testimony might well be needed as a prerequisite to admissibility – but when both parties agree that a relevant document is authentic and a business record, there is no basis for requiring that a witness "sponsor" or "touch" the document to make it admissible. Thus, even if the Court were to conclude that Mr. Lawrence's testimony regarding the document is not admissible, the Court should rule that PX-473 itself is admissible, regardless of whether it will be "touched" by a witness, and allow Plaintiffs to refer to it in their opening statement.

## II. LARRY STERN'S OPINION THAT HE NEVER REACHED AN UNLAWFUL "AGREEMENT" TO FIX PRICES IS INADMISSIBLE

On February 29, 2016, Judge Pisano overruled Plaintiffs' objections to certain testimony from the deposition of Larry Stern, the head of Bayer's NAFTA division.[4] Plaintiffs objected on the grounds of improper lay opinion (Rule 701) and unfair prejudice (Rule 403) to Dow's questions asking Mr. Stern to opine as to whether he or anyone else at Bayer reached a price-fixing agreement in violation of the Sherman Act.

---

[4] Judge Pisano's ruling to which Plaintiffs object is set forth at pages 7-8 of the transcript of the proceedings on February 29, 2016 (attached hereto as Exhibit E). The transcript of the deposition of Larry Stern that the parties provided to Judge Pisano is attached as Exhibit F. Judge Pisano's ruling applies to Plaintiffs' objections to Dow's counter-designations at pages 215:11-219:12, 289:9-13, 397:18-21, 547:22-548:2, 688:8-15, 761:13-19.

Neither party objects to Mr. Stern's testimony regarding his perceptions and impressions of what occurred during and as a result of his pricing discussions with Bayer's competitors. For example, neither party objects to Mr. Stern's testimony that he left certain meetings with the impression that Bayer's competitors would attempt to raise prices, and that such discussions strengthened his belief that price increases would at least partially stick. *See, e.g.*, Stern Dep. Tr. 83:2-7, 84:16-85:4, 90:3-11. Dow has similarly counter-designated extensive portions of its cross-examination of Mr. Stern in which defendants sought to challenge Mr. Stern's credibility and the reliability of his beliefs. Plaintiffs' objections pertain only to the deposition excerpts in which defense counsel asked Mr. Stern a series of questions calling for Mr. Stern to offer an opinion on the ultimate legal issue – the existence of a price-fixing agreement. For example, Dow's cross-examination included the following questions:

> Q. Mr. Stern, you . . . described in the testimony you gave in response to [class counsel's] questions some discussions with competitors that occurred at various locations, right?
>
> A. That's correct, sir.
>
> Q. I want to ask you about agreements. During the time that you were at Bayer, did you ever agree with a competitor to fix prices for polyether polyols?
>
> A. No, sir.

Stern Dep. Tr. 215:11-21. Defense counsel then proceeded to ask variations of the same question over and over again as to MDI, TDI, specific competitors, and a number of specific communications that Stern testified to on direct. *See id.* at 215:24-219:12, 289:9-13, 397:18-21, 547:22-548:2, 688:8-15, 761:13-19.

The issue of whether Stern's communications with Bayer's competitors constitutes an agreement to fix prices under the Sherman Act is a legal question. Indeed, both sides have submitted proposed jury instructions regarding the issue of what constitutes a price-fixing

7

agreement. Mr. Stern, a lay witness who is not an antitrust expert, is not permitted to opine on this issue under Rule 701. And even if Mr. Stern were an expert witness, testimony regarding this legal issue would not be proper. *Patrick v. Moorman*, 536 F. App'x 255, 258 (3d Cir. 2013) (an expert witness is prohibited from testifying about the law, opining about legal standards, or drawing ultimate legal conclusions). Moreover, the testimony should be excluded under Rule 403 because the jury may improperly give far more weight to Mr. Stern's opinion regarding whether the conduct at issue constituted a price-fixing agreement than is justified.

Indeed, Plaintiffs' objections here are virtually indistinguishable from the objections that Dow asserted in its motion *in limine* concerning the defendants' antitrust compliance policies, which the Court sustained. In granting Dow's motion, the Court held that "whether Dow employees believed they violated Dow's antitrust policies is irrelevant." Opinion & Or., dated Feb. 8, 2016, at 2 (Dkt. Entry 236). The Court further noted that any minimal relevance would be substantially outweighed by unfair prejudice because the testimony could confuse the jury on what the governing law was. *Id.* Based largely on this ruling, Judge Pisano sustained a number of Dow objections to testimony that Plaintiffs designated from the deposition of Stephanie Barbour of Dow and other witnesses. Dow cannot have it both ways. Therefore, the Court should sustain Plaintiffs' objections and exclude the limited portions of Mr. Stern's deposition in which he offered an impermissible lay opinion that he never reached a price-fixing agreement.

### III.   EVIDENCE OF LARRY STERN'S COOPERATION AGREEMENT WITH PLAINTIFFS IS INADMISSIBLE

Dow also seeks to introduce testimony from Mr. Stern relating to his "cooperation understanding" with Plaintiffs to show bias.[5] Plaintiffs object on the basis of Rule 401, 402, and

---

[5]   Plaintiffs object to Dow's designations at pages 207-208 and 952 of the deposition of Larry Stern, attached hereto as Exhibit F, and, relatedly, to Stern Ex. 449, an email from Larry Stern's counsel to Plaintiffs' counsel, dated September 10, 2008, attached hereto as Exhibit G.

403, and because the parties agreed not to introduce evidence regarding Plaintiffs' settlements with Bayer and Mr. Stern.  In his February 29 ruling, Judge Pisano deferred to the Court on the issue of whether Stern's testimony concerning his cooperation understanding with Plaintiffs should be excluded as related to Plaintiffs' settlement with Bayer.

>Judge Pisano correctly framed the issue as follows:
>
>If Stern cooperated with the plaintiffs and gave testimony in connection with the Bayer settlement, but for the Bayer settlement he would not have participated, then I think the plaintiffs' argument has merit.  If, on the other hand, Stern's testimony was part of a separate or personal cooperation agreement, then his testimony should not be precluded.[6]

The email that Mr. Stern's counsel sent to Plaintiffs' counsel confirming the terms of Mr. Stern's cooperation with Plaintiffs resulted directly from Plaintiffs' settlement with Bayer.  In Plaintiffs' settlement with Bayer, a copy of which is attached hereto as Exhibit H, Plaintiffs released from liability, and any claim for damages, Bayer and any of its "past and present . . . officers, directors, employees, agents . . . [and] representatives."  Settlement Agreement, ¶¶ 1(j), 3.  In return, Bayer agreed to pay certain settlement funds and to cooperate with Plaintiffs in the prosecution of their claims against the remaining defendants.  *Id.* ¶¶ 1(n), 2, 7.

Mr. Stern would not have agreed to sit for deposition in this case if Plaintiffs and class plaintiffs had not both reached settlement agreements with Bayer that released former employees like Mr. Stern from liability in exchange for Bayer's cooperation.  Plaintiffs' settlement agreement with Bayer explicitly released all employees of Bayer, present and former.  The email from Mr. Stern's lawyer to Plaintiffs merely sets forth Mr. Stern's "understanding" of his cooperation agreement.  Simply the result of over-lawyering, the email from Mr. Stern's counsel was unnecessary in light of Plaintiffs' preexisting settlement with Bayer.  In fact, the Court will

---

[6] See Tr. Conf. Call with Special Discovery Master Pisano, dated Feb. 29, 2016, at 6:5-14 (Exhibit E).

9

note at page 954, lines 15-20 of Mr. Stern's deposition that class counsel noted for the record that "the only agreement that affects Mr. Stern's liability or exposure to suit to the Class Plaintiffs is the Bayer settlement.  And there is no other agreement between Mr. Stern directly or through his lawyers and the Class Plaintiffs."  Mr. Stern was separately liable to both plaintiff groups and offered one deposition in this case.  In fact, his deposition was taken mostly by class counsel.  Given that Mr. Stern did not even have a similar cooperation agreement with the class plaintiffs, it follows that he cooperated with both plaintiff groups and gave testimony pursuant to the Bayer settlements.

In light of the above, Dow's proposed designations concerning Mr. Stern's understanding of his cooperation agreement with Plaintiffs violate the parties' agreement not to reference Plaintiffs' settlements with former-defendant Bayer and alleged co-conspirator Mr. Stern.  As reflected in the original pretrial order that the parties signed, and which the Court filed on July 1, 2015 (Dkt. Entry 84), the parties entered the following stipulation:

> The parties will not make reference to or seek to introduce evidence or argument regarding settlements or settlement discussions with former Defendants, with Dow, or with alleged co-conspirators, except that if the Court were to deny Dow's motion *in limine* [*i.e.*, Dow's motion related to Bayer's internal investigation], then the parties may refer to and introduce evidence or argument regarding the Bayer settlement in this case.

Pretrial Order, § 2, at 4.  The Court granted Dow's motion *in limine* related to Bayer's internal investigation, thus eliminating the exception.  Bayer is a former defendant and Stern is an alleged co-conspirator of Dow's.  Dow agreed not to designate this evidence, and the Court should hold Dow to that agreement.

IV. **EVIDENCE THAT DOW ATTEMPTS TO EXCLUDE ON THE BASIS THAT IT IS EVIDENCE OF MARKET AND CUSTOMER ALLOCATION IS RELEVANT AND ADMISSIBLE EVIDENCE OF PRICE-FIXING**

Finally, in his February 29 ruling Judge Pisano deferred to the Court to decide Dow's objections to testimony from the deposition of Bill Bernstein that Plaintiffs seek to introduce at pages 424 to 444 and 501 to 511. The testimony in dispute relates to Plaintiffs' allegations that Dow and its co-conspirators used swap agreements (a type of co-producer arrangement in which the competitors exchange materials or supply to each other) as a means to engage in unlawful discussions about pricing, capacity, markets, and customers. Dow objects on the basis that Plaintiffs dropped market and customer allocation claims from the June 2015 pre-trial order.

Plaintiffs do not dispute that they no longer assert separate, independent claims for market/customer allocation. However, the fact that Plaintiffs dropped these claims does not mean that Plaintiffs agreed that this evidence is irrelevant – to the contrary, it is still highly relevant to Plaintiffs' price-fixing claims. The testimony in question pertains to two separate incidents involving collusive swap arrangements. The first instance at pages 424-444 involves a proposed swap arrangement between BASF and Huntsman in late 2000. As part of this arrangement, BASF agreed not to be aggressive in the wood-binder market, an important market segment for Huntsman's MDI business. During this line of questioning, Bernstein acknowledged that it would not be appropriate for a swap agreement to be conditioned on BASF staying out of a certain Huntsman market. *See* Bernstein Dep. Tr. at 424:15-425:8 (Exhibit K).

Plaintiffs noted in the June 2015 pretrial order that the swap agreement in question constitutes relevant evidence of price-fixing:

> During the November and December 2000 (and early January 2001) timeframe, Huntsman and BASF were involved in a swap agreement in which BASF agreed

11

not to be aggressive in the wood binder market, an important market segment for Huntsman.[7]

Horizontal agreements among competitors to divide markets or allocate customers are indirect forms of output restriction that have the same anticompetitive effects of price-fixing. And indeed, Bernstein Ex. 1588 (introduced at pp. 433-437 of the Bernstein deposition and attached hereto as Exhibit I) reflects that the purpose of the proposed swap was to "safeguard" the MDI demand/supply balance at a time when BASF and its competitors were trying to implement a price increase of MDI. In determining whether a price-fixing agreement has been proven, the jury must view the evidence as a whole, and not piecemeal, and the evidence in question here is relevant, admissible evidence of price-fixing.

The second piece of testimony from Mr. Bernstein's deposition that Dow seeks to exclude involves another swap negotiation between BASF and Bayer in mid-2001. In connection with the negotiation with Bayer, Bernstein's boss in Brussels, Jean-Pierre Dhanis, asks Mr. Bernstein to provide him with information relating to any major market share shifts between BASF and Bayer in the United States and Canada for MDI and polyols. Specifically, Mr. Dhanis wanted "a list of BASF/Bayer Market share shifts . . . "significant' shifts only; meaning major volumes being lost from BASF to Bayer and vice versa being gained by BASF from Bayer." PX-231 at 2 (attached hereto as Exhibit J). Mr. Bernstein acknowledged in his deposition that it would *not* be appropriate for Bayer and BASF to discuss these topics with Bayer in connection with swap negotiations. Bernstein Dep. Tr. 501:19-502:2.[8]

---

[7] Pretrial Order, Plaintiffs' Statement of Facts, ¶ 308. *See also* Plaintiffs' Trial Brief, dated Feb. 23, 2016, at 19.

[8] In his deposition, Dhanis denied that he discussed market share shifts with Bayer in connection with this meeting. Dhanis Dep. Tr. 133-137.

Again, Plaintiffs never agreed that this evidence would no longer be relevant to this case. Rather, Plaintiffs have always contended that this constitutes relevant and admissible evidence of price-fixing. *See* Pretrial Order, Plaintiffs' Statement of Facts, ¶¶ 343-345 (setting forth the precise facts at issue here).

Judge Pisano overruled Dow's evidentiary-based objections, and reserved only on the question as to whether Plaintiffs agreed not to introduce this evidence. See Tr. Conf. Call with Special Discovery Master Pisano, Feb. 29, 2016, at 25:25-26:4 (Exhibit E) ("So my ruling is that as evidence any objection would be overruled, but substantively if there was an agreement [by Plaintiffs] not to introduce these proofs then the parties would have to live with it.") Because Plaintiffs have always asserted, and continue to assert, that the evidence in question constitutes classic price-fixing evidence, and indeed, as Judge Pisano recognized, the evidence is otherwise relevant and admissible, the Court should overrule Dow's objection and admit the evidence.

          Respectfully Submitted,

          CARELLA, BYRNE, CECCHI,
          OLSTEIN, BRODY & AGNELLO
          *Attorneys for Plaintiffs*

          By:   /s/ James E. Cecchi
                JAMES E. CECCHI

Dated: March 3, 2016

Jeffrey M. Johnson
Adam Proujansky
Daniel P. Schaefer          Richard J. Leveridge
Alex E. Hassid          ADAMS HOLCOMB, LLP
BLANK ROME LLP          1875 Eye Street, NW
1825 Eye Street, NW          Washington, DC 20006
Washington, DC 20006          (202) 580-8818
(202) 420-2200

James R. Martin
ZELLE LLP

1220 L Street, NW
Suite 100-143
Washington, DC 20005
(202) 359-6688

*Attorneys for Plaintiffs*