## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE URETHANE ANTITRUST LITIGATION<br><br>This Document Relates to:  All Actions | Civil Action No. 08-5169 (WJM)(MF) |

## THE DOW CHEMICAL COMPANY'S OBJECTIONS TO THE
## <u>SPECIAL DISCOVERY MASTER'S PRELIMINARY EVIDENTIARY RULINGS</u>

## INTRODUCTION

Pursuant to the Court's order dated February 25, 2016 (Dkt. No. 265), Defendant The Dow Chemical Company ("Dow") respectfully requests the Court's ruling on two evidentiary issues as to which Special Discovery Master Joel A. Pisano expressly did not issue definitive rulings.  Dow also objects to one evidentiary ruling concerning the admissibility of certain cross-examination.  These issues are described briefly below.

## OBJECTIONS

**I.    Testimony Related to** █████████████████████████████████
████████████████

- <u>Testimony at Issue</u>: November 2, 2009 Stern Dep. at 207:19-22, 208:7-10, 208:22-24, 952: 10-22.

In September 2008, shortly before these lawsuits were filed, ████████████████
██████████████████████████████████████████████████████
█████████████████████████████████████████████
████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████

█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

██████  *See, e.g.*, *United States v. Murray*, 468 F. App'x 104, 107-08 (3d Cir. 2012)

(immunity agreements properly "inform the jury's assessment of witness credibility and bias");

*see also E. Allen Reeves, Inc. v. Michael Graves & Assoc., Inc.*, No. 10-1393, 2015 WL 105825

at *1-2 (D.N.J. Jan. 7, 2015) (finding that a cooperation agreement among plaintiffs and witness

was admissible to show bias on the part of the witnesses); J. Weinstein & M. Berger, *Weinstein's*

*Federal Evidence* § 607.04 (evidence of a witness's expected reward is relevant to bias).  Judge

Pisano, the Special Discovery Master, fully acknowledged that this testimony is relevant and

should be admissible "to show Mr. Stern's bias or state of mind."  Ex. C hereto (Feb. 29, 2016

Tr.) at 4-5.

Plaintiffs cannot and do not dispute that such evidence is ordinarily admissible.  Instead,

they argue that Dow unwittingly agreed not to offer this testimony when Dow proposed (and the

parties ultimately agreed) to enter into a stipulation that the "parties will not make reference to or

seek to introduce into evidence or argument regarding settlements or settlement discussions with

[Bayer]."  *See* Ex. B (Stern Dep.) at 207, 952 (comment boxes containing Plaintiffs' argument).

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

The Special Discovery Master reserved ruling on this issue because he did not have sufficient background information.  He explained that in his view ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████ Ex. C (Feb. 29, 2016 Tr.) at 5; *see also id.* at 6.

████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████[1]

██████████████████████████████████████████

████████████████████████████████████  That stipulation

reads in relevant part:  "The parties will not make reference to or seek to introduce evidence or

argument regarding settlements or settlement discussions with former defendants, with Dow, or

with alleged co-conspirators…"  *See* June 5, 2015 Pretrial Order (Dkt. No. 77) § 2 (stipulations)

¶ 1; March 1, 2016 Pretrial Order (Dkt. No. 266) § 2 (stipulations) ¶ 1.  Mr. Stern was never a

"Defendant" in this case, and, as detailed below, Plaintiffs themselves have stated he was never

defined as a "co-conspirator." ██████████████████████████████████

████████████████

████████████████████████████████████████████████

████████████████  In May 2015, when the parties first exchanged preliminary lists of

potential motions *in limine*, Dow disclosed that it contemplated filing a motion "to exclude any

reference to or evidence of settlements or settlement discussions with former Defendants, with

---

[1] ████████████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████

Dow, or with alleged co-conspirators."  The reference to "alleged co-conspirators" was necessary to cover Bayer and its affiliates, because those entities settled with Plaintiffs before these cases were filed and therefore were never "Defendants."  Indeed, the Plaintiffs stated then, and still state now, in their statement of facts in the Pretrial Order, that the "conspirators were *large, multinational chemical companies* who were competitors in the urethanes business" and "[a]side from Bayer, the remaining conspirators (except for the predecessors) were defendants in Plaintiffs' case."  June 5, 2015 Pretrial Order (Dkt. No. 77) § 4 (Pls.' statement of facts) ¶ 48-49 (emphasis added); March 1, 2016 Pretrial Order (Dkt. No. 266) § 4 ¶ 48-49 (same).  In other words, ***according to Plaintiffs' filings with this Court***, all "co-conspirators" other than Bayer itself were "multinational chemical companies" and "Defendants," meaning Plaintiffs never considered or defined Mr. Stern as a "co-conspirator."  Accordingly, the parties' reference to "co-conspirators" in their stipulation cannot have been a reference to Mr. Stern.  ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████[2]  We therefore ask this Court to rule that it is admissible.

---

[2] ██████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
██████████████████████████

## II.   Testimony from Former Dow Employee Stephanie Barbour Relating to a 2004 Internal Investigation

- Testimony at Issue: September 15, 2010 Barbour Dep. at 502-06; October 16, 2013 Barbour Dep. (all Dow designations).

Plaintiffs' claims concerning Dow's participation in an alleged price-fixing conspiracy rely largely on testimony from Stephanie Barbour, a former Dow employee. ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████Dow will argue to the jury that these accusations are not credible and were fabricated after the fact.

By way of background, the record will show that Ms. Barbour (and many others) left Dow in 2004 as part of a corporate restructuring.  Both before and after her termination, Ms. Barbour made a series of complaints about her boss, David Fischer, and other colleagues at Dow. These complaints included allegations of serious misconduct, and at various times were made to Mr. Fischer's own boss as well as executives in the human resources, legal, and compliance departments.  Ms. Barbour even raised a separate potential antitrust concern – relating to a potential attempt to exclude a competitor from the market.  But, notably, the evidence shows, and every person to whom she complained uniformly testified that, even though she raised numerous issues (including the separate antitrust issue) both upon her termination and before, Ms. Barbour never reported to anyone the price-fixing allegations that she made for the first time in her 2010 deposition.  In other words, Dow will argue, and there is ample evidence to support, that these new price-fixing claims were the product of a recent fabrication.  *See* Fed. R. Evid. 613 (permitting impeachment through introduction of prior inconsistent statements).

████████████████████████████████████████████████

████████████████████████████████████████████████



*See* Ex. E hereto (Barbour Dep.) at 46-48.  Plaintiffs then intend to argue that someone at Dow destroyed these notes as part of an effort to cover up the existence of the conspiracy.  *See, e.g.*, Pls.' Trial Br. (Dkt. No. 247) at 6-7.

Ex. E (Barbour Dep.) at 502-06.  The Special Discovery Master agreed that this evidence is relevant and important, saying "I think this is something that's got to come in in your defense."  Ex. F hereto (Feb. 24, 2016 Tr.) at 54.  But he went on to suggest that Dow would need to "mak[e] a request to Judge Martini" to introduce the evidence, even in its own case.  *Id.*  Accordingly, as suggested by Judge Pisano, Dow makes precisely that request now so that it can present this critical evidence regarding this key witness to the jury.  Dow submits that this is classic cross examination that undermines evidence plaintiffs seek to introduce in their portions of the transcript, Barbour Dep. at 46-48, and therefore Dow requests permission to introduce it as cross examination during the plaintiffs' case.  But even if Dow is not allowed to introduce this evidence during plaintiffs' case, it surely should be allowed to do so during its own case (as Judge Pisano suggested).

Plaintiffs objected to the admission of this testimony on the ground that the inquiry was blocked by an assertion of privilege.  This objection is without merit.  First, Dow did not block the questions and answers that it now seeks to present to the jury, and Ms. Barbour gave the

testimony described above.  Ex. E (Barbour Dep.) at 502-08.  Indeed, Plaintiffs have designated testimony immediately after the testimony to which they object.  *Id.* at 506-07.  Second, as Plaintiffs well know, Dow subsequently waived the privilege assertions that Plaintiffs now (incorrectly) assert should result in exclusion.  Indeed, discovery was reopened and the parties took multiple depositions, including of Ms. Barbour and various Dow attorneys and investigators, on these very subject matters.  Therefore, there is no basis on which to exclude this highly probative evidence – that Ms. Barbour herself never gave her notes to anyone and does not know if they existed on her computer when she left Dow – that the Special Discovery Master indicated should be admitted at trial.

In an abundance of caution, Dow also requests confirmation that it can present testimony from Ms. Barbour's 2013 deposition in its case.  Dow offers this 2013 deposition for two purposes:  First, after the waiver of privilege described above, the MDL court permitted Dow to take further discovery on what, if anything, Ms. Barbour told in-house counsel in 2004 during an internal investigation, near the time of her termination, about the price-fixing allegations she made at her 2010 deposition.  As noted above, what she told counsel and others in 2004 is highly relevant to whether she recently fabricated those allegations against Dow, since Dow submits that despite making many allegations in 2004 (including even a separate antitrust allegation), she did not raise her price-fixing claims.  Second, Plaintiffs have alleged that Dow destroyed electronic copies of notes she had at the time of that investigation, and, after Dow waived privilege, discovery was reopened in 2013 to inquire further into that claim.

Plaintiffs themselves did not object to Dow playing the 2013 deposition during its case at this trial, but merely objected to that deposition being played as cross-examination during plaintiffs' case.  *See* Ex. E (Barbour Dep.) at 2013 Dep., page 2 ("All of Dow's proposed

counters from this [2013] deposition are therefore beyond the scope of direct.  If Dow wants to present this deposition in Dow's defense case, Dow may do so, and we will cross-designate and object accordingly.").  Despite Plaintiffs' limited objection to the timing of the testimony, the Special Discovery Master, who was not familiar with the background relating to this deposition, expressed concern that "the entire 2013 deposition is beyond the scope of anything."[3]  Ex. F (Feb. 24, 2016 Tr.) at 55.  Ultimately, however, while he appeared to conclude that Dow could "put [the designations it made in the 2013 deposition] in in [its] case," Judge Pisano added that "Judge Martini at the end of the day is the one who should determine its admissibility."  *Id.* Accordingly, Dow respectfully raises the issue to assure that it can in fact play these critical portions of the 2013 Barbour deposition at trial.

That 2013 deposition was expressly authorized by the MDL Court that oversaw pretrial proceedings in this case in order to allow discovery on the limited issues described above.  And this Court has already ruled that testimony relating to "Dow's 2004 investigation" is "well within

---

[3] The Special Discovery Master was mistaken in this impression.  Plaintiffs designated extensive testimony related to Ms. Barbour's notes and the Dow's 2004 investigation.  *See, e.g.*, Ex. E (Barbour Dep.) at 46-49, 76 ███████████████████████████████████████████; *id*. at 116-17 ████████████████████████████████████.  Dow must be allowed to respond by introducing the evidence from the 2013 deposition that undermines her story.  ████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████  That, of course, is all that Dow proposes to do.

the scope of discovery contemplated by the MDL Court," and on that basis denied Plaintiffs'

motion *in limine* to exclude evidence from two other witnesses deposed in 2013.  Feb. 8, 2016

Order (Dkt. No. 236) at 8.  The same logic applies to Ms. Barbour's 2013 deposition.  It is

relevant and admissible, and Plaintiffs do not appear to contend otherwise, having objected

merely to the timing of when it should be presented to the jury.

For the foregoing reasons, Dow respectfully requests that this Court make clear that Dow

may present its designations in the 2013 Barbour deposition and at pages 502-06 of the 2010

Barbour deposition at trial.

### III.   Testimony Relating to Ms. Barbour's Complaints to Bob Wood

- Testimony at Issue: Barbour Dep. at 304-07.

████████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████ ██████████████████

████████████████████████████████ *See* Ex. E (Barbour Dep.) at 41-44. ███████

█████████████████████████████████████████████████████

█████████████████████████████████████████ *Id.* at 139-

40, 296.

Dow will argue to the jury that it is not credible that these conversations occurred but that

she did not report them to Mr. Wood, given the long litany of other complaints Ms. Barbour

made to Mr. Wood about Mr. Fischer.  ████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

---

[4] Ms. Barbour was responsible for MDI and rigid polyols.



Plaintiffs objected to this testimony, arguing that "what Barbour did/did not report to Bob Wood and others within Dow [is] beyond the scope [of direct] and not relevant." *See id.* at 304 (comment box with Plaintiffs' objections). Neither objection has merit. Plaintiffs' *own designations* place at issue what she did and did not tell Mr. Wood. *See id.* at 139-40. And the fact that she made numerous complaints to Mr. Wood and yet never once told him about conduct she considered to be serious wrongdoing is directly relevant to her credibility, because there is no logical reason she would have withheld such accusations if she had a basis to make them at the time.

The Special Discovery Master sustained Plaintiffs' objections, apparently under the mistaken belief that he had also sustained previous objections to testimony regarding Ms. Barbour's conversations with Mr. Wood. *See* Ex. F (Feb. 24, 2016 Tr.) at 47. In fact he had ultimately overruled those previous objections, reasoning that "all of this might as well go to the jury." *Id.* at 43-47 (discussing objections to Barbour Dep. at 295-98). Notably, Ms. Barbour's testimony at pages 295-98 of her deposition is not a substitute for the testimony that follows at pages 304-07. The former establishes the various reporting relationships, the fact that Ms.

Barbour had a good relationship with Mr. Wood, and her testimony that she never reported Mr.

Levi's alleged conversations with competitors or Mr. Fischer's awareness of them to Mr. Wood.

In contrast, the latter succinctly describes the various other serious complaints she made to Mr.

Wood about Mr. Fischer.  It is this testimony that undermines her credibility, and Dow

respectfully submits that it is relevant and admissible.  Accordingly, Dow requests that the

Special Discovery Master's ruling with respect to pages 304-07 be overturned, and that Dow be

permitted to present this testimony at trial.


Respectfully submitted,

Dated: March 2, 2016
Newark, New Jersey

s/ Lawrence S. Lustberg
Lawrence S. Lustberg
Daniel J. McGrady
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102
Telephone:  (973) 596-4500
Facsimile:  (973) 596-0545

David M. Bernick (*admitted pro hac vice*)
Jonathan R. Streeter (*admitted pro hac vice*)
**Dechert LLP**
1095 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 698-3500
Facsimile:  (212) 698-3599

*Attorneys for Defendant*
*The Dow Chemical Company*

12