# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE URETHANE ANTITRUST LITIGATION | Master Docket No. 08-5169 (WJM)(MF) |

---

### PLAINTIFFS' BRIEF REGARDING THEIR DECISION TO FOREGO CERTAIN DAMAGES TO STREAMLINE THE TRIAL

---

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ  07068
(973) 994-1700

Jeffrey M. Johnson
Adam Proujansky
Daniel S. Schaefer
Alex E. Hassid
BLANK ROME LLP
1825 Eye Street, NW
Washington, DC  20006
(202) 420-2200

Richard J. Leveridge
ADAMS HOLCOMB, LLP
1875 Eye Street, NW
Washington, DC  20006
(202) 580-8818

James R. Martin
ZELLE LLP
1220 L Street, NW
Suite 100-143
Washington, DC  20005
(202) 359-6688

Attorneys for Plaintiffs

Dow's present objection to Plaintiffs' damages calculation is an opportunistic attempt to capitalize on Plaintiffs' decision to voluntarily forego relief for losses they suffered on transactions that Dow had indicated it would challenge as precluded by the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA").

The FTAIA is a "rather convoluted" statute that limits the reach of the Sherman Act and has been interpreted to apply on a transaction-by-transaction basis. *Turicentro v. Am. Airlines*, 303 F. 3d 293, 300 (3d Cir. 2002), *overruled on other grounds by Animal Sci. Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462 (3d Cir. 2011). Rather than allocate their limited trial time to the voluminous evidence that would be required on this issue, Plaintiffs decided not to seek relief for the relatively small percentage of transactions that Dow could conceivably challenge – which were estimated to have approximately $26.8 million in damages – thus lowering Plaintiffs' total damage claims from $608.6 million to $581.7 million.[1]

Indeed, Plaintiffs decision ***did*** remove the FTAIA issue from the case. After learning of Plaintiffs' plan to drop the challenged damages, Dow chose not to seek a FTAIA jury instruction.[2] The jury can now focus on the core issues of liability, causation, and damages – which are complex enough without the complicated and peripheral FTAIA issue.

Nevertheless, Dow now seeks to exclude the expert testimony of Leslie Marx, Ph.D. based on the misconception that Plaintiffs' decision was based on "errors discovered in Dr.

---

[1] Of nearly 125,000 transactions for which Plaintiffs seek damages, Plaintiffs dropped claims for roughly 7,400 transactions of Woodbridge, Carpenter, and British Vita, that were neither "invoiced to" nor "delivered to" the United States.

[2] Prior to its decision not to seek a FTAIA instruction, Dow had indicated it intended to raise the FTAIA issue. *See* Final Pretrial Order, § 9, Dow's List of Legal Issues ¶ 27 (Mar. 1, 2016), ECF No. 266 ("Whether Plaintiffs' claims are barred in whole or in part by the Foreign Trade Antitrust Improvements Act."). Notably, however, Dow never filed a dispositive motion that challenged the purported "foreign" transactions on FTAIA grounds.

Raiff's calculation of foreign transactions." Dow Chemical Co.'s Br. Opp'n to Pls.' Bench Br. Regarding Dr. Marx's Attribution of Purported Overcharges 10 n.5, ECF No. 276. Dow's assertion is simply wrong. There were – and are – no such errors.[3]

As explained to the Court during the *Daubert* hearing, Dr. Marx employed a two-step process to estimate damages. In the first step, she used more than 480,000 transactions in the benchmark, *i.e.*, not conspiracy, period based on sales to **both** class plaintiffs and Plaintiffs for certain widely used products: TDI 80/20, CFS polyols, and pMDI. The purpose of the first step was to estimate market-wide overcharges, if any. In the second step, Dr. Marx evaluated every transaction for which Plaintiffs seek losses to determine the overcharge for *that* transaction. This second step accounted for idiosyncratic buyer-specific issues, such as negotiating skill and bargaining power. Plaintiffs' decision not to seek damages for the transactions Dow challenged under the FTAIA relates only to the second step. The market-wide overcharge estimates remain unchanged.[4]

---

[3]  Plaintiffs also voluntarily dropped claims for transactions in which Lyondell incorrectly labeled invoices for propylene oxide sold to Carpenter as "polyols." This change had no effect on the model either, because Carpenter purchased specialty polyols, as contrasted with the CFS polyols that serve as the basis for the market-wide model.

[4]  The transactions in the benchmark period (1992-93 and 2004-08), which were not explicitly invoiced, and delivered, to United States locations, were not removed from the data set used to develop the market-wide models, as these transactions still properly fall within the market-wide analysis. *See supra* 4-5 (explaining why the challenged transactions are not "foreign"); see also discussion of the first step in Dr. Marx's two-step damages analysis *infra*. Indeed, on February 29, Plaintiffs sent Dow the specific instructions of what was done to enable Dow to identify the purchases to not count damages on. Nothing was done to the model. If these transactions were removed from the data set used to calculate the market-wide model (which Plaintiffs believe would be totally inappropriate), the market-wide model results would change (albeit slightly), given the change in the underlying data used to generate the model.

Plaintiffs do not yet know the basis for Dow's position. Dow has indicated only that it intends to seek total exclusion of Dr. Marx's testimony. If it does so, the Court should summarily reject the request for at least three independent reasons.

First, any criticisms concerning the quality of the data for the purported foreign transactions or its inclusion in the market-wide models, at best go to weight and not admissibility. *See, e.g.*, *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 527 (6th Cir. 2008) (defendant's attacks on the underlying data employed and assumptions made by the plaintiffs' expert in reaching his assumed damage calculation were best reserved for cross-examination and did not rise to the level warranting exclusion under *Daubert*).

Second, regardless of the specific basis on which Dow ultimately argues for exclusion, its request would be a belated *Daubert* challenge. Plaintiffs have not changed the models in any way. There were no "errors." Dow has had the transactional data that serves as the basis for Plaintiffs' models for years – indeed, the models are based upon the defendants' transactional data. If Dow believed that there was an "error" in any of the included transactions, which of course there was not, Dow should have raised this issue when it filed its *Daubert* motion in February 2014 – not in the middle of trial. Its failure to do so is dispositive.

Third, contrary to what Dow purports, the challenged transactions are not "foreign." Had Plaintiffs pursued their claims for these transactions, the record evidence would have shown that these transactions involved products that were manufactured entirely in the United States, that there was a single "NAFTA" price for the United States and Canada, and that many of the purchases at issue were negotiated in the United States, and invoiced to Plaintiffs' affiliates in the United States in U.S. dollars. In addition, Plaintiffs would have argued that the transactions

4

were not barred by the FTAIA because the conspiracy was focused on the United States, and many of the unlawful acts occurred in the United States.

Although these transactions are plainly based on United States prices, proving that losses from those transactions met the technical requirements of the FTAIA would have been difficult under the time constraints Plaintiffs have to present their case.  Moreover, given the complexities of the FTAIA and the fact that FTAIA issues rarely reach trial, the instructions to be given to the jury on the FTAIA likely would have been the subject to disagreement between and extensive briefing from the parties.  Given the relatively small amount of damages at issue, Plaintiffs removed the transactions at issue from the case so that the Court would not have to instruct the jury on a particularly complicated antitrust issue.

Plaintiffs therefore respectfully submit that their decision – based on legal and practical reasons, not economic ones – should be applauded, not criticized.  If Dow insists on pursuing unwarranted attacks, Plaintiffs' expert will be prepared to explain to the jury why Plaintiffs removed the transactions and reduced their damages.  Plaintiffs anticipate that the jury will see Dow's attack for what it is – yet another attempt to distract the jury from the inescapable fact that Dow and its co-conspirators fixed prices and Plaintiffs suffered hundreds of millions in damages as a result.

                CARELLA, BYRNE, CECCHI,
                OLSTEIN, BRODY & AGNELLO
                *Attorneys for Plaintiffs*

                By:   /s/ James E. Cecchi
                       JAMES E. CECCHI

Jeffrey M. Johnson
Adam Proujansky
Daniel P. Schaefer
Alex E. Hassid
BLANK ROME LLP
1825 Eye Street, NW
Washington, DC 20006
(202) 420-2200

James R. Martin
ZELLE LLP
1220 L Street, NW
Suite 100-143
Washington, DC 20005
(202) 359-6688

*Attorneys for Plaintiffs*

Richard J. Leveridge
ADAMS HOLCOMB, LLP
1875 Eye Street, NW
Washington, DC 20006
(202) 580-8818

481126v3