# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE URETHANE ANTITRUST LITIGATION | Master Docket No. 08-5169 (WJM)(MF) |

---

### PLAINTIFFS' RESPONSE TO DOW'S BENCH BRIEF REGARDING PROPOSED SUMMARY EXHIBITS

---

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ  07068
(973) 994-1700

Jeffrey M. Johnson
Adam Proujansky
Daniel S. Schaefer
Alex E. Hassid
BLANK ROME LLP
1825 Eye Street, NW
Washington, DC  20006
(202) 420-2200

Richard J. Leveridge
ADAMS HOLCOMB, LLP
1875 Eye Street, NW
Washington, DC  20006
(202) 580-8818

James R. Martin
ZELLE LLP
1220 L Street, NW
Suite 100-143
Washington, DC  20005
(202) 359-6688

## INTRODUCTION

On the very eve of trial, Dow blindsided Plaintiffs with dozens of new proposed exhibits that were not in the Pretrial Order.  Dow used several of them in its opening statement.  Dow has sought to have these proposed exhibits admitted into evidence under Federal Rule of Evidence 1006, and filed a Bench Brief seeking their admission – but Dow has patently failed to carry its burden of demonstrating that these charts satisfy the requirements for admissibility under the Federal Rules of Evidence.

Rule 1006 is merely an exception to the "best evidence" rule that would normally require the use of original documents:  when otherwise admissible documents are voluminous, Rule 1006 allows a party to submit a *fair and accurate* summary of that evidence in place of the original documents.  *See* 31 Charles Alan Wright & Victor James Gold, Federal Practice & Procedure § 8043 ("Rule 1006 does no more than create an exception to Rule 1002, which requires an original to prove contents of writings, recordings, and photographs").  "Before admitting summaries, the court should find that they have a sufficient factual basis and that possible prejudice or confusion does not outweigh their usefulness in clarifying voluminous material.  These matters should be determined, if possible, by stipulation before trial."  J. Weinstein & M. Berger, *Weinstein's Evidence* § 1006.05.  Rule 1006 does not allow a party to submit purported summaries that omit important evidence, interject argumentative inferences, or are otherwise misleading or inaccurate.[1]  Yet that is precisely what these summaries would do –

---

[1]     *E.g.*, *United States v. Taylor*, 210 F.3d 311, 315 (10th Cir. 2000) (trial court committed reversible error in admitting chart under Rule 1006 that did not fairly and accurately summarize the evidence); *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1516 (9th Cir. 1985) (affirming district court's exclusion of purported summary where proponent did not give opponent sufficient notice and failed to carry its burden of establishing that the exhibit fairly represented the underlying documents); *Needham v. White Laboratories, Inc.*, 639 F.2d 394, 403 (7th Cir. 1981) (district court admitted reversible error by admitting exhibit under Rule 1006 when

as evidenced by the way Dow's counsel prematurely used them in opening argument. To the extent that Dow seeks to introduce the summaries to prove the "actual prices" that Plaintiffs paid for urethane chemicals, the summaries are irrelevant because they are incomplete, as shown below.

At best, these proposed exhibits represent new expert opinions – and as such, are inadmissible because Dow failed to disclose them as part of its expert discovery. As is revealed by the Declaration of Marissa Ginn, an economist working for Dow's damages expert Keith Ugone, every one of these exhibits goes far beyond merely summarizing admissible evidence – indeed, Ms. Ginn required seven pages to explain how she manipulated the data to create the proposed exhibits – and is an (at best) argumentative presentation of a selective portion of the evidence it purports to summarize. As the Court knows, the MDL Court already struck a substantial portion of Dr. Ugone's supplemental opinions on the grounds that those opinions were untimely. Dow is now attempting to end-run that decision by presenting new expert opinions that are even more untimely.

Moreover, the proposed exhibits should be precluded because Dow gave Plaintiffs insufficient notice of these documents. A district judge is empowered "to prevent a party from springing summaries of thousands of documents on the opposing party so late in the day that the party can't check their accuracy against the summarized documents before trial." *Fidelity Nat. Title Ins. Co. of N.Y. v. Intercounty Title Ins. Co.*, 412 F.3d 745, 753 (7th Cir. 2005). Here, Dow did not present these proposed exhibits to Plaintiffs until a week before opening statements. Dow did not provide the computer code that its experts used to develop the charts until five days before opening statements. Plaintiffs' original expert, Matthew Raiff, Ph.D. never saw these

proponent had failed to demonstrate that exhibit was an accurate summary of admissible evidence).

exhibits and therefore had no opportunity to address them in his reply report.  Dr. Marx also did not get a chance to review these exhibits and therefore would have to address them for the first time at trial.  And Plaintiffs have not had a chance to cross-examine the experts that created these new proposed exhibits.  Therefore, Dow should be precluded from unfairly ambushing Plaintiffs by presenting these proposed exhibits at trial.

## LEGAL ARGUMENT

In its Bench Brief in Support of the Admission of Dow's Summary Exhibits ("Dow Br."), ECF No. 286, Dow attempts to justify the admission of several different categories of charts. Dow has failed to meet its burden of establishing that any of these categories represent fair and accurate summaries of admissible evidence.

### Weighted Median Price Charts, Including Charts with Price Increase Announcements

Many of Dow's proposed exhibits consist of charts that purport to rely on data that Dr. Marx used to develop weighted median price lines for three "Benchmark Products" sold by Defendants.  Dow Br. at 1-3.  Dow mistakenly argues that this is "Dr. Marx's data."  *Id.* at 1.  In opening statements, in fact, Dow's counsel repeatedly told the jury that the data was "*their*" (the Plaintiffs') data.[2]  It is not.  Revised Expert Report of Matthew E. Raiff, Ph.D. ("Raiff Report") ¶¶ 266-70 (excerpts attached as Exhibit A).

The data was produced by Dow and the settled Defendants.  *Id.*  Dr. Marx used that data to develop her models because it was the most comprehensive data set, even though it had limitations.  *Id.*  The data does not fully capture the ***actual*** prices that Dow and the settled Defendants charged because the data does not systematically account for such things as rebates,

---

[2]     Statements made in opening argument can be confirmed by the trial transcript.  By Local Rule, Plaintiffs may not rely on the real-time unedited transcript for purposes of verbatim citation of argument.

signing bonuses, and credits. Those factors are captured separately, sometimes in year-end data that is not used in the charts Dow created.

More importantly, Dow's charts are not fair and accurate summaries of the documents they purport to summarize. Rather, they are misleading and selective presentations of *some* of the data used in ways that make no sense. Dow claims that the charts show "actual prices" paid by plaintiffs. Ginn Decl. ¶ 6.b, ECF No. 286-1. More specifically, Dow's counsel told the jury that the data shows the suppliers are charging different prices and that Dow was never able to successfully implement price increases. In discussing one slide used in Dow's opening titled, "Some customers succeeded in squeezing out big differences between suppliers," Dow's counsel told the jury that an apparent gap between BASF and Bayer prices showed that Plaintiff Hickory Springs negotiated different prices. Not so.

For example, as shown in Figure 1 below and in the materials Dow submitted in support of its Bench Brief, Dow's exhibit purports to show that British Vita paid $1.24/lb. for pMDI in July 2000 and $0.80 the next month.[3] Those are clearly not actual prices for the same product. In fact, Dow's proposed exhibits are only based on prices for a subset of products purchased by Plaintiffs: TDI 80/20, CFS Polyols, and polymeric MDI ("pMDI"). Moreover, within each product category, there are subcategories. For example, as shown in Figure 8 from Dr. Raiff's initial report, within the pMDI product category, Defendants sold three major grades of pMDI, all of which were priced differently. Raiff Report ¶¶ 58-59 (Ex. A). Defendant Huntsman made 25-26 grades of pMDI. *Id.* n.30. Defendants' data also does not systematically include plaintiff-specific rebates, discounts, or freight. *See id.* n.344. It includes different quantities that were

---

[3]       Charts for other plaintiffs, such as Hickory Springs, are equally problematic. *See* Dow Br. Ex. B, at 36-40, ECF No. 286-2.

price differently.  *See id.*  For example, pMDI sold in a 55-gallon drum was priced differently than pMDI sold in a railcar.

**Figure 1**



Despite all of this, as shown above, Dow's proposed exhibits purport to treat the market-wide data as if the data accurately stated the full price that each Plaintiff actually paid.  The process that Dow's experts utilized is set forth in byzantine language and relies on inferences. *See, e.g.*, Ginn Decl. ¶ 4.b (attempting to replicate what Dr. Marx "appears to have intended").  Dr. Ginn has, of course, never been cross-examined on these procedures.

The prices that she plots are most assuredly not "actual prices" that Plaintiffs paid as shown in Figure 1 above, which appears to show an array of prices for "pMDI" purchased by British Vita.  These are most likely different products, different grades, and different volumes,

which is not apparent from the data because that is not the purpose for which the data were collected.

Dow claims that Plaintiffs were on notice of these exhibits – even though they were not produced until a week before opening argument – because Dow used variations of the exhibits in depositions of Dr. Marx and one of the Plaintiffs' executives, Stan Pauley. In both depositions, however, Plaintiffs objected to the documents for lack of foundation and Dr. Marx testified that she was in no position to help Dow's counsel explain "figures that I've never seen before and where I don't understand the data" (which was taken from the expert report of Kenneth Elzinga, Ph.D). Marx Dep. 480-491, Nov. 15, 2012 (excerpt attached as Exhibit B).

Simply put, the charts that Dow seeks to introduce under Rule 1006 are far from the "full, non-selective picture of voluminous data" that Dow claims. These charts would be misleading if offered only as demonstratives under Federal Rule of Evidence 611. They are even more objectionable when offered as substantive evidence because they in no way "prove the content of the underlying data" as required by the statute. Even if they did, the data would be irrelevant for the purposes Dow seeks to offer it, which is to show that "actual prices" paid by Plaintiffs were different.

### Scatter Plots

The "scatter plots" that Dow seeks to introduce suffer from the same problem as the "weighted median price" charts: they fail to fairly and accurately summarize the documents on which they are purportedly based, which are the same data set as the "weighted median price" charts. The "scatter plots" would further mislead the jury because they exaggerate the distribution of prices rather than summarize them in an accurate manner. Figure 2 below is the scatter plot that Dow seeks to introduce.

**Figure 2:**



Figure 3, prepared by the economists at Bates White, using the same data, shows that the vast majority of purchases for all Plaintiffs, which Dow's scatter chart purports to summarize, occurred within a narrow band (and follow the weighted median price line developed by Dr. Marx).

**Figure 3**



In short, Dow's scatter chart is misleading and argumentative, rather than a fair and accurate summary of voluminous documents.  At best, it represents new and untimely expert opinion.  In the alternative, if the Court admits Dow's chart, it should also admit into evidence Plaintiffs chart (Figure 3), which is as much a "summary" of the documents as is Dow's chart.

### Profitability charts

Dow's charts are based on Dow's own financial documents – documents that Dow did not seek to admit into evidence, and which (contrary to Dow's assertion) Plaintiffs did not stipulate were admissible business records.[4]  Dow has not established the admissibility of the underlying documents as required by Rule 1006.  Moreover, the charts are misleading.  They purport to identify several accounting categories of "profits," such as "trade standard margin," "contribution margin," and "economic profit."

On the face of the documents, it is clear that Dow does not define the term "contribution margin" the way it is ordinarily used by accountants.  Typically, a company's contribution margin is the amount by which revenues exceed variable costs.  Revised Reply Report of Matthew E. Raiff, Ph.D. ¶133 (excerpt attached as Exhibit C).  The "contribution margin" depicted in the financial chart however, closely follows the line for "EBIT" (earnings before interest and taxes), which indicates that as used by Dow "contribution margin" includes fixed costs.  Thus, Dow's profitability charts are not a summary of voluminous documents – at best, they constitute improper and untimely expert evidence.

---

[4]     Incredibly, Dow claims in its Bench Brief that the parties agreed that any document produced in discovery by Plaintiffs, Dow, or other suppliers was deemed to qualify as a business record under Federal Rule of Evidence 803(6).  Dow Br. at 5-6.  This is false. The parties only agreed that documents produced by the settling defendants and marked as trial exhibits would be deemed to qualify as business records. Final Pretrial Order, Divider #2, No. 8.

Moreover, the charts are misleading in that the financial data cited by Dow actually includes two different regions.  For some years, it captures North American "profits," whereas for other years, it captures United States profits only.

Plaintiffs do not dispute that Dow may call witnesses it has identified in the pretrial order to testify about financial issues to the extent those issues are relevant.  But that testimony should come through admissible evidence and testimony.  Dow's proposed exhibits are not admissible under Rule 1006.

## CONCLUSION

For the foregoing reasons, Dow's purported summary exhibits should be excluded.

Respectfully submitted,

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
*Attorneys for Plaintiffs*

By:___/s/ James E. Cecchi_____
          JAMES E. CECCHI

Dated:  March 14, 2016

Jeffrey M. Johnson
Adam Proujansky
Daniel P. Schaefer                          Richard J. Leveridge
Alex E. Hassid                               ADAMS HOLCOMB, LLP
BLANK ROME LLP                          1875 Eye Street, NW
1825 Eye Street, NW                       Washington, DC 20006
Washington, DC 20006                    (202) 580-8818
(202) 420-2200

James R. Martin
ZELLE LLP
1220 L Street, NW
Suite 100-143
Washington, DC 20005
(202) 359-6688

*Attorneys for Plaintiffs*