# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE URETHANE ANTITRUST LITIGATION | Master Docket No. 08-5169 (WJM)(MF) |

--------------------------------------------------------------------------------------------------------------------

## PLAINTIFFS' BENCH BRIEF REGARDING PROPOSED JURY INSTRUCTIONS

--------------------------------------------------------------------------------------------------------------------

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ  07068
(973) 994-1700

Jeffrey M. Johnson
Adam Proujansky
Daniel S. Schaefer
Alex E. Hassid
BLANK ROME LLP
1825 Eye Street, NW
Washington, DC  20006
(202) 420-2200

Richard J. Leveridge
ADAMS HOLCOMB, LLP
1875 Eye Street, NW
Washington, DC  20006
(202) 580-8818

James R. Martin
ZELLE LLP
1220 L Street, NW
Suite 100-143
Washington, DC  20005
(202) 359-6688

## **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................1

INDIVIDUAL PROPOSED JURY INSTRUCTIONS .....................................................3

 Plaintiffs' Proposed Instruction No. 1/Dow's Proposed Instruction 3.1 ..............................3

 Plaintiffs' Proposed Instruction No. 11; Dow's Proposed Instruction 4.1 .........................4

 Plaintiffs' Proposed Instruction No. 12; Dow's Proposed Instruction 4.2 .........................5

 Plaintiffs' Proposed Instruction No. 13; Dow's Proposed Instruction 4.3 .........................7

 Dow's Proposed Instruction 4.4.......................................................................................8

 Dow's Proposed Instruction 4.5.....................................................................................10

 Dow's Proposed Instruction 4.6.....................................................................................14

 Plaintiffs' Proposed Instruction No. 14; Dow's Proposed Instruction 4.7 .......................15

 Plaintiffs' Proposed Instruction No. 15; Dow's Proposed Instruction 4.8 .......................16

 Dow's Proposed Instruction 4.9.....................................................................................17

 Plaintiffs' Proposed Instruction No. 8; Dow's Proposed Instruction 4.10 .......................17

 Plaintiffs' Proposed Instruction No. 16; Dow's Proposed Instruction 4.11 .....................18

 Plaintiffs' Proposed Instruction No. 17; Dow's Proposed Instruction 4.12 .....................19

 Plaintiffs' Proposed Instruction No. 18; Dow's Proposed Instruction 4.13 .....................19

 Dow's Proposed Instruction 4.14...................................................................................19

 Plaintiffs' Proposed Instruction No. 19; Dow's Proposed Instruction 4.15 .....................19

 Plaintiffs' Proposed Instruction No. 23; Dow's Proposed Instruction 4.16 .....................21

 Plaintiffs' Proposed Instruction No. 22; Dow's Proposed Instruction 5.1 .......................24

 Plaintiffs' Proposed Instruction No. 20; Dow's Proposed Instruction 5.2 .......................25

i

<u>Plaintiffs' Proposed Instruction No. 20; Dow's Proposed Instruction 5.3</u> .........................................27

<u>Plaintiffs' Proposed Instruction No. 19; Dow's Proposed Instruction 5.4</u> .........................................28

<u>Plaintiffs' Proposed Instruction No. 20; Dow's Proposed Instruction 5.5</u> .........................................29

<u>Plaintiffs' Proposed Instruction No. 21; Dow's Proposed Instruction 5.6</u> .........................................29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................13

*Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977) ...........................................26

*Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494 (3d Cir. 2006) .....................................22

*Deutscher Tennis Bund v. ATP Tour Inc.*, No. 07-CV-00178 (D. Del. Aug. 5,
   2008) ...............................................................................................................4, 8, 19, 20

*Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171 (3d Cir. 1992) ...................7, 8

*Gordon v. Lewiston Hosp.*, 423 F.3d 184 (3d Cir. 2005) ................................................5

*In re Aspartame Antitrust Litig.*, 2007 WL 5215231 .............................................22, 23

*In re Bulk Extruded Graphite Products*, 2007 WL 1062979 ...................................22, 23

*In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383 (3d Cir. 2015) ...............8, 11, 12, 15

*In re Fasteners Antitrust Litig.*, 2011 WL 3563989 (E.D. Pa. Aug. 12, 2011) .......................22, 23

*In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002) ....................10, 16

*In re Linerboard Antitrust Litig.*, 305 F.3d 145 (3rd Cir. 2002)....................................26

*In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090 (D.N.J. Oct. 20, 2011) ...................22

*In re Urethane Antitrust Litig.*, 768 F.3d 1245 (10th Cir. 2014) ...................................6

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...................4, 5

*Promotion in Motion Inc. v. Beech-Nut Nutrition Corp.*, No. 09-cv-1228 (Jan. 7,
   2013) ..............................................................................................................................4

*Rossi v. Standard Roofing, Inc.*, 156 F.3d 452 (3d Cir. 1998)......................................20

*Valspar Corp. v. E.I. Du Pont de Nemours & Co.*, 2016 WL 304404 (D. Del. Jan.
   25, 2016) ......................................................................................................................13

*Wood v. Carpenter*, 101 U.S. 135 (1879) ....................................................................23

**PAGE(S)**

**STATUTES**

§ 1 of the Sherman Antitrust Act ................................................................................6, 20

## <u>PRELIMINARY STATEMENT</u>

Plaintiffs respectfully submit this Bench Brief Regarding Proposed Jury Instructions.

Plaintiffs' proposed preliminary and general instructions were based on the Third Circuit Model Civil Jury Instruction, but the Third Circuit model instructions do not address antitrust law.[1]  Therefore, Plaintiffs' proposed substantive instructions were based upon, and in many cases virtually identical to, the jury instructions actually given by Judge Lungstrum (the MDL Court judge) in the class trial, in which class plaintiffs brought an antitrust claim against Dow that was virtually identical to Plaintiffs' claim in this case.  Plaintiffs took this approach because, unless there was an actual Circuit split between the substantive law of the Tenth Circuit and Third Circuit that would affect an instruction, which very seldom was the case, there was no just or logical reason to depart from the instructions given by the MDL court judge in a virtually identical case tried only three years ago.

Nevertheless, Dow objected to nearly all of these instructions and made counter-proposals that had little or no overlap with Judge Lungstrum's instructions.  This Bench Brief responds to Dow's objections and counter-proposals.

Although Dow disparages Judge Lungstrum's instructions as "legacy instructions from the Tenth Circuit," Dow fails to point out any substantive differences between Tenth Circuit law and Third Circuit law that are material to the instructions to which Dow objects.  Indeed, Dow tacitly admits that there is no real Circuit split that would validate its approach because it bases most of its counter-proposals on the ABA Model Jury Instructions – which do not purport to be based on the law of the Third Circuit (or any other particular Circuit) but on federal law as a

---

[1]     Plaintiffs submitted their responses to Dow's counter-proposals regarding preliminary and general instructions in Plaintiffs' letter dated March 2, 2016.  To the extent that the Court wishes to give any of these instructions at the close of the evidence, Plaintiffs respectfully direct the Court's attention to Plaintiffs' letter.

whole.  But the ABA Model Instructions, which were published more than a decade ago, are in no way superior to the instructions that were carefully tailored to this case by Judge Lungstrum in 2013, based on proposals by counsel for Dow and class plaintiffs.

Moreover, Dow does not propose that the ABA Model Instructions be given as written, but rewrites them in a misleading fashion designed to slant the instructions in favor of Dow. Dow's proposed changes to the ABA Model Instructions are not supported by the case law that Dow cites as purported authority – to the extent that Dow cites any authority for its alterations at all, which it often does not.  Indeed, Dow does not and cannot cite a single case in which the instructions it proposes were actually given by a trial judge – in contrast to Plaintiffs' proposals, which closely follow the instructions given by Judge Lungstrum at the class trial.

Furthermore, although Dow claims that Plaintiffs' proposed instructions "ignore" the limitations on permissible inferences that the jury may draw, Plaintiffs' proposed instructions incorporate Judge Lungstrum's instructions regarding the law that, standing alone, similarity of conduct, opportunities to conspire, meetings to discuss common aims and interests, common participation in trade associations, and co-producer or buy/sell transactions, do not establish the existence of a conspiracy.  However, Dow's proposed instructions would go much further than Judge Lungstrum's instructions, and would dissuade the jury from making perfectly reasonable inferences regarding the conduct of Dow and its co-conspirators that are entirely permissible under the law of the Third Circuit.  There is simply no support for Dow's bald assertion that its one-sided and argumentative counter-proposals must be substituted for Judge Lungstrum's carefully tailored and balanced instructions due to a supposed difference between Third Circuit law and Tenth Circuit law that Dow never even articulates.

2

In sum, the Court should accept Plaintiffs' proposed instructions, which are based on Judge Lungstrum's class trial instructions, and reject Dow's instructions, which are based on the outdated ABA instructions coupled with Dow's improper, slanted, and confusing changes.

## INDIVIDUAL PROPOSED JURY INSTRUCTIONS

**Plaintiffs' Proposed Instruction No. 1/Dow's Proposed Instruction 3.1**:  Plaintiffs' proposed instruction follows Third Circuit Model Civil Jury Instruction 3.1 virtually verbatim, except that it adds the innocuous introductory sentence "Members of the jury, you have seen and heard all the evidence and the arguments of the attorneys. Now I will instruct you on the law." Dow objects to Plaintiffs' proposed instruction, which it incorrectly characterizes as a "hybrid of multiple instructions," and makes a counter-proposal which uses Third Circuit Model Civil Jury Instruction 3.1 as a starting point but makes revisions that appear designed only to unfairly slant this standard instruction in Dow's favor.  Plaintiffs have no objection to the Court giving Third Circuit Model Civil Jury Instruction 3.1 as written, but do object to Dow's proposed revisions to the Third Circuit Model Instruction.

For example, Dow's counter-proposal would add the sentence:

> Whether you like or dislike a defendant, a particular witness, a particular attorney, or even the Court, should not be a factor that you consider.

Notably, Dow's proposed addition omits Plaintiffs from the list of persons and entities whose likability should not be considered a factor in the jury's deliberations.  Dow's proposed addition should be rejected; or alternatively, Plaintiffs should be included on the list of persons or entities whose likability should not be considered.

Dow would also add the sentence:  "If any attorney has stated a principle of law that is contrary to what my instructions are, it is my instructions that are binding and to which you must adhere."  While this is a correct statement of the law as far as it goes, unless the attorneys have

actually stated a principle of law that is contrary to the instructions – in which case a specific curative instruction would be warranted – there is no reason to include this sentence in the instructions.[2]

**Plaintiffs' Proposed Instruction No. 11; Dow's Proposed Instruction 4.1**:  Plaintiffs' proposed instruction regarding the purpose of the Sherman Act has been given in a number of antitrust cases, including *Deutscher Tennis Bund v. ATP Tour Inc.*, No. 07-CV-00178 (D. Del. Aug. 5, 2008), and is identical to the ABA Model Instruction.[3]  Dow's counter-proposal would add the following sentence:

> Liability under the Sherman Act must be determined carefully because mistaken inferences of conspiracies chill the very conduct the antitrust laws are designed to protect.

This proposed sentence is not included in the ABA Model Instruction; nor in the instructions given in the cases cited by Plaintiffs; nor does Dow cite a case in which this sentence was included in the instructions.  Indeed, Dow's addition is misleading in that it takes language from a Supreme Court case completely out of context:

> But cutting prices in order to increase business often is the very essence of competition.  Thus, mistaken inferences in cases such as this one are especially costly, because they chill the very conduct the antitrust laws are designed to protect.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986) (emphasis added).  The *Matsushita* Court was discussing "mistaken inferences" in cases in which a plaintiff sought to prove an antitrust violation based on a defendant "cutting prices" – which is not what

---

[2]    Dow's proposed additions to this instruction were taken, out of context, from this Court's instructions in *Promotion in Motion Inc. v. Beech-Nut Nutrition Corp.*, No. 09-cv-1228 (Jan. 7, 2013).  The presentation of that case may have necessitated the inclusion of this sentence, but this case does not.

[3]    Although the ABA Model Instructions are over a decade old, and thus largely out of date, the purpose of the Sherman Act is an area of the law that has not changed over time.

the present case is about.  *Id.  Matsushita* does not state a general rule that "[l]iability under the Sherman Act must be determined carefully" due to an abstract concern about "mistaken inferences of conspiracies," as Dow's counter-proposal suggests.  In sum, the Court should give Plaintiffs' proposed instruction, which has been given by a number of courts, and should not make Dow's misleading and unfairly slanted revision to the ABA Model Instruction.

**Plaintiffs' Proposed Instruction No. 12; Dow's Proposed Instruction 4.2**:  Plaintiffs' proposed instruction introducing the elements of the antitrust claim (which are explained in later instructions) closely follows the instruction given by Judge Lungstrum in the class case – with the addition of the element that the conspiracy occurred in or affected interstate, import or foreign commerce, which was not included in Judge Lungstrum's instruction, but which is indisputably an additional element of Plaintiffs' claim.  Dow objects to Judge Lungstrum's instruction in its entirety, and makes a counter-proposal that begins with the ABA Model Instruction, but completely rewrites it to make the instruction unfairly slanted toward Dow.

Dow objects that Plaintiffs' proposed instruction, like Judge Lungstrum's, states that the first element that Plaintiffs must prove is "the existence of a conspiracy among Dow and at least one other urethane manufacturer to fix the prices of urethanes chemicals" – a concept that is explained in subsequent instructions.  While Dow does not dispute that this is a correct statement of the law, Dow states that it is "confusing" and proposes that this single element be divided into two elements:  (1) the existence of an agreement to fix prices and (2) that Dow "knowingly – that is, voluntarily and intentionally – became a party to that agreement."  Dividing this single element in two would only confuse the jury.  Indeed, the single Third Circuit case that Dow cites as authority, *Gordon v. Lewiston Hosp.*, 423 F.3d 184, 207 (3d Cir. 2005), treats concerted action by the co-conspirators as a single element of an antitrust claim.

Moreover, Dow's inclusion in this proposed instruction of an identification of the alleged co-conspirators, products, and time frame could mislead the jury into believing that it must find for Dow unless Plaintiffs prove that each company conspired to fix the price of each product for the entire time period. This is not the law. Indeed, Dow made this argument in appealing the judgment against it in the class case – asserting that the judgment should be reversed for lack of proof that one of the alleged co-conspirators, Lyondell, participated in the conspiracy – and the Tenth Circuit rejected Dow's argument: "Dow argues the evidence was insufficient regarding Lyondell's involvement in the conspiracy. . . . The argument fails legally because even if the evidence had not shown Lyondell's involvement, Dow would not have been exonerated. A defendant can incur liability for a conspiracy under § 1 of the Sherman Act so long as the defendant did not act unilaterally." *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1266 (10th Cir. 2014).

Furthermore, Dow, while purportedly basing its counter-proposal on the ABA Model Instruction, deletes language in the proposed instruction that is applicable to this case, but that Dow apparently does not consider favorable to its position. For example, the Model Instruction includes the following language that Dow would delete:

> An agreement between competing firms can violate this rule even if there is not an agreement on the exact price to be charged. For example, it is illegal for competing companies to agree on maximum or minimum prices, a range within prices will fall, a formula to set prices, or a component of prices, such as shipping charge or an interest rate.
>
> It is also illegal for competitors to agree on a plan or scheme that will tend to stabilize prices.

ABA Model Instruction 1. While the ABA Model Instruction envisions that it may be customized to fit particular facts, there is no justification for deleting language that is applicable to the facts of this case, merely because one side views it as unfavorable to its position.

6

Therefore, assuming arguendo that the Court decides to base its instructions on the ABA Model Instruction, it should not delete the language that Dow seeks to strike.

There is also no basis in the ABA Model Instruction for Dow's addition of the sentence, "You must consider these elements separately for each Plaintiff." This addition would only confuse and mislead the jury into believing that there must be individual proof as to elements that can be established by common proof.

Finally, Dow objects on the ground that the use in Plaintiffs' proposed instruction of the words "agreement" and "conspiracy" is "confusing[]." But Dow's proposed instruction also uses the term "conspired" as equivalent to "agreement," so Dow's objection is without merit.

In sum, the Court should give Plaintiffs' proposed instruction, which is based on Judge Lungstrum's instruction, and not Dow's proposed instruction, which is a prejudicially rewritten version of the ABA Model Instruction.

**Plaintiffs' Proposed Instruction No. 13; Dow's Proposed Instruction 4.3**: Plaintiffs propose giving the same instruction on the first element of a Sherman Act claim as Judge Lungstrum did in the class case. Dow would rewrite this instruction to include misleading and confusing passages intended to unfairly slant the instruction in Dow's favor.

Dow largely does not object to Judge Lungstrum's explanation of a conspiratorial agreement contained in Plaintiffs' proposed instruction, but would add a paragraph stating that "a conscious commitment is essential" and then discussing at length what Dow claims does and does not qualify as the supposedly "essential" level of "commitment." But Dow does not cite a single case in which the language it proposes was actually used in a jury instruction. Indeed, the two Third Circuit cases on which Dow relies note that what is essential to a conspiratorial agreement is "concerted action" and "unity of purpose." *Fineman v. Armstrong World Indus.,*

7

*Inc.*, 980 F.2d 171, 212-15 (3d Cir. 1992); *In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 395-98 (3d Cir. 2015). Moreover, *Fineman*, the case on which Dow principally relies for this instruction, quoted with approval an earlier Third Circuit holding that all that is required for a conspiratorial agreement is "1) knowledge that concerted action in the scheme is contemplated; 2) uniform participation; and 3) pursuance of the scheme in apparent contradiction of the competitive interests of the participants," 980 F.2d at 215, and further held that "[a] rational factfinder could infer agreement with the objective [of the conspiracy] from knowledge of the objective and action calculated to achieve the objective despite differing motives." *Id.* at 212. This is consistent with Judge Lungstrum's instruction and inconsistent with Dow's counter-proposal. In sum, Judge Lungstrum's instruction correctly and fairly explains what is required for a conspiratorial agreement, without the one-sided and confusing additions in Dow's counter-proposal.

Dow also takes issue with the sentence in Plaintiffs' proposed instruction that "Whether the agreement succeeds or fails does not matter." This sentence appears not only in the instructions given by Judge Lungstrum, it also appears in the ABA Model Instructions – on which Dow otherwise heavily relies – and in the jury instructions given in many other cases, such as *Deutscher Tennis Bund v. ATP Tour Inc.*, No. 07-CV-00178 (D. Del. Aug. 5, 2008). Dow's objection to this sentence improperly conflates the element of conspiratorial agreement with the element of injury, which is dealt with later in the instructions.

**Dow's Proposed Instruction 4.4**: Plaintiffs' Proposed Instruction No. 13 includes Judge Lungstrum's explanation that parallel conduct by the urethanes manufacturers does not in itself prove an antitrust violation:

> Mere similarity of conduct among various persons, however, or the
> fact that they may have associated with one another and may have

> met or assembled together and discussed common aims and
> interests, does not, by itself, establish the existence of a conspiracy.
> If those persons acted similarly but independently of one another,
> without any agreement among them, then there would not be a
> conspiracy.

Dow does not object to this portion of Plaintiffs' Proposed Instruction No. 13, but proposes to add an entire additional instruction covering the same topic. Although Dow states that its counter-proposal is based on Third Circuit law, it is actually based, albeit loosely, on the ABA Model Instructions. In fact, Dow has crafted this instruction by taking various sentences that Dow believes support its position from two different ABA Model Instructions, jettisoning the portions of the same ABA Model Instructions that Dow believes do not help its case, and making other changes designed to slant the instruction in Dow's favor. Dow does not cite a single case in this Circuit or elsewhere in which an instruction like the one it proposes was given.

For example, Dow would prejudice Plaintiffs by deleting the following sentences from the ABA Model Instructions:

> Likewise, if you conclude that the plaintiff has carried its burden of
> producing evidence that tends to exclude the possibility that [Dow]
> acted independently, then you must find for [Plaintiffs] and against
> [Dow] on the question of whether [Dow] participated in a
> conspiracy.

> Nevertheless, you may consider such facts and circumstances,
> along with other evidence, in determining whether any similarity
> or identity of prices resulted from the independent business
> judgment of the individual [manufacturers] freely competing in the
> open market, or whether it resulted from an agreement between
> two or more of them.

More subtly, Dow fails to define the "parallel conduct" that it would instruct the jury "does not by itself establish the existence of any conspiracy," except to state at one point that such conduct "relate[s] to announced price increases and price setting." Because the instruction fails to explain the parallel conduct that this instruction covers, a jury may be confused and

misled into discounting the importance of the direct and circumstantial evidence relating to pricing discussions among the alleged co-conspirators.

In sum, the Court should accept Judge Lungstrum's straightforward and balanced instruction regarding parallel conduct, not Dow's misleading and one-sided counter-proposal.

**Dow's Proposed Instruction 4.5**: Dow's proposed instruction entitled "Limitation on Inferences in Oligopoly Market" is not based on any of Judge Lungstrum's instructions, any other instruction actually given in an antitrust case in this Circuit or elsewhere, any ABA Model Instruction, or any other model instruction. It is merely Dow's argument, based on the expert testimony it will present at trial, as to why it should not be held liable – clothed in the language of a jury instruction. It is not a correct, balanced, or appropriate explanation of the relevant law. If this proposed instruction were given to the jury it would be highly prejudicial to Plaintiffs.

First, Dow's proposed instruction contains argumentative assertions regarding the way oligopolies supposedly behave. For example:

> In an oligopoly, parallel conduct, including parallel pricing, is a fact of life and not unusual because the businesses are interdependent. What this means is that, due to the small number of competitors, an action by one competitor will be obvious to other competitors, and, in making decisions, it is rational for each competitor to consider how the others will respond.

> [C]ompanies in an oligopoly might independently decide to raise price at or around the same time, not because of an agreement, but because each company knows that the industry as a whole will be better off if they each charge higher prices.

These assertions, taken from a court's findings in another case, have no place in the Court's jury instructions in this case. Indeed, if the Court were to follow this route, it could just as easily find language in other cases regarding how oligopolies behave that would be far less appealing to Dow, such as the discussion in *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 656-57 (7th Cir. 2002), about why oligopolistic markets are more susceptible to secret

10

price-fixing agreement than other markets. But there is no reason for the Court to include either side's arguments about oligopolies in its jury instructions.

Second, Dow's proposed instruction contains purported "special rules" that the jury supposedly must consider in weighing the evidence because the urethanes market is an oligopoly. Dow does not cite a single case in which a jury was instructed to apply these purported "special rules" in weighing the evidence in a case involving an oligopoly. Rather, Dow has taken out of context language from cases applying a summary judgment or motion to dismiss standard to specific facts in cases that are readily distinguishable from this case. By the very nature of the summary judgment and motion to dismiss standards applied in those cases, they did not involve factual disputes or weighing of evidence by a jury. Therefore, they cannot be the basis for "special rules" regarding the jury's consideration of the evidence in this case.

Dow principally relies on *In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383. In that case, there was no direct evidence of conspiratorial conduct, like the testimony in this case of Larry Stern, the head of Bayer's NAFTA polyurethanes division, and Stephanie Barbour, Dow's manager for MDI and rigid polyols. Rather, plaintiffs in *Chocolate Confectionary* relied on ambiguous, circumstantial evidence alone to try to prove the existence of a conspiracy. That circumstance, in and of itself, makes *Chocolate Confectionary* very different from this case, and precludes the application of the legal conclusions in that case regarding purely circumstantial evidence to the weighing of evidence in this case.

Moreover, the outcome in *Chocolate Confectionary* turns on the concept of "plus factors" that has been developed in the context of summary judgment decisions in cases based solely on circumstantial evidence. *Chocolate Confectionary* held that, because plaintiffs had alleged a conspiracy based on parallel price increases in an oligopolistic market, the "most important plus

11

factor" was "traditional non-economic evidence of a conspiracy." *Id.* at 398. The court found that plaintiffs' showing in that case – which relied on (1) a parallel foreign conspiracy that the court deemed irrelevant; (2) sporadic communications among employees who were without pricing authority; (3) one company's possession of advance pricing information that plaintiffs were unable to show was given to it by a competitor; (4) evidence that executives merely "were in the same place at the same time"; and (5) what the court characterized as "weak" economic evidence – was insufficient to present a jury question on the existence of a conspiracy. *Id.* at 402-11. The court noted that, by contrast, it had previously held that conspiracy allegations presented a fact issue for the jury where there was evidence about price increases that required cooperation and coordinated price increases suspiciously close in time to communications involving the conspirators (*Flat Glass*), and where there was testimony about a code among competitors not to compete, discussions at trade associations among competitors about prices, one conversation in which a conspirator told another to play by the rules, and expert testimony that the price data showed the existence of a conspiracy (*Petruzzi's*). *Id.* at 412. The present case involves both direct evidence not present in *Chocolate Confectionary*, and circumstantial evidence even stronger than that in *Flat Glass* or *Petruzzi's*, and is therefore readily distinguishable from *Chocolate Confectionary*. Indeed, the MDL Court denied summary judgment in this case, and the Tenth Circuit affirmed the judgment in favor of the Class Plaintiffs, rejecting the very argument regarding oligopolistic markets that Dow makes here. More to the point, *Chocolate Confectionary* does not explain how the jury is to weigh evidence – particularly in cases such as this one involving both direct and circumstantial evidence – and therefore cannot be the basis for the jury instruction that Dow proposes.

Similarly, in *Valspar Corp. v. E.I. Du Pont de Nemours & Co.*, 2016 WL 304404 (D. Del. Jan. 25, 2016), the district court granted summary judgment for defendant in a case in which plaintiff "does not advance any direct evidence of conspiracy." *Id.* at *4. The court held that the "plus factor" of traditional non-economic evidence of conspiracy was not satisfied based on evidence of (1) parallel price increases; (2) internal emails that emphasized the authors' lack of assurance as to what competitors were doing and intending to do, thus suggesting a lack of conspiratorial agreement; (3) evidence that the competitors were members of a program that shared aggregated data from which the competitors could not determine any individual statistics for any firm other than their own; and (4) competitors attended meetings together, without evidence that they discussed prices at those meetings. *Id.* at *7-13. Again, the present case – in which there is direct evidence of conspiracy and circumstantial evidence of pricing discussions, along with compelling economic evidence – is readily distinguishable. More importantly, nothing in *Valspar* suggests that the jury should apply the "special rules" set forth in Dow's proposed instruction in weighing the evidence in a case such as this. And Dow's reliance on *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), is even more misplaced, in that the case stands for the proposition that a court ruling on a motion to dismiss must determine whether a complaint alleges "plausible grounds to infer an agreement," but provides no guidance as to how a jury is to weigh evidence of such an agreement at trial.

In sum, there is no legal basis for giving the argumentative and misleading instruction sought by Dow. Judge Lungstrum's instructions, included in Plaintiffs' proposed instructions, sufficiently explain to the jury that parallel conduct alone does not establish a conspiracy. Therefore, the court should accept Plaintiffs' proposal and reject Dow's counter-proposal.

**Dow's Proposed Instruction 4.6**:  Dow's proposed instruction is ostensibly based on an ABA Model Instruction (at B-32), but Dow again rewrites the model instruction to distort its meaning and unfairly prejudice Plaintiffs.  First, Dow deletes the sentence, "Evidence has been introduced concerning the exchange of information among defendants [and/or other persons] about their prices [for product X]" and replaces it with the following sentence:

> The Plaintiffs contend that the existence of an agreement to fix the actual prices of TDI, MDI and polyether polyols sold in the United States from January 1, 1994 through December 31, 2003 can be inferred from the fact that Dow, BASF, Bayer, Huntsman, and Lyondell disclosed and gathered information about their competitors' prices through public price announcements and through negotiation with common customers.

This is far from an accurate description of the basis of Plaintiffs' conspiracy allegation. Plaintiffs contend that the existence of the alleged conspiracy can be inferred from the totality of the evidence, including both direct and circumstantial evidence of conspiratorial conduct and economic evidence.  Even as to exchange of price information, Plaintiffs' evidence is not limited to the co-conspirators "gather[ing] information . . . through public price announcements and through negotiation with common customers," it includes secret discussions between competitors about pricing and giving internal documents to competitors.  Therefore, the jury should not be given this misleading description of Plaintiffs' allegations.

Moreover, Dow improperly adds a phrase to the ABA Model Instruction that would lead the jury to believe that "even direct communications between competitors" of the type alleged by Plaintiffs do not establish a conspiracy.  In fact, Plaintiffs' evidence regarding direct conspiratorial communications would establish a conspiracy standing on its own.

Furthermore, Dow would add an entire paragraph arguing to the jury that, in an oligopolistic market, exchanging price information is not only permissible but a matter of

"common sense."  As with the previous instruction, Dow's argumentative assertions regarding the way oligopolistic markets supposedly behave have no place in the court's instructions.

The limits of permissible inferences that can be made from parallel pricing conduct are already covered by Judge Lungstrum's instruction, which Plaintiffs have adopted.  Judge Lungstrum correctly decided not to give an instruction of the sort that Dow requests.  The court should follow Judge Lungstrum and reject the instruction proposed by Dow.

**<u>Plaintiffs' Proposed Instruction No. 14; Dow's Proposed Instruction 4.7</u>**:  Plaintiffs' proposed instruction closely follows Judge Lungstrum's instruction at the class trial.  Dow would rewrite this instruction in a way that would mislead and confuse the jury.

Judge Lungstrum's instruction explains, in an accurate and balanced fashion, that the mere attendance by competitors at trade association meetings, or other evidence that executives from different companies were at the "same place at the same time," is not sufficient to establish a conspiracy.  This is precisely what *Chocolate Confectionary*, 801 F.3d 383 (the case on which Dow principally relies), holds.  But Dow would add a sentence suggesting that the jury is constrained in drawing inferences from clear evidence that executives were not merely "in the same place at the same time," but actually conducting secret communications in furtherance of the conspiracy, in the course of "dinners, golf outings and telephone calls."  Dow's suggested addition is legally incorrect.

Similarly, Dow proposes the addition of several sentences regarding "interactions" that Dow wishes the court to instruct the jury are invariably "commonplace and lawful," including such broad and varied activities as "marketing," "purchasing," "distribution," "joint ventures," and "contractual relationships."  None of the cases that Dow cites supports Dow's proposed instruction, nor is there any case in which such an instruction was given.

15

Thus, the Court should give Plaintiffs' proposed instruction, which is closely based on Judge Lungstrum's instruction, without Dow's misleading and argumentative additions.

**Plaintiffs' Proposed Instruction No. 15; Dow's Proposed Instruction 4.8**:  Plaintiffs proposed the same instruction regarding evidence of competition given by Judge Lungstrum in the class case, which was based on the ABA Model Instructions.  Dow's counter-proposal alters the language of the instruction to slant the instruction in Dow's favor and risk confusing the jury. Dow cites no authority for its proposed changes, and there are no cases in which a district court gave an instruction with the language that Dow proposes.

For example, Dow's counter-proposal would change the instruction from stating that, if the jury finds that the alleged conspiracy existed, "it is no defense that the manufacturers actually competed in some respects with each other," to stating that (emphasis added), if the jury finds that the alleged conspiracy existed, "it is no defense that the manufacturers actually competed in other respects with each other on different products, on different transactions, for different customers."  But the law is clear that, if the jury finds that the alleged conspiracy existed, the fact that the alleged co-conspirators actually competed in some respects is no defense, regardless of whether it related to different products, transactions, or customers.  *See In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 656 (7th Cir. 2002).   In short, Judge Lungstrum's instruction accurately states the law, while Dow's counter-proposal does not.

Dow's counter-proposal is also intentionally confusing in that it would inform the jury that it is to use evidence of competition in determining all of the following:  "whether a Plaintiff has shown that the alleged price-fixing agreement existed; whether Dow entered into any such agreement; what products were subject to that agreement; and when that agreement began and ended."  Dow's counter-proposal will improperly suggest to the jury that all of these questions

are elements of the claim; and that each must be proven individually by each Plaintiff, rather than by common proof.  This is not accurate, and can only mislead and confuse the jury.

In sum, because Dow's proposed changes to Judge Lungstrum's instruction are unsupported and will only serve to mislead the jury, the Court should reject them.

**Dow's Proposed Instruction 4.9**: Plaintiffs' Proposed Instruction No.13, which is based on Judge Lungstrum's instructions, includes the law that is the subject of Dow's Proposed Instruction 4.9.  Plaintiffs' Proposed Instruction No.13 states that Plaintiffs must prove that "Dow knowingly became a member" of the conspiracy, and that "knowingly means voluntarily and intentionally, and not because of mistake or accident or other innocent reason."  The instruction also informs the jury that "each person found to be a member of the conspiracy is liable for all acts and statements of the other members made during the existence of and in furtherance of the conspiracy."  No more is required to inform the jury of the law on these issues.

Dow's counter-proposal would expend many more paragraphs on these issues, but is in no way superior to Judge Lungstrum's instruction, which is carefully tailored to this case.  Dow's counter-proposal is also confusing in that it would add a preliminary paragraph that, unlike Judge Lungstrum's instructions, would split the conspiracy element into two separate elements: existence of the conspiracy and participation in the conspiracy.  This approach is unsupported by Third Circuit law, any instruction actually given, or any model instruction.

**Plaintiffs' Proposed Instruction No. 8; Dow's Proposed Instruction 4.10**:  Plaintiffs' proposal is identical to Judge Lungstrum's instruction regarding corporations.  Dow's counter-proposal takes certain parts of an ABA Model Instruction that Dow deems helpful to its case, and jettisons other paragraphs that Dow apparently believes do not help its case.  Specifically, Dow would delete the following sections of the ABA Model Instruction (at B-11):

> The fact that a corporation has instructed its agents not to violate the antitrust laws does not excuse the corporation from responsibility for the unlawful acts of its agents done within the scope of their employment or apparent authority.
>
> A corporation is entitled to the same fair trial as a private individual.  The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you may hold a corporation liable only if such liability is established by the preponderance of the evidence.    All persons, including corporations, are equal before the law.

Dow offers no justification for deleting these paragraphs from the ABA Model Instruction (nor does it even note the deletion).  Plaintiffs believe the Court should give Judge Lungstrum's instruction because it is tailored to this case.  But, in the alternative, if the Court chooses to give the ABA Model Instruction (at B-10-11) instead, Plaintiffs respectfully submit that the Court should give the entire ABA Model Instruction, not merely the portions that Dow likes.

**Plaintiffs' Proposed Instruction No. 16; Dow's Proposed Instruction 4.11**: Plaintiffs' proposed instruction regarding the settled defendants is identical to the instruction given by Judge Lungstrum in the class case under identical circumstances.  Dow would alter the instruction in such a way that it would serve no useful purpose.

First, Dow would delete the word "defendants" from the instruction, purportedly to make it consistent with this Court's ruling regarding references to the settled defendants.  But this Court's order noted the risk of confusion resulting from the fact that the settled defendants are referred to as "defendants" throughout the depositions, and therefore that the Court "will provide a jury instruction in order to clear any confusion."  Plaintiffs' proposed instruction would do just that.  Dow's counter-proposal, by removing the word "defendants," would do nothing to alleviate the confusion.

Second, Dow would strike from Judge Lungstrum's instruction: "You should not hold the absence of these urethane manufacturers from this trial against either Plaintiffs or Dow."  Dow does not explain why it wishes to delete this language, and Plaintiffs see no basis for doing so.

In sum, Plaintiffs believe that their proposed instruction, which is identical to Judge Lungstrum's instruction, should be given without alteration.

**Plaintiffs' Proposed Instruction No. 17; Dow's Proposed Instruction 4.12**: The parties had agreed to Plaintiffs' proposed instruction regarding absent witnesses.  Dow is now trying to renege on its agreement, purportedly because Plaintiffs are not calling as many live witnesses as Dow hoped.  Because the instruction has nothing to do with whether witnesses testify live or by video deposition, Dow's objection is not well taken.   Moreover, Dow's stated purpose in changing the stipulated instruction is an attempt to encourage the jury to draw an adverse inference from the fact that some of Plaintiffs' witnesses are not testifying live.  The Court should reject Dow's proposed changes and give the stipulated instruction.

**Plaintiffs' Proposed Instruction No. 18; Dow's Proposed Instruction 4.13**: The parties agree on this proposed instruction.

**Dow's Proposed Instruction 4.14**:   Plaintiffs have no objection to this proposed instruction.

**Plaintiffs' Proposed Instruction No. 19; Dow's Proposed Instruction 4.15**: Plaintiffs' proposed instruction regarding antitrust "Injury and Causation" tracks the instruction given by Judge Lungstrum in the class case and by courts in other antitrust cases, including *Deutscher Tennis Bund v. ATP Tour Inc.*, No. 07-CV-00178 (D. Del. Aug. 5, 2008), on which Dow relies to support its proposed instructions on other issues.

19

Dow would replace that instruction, not with one given by any court in any antitrust case, but with an instruction Dow creates by taking an ABA Model Instruction, cutting out what Dow considers unhelpful, and adding material of Dow's own devising.  No court has ever given such an instruction, nor do the cases Dow cites support it.  Rather, the cases cited by Dow merely stand for legal principles that already appear in Plaintiffs' proposed instruction.

Contrary to Dow's claim, Plaintiffs' proposal does not "conflate" Plaintiffs' burdens with respect to antitrust injury and the amount of damages.  Plaintiffs' instruction instead makes it clear that they are different burdens, and that only if the jury finds that Plaintiffs proved they were injured can the jury decide whether Plaintiffs have proven the amount of damages they seek.  That is exactly the principle for which the case Dow cites stands.  *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 484 (3d Cir. 1998) (proof of injury and proof of the amount of damages are "related, but distinct, inquiries").

Plaintiffs are amenable to modifying their proposed instruction to make it clearer that each Plaintiff must prove antitrust injury.[4]  As modified, the instruction reads as follows:

If you find that Dow has violated Section 1 of the Sherman Antitrust Act as alleged by Plaintiffs, then you must decide if Plaintiffs are entitled to recover damages from Dow.

~~Plaintiffs are~~ <u>Each Plaintiff family is</u> entitled to recover damages for an injury to ~~their~~ <u>its</u> business or property if ~~they~~ <u>it</u> can establish (1) that ~~they were~~ <u>it was</u> in fact injured as a result of Dow's alleged violation of the antitrust laws, ~~and~~ (2) that Dow's alleged illegal conduct was a material cause of ~~injury to Plaintiffs~~ <u>that injury, and (3) that the injury to the Plaintiff family is an injury of the type the antitrust laws were intended to prevent</u>.

With respect to the first element, proving the fact of injury does not require Plaintiffs to prove the dollar value of their injuries.  It requires only that they were in fact injured by Dow's alleged antitrust violation.  If you find that Plaintiffs have established that they were in fact injured, you may then consider the amount of their damages.  It is important to understand, however, that injury and amount of damages are different concepts and that you cannot consider

---

[4]    The antitrust injury modification is taken directly from the *Deutscher Tennis* instruction (Antitrust Jury Instruction No. 29).  The rest of the instruction is identical to the one Judge Lungstrum gave in the class case.

the amount of damage unless and until you have concluded that Plaintiffs have established that they were in fact injured.

With respect to the second element, Plaintiffs must establish that Dow's alleged illegal conduct was a material cause of plaintiffs' injuries. This means that Plaintiffs must prove that some damage occurred to them as a result of Dow's alleged antitrust violation. Plaintiffs are not required to prove that Dow's alleged antitrust violation was the sole cause of their injuries; nor must they eliminate all other possible causes of injury. It is enough if Plaintiffs have proved that the alleged antitrust violation was a material cause of their injuries. However, if you find that Plaintiffs' injuries were caused primarily by something other than the alleged antitrust violation, then you must find that they have failed to prove that they are entitled to recover damages from Dow.

<u>Finally, Plaintiffs must establish that their injury is the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If Plaintiffs' injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then Plaintiffs' injuries are antitrust injuries. On the other hand, if Plaintiffs' injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then Plaintiffs' injuries are not antitrust injuries and Plaintiffs may not recover damages for those injuries under the antitrust laws. You should bear in mind that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against - such as where a competitor offers better products or services or where a competitor is more efficient and can charge lower prices and still earn a profit - and the antitrust laws do not permit a plaintiff to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.</u>

Thus, if <u>a</u> Plaintiff~~s~~ <u>family</u> can establish that ~~they were~~ <u>it was</u> in fact injured by Dow's conduct, ~~and~~ that Dow's conduct was a material cause of ~~their~~ <u>the</u> injuries, <u>and that the injuries are of the type that the antitrust laws were designed to prevent</u>, then <u>the</u> Plaintiff~~s~~ <u>family</u> ~~are~~ <u>is</u> entitled to recover damages for the injuries to ~~their~~ <u>its</u> business or property.

**Plaintiffs' Proposed Instruction No. 23; Dow's Proposed Instruction 4.16**: Plaintiffs'

proposed instruction regarding fraudulent concealment is based on the instruction given by Judge

Lungstrum, and is thus tailored to the facts of this case. Dow's counter-proposal, while

purportedly based on the ABA Model Instruction, substantially rewrites that instruction in a

manner that would mislead the jury and incorrectly state the applicable law.

First, Dow would add the following sentence:

> A Plaintiff that fails to prove that he exercised reasonable diligence
> in investigating the cause of his injury or facts relevant to his claim
> cannot assert "fraudulent concealment."

This is an incorrect statement of the law in this Circuit.  Rather, a plaintiff satisfies the third element of fraudulent concealment if it shows "that the cause of action would not have been revealed even in the exercise of diligence."  *In re Fasteners Antitrust Litig.*, 2011 WL 3563989, at *7 (E.D. Pa. Aug. 12, 2011) (internal quotation marks and citation omitted); *see also Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006) (plaintiff satisfies this element of fraudulent concealment by showing that her "ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts").  In other words, if a plaintiff shows that due diligence would not have uncovered the conspiracy, a plaintiff does not have to show "affirmatively" that it exercised due diligence.

Second, Dow argues that the conspiracy alleged in this case was not self-concealing. Dow is incorrect.  A price-fixing conspiracy like the one alleged here is "inherently self-concealing."  *In re Fasteners Antitrust Litig.*, 2011 WL 3563989, at *5.  When, as here, conspiracies are "self-concealing," courts in this Circuit have not required evidence of affirmative acts of concealment, apart from proof of the existence of the conspiracy itself, for the fraudulent concealment doctrine to apply.  *Id.* at *4-5; *In re Bulk Extruded Graphite Products*, 2007 WL 1062979, at *2; *In re Aspartame Antitrust Litig.*, 2007 WL 5215231, at *5-6.[5]

Relatedly, Dow's attempt to insert into the instruction language, not contained in the

---

[5]      Dow's reliance on *In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090 (D.N.J. Oct. 20, 2011), for the proposition that the conspiracy alleged in this case is not self-concealing, is misplaced.  In that case, the court merely held that the plaintiff had not alleged with sufficient particularity that the conspiracy was self-concealing, and granted plaintiff leave to replead its fraudulent concealment argument with greater particularity.  *Id.* at *20.  The court held that this burden would be satisfied by allegations that a price increase announcement concealed "its true nature" because it carried a "pretense of legitimacy" or that it would be assumed by purchasers that it was "the result of legitimate market forces."  *Id.* at *22.  Here, there is no dispute that the alleged co-conspirators presented their price increases as legitimate and ascribed them to legitimate market forces.  Thus, under *Magnesium Oxide*, the conspiracy in this case is self-concealing.

Model ABA Instructions, that Plaintiffs must prove that Dow "actively misled" Plaintiffs and that there "must be some sort of trick or contrivance intended to exclude suspicion and prevent inquiry" should be rejected.  Dow takes this language from an ancient case, *Wood v. Carpenter*, 101 U.S. 135 (1879).  Dow does not cite any case in which this language was included in a jury instruction.  Even assuming that this requirement would ever apply under current law, it would not apply in a self-concealing conspiracy such as this one, where fraudulent concealment can be established by the same facts that prove the existence of the conspiracy itself.

Third, Dow further objects on the ground that informing the jury that "the law recognizes that a conspiracy is, by nature, self-concealing" would be unduly prejudicial because it would imply that "any Plaintiff that prevailed on its price-fixing claim is automatically entitled to a finding of fraudulent concealment."  In fact, Plaintiffs' proposed instruction does no such thing – it explains that because the conspiracy is self-concealing, "you may consider the very acts giving rise to the conspiracy when deciding whether it was concealed from the Plaintiffs; there is no requirement that the affirmative acts of concealment be independent from the conspiracy itself."  This is a correct statement of the law.  *In re Fasteners Antitrust Litig.*, 2011 WL 3563989, at *4-5; *In re Bulk Extruded Graphite Products*, 2007 WL 1062979, at *2; *In re Aspartame Antitrust Litig.*, 2007 WL 5215231, at *5-6.[6]

Fourth, Dow's counter-proposal would alter the ABA Model Instruction by instructing the jury that there must be an "individual determination" for each Plaintiff as to each element of fraudulent concealment.  Contrary to what Dow's counter-proposal suggests, certain elements of fraudulent concealment, such as the use of fraudulent means to conceal the conspiracy, can be

---

[6]    In the alternative, if the Court agrees with Dow's objection in this regard, it should delete the phrase that Dow claims is confusing – "the law recognizes that a conspiracy is, by nature, self-concealing" – but leave the rest of Plaintiffs' proposed instruction intact.

established by common proof rather than individualized proof.

Fifth, Dow would delete the following sentence from Plaintiffs' proposed instruction:

> In that event, the length of time for which plaintiff may recover damages may be expanded to include the earliest injury that you find was suffered by plaintiff.

and replace it with the following:

> You must then determine the specific date that the fraudulent concealment ended, which is the date that the particular Plaintiff became aware or should have become aware of the alleged price-fixing agreement, whichever is earliest.

The sentence that Dow would delete appears, in virtually identical form, in both Judge Lungstrum's instruction and the ABA Model Instructions.  It is a correct statement of the law.  By contrast, Dow's proposed substitution does not appear in any instruction given by any court, or any model instruction.  No authority requires the jury to determine "the specific date" that each Plaintiff "should have become aware of the alleged price-fixing agreement."

In sum, this Court should give the proposed instruction regarding fraudulent concealment proposed by Plaintiffs, which closely follows Judge Lungstrum's instruction, and reject Dow's counter-proposal, which purports to be based on the ABA Model Instruction but would rewrite that instruction in a way that is unsupported, misleading, and unfairly prejudicial.

**<u>Plaintiffs' Proposed Instruction No. 22; Dow's Proposed Instruction 5.1</u>**: Plaintiffs' proposed instruction regarding the effect of the Court's instruction as to damages once again tracks the one Judge Lungstrum gave in the class case.  Dow complains that the instruction fails to add that the jury should not consider damages unless the jury first finds that Plaintiffs have proven liability.  Dow's objection is without foundation for at least two independent reasons.

First, the proposed instruction on its face is limited to the effect of the Court's instruction and has nothing to do with anything else.  Second, and more important, the additional point Dow

24

wants to add to Plaintiffs' proposed instruction No. 22 already appears in one of Plaintiffs' prior proposed instructions, No. 19.  The sequence Plaintiffs propose is  the same sequence Judge Lungstrum's instructions followed in the class case.  There is no reason to say it twice in two different instructions, except to make the instruction biased in Dow's favor.

For the reasons stated above with respect to Plaintiffs' Proposed Instruction No. 19, Plaintiffs are amenable to substituting the term "each Plaintiff family" for the term "Plaintiffs." As modified, the body of Plaintiff's proposed Instruction No. 22 reads as follows:

You should not consider the fact that I have instructed you about the proper measure of damages as an indication of my views regarding which party is entitled to your verdict in this case.  I am giving you instructions about damages solely to provide you with guidance if you should find in favor of <u>one or more of the</u> Plaintiff<s> <u>families</u>.

**Plaintiffs' Proposed Instruction No. 20; Dow's Proposed Instruction 5.2**: Plaintiffs' Proposed Instruction No. 20 regarding damages is virtually identical to Judge Lungstrum's instruction.  Dow objects, claiming that the instruction is supposedly a "vague and incomplete" instruction that will "likely confuse the jury" and thereby cause "substantial prejudice" to Dow. But the jury had no problem understanding this instruction in the class case.  Nor did Judge Lungstrum find it incomplete or likely to prejudice Dow when he gave it.

Dow proposes that the instruction be divided into separate, smaller instructions.   In principle, Dow's proposal would not be a problem; in practice, Dow uses this as a ruse to try to rewrite the instruction and insert inaccurate and prejudicial matter.  What Dow does not like about the instruction has nothing to do with its form, but with its neutrality.  If Dow truly cared about the form, it merely would have suggested that Plaintiffs' instruction be divided.  Instead, Dow rewrites each individual instruction, using the ABA Model Instructions as a starting point, but then surgically altering the model instructions to remove what does not advance Dow's arguments and adding Dow's own argumentative positions (surgery which Dow euphemistically

calls "customization").   No court has ever given such instructions, and Dow provides no colorable explanation why this Court should be the first do so.

With respect to the ground covered by Dow's Proposed Instruction 5.2, Plaintiffs' proposed instruction is not only virtually identical to Judge Lungstrum's – it is also virtually identical to the ABA Model Instruction on which Dow relies.  But Dow would add an additional paragraph, not found in the ABA Model Instruction, Judge Lungstrum's instruction, or any other instruction that would inform the jury that it must apportion damages based on the number of purchases as to which it finds antitrust injury.  This misstates the law by confusing proof of antitrust injury with proof of damages.  If a defendant fixed prices and the plaintiffs have standing, then plaintiffs suffered antitrust injury, with the amount of damages flowing from that injury to be determined by the jury.  *See e.g. In re Linerboard Antitrust Litig.*, 305 F.3d 145, 151 (3rd Cir. 2002) ("'If the price structure in the industry is such that nationwide the conspiratorially affected prices at the wholesale level fluctuated within a range which . . . was higher . . . than the range which would have existed . . . under competitive conditions, it would be clear that all members of the class suffered some damage, notwithstanding that there would be variations . . . as to the extent of [the plaintiffs] damage.'" (quoting *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 455 (3d Cir. 1977))).

The only other issue is Dow's objection that damages must be determined for each Plaintiff.  For the reasons stated above with respect to Plaintiffs' Proposed Instruction No. 19, Plaintiffs are amenable to substituting the term "each Plaintiff family" for the term "Plaintiffs."  As modified, the body of Plaintiffs' Instruction No. 20 reads as follows:

If you find that Dow violated the antitrust laws and that this violation caused injury to one or more Plaintiffs families, then you must determine the amount of damages, if any, the Plaintiffs families are entitled to recover. The law provides that Plaintiffs should be fairly compensated for all damages to their business or property that were a direct result or likely

consequence of the conduct that you have found to be unlawful.

The purpose of awarding damages in an antitrust action is to put an injured plaintiff as nearly as possible in the position in which it would have been if the alleged antitrust violation had not occurred. The law does not permit you to award damages to punish a wrongdoer — what we sometimes refer to as punitive damages — or to deter the defendant from particular conduct in the future, or to provide a windfall to someone who has been the victim of an antitrust violation.  You are also not permitted to award to Plaintiffs an amount for attorney fees or the costs of maintaining this lawsuit. Antitrust damages are compensatory only.  In other words, they are designed to compensate a plaintiff for the particular injuries it suffered as a result of the alleged violation of the law.

Plaintiffs claim that they were harmed because they paid higher prices for urethane chemicals than they would have paid if there had been no conspiracy.  If you have determined that there was a conspiracy among Dow and the urethane chemical manufacturers to fix, raise, or stabilize the prices of urethane chemicals, and that this conspiracy caused some injury to one or more of the Plaintiffs families, you must now consider the extent of those Plaintiffs' damages. A proper method of calculating those damages is to award Plaintiffs the difference between the prices they actually paid and the prices they would have paid in the absence of the alleged price-fixing conspiracy.

Damages may not be based on guesswork or speculation. If you find that a damages calculation cannot be based on evidence and reasonable inferences, and instead can only be reached through guesswork or speculation, then you may not award damages.

You are permitted to make reasonable estimates in calculating damages.  It may be difficult for you to determine the precise amount of damage suffered by Plaintiffs.  If one or more of the Plaintiffs families establish with reasonable probability the existence of an injury materially caused by the conspiracy, you are permitted to make a just and reasonable estimate of the damages. There must be a reasonable basis in the evidence for a damages award, but damages need not be determined with absolute mathematical certainty.  The amount of damages must, however, be based on reasonable, non-speculative assumptions and estimates.  Plaintiffs must prove the reasonableness of each of the assumptions upon which the damages calculation is based.

**Plaintiffs' Proposed Instruction No. 20; Dow's Proposed Instruction 5.3**:  The legal

terrain covered by Dow's Proposed Jury Instruction No. 5.3 is covered by Plaintiffs' Proposed

Instruction No. 20, which is virtually identical to Judge Lungstrum's instruction.  It also closely

parallels the ABA Model Instruction that Dow uses as a starting point.  Dow simply adds biased

and inaccurate "customized" language to the ABA Model Instruction, which would instruct the

jury to focus on whether Plaintiffs' "assumptions and estimates are reasonable and non-

speculative," and to consider each Plaintiff's "contracts, its negotiating leverage, and its bargaining skill," in making this determination. This instruction is not justified by Dow's citation to a single case that does not involve either antitrust law or jury instructions. Indeed, Dow's proposed addition is entirely without support, and its premise does not apply in a case in which the jury is asked to calculate damages based on overcharges caused by alleged price-fixers. As with most of Dow's "customized" language, this is merely Dow's argument in the guise of a jury instruction.

**Plaintiffs' Proposed Instruction No. 19; Dow's Proposed Instruction 5.4**: Plaintiffs' Proposed Instruction No. 19, which is virtually identical to Judge Lungstrum's instruction, properly instructs the jury on the law of causation as it is relevant to this case. Dow's counter-proposal takes the ABA Model Instructions as a starting point, but again "customizes" them by deleting any portion that Dow believes might be helpful to Plaintiffs, and adding argumentative and unsupported language to benefit Dow.

For example, Dow would delete a sentence from the Model Instructions stating, "If you find that plaintiff has proven with reasonable certainty the amount of damage caused by defendant's alleged antitrust violation then you must return a verdict for the plaintiff" – for no other apparent reason than it envisions the jury possibly returning a verdict for a plaintiff.

Similarly, Dow would add argumentative paragraphs designed to undercut the testimony of "Plaintiffs' expert witness in this case," but making no mention whatsoever of Dow's expert witness. Third Circuit Model Jury Instruction 2.11, which Plaintiffs have proposed, addresses expert opinion testimony in a fair and accurate manner. Dow's proposed paragraphs regarding Plaintiffs' expert should be stricken; or, alternatively, Plaintiffs should be permitted to add their own argumentative paragraphs regarding Dow's expert witnesses.

Likewise, Dow's proposal to add a paragraph inviting the jury to "consider whether some or all of a plaintiff's claimed injuries were caused by factors particular to the individual Plaintiff and unrelated to the alleged price-fixing agreement" is nothing more than Dow's argument, and has no place in the jury instructions.  Judge Lungstrum's instruction fully explains the principles of causation in an accurate and balanced manner; Dow's proposal does not.

**Plaintiffs' Proposed Instruction No. 20; Dow's Proposed Instruction 5.5**:  Judge Lungstrum properly explained damage calculation to the jury in his instruction which Plaintiffs have adopted as Proposed Instruction No. 20.  Dow again purportedly adopts the corresponding ABA Model Jury Instruction, but then "customizes" it with highly prejudicial changes.   In particular, Dow complains that Plaintiffs' proposed instruction does not include language about benchmark periods.  But Dr. McClave, the plaintiffs' damages expert in the class case, also used benchmark periods in his calculations.  Dow forgets that the instruction Judge Lungstrum gave (which was identical to Plaintiffs' proposed instruction No. 20), did not reference the use of benchmark periods and Dow did not object to their absence.  The Court should adopt Judge Lungstrum's fair and balanced instruction, not Dow's argumentative one.

**Plaintiffs' Proposed Instruction No. 21; Dow's Proposed Instruction 5.6**: Plaintiffs propose the same instruction on joint and several liability that Judge Lungstrum gave.  Dow says that this instruction "conflates the distinct concepts of antitrust injury and damages."  But the instruction does not need to address antitrust injury because it only comes into play after injury has been found and damages awarded.

Dow, on the other hand, cites no authority whatsoever for its rewrite of Plaintiffs' proposal.  Nor could it, because (1) joint and several liability does not apply to the finding of antitrust injury, but only to damages once that injury has been proven, and (2) Dow's other

suggested edits (such as its addition of the "without guesswork or speculation" language) are superfluous and do not belong in a joint and several liability instruction.

Therefore, the Court should adopt Plaintiffs' proposal without Dow's suggested changes.

Respectfully Submitted,

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
*Attorneys for Plaintiffs*

By:___/s/ James E. Cecchi_____
        JAMES E. CECCHI

Dated: March 18, 2016

Jeffrey M. Johnson
Adam Proujansky
Daniel P. Schaefer                    Richard J. Leveridge
Alex E. Hassid                          ADAMS HOLCOMB, LLP
BLANK ROME LLP                    1875 Eye Street, NW
1825 Eye Street, NW                 Washington, DC 20006
Washington, DC 20006              (202) 580-8818
(202) 420-2200

James R. Martin
ZELLE LLP
1220 L Street, NW
Suite 100-143
Washington, DC 20005
(202) 359-6688

*Attorneys for Plaintiffs*