## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE URETHANE ANTITRUST LITIGATION | Master Docket No. 08-5169 (WJM) (MF) <br><br> *Document Filed Electronically* |

## DEFENDANT THE DOW CHEMICAL COMPANY'S BENCH BRIEF REGARDING THE TESTIMONY OF DR. LESLIE MARX

Lawrence S. Lustberg
Daniel J. McGrady
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102
Telephone:  (973) 596-4500
Facsimile:  (973) 596-0545
llustberg@gibbonslaw.com
dmcgrady@gibbonslaw.com

David M. Bernick (*admitted pro hac vice*)
Jonathan R. Streeter (*admitted pro hac vice*)
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile:  (212) 698-3599
david.bernick@dechert.com
jonathan.streeter@dechert.com

*Attorneys for Defendant*
*The Dow Chemical Company*

## **TABLE OF CONTENTS**

          **Page**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.     DR. MARX SHOULD NOT TESTIFY TO PLAINTIFFS' SUMMARY OF PRICE INCREASE ANNOUNCEMENTS VERSUS PRICE TRENDS OR TO THE RELATIONSHIP BETWEEN HISTORICAL EVENTS AND THE VARIANCE OF HER MODEL. ...................................................................................... 2

II.    DR. MARX SHOULD NOT RECITE SPECIFIC EXAMPLES OF THE EVIDENCE "AS A WHOLE" TO SUPPORT HER OPINION ON ATTRIBUTION. ............................................................................................................. 3

III.   DR. MARX CANNOT CORROBORATE HER RESULTS WITH THE MODELS FROM THE CLASS TRIAL. ................................................................... 5

IV.   DR. MARX MUST ENDORSE AND DEFEND DR. RAIFF'S FIVE-YEAR-OLD DAMAGES ESTIMATE, AND THERE IS NO BASIS IN THE RECORD FOR PLAINTIFFS' NEW REVISED ESTIMATE. ......................................................... 6

CONCLUSION .......................................................................................................................... 7

i

## **TABLE OF AUTHORITIES**

**CASES** **PAGES**

*Judon v. Traveleers Prop. Cas. Co. of Am.*, 773 F.3d 495 (3d Cir. 2014)...................................... 6

*LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003) ........................................................................ 6

*In re Processed Egg Prods. Antitrust Litig.*, No. 08-MD-2002, 2015 WL 337224 (E.D. Pa. Jan. 26, 2015) ................................................................................................................. 5

**RULES**

Fed. R. Evid. 403  ..................................................................................................................... 1, 5

**INTRODUCTION**

The Dow Chemical Company ("Dow") respectfully submits this bench brief to request the Court's guidance regarding four discrete issues pertaining to the testimony of Plaintiffs' econometric expert, Dr. Leslie Marx.

First, Dr. Marx should not testify to Plaintiffs' summary chart linking the relationship between price increase announcements and the gap between predicted and actual prices. *See* PX-1413; *see also* Mar. 16, 2016 Rough Tr. at 6 (the Court: "[Dr. Marx] will not be able to attribute any variances to a specific price increase amount on a specific date."), attached as Ex. A.[1]

Second, as addressed in Dow's prior motion *in limine* on the subject, Dr. Marx should also not be permitted to recite details of the "evidence of conspiracy as a whole" to which she attributes statistical variance; she has not performed a liability analysis and she has conceded that the analysis she has done is not tailored to any specific events. Moreover, mere recitation of record evidence that the jury has already heard at considerable length is both improper expert testimony and cumulative under Rule 403.

Third, this Court has held that reference to the class trial is prohibited, and therefore Dr. Marx cannot discuss the statistical model from the class case for any purpose, particularly to corroborate the results of the model in this case.

Fourth, the Court has reserved on the question of whether Plaintiffs can introduce a revised damages estimate through Dr. Marx. Dow respectfully submits that Dr. Marx should not be permitted to offer any calculation that differs from the work of Dr. Raiff. Dr. Marx is obligated to "endorse and defend" the opinions of Dr. Raiff—including the decision to model

---

[1] Dow understands that pursuant to Local Rules, citation to rough transcripts is generally not permitted. However, because final transcripts are not available, Dow respectfully attaches relevant rough transcripts and will update the Court as final transcripts become available.

damages based on legally irrelevant foreign export transactions and propylene oxide transactions. Plaintiffs' proposal to have counsel request a reduced damage estimate is improper as well because there is no record evidence supporting the reduced number.

## ARGUMENT

**I.   DR. MARX SHOULD NOT TESTIFY TO PLAINTIFFS' SUMMARY OF PRICE INCREASE ANNOUNCEMENTS VERSUS PRICE TRENDS OR TO THE RELATIONSHIP BETWEEN HISTORICAL EVENTS AND THE VARIANCE OF HER MODEL.**

As Dr. Marx has previously conceded, Dr. Marx cannot link real world events to the results of her model. *See* Jan. 13, 2016 *Daubert* Hr'g Tr. at 140–42; *see also* Marx Dep. at 580:6-9 ("I'm not trying to associate individual pieces of evidence with particular changes in the way the distance between the actual and the but-for line evolve"). This Court agreed. *See* Ex. A (Mar. 16, 2016 Rough Tr. at 6 ("[Dr. Marx] will not be able to attribute any variances to a specific price increase amount on a specific date.")). Counsel for Plaintiffs acknowledged this limitation at the March 16 hearing. *See id.* at 7-8 (counsel for Plaintiffs acknowledging that Dr. Marx will not testify to specific instances of conduct in furtherance of the conspiracy in relation to the model). Therefore, it should be clear that Dr. Marx cannot testify to Plaintiffs' summary exhibit that links price increase announcements to the results of the model because she has conceded she cannot and because any such analysis was never disclosed in prior expert work. *See* PX-1413.[2] Moreover, just as Dr. Marx cannot testify to the connection between price increase announcements and her model, she also should not be permitted to testify to the

---

[2] Dow has consistently objected to this use of PX-1413. *See* Pretrial Order § 3 n.1 ("Dow does object, however, to PX-1413 and PX-1414 being used with Plaintiffs' expert, Dr. Marx as such testimony would be beyond the scope of her expert disclosure and beyond the scope permitted by the MDL order allowing her substitution for Dr. Raiff").

relationship between historical evidence and the results of her model. *See* Jan. 13, 2016 *Daubert* Hr'g Tr. at 140–42; *see also* Marx Dep. at 580:6-9.

## II. DR. MARX SHOULD NOT RECITE SPECIFIC EXAMPLES OF THE EVIDENCE "AS A WHOLE" TO SUPPORT HER OPINION ON ATTRIBUTION.

Plaintiffs' experts in this case have explicitly disclaimed coming to any opinion on liability. Both Drs. Raiff and Marx have testified repeatedly that (1) they were told by counsel to *assume* the existence of a conspiracy; (2) they did no liability analysis; and (3) they reached no conclusion that there was, in fact, an agreement. *See* Marx Dep. at 217:6-19; 582:1-3; 584:7-20; Raiff 5/26/11 Dep. at 341:1-343:11. The purpose of reviewing historical evidence, conceded by Dr. Marx, was to verify modeling choices:

> Q. Dr. Raiff assumed—was told to assume that there was a conspiracy, right?
>
> A. Yes.
>
> Q. And as a result Dr. Raiff did not conduct his own analysis in order to reach an opinion as to whether there was a conspiracy? Fair?
>
> A. That's correct.
>
> Q. Neither did you?
>
> A. That's correct.
>
> Q. And so while both you and Dr. Raiff looked at evidence of collusion, historical evidence of collusion, neither you or Dr. Raiff are expressing the opinion based upon historical evidence that there was collusion, correct?
>
> A. Correct.
>
> Q. What you are saying is that once you have—once Dr. Raiff ran the model and found overcharge, and once you have looked at his work running the model and finding overcharge, you believed that that supports the conclusion that there was a conspiracy?
>
> A. Yes, but I mean I do believe it supports the conclusion there is a conspiracy but the—I will just stop there. Yes.

3

>…
>
>Q. What Dr. Raiff was very careful to do in his deposition was when he was pressed on whether there was a conspiracy, he was careful always to say that he wasn't asked that question. The reason he looked at the evidence of collusion was [to] determine[] the appropriate benchmark; is that fair?
>
>A. That's fair.
>
>Q. And you have followed the same approach? Fair?
>
>A. Yes.

*See* Marx Dep. at 217:3-219:1 (objections omitted).  Dow has not and will not challenge the setting of the benchmark period before the jury.

In order to express her opinion attributing the results of the model to collusion, Dr. Marx has repeatedly said she is only looking at the evidence "as a whole." *See, e.g.*, Marx Dep. at 580:15-580:16 ("I made that attribution on the basis of the evidence all together as a whole."); *id.* at 581:1-2 ("I connect the evidence as a whole to the overcharge as a whole.").  She does not purport to rely on specific, individual pieces of evidence to express her attribution opinion. *See id.*

Under these circumstances, allowing Dr. Marx to simply recount specific examples to the jury of Plaintiffs' liability evidence is impermissible.  Indeed, for Dr. Marx to attempt to opine that any evidence in particular is evidence of conspiracy would be offering an opinion which goes to liability, not econometric modeling, which she cannot give by her own admission.  *See id.*  To the extent that such testimony is offered simply to show that something happened, the Court has already concluded such testimony is objectionable in response to Dow's motion *in limine*.  *See* Feb. 8, 2016 Opinion & Order (ECF No. 236) at 2-4 (Dr. Marx cannot testify to "whether an event actually occurred").  And to the extent that such testimony is designed to endorse any liability evidence, this is barred for the same reasons and because it is cumulative

4

and a waste of time under Federal Rule of Evidence 403.  *See In re Processed Egg Prods. Antitrust Litig.*, No. 08-MD-2002, 2015 WL 337224, at *8 (E.D. Pa. Jan. 26, 2015) ("the cases are clear that an economist's testimony is not admissible where he or she simply reads or interprets evidence of collusion as any juror might, or where an economist infers intent to collude from mere documentary evidence, unrelated to his or her economic expertise").  The jury has already sat through numerous lengthy depositions; they should not be forced to sit through a cumulative presentation of the same evidence through Plaintiffs' expert—purportedly to justify choices regarding setting the benchmark period, which Dow is not challenging.

### III.    DR. MARX CANNOT CORROBORATE HER RESULTS WITH THE MODELS FROM THE CLASS TRIAL.

Dr. Marx has previously expressed the opinion that her results are consistent with the models from the class trial.  *See* Marx Report ¶ 80 ("Dr. McClave (the expert retained by the class plaintiffs) independently arrived at overcharge estimates that were similar to Dr. Raiff's.").  It should be clear from this Court's ruling on Dow's motion *in limine* regarding reference to the class trial, however, that any such reference is prohibited.  *See* Feb. 8, 2016 Opinion & Order (ECF No. 236) at 2-3 (barring reference to the class action and noting Plaintiffs' representation that they will not "affirmatively raise the class trial (or class verdict) during trial" and stating that "Dr. Marx will also not be permitted to testify regarding the class case").

Moreover, allowing Dr. Marx to bring up the class trial model would result in a trial-within-a-trial on the differences between Dr. Marx's model and the model presented by the class plaintiffs, and would imply the existence of the class action to the jury.  This would be prejudicial to Dow, confusing for the jury, and a waste of time for all.

**IV.  DR. MARX MUST ENDORSE AND DEFEND DR. RAIFF'S FIVE-YEAR-OLD DAMAGES ESTIMATE, AND THERE IS NO BASIS IN THE RECORD FOR PLAINTIFFS' NEW REVISED ESTIMATE.**

Uniquely to this case, Dr. Marx's involvement in this trial is conditioned on her "endors[ing] and defend[ing] Dr. Raiff's opinions." *See* Jan. 25, 2015 Opinion (ECF No. 229) at 1 (citing MDL Dkt. 2974). This substitution was not an opportunity for plaintiffs to clean up old mistakes; nor could Dow's experts engage in new work in response. *See id.* Indeed, Plaintiffs successfully sought to strike major portions of Dr. Keith Ugone's rebuttal report to the September 20, 2013 Expert Disclosure of Dr. Marx because it contained "new" analyses. *See* 5/16/2014 Order (MDL Dkt. 3193) at 4-13.

Because Dr. Marx is bound to express the opinion of Dr. Raiff and any last minute disclosure of a revised damage estimate is untimely, Dow respectfully submits that Dr. Marx should not be permitted to: (i) offer a revised damages estimate removing irrelevant foreign export transactions, or (ii) remove irrelevant propylene oxide transactions from the model. Dr. Marx is bound by the work of Dr. Raiff, errors and all. *See* Dow's Supplemental *Daubert* Br. Regarding Errors In Plaintiffs' Damages Model (ECF No. 284) at 4-12.

Moreover, Plaintiffs' counsel's proposal to present a reduced damage estimate is unavailing. As counsel is aware, this estimate is *not* supported by Dr. Raiff's methodology. If Dr. Raiff's methodology were followed, damages actually increase—despite removing approximately half a billion dollars in transactions. *See id.* at 8-10. Allowing Plaintiffs' counsel to simply present *their own* damages calculation—which is different from Dr. Raiff's model and does not follow a reliable methodology—is not evidence, and it therefore cannot support the basis for calculating treble damages. *See, e.g.*, *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 508 n.12 (3d Cir. 2014) ("To calculate either treble or punitive damages, we must have a reasonable estimate of compensatory damages."); *LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir.

6

2003) (the calculation of damages in an antitrust case may not be "based on speculation or guesswork").

## CONCLUSION

For the foregoing reasons and the reasons stated in prior briefing, Dr. Marx's testimony should be limited as set forth above.

Respectfully submitted,

Dated: March 21, 2016  
Newark, New Jersey

/s/ Lawrence S. Lustberg  
Lawrence S. Lustberg  
Daniel J. McGrady  
**GIBBONS P.C.**  
One Gateway Center  
Newark, NJ 07102  
Telephone: (973) 596-4500  
Facsimile: (973) 596-0545

David M. Bernick (*admitted pro hac vice*)  
Jonathan R. Streeter (*admitted pro hac vice*)  
**DECHERT LLP**  
1095 Avenue of the Americas  
New York, NY 10036  
Telephone: (212) 698-3500  
Facsimile: (212) 698-3599

*Attorneys for Defendant*  
*The Dow Chemical Company*

## CERTIFICATE OF SERVICE

On March 21, 2016, I caused a copy of the foregoing to be served on all counsel of record via ECF.

/s/ Lawrence S. Lustberg
Lawrence S. Lustberg
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
llustberg@gibbonslaw.com

*Attorney for Defendant*
*The Dow Chemical Company*
