# EXHIBIT A

```
 1                        DISCLAIMER
              UNEDITED PDF VERSION OF TRANSCRIPT
 2                  Civil Case No. 08-5169

 3    - - - - - - - - - - - - - - -x
      IN RE URETHANE ANTITRUST    :    - TRIAL PROCEEDINGS -
 4    LITIGATION                  :        (rough draft)
      - - - - - - - - - - - - - - - x
 5
                          Newark, New Jersey
 6                        March 16, 2016

 7    B E F O R E:

 8                 THE HONORABLE WILLIAM J. MARTINI,
                    UNITED STATES DISTRICT JUDGE,
 9                        And a Jury

10    The PDF version of proceedings provided in above matter, heard
      on the date indicated, is a rough draft transcript which is
11    being delivered UNEDITED and UNCERTIFIED by the Official Court
      Reporter at the request of Trial Counsel.
12
      All Trial Counsel agree not to disclose this realtime unedited
13    transcript in any form (written or electronic) to anyone
      who has no connection to this case.  This is an unofficial
14    transcript which, PURSUANT TO LOCAL COURT RULE, IS NOT
      PERMITTED TO BE RELIED UPON for purposes of verbatim citation
15    of testimony or argument and should be used only as a helpful
      aid to the trial attorney in presenting his/her case.
16
      This transcript has not been checked, proofread or corrected.
17    It is a draft transcript, NOT a certified transcript.  As such,
      it may contain computer-generated mistranslations of stenotype
18    code or electronic transmission errors resulting in inaccurate
      or nonsensical word combinations, or untranslated stenotype
19    symbols which cannot be deciphered by non-stenotypists.

20    To obtain an Official Certified Copy of this Transcript,
      contact:
21

22    WALTER J. PERELLI, CCR, CRR
      Official Court Reporter
23    United States District Court, Newark, New Jersey
      wjpccr1975@gmail.com
24

25
```

 1                      March 16, 2016

 2              (Trial resumes - Jury not present.)

 3              Clerk all rise.

 4              THE COURT:  Be seated, please.

 5              Good morning.

 6              MR. JOHNSON:  Good morning.  Good morning.

 7              THE COURT:  We're all set?

 8              Okay.

 9              MR. JOHNSON:  Yes.

10              THE COURT:  Let's bring out the jury then.

11              THE DEPUTY CLERK:  Please rise for the Jury.

12              (Jury present.)

13              THE COURT:  Good morning; good morning.  Please be

14        seated.

15              All right.  Mr. Johnson, are you ready to proceed?

16              MR. JOHNSON:  Yes, I am, your Honor.  Thank you very

17        much.

18              We're going to start off by completing Mr. Dhanis.

19              (The videotaped deposition of Jean-Pierre Dhanis

20        resumes being played in open court.)

21              (The playing of the videotaped deposition is stopped.)

22              MR. JOHNSON:  That completes Mr. Dhanis -- I'm sorry,

23        I'm wrong.  Another volume, a little bit more.

24              (A videotaped deposition of Jean-Pierre Dhanis is

25        played in open court.)

1                 (The playing of the videotaped deposition is stopped.)

2                 MR. JOHNSON:  Now we're done, your Honor.

3                 THE COURT:  Okay.

4                 MR. JOHNSON:  I'm going to hand out a list of the

5        exhibits that were admitted into evidence during the

6        examination.  This has already been given to defense counsel.

7                 THE COURT:  If there's no objection to the list --

8        you've seen the list?

9                 MR. STREETER:  No objection.

10                THE COURT:  Hand them up.  They're in evidence.

11                MR. JOHNSON:  Thank you.

12                (Various exhibits are received in evidence.)

13                THE COURT:  Your next witness?

14                MR. JOHNSON:  Plaintiffs call Robert Kirk.  Mr. Kirk

15       was deposed on September 30th and October 1st, 2009.

16                (Above described videotaped deposition is played in

17       open court.)

18                (The playing of the videotaped deposition is stopped.)

19                MR. JOHNSON:  Just moving to the next volume, your

20       Honor.

21                (A further videotaped deposition is played in open

22       court.)

23                (The playing of the videotaped deposition is stopped.)

24                MR. JOHNSON:  That completes Robert Kirk, your Honor.

25                THE COURT:  Continue.

 1              MR. JOHNSON:  Do you want me to continue?

 2              THE COURT:  Yes, I do.

 3              MR. JOHNSON:  At this time, plaintiffs call Michelle

 4      Blumberg by video deposition.  Her deposition was taken July

 5      21, 2010.

 6              THE COURT:  Thank you.

 7              MR. JOHNSON:  Oh, before we start that, I was just

 8      reminded to hand up the exhibits.  There aren't too many --

 9              THE COURT:  Are they on a sheet of paper?

10              MR. JOHNSON:  They are.

11              THE COURT:  Hand them to counsel.  If there's no

12      objection, just hand them up, that's all.

13              MR. JOHNSON:  Yes.  You just want me to hand them up?

14      Okay.

15              THE COURT:  Just hand them up.  They've seen them and

16      they have no objection, they'll be in the record.

17              MR. JOHNSON:  Thank you, your Honor.

18              (A document is handed up to the Deputy Clerk by Mr.

19      Johnson.)

20              (Above described videotaped deposition is played in

21      open court.)

22              THE COURT:  Counsel, why don't we stop here?

23              (The playing of the videotaped deposition is stopped.)

24              THE COURT:  Okay.  We'll take a morning break, ladies

25      and gentlemen.  Please don't discuss anything about the case

    1    and we'll see you back here in about 15 minutes.  Okay?

    2          Thanks very much.

    3          THE DEPUTY CLERK:  Please rise for the Jury.

    4          (The Jury leaves the courtroom.)

    5          THE COURT:  Be seated.

    6          I want to deal with the issue regarding Dr. Marx's

    7    testimony.

    8          So, I received your submissions on that issue.  I

    9    don't know if I need any further real comment.  I'll hear you

   10    briefly if you want to just add anything.

   11          I know, Mr. Bernick, your client is trying to keep her

   12    testimony out; or alternatively, limit it.

   13          And you're opposed to that, of course.  Correct, Mr.

   14    Johnson?

   15          MR. JOHNSON:  Yes, your Honor.

   16          THE COURT:  Okay.  All right.  And the theory being

   17    that there's a variance from what was put forth initially in

   18    terms of the amount of damages being 616 million, and

   19    apparently there's been some recomputation by Dr. Raiff, and

   20    you've stated in your opening that the damages were 581

   21    million.  Correct?

   22          MR. JOHNSON:  Yes, your Honor.

   23          THE COURT:  Okay.  I think this is a matter that --

   24    well, Dr. Marx, of course, will be permitted to testify.  But I

   25    think she's going to have to stick to the original opinion as

ROUGH DRAFT    ROUGH DRAFT    ROUGH DRAFT

 1    to what the amount of damages were.  That was based on the

 2    facts and the data that was provided to her by Dr. Raiff,

 3    that's what's in her expert opinion.  If there's any variance,

 4    which apparently there is, counsel of course will have a chance

 5    to cross-examine her on the variance and the reasons for it and

 6    the underlying recomputation if there is one, if he chooses to

 7    do that cross-examination.  So she will be permitted to

 8    testify.

 9          As far as the issue of attributing the variances to

10    the existence of a conspiracy, I'm satisfied she'll be able to

11    make that opinion as well.  However, she will not be able to

12    attribute any variances to a specific price increase amount on

13    a specific date.

14          So she'll be able to, you know, opine as to the

15    overall variance being due to the existence of a conspiracy,

16    but she can not opine as to a particular date that that was

17    a -- the reason for that was for a conspiracy.

18          Okay.  So I wanted to get that ruling so we have the

19    benefit of that.

20          Go ahead, Mr. Bernick.

21          MR. BERNICK:  Yes, just a clarification.  The

22    attribution to a specific price increase, we understand

23    clearly, we had asked -- and I think it's based on the same

24    admission that perhaps your Honor is relying upon -- where she

25    says, it's not attributable to any specific conduct; that is,

 1    conspiratorial conduct.  And that's very, very important,

 2    because she didn't do that analysis.

 3            So is your Honor limiting it to the price increase

 4    announcements or the conduct associated with the price increase

 5    announcements?  I mean, that's pretty -- that's pretty

 6    important.  The admission is specific conduct.

 7            THE COURT:  Mr. Johnson.

 8            MR. JOHNSON:  I'll let Mr. Martin address this.

 9            THE COURT:  Go ahead.

10            MR. MARTIN:  I'm not entirely clear what he means by

11    "specific conduct."

12            She said that she evaluated -- she was asked to

13    evaluate whether the conspiracy had an affect on prices.  She

14    did do an analysis to determine whether or not the results of

15    her model are reasonable in light of the evidence.  She did

16    look at the evidence.  She would not say, I don't believe, and

17    she didn't say in her testimony:  This particular event, the

18    Swan meeting, if that's conduct, I can attribute to this

19    variance.

20            THE COURT:  All right.

21            MR. MARTIN:  I understand -- I would put that in the

22    same category, specific conduct, specific instances of conduct

23    in furtherance of the conspiracy.

24            THE COURT:  She's not going to testify to that, to the

25    specific --

 1              MR. MARTIN:  No, no.  And that's -- I want to make

 2     sure that that's the line we're drawing.  And if that's it,

 3     that's fine.

 4              MR. BERNICK:  That's exactly right.  I mean, what she

 5     says is the evidence of the conspiracy as a whole, without

 6     specificity.  And that we understand is fine.  It's when you

 7     get into her opining with respect to conspiratorial conduct

 8     specifically, that that crosses the line.

 9              I'm assuming from Mr. Martin's comment that --

10              THE COURT:  And I don't think she will be.

11              Right?

12              MR. MARTIN:  I mean, she's not going to tie it -- if

13     she's asked:  Did you look at the actual historic facts?

14              Yes, she did.  And then that's all in the report.  And

15     I think that she should be allowed to testify to that.

16              THE COURT:  I think so too.

17              MR. BERNICK:  But not the specific facts.

18              THE COURT:  Well, if that comes up, object if it comes

19     to that point.  I don't think it will.  I think he's

20     representing she's not going to opine in that way.

21              Correct?

22              MR. MARTIN:  I certainly understand the ground rules

23     on direct.

24              THE COURT:  Okay.

25              MR. MARTIN:  Can I ask one clarification though on the

1    damages number?

2              She will come in and she'll offer the same six,

3    whatever it was, 616, six whatever --

4              THE COURT:  That's what her model and that's what her

5    computation was.

6              MR. MARTIN:  Will we be allowed to say:  Counsel has

7    asked you to subtract for legal reasons X amount of damages,

8    and that's why the number is 582?

9              Because I think that would be the way to do it.

10   Because really that's all we've asked her to do.  We didn't ask

11   her to change the model.  We just said, at the back end we're

12   not going to ask for damages that we think are rightfully

13   collectible for legal reasons.

14             MR. BERNICK:  If the question is -- and let's talk

15   about this with the Court -- if the question is, will she be

16   able to say that she got to the 582 by subtraction; that is,

17   that that's what the number that's being offered is, I think

18   that that really does run contrary to what your Honor has just

19   said, that she should be testifying to the same model.  If

20   counsel wants to make a representation, that's fine.  But she

21   should be testifying to the same model on the basis of the same

22   facts.  And if they want to make a representation to the Court

23   that they're not asked -- that they made an adjustment, they

24   can.  But that's really counsel's undertaking, it's not her

25   opinion.  That's the basic problem.

 1            The basic problem is that there's this number, and as

 2     soon as she starts to talk about it, you get into this whole

 3     world of whether you can make that subtraction as a modeling

 4     matter, which is highly controversial --

 5     *****    THE COURT:  You'll have a chance to cross-examine her

 6     on that.

 7            MR. BERNICK:  I'm not going to bring out the 581.

 8     Your Honor has said that it's the original model, the original

 9     numbers.  I will cross-examine her with respect to that.  But

10     if this is just a question of her saying:  Well, counsel

11     instructed me to make the adjustment, and I did it, that then

12     opens the whole door to whether it's proper to make the

13     adjustment as a matter of modeling.  I haven't even deposed her

14     on that.  That's the problem.

15            They can make the adjustment as lawyers, but she can't

16     justify or explain the reduction because that's a whole new --

17            THE COURT:  Let me think about that.  But I mean, if

18     you're going to ask her:  Have they asked you -- and then

19     you'll cross-examine her that she couldn't get to that number

20     in your opinion, I assume.

21            MR. BERNICK:  That is the whole problem, your Honor.

22     The adjustment that's been made is a subtraction.  To show the

23     problems with the subtraction is a very technical modeling

24     problem.  And we set it out in our papers.  You have to get

25     into whether the model can really support that or not support

 1    that.

 2              THE COURT:  So you'd rather have the higher damage

 3    number?

 4              MR. BERNICK:  I'd rather have the higher damage

 5    number, absolutely.

 6              MR. MARTIN:  And, your Honor, I'm just trying to know

 7    how we tell the jury that the lawyers made a decision.  If we

 8    don't want to do it through Dr. Marx, maybe counsel can stand

 9    up and say we decided to drop the amount of claims.  I'm just

10    trying to make it that simple.

11              MR. BERNICK:  There's no evidence to support it.

12              MR. MARTIN:  There's no evidence to support that we

13    decided not to pursue a meritorious claim.  I don't know that

14    there is evidence to that.  That's a lawyer-decision to make

15    this case easier.

16              MR. BERNICK:  That's their decision.  I just don't

17    want to hear it from Dr. Marx.

18              MR. MARTIN:  Dr. Marx will say:  I did the model.  I

19    believe in the model.  I believe in the results.

20              THE COURT:  We'll see.  I'm reserve on that.

21              MR. MARTIN:  Thank you.

22              MR. BERNICK:  They cannot bring out the lower figure

23    through her.  Is that your Honor's ruling?

24              THE COURT:  That's your position.  I'll see.

25              MR. JOHNSON:  Thank you, your Honor.

```
 1              THE COURT:  I'll see.  Because if they choose to try

 2    to bring it out through her, then you'll have a chance to

 3    attack that opinion as not being substantiated by the --

 4              MR. BERNICK:  Then we would like to take her

 5    deposition over the weekend.

 6              THE COURT:  You're not taking her deposition.

 7              MR. BERNICK:  Your Honor, there are --

 8              THE COURT:  You're not taking her deposition.

 9              MR. BERNICK:  Your Honor, there's no other way.  I

10    don't know how I can conduct cross-examination with respect to

11    an opinion that she never expressed by the time --

12              THE COURT:  Exactly how you're talking to me right

13    now, that's how you do it.  You challenge her credibility for

14    getting to that number.  And she'll say:  Well, I was asked to

15    do that by the lawyer.

16              I'm not sure the lawyers are wise to want to do it

17    either, but go ahead, it's your case.

18              That's how you do it.  That's how you're do it.

19    You're not getting a deposition.

20              I'll see you in 15 minutes.

21              MR. JOHNSON:  Thank you, your Honor.

22              (A recess is taken.)

23              (Proceedings resume - Jury not present.)

24              THE COURT:  Let's round up everybody, please.

25              Counsel, I'm going the reserve on this issue, okay,
```

1    significantly before she testifies.  Okay?  On that last issue.

2              MR. BERNICK:  Yes.

3              THE COURT:  But there's no deposition.

4              MR. BERNICK:  I expected --

5              THE COURT:  No.

6              THE DEPUTY CLERK:  Are you ready, Judge?

7              THE COURT:  Yes.

8              THE DEPUTY CLERK:  Please rise for the Jury.

9              (Jury present.)

10             THE COURT:  Be seated.  Thank you.

11             All right, Mr. Johnson.

12             MR. JOHNSON:  Thank you.

13             Continuing with Ms. Blumberg.

14             THE COURT:  Okay.

15             (The videotaped deposition of Ms. Blumberg resumes

16   being played in open court.)

17             (The playing of the videotaped deposition is stopped.)

18             MR. JOHNSON:  Your Honor, that concludes Ms. Blumberg.

19   And I'll hand up now the plaintiffs' exhibits which were

20   entered into evidence during her testimony, and I believe

21   there's no objection.

22             THE COURT:  They are the exhibits on the list,

23   counsel?

24             MR. BERNICK:  No objection.

25             THE COURT:  They're in evidence.  Go ahead.

```
 1              (A document is handed up to the Deputy Clerk by Mr.
 2      Johnson.)
 3              MR. JOHNSON:  Plaintiffs now call Gerald Phelan by
 4      videotape.  His deposition was taken on 10/15/2009.
 5              MR. JOHNSON:  Just for your information purposes, it's
 6      47 minutes long.
 7              THE COURT:  Thank you.
 8              (Above described videotaped deposition is played in
 9      open court.)
10              (The playing of the videotaped deposition is stopped.)
11              MR. JOHNSON:  Your Honor, that concludes the
12      deposition of Mr. Phelan and once again we'll hand up the
13      exhibit list.
14              THE COURT:  There's no objection to the exhibits?
15              MR. STREETER:  No objection.
16              THE COURT:  They're received in evidence.
17              (Various documents are received in evidence.)
18              THE COURT:  All right.  The next witness.
19              MR. JOHNSON:  The next witness is Marco Levi.  His
20      deposition was taken over a three-day period:  In May 19th,
21      220th and 21st in the year 2010.  It's a bit longer, three
22      hours and 39 minutes.
23              THE COURT:  Okay.
24              (Above described videotaped deposition is played in
25      open court.)
```

```
 1              THE COURT:  Could we break we break here?
 2              (The playing of the videotaped deposition is stopped.)
 3              THE COURT:  We'll break here for a moment.  We'll take
 4    another break and see you back here in about 15 minutes.
 5              Please don't discuss anything about the case.
 6              Thanks very much.
 7              By the way, before you recess, we are not going to sit
 8    this Friday and we're not going to be sitting next Friday which
 9    is the beginning of the holiday weekend, next Friday the 25th.
10    But other than that we'll be sitting tomorrow and the rest of
11    the days next week.
12              Okay.  Thanks.
13              THE DEPUTY CLERK:  Please rise for the Jury.
14              (The Jury leaves the courtroom.)
15              MR. BERNICK:  I want to say I apologize for my phone
16    buzzing, your Honor.  It just went off.
17              THE COURT:  It happens.  It happens to me even, so
18    it's happened.
19              Anything?
20              MR. JOHNSON:  Yes, your Honor, if you have a moment,
21    just a couple of things with respect to Mr. Underdown who is
22    going to testify tomorrow.
23              THE COURT:  Who is that?
24              MR. JOHNSON:  Mr. Underdown from Hickory Springs.
25    There's going to be a live witness again.
```

```
 1              THE COURT:  He's one of the customers.  Right?

 2              MR. JOHNSON:  Yes.

 3              THE COURT:  All right.

 4              MR. JOHNSON:  So we're going to bring him in at the

 5    start of the day, and wherever we are here we'll just stop and

 6    pick it up later like we did with Mr. Wood.

 7              THE COURT:  Okay.

 8              MR. JOHNSON:  And the other thing was, we had intended

 9    to show as a demonstrative a very short video, it's eight

10    minutes long, that was filmed of Hickory Springs personnel at

11    Mr. Underdown's request recently, and it's intended to be used

12    as a demonstrative to assist the jury to understand how they

13    used these products, TDI and polyols from Dow and its

14    competitors.  It's showing activity of one of their plants --

15              THE COURT:  This is through that witness?

16              MR. JOHNSON:  Yes.

17              THE COURT:  Tomorrow?

18              MR. JOHNSON:  That witness.  It only a demonstrative

19    and it doesn't have sound.

20              THE COURT:  Have you seen it, Mr. Bernick?

21              MR. BERNICK:  Yes, we have.

22              THE COURT:  Do you have an objection to it?

23              MR. BERNICK:  We just don't see the relevance of it.

24    It's kind of:  Here's a family business --

25              THE COURT:  It depends on how long it is too.
```

```
 1              MR. BERNICK:  It's nine minutes.
 2              MR. JOHNSON:  It's eight minutes.  It's just
 3    background, your Honor.
 4              THE COURT:  There's a lot of background.
 5              MR. JOHNSON:  Yes, there is.
 6              THE COURT:  There's a lot of background.  Okay.
 7              MR. JOHNSON:  It's only a demonstrative, your Honor.
 8    It's not going to be moved into evidence.
 9              THE COURT:  Okay.  It just shows his plant --
10              MR. JOHNSON:  Yes, how they make this stuff.  I think
11    it actually will be of some interest to the jury.
12              MR. BERNICK:  That's exactly the point.  It's not just
13    background, it's basically:  Here we are with our workers and
14    we're a hard working, you know, basic manufacturing company in
15    contrast to the big Dow Chemical Company.  That's the only real
16    purpose for it.  Everybody knows that you take the stuff --
17              MR. JOHNSON:  We --
18              MR. BERNICK:  Excuse me.  That you take the stuff that
19    ccomes from Dow and you put it into a mold --
20              THE COURT:  Before you show the demonstrative, let's
21    hear his testimony.  He's going to get into some of that.
22    Right?
23              MR. JOHNSON:  Yeah, and he wants to simply -- there's
24    no sound on this.  This is not a slick production.
25              MR. BERNICK:  That's the whole point.
```

 1              MR. JOHNSON:  He's going to simply say:  This is our

 2     plant, here are the train cars coming in with the chemicals,

 3     this is what happens to the chemicals and this is the foam that

 4     results.  There's no, you know, bunch of workers shown or

 5     anything like that.

 6              THE COURT:  I'll reserve.  Let me see.  I'll think

 7     about it.

 8              MR. JOHNSON:  Would you like us to send it to you,

 9     your Honor?

10              THE COURT:  Let me see.

11              MR. BERNICK:  So actually we have a summary issue for

12     tomorrow.  And we are going to provide a package, we've already

13     given the summary and the basis for the summary to counsel, it

14     comes from a deposition, and we would like to submit a package

15     to your Honor as well.  These are -- they're a little bit

16     different from the other summaries because they're based upon a

17     summary of the underlying data --

18              THE COURT:  Okay.  You want to use this on

19     cross-examination?

20              MR. BERNICK:  Absolutely.  It was from Mr. Underdown

21     in particular, used in his deposition.  The underlying

22     materials were used in his deposition.  And so we're happy to

23     create the foundation before the jury.  Frankly, I'd like to

24     avoid the kind of dialogue that we had the other day.  It's

25     going to come in or it's not going to come in.  We think it's

1    very simple, but we want to provide that to your Honor and the

2    other side in advance so that --

3           THE COURT:  Are you objecting to it?

4           MR. JOHNSON:  We had an objection to all of these

5    exhibits, your Honor, from the beginning.  This morning Mr.

6    Bernick came to me and said not only did he wish to use the

7    exhibits as to which we had objected, but that he intended to

8    create a graphic summary in some fashion of the information

9    contained on these objected-to exhibits.  So we told him that

10   we objected to that and told him the reasons why, and so that's

11   where it stands.  And this literally happened this morning.

12          MR. BERNICK:  It's actually again not entirely

13   accurate.  But rather than going back through the history of

14   what happened, these are exhibits in his deposition, they were

15   stipulated to by Mr. Leveridge, counsel for the plaintiffs

16   here, as being an accurate reflection of Dr. Raiff's data.

17   They were used to examine the witness, Mr. Underdown.  He

18   talked about it, he gave sworn testimony on the basis of

19   questions that were posed concerning that data.  All we have

20   done -- so they've objected to a document that they stipulated

21   to.

22          We then took -- all we did is we plotted the points so

23   the jury can see the trend instead of paging through 20 pages

24   of numbers.  This is all about being able to present the

25   purchase history for Hickory Springs.

```
 1                  I'll add, your Honor, there is no other data that we
 2       are aware of that spans this whole period of time and shows
 3       what these people actually bought, how much they paid other
 4       than the data that Dr. Raiff has gathered.  There's no other
 5       source of all of the this data.  This jury has heard about 10
 6       years of prices and they have no way to see what actually
 7       happened to those prices other than the data that was used by
 8       their expert and will be the basis for her testimony.
 9                  THE COURT:  All right.  I've listened.  Go ahead.
10                  MR. JOHNSON:  The problem, your Honor, is not that the
11       data isn't Dr. Raiff's data, the problem is, they're trying to
12       use that data improperly to say that that's the prices that
13       Hickory Springs paid.  And, in fact, it's not.
14                  MR. BERNICK:  That --
15                  MR. JOHNSON:  Because there are other components.  The
16       data that Dr. Raiff used was used in a particular way in the
17       context of the model.  It does not, in fact, reflect the bottom
18       line prices paid by Hickory Springs, and that's why we objected
19       to the exhibits.  And I learned today that they have a summary
20       of that and that's why we objected to it.
21                  THE COURT:  All right.  Let's take a break.  I've
22       heard it.  If I have to hear more, I will.  We'll take a break.
23                  Come back in 15 minutes.
24                  Gail, you're including this time.  Right?
25                  THE DEPUTY CLERK:  Yes.
```

```
 1              THE COURT:  Because otherwise we will never get
 2     through.  Okay.
 3              (A recess is taken.)
 4              (Proceedings resume - Jury not present.)
 5              THE DEPUTY CLERK:  Remain seated.
 6              THE COURT:  Okay.  Bring out the jury.
 7              THE DEPUTY CLERK:  Please rise for the Jury.
 8              (Jury present.)
 9              THE COURT:  Be seated.  Thank you.  Sorry.
10              All right.  You can proceed, Mr. Johnson.
11              MR. JOHNSON:  Thank you, your Honor.
12              Proceeding with Mr. Levi.  I wish he could keep his
13     voice up.
14              (The videotaped deposition of Mr. Levi resumes being
15     played in open court.)
16              (The playing of the videotaped deposition is stopped.)
17              MR. JOHNSON:  Just switching volumes, your Honor.
18              THE COURT:  Okay.
19              (A videotaped deposition is played in open court.)
20              (Playing of the videotaped deposition is stopped.)
21              THE COURT:  I'm going to stop here for the day because
22     we have a few things we have to take care of, the lawyers.
23              Ladies and gentlemen, thanks.  We'll see you tomorrow
24     at 9 o'clock and we'll probably be here until 4:00, 4:30
25     tomorrow.  Okay?
```

 1              Please don't discuss anything about the case and have

 2       a safe ride home.  Thank you.

 3              THE CLERK:  Please rise for the Jury.

 4              (The Jury leaves the courtroom.)

 5              THE COURT:  Okay.  Be seated, everyone all right,

 6              I had the benefit of taking a look at some of the

 7       proposed summaries, Mr. Bernick.  When did you provide those to

 8       counsel?

 9              MR. BERNICK:  The underlying documents go back.  So

10       the charts themselves I think we circulated -- Will is not here

11       but I think we circulated --

12              THE COURT:  When did you get them, Mr. Johnson, do you

13       recall.

14              MR. JOHNSON:  This morning.

15              THE COURT:  We got them this morning.

16              MR. BERNICK:  That's not the first --

17              MR. JOHNSON:  This morning.  In fact, he came in and

18       told me they would be sent to me via emails, and I received it

19       while court had already started.

20              MR. BERNICK:  I don't think that's accurate.  I think

21       we sent them yesterday or even the day before, but we sent a

22       new package this morning.  The only thing that's new in that

23       package is the charts themselves.  The announcements are the

24       stipulated announcements, and the price lines are simply plots

25       of the data from -- literally you take the numbers right off --

```
 1                    THE COURT:  I heard you before.

 2                    MR. BERNICK:  I'm sorry.

 3                    THE COURT:  You keep saying -- it's the data that Dr.

 4       Raiff used.  Right?

 5                    MR. BERNICK:  That is the source of it, but in this

 6       case it's different from the other summaries.  It's the data

 7       literally that are in the deposition exhibits.  In other words,

 8       if you read --

 9                    THE COURT:  Why -- go ahead, Mr. Johnson, let me hear

10       from you.

11                    MR. JOHNSON:  I don't understand what he's quibbling

12       about.  He gave me the charts.  I'm not talking about -- we

13       already had --

14                    THE COURT:  I know you had the underlying documents.

15       I don't think you're disputing -- wait.

16                    MR. JOHNSON:  No, and objected to those.

17                    THE COURT:  Okay.

18                    MR. JOHNSON:  So the charts we just got literally as

19       we were starting court today.  Of course I immediately passed

20       it along to the appropriate people to take a look at and see

21       what the problems were, if any, with it, and they got back to

22       me and said there were problems.

23                    And Mr. Leveridge, who is dealing with the testimony

24       for tomorrow, wrote right back to Will and said, we have

25       problems with this stuff, and here are the problems, sent him a
```

1    long email on this.  And then of course Mr. Bernick raised the

2    issue with you, and apparently was prepared to hand you a bunch

3    of stuff this morning to set forth his position.

4          We, of course, have not had an opportunity to tell you

5    what our position is, which makes it difficult.  But those are

6    the facts, your Honor.

7          MR. BERNICK:  Your Honor, we have tried any way we can

8    to get summaries in, and on the basis of the success with which

9    the plaintiffs have met in connection with this particular

10   witness, we realized that the deposition exhibits that have

11   been used with this witness had Raiff data themselves.  And you

12   can compare the Raiff data in these exhibits with the Raiff

13   data in our prior charts that we sent to them weeks ago, and

14   I'm happy to address the issues that --

15         THE COURT:  No, no, no.

16         MR. BERNICK:  I'm sorry, your Honor, I keep on going

17   on, but --

18         THE COURT:  The pertinent question right now is:  How

19   long have you known that the plaintiffs were going to call this

20   witness tomorrow?

21         MR. BERNICK:  We've known for quite some time.

22         THE COURT:  Right.  And why is it that you didn't

23   provide these summaries two weeks ago?

24         MR. BERNICK:  For the very reason --

25         THE COURT:  Why am I getting them the day you're

1   asking me to get a ruling?

2           MR. BERNICK:  Because we have tried many different

3   ways to get these summaries in, and we realized when we -- your

4   Honor, if I could just finish.

5           THE COURT:  I'm listening, I'm listening.

6           MR. BERNICK:  We realized when we were going through

7   Mr. Underdown's deposition to prepare for taking his testimony

8   tomorrow that these underlying documents had been used.  And he

9   had testified about them in his deposition.  And it was very

10  simple:  We said, we can bypass all of the other issues because

11  there was an agreement by Mr. Leveridge that said that the

12  documents could be used in the deposition, and they were.

13          We said, this is a simple way --

14          THE COURT:  You didn't answer my question.  Why didn't

15  you provide these -- why didn't you make these charts up two

16  weeks ago?

17          MR. BERNICK:  I just told you, your Honor.  With due

18  respect, I said, I was reading the deposition of Mr. Underdown.

19  I saw the underlying summaries of Mr. Underdown's deposition.

20          THE COURT:  I'm sorry, Mr. Bernick, but, you know,

21  that's your answer.  You didn't realize it until recently is

22  what you're saying.  That's what you're saying.  You didn't

23  realize it and then you decided to try to make summaries, which

24  you did and we got them this morning.  I got them this morning.

25          MR. BERNICK:  To be clear, the summaries are the

 1     underlying documents --

 2              THE COURT:  I've heard you three times now on that.

 3     I've heard you.

 4              MR. BERNICK:  Okay.

 5              THE COURT:  I've heard that they are based on

 6     documents that were used in the deposition.

 7              MR. BERNICK:  Yes.

 8              THE COURT:  The summaries weren't used in the

 9     deposition obviously.

10              MR. BERNICK:  The charts were not, yes.

11              THE COURT:  Okay.  And your affidavit of Marissa Ginn

12     is dated March 16th, 2016.  That's today.

13              MR. BERNICK:  That's correct.

14              THE COURT:  Yeah.  Okay.

15              Mr. Johnson, what else do you have on this?

16              MR. JOHNSON:  Really not much, other than as I said,

17     Mr. Leveridge did respond immediately as to all the reasons why

18     we thought it was inappropriate to them.  We've had no response

19     from them other than they submitted a bunch of stuff to you

20     which he gave me a copy of.  And I'm going to take this back

21     tonight to Mr. Leveridge and the people that are dealing with

22     these issues.  But I think it's untimely, your Honor.  And

23     I'm -- you know, I just -- I can't imagine that they were not

24     preparing for this cross-examination weeks and weeks ago.  This

25     guy has been on our live witness list for months.

 1                THE COURT:  I understand.

 2                MR. JOHNSON:  That's all.

 3                THE COURT:  He acknowledged he's anticipated he was

 4      going to be called as a witness.

 5                These two documents that you handed up, Mr. Bernick,

 6      with the proposed summary -- three actually I guess -- they

 7      were Defendants Exhibits 2819, 2818 and 2820, are these the

 8      documents that were used in the deposition?

 9                MR. BERNICK:  Yes, they are, and they've listed as

10      exhibits and they were objected to.

11                THE COURT:  Okay.  And they were objected to at the

12      time of the pretrial conference?

13                MR. BERNICK:  That's correct.

14                THE COURT:  Is that right, Mr. Johnson?

15                MR. JOHNSON:  Yes.

16                THE COURT:  What was your objection to the underlying

17      exhibits?

18                MR. JOHNSON:  We had a lot of objections.  This is --

19      the problem with the data is the data was used for purposes of

20      model creation.  It does not actually reflect the actual prices

21      that were paid by Hickory Springs because there is another step

22      within the model process that deals with rebates and signing

23      bonuses and the like.  Furthermore, the data deals with just

24      one type of polyol and not the many types of polyol that

25      Hickory Springs would have bought during this period.  So --

```
 1              THE COURT:  What I'm reading here is, it says, TDI,
 2     MDI and polyols.
 3              MR. JOHNSON:  Yes, it's all three.  I should have said
 4     all three products.
 5              THE COURT:  Okay.  And so those are some of the
 6     problems with the data.  And as I said, there was a detailed
 7     answer given by Mr. Leveridge in an email this morning which
 8     frankly, your Honor, I'm not as on top of as he is and the
 9     experts.
10              THE COURT:  I'll hear from him in the morning.
11              MR. JOHNSON:  So I don't want to step out too far on
12     the ledge.
13              THE COURT:  I'll hear from him in the morning.
14              MR. BERNICK:  Your Honor, if I could be heard?
15              THE COURT:  Yes, sure.
16              MR. BERNICK:  The summaries -- and this is the reason
17     that we submitted the transcripts -- the summaries were marked
18     at the deposition, used in the deposition.  Mr. Leveridge made
19     the same statement in the deposition.  And then my predecessor
20     Mr. Loeb, took Mr. Underdown's deposition -- we gave you
21     samples for hours -- and those exhibits were used to question
22     the witness without objection, without objection.  That's why
23     we sent the transcript through.
24              And the reason it was without objection is that this
25     is the best available information that talks about the price
```

1        trends.  And page after page Mr. Loeb went through the

2        examination using these documents, because that's exactly what

3        they were done for.  And there's not a single objection to

4        those questions based upon the fact that the data is

5        inaccurate.

6                Now, I could go into the model.  This is the same data

7        that drives the model.  It is the only data in this case that

8        deals with prices on a comprehensive basis except our expert.

9        Our expert has charts too.

10               We took their expert's data with respect to all these

11       prices, thousands and thousands and thousands of prices in

12       order to reduce the ability -- reduce the issues about putting

13       before the jury the most important information in the case.

14       They will object.  They've objected to this whole effort, they

15       won't let our experts do it.  Their own witness doesn't go --

16       Dr. Marx has never done this analysis.

17               So there is -- if this doesn't come in, there will be

18       no data before this jury on a consistent basis regarding the

19       prices, and it comes right from their expert's database.  And

20       these summaries, the witness is going to sit there and go

21       through in front of the jury:  Will you look at this?  Will you

22       look at this, comparing prices piont-by-point-by-point on this

23       document.  It's the only document that's there.  That's what he

24       did in the deposition.  And it's so simple to look at a trend

25       line that just connect the dots.  That's all this is, is

 1    connecting the dots.

 2              THE COURT:  I've heard both of you.  Go ahead.

 3              MR. JOHNSON:  Your Honor, just one small thing.  Just,

 4    I can't stand when he says Mr. Leveridge didn't object.

 5              On page 96 --

 6              MR. BERNICK:  That's not --

 7              MR. JOHNSON:  -- of the transcript that you have in

 8    that package of materials, in the deposition of this witness,

 9    starting at line 17, he objected to the entire question which

10    was the statement that these prices represent the price being

11    paid for TDI by Hickory Springs.  He gives a long answer there

12    as to why.

13              That is not accurate.  He specifically mentions a

14    letter that we sent to Dow about this issue and why it wasn't

15    accurate.

16              And did he allow the questioning to go forward?

17              Yes, he allowed the questioning to go forward, but he

18    objected to the characterization of this information and the

19    use of this information.  And we had sent them a long letter

20    about it.  So they can't stand here and say that we didn't

21    object and that we didn't tell them what our position was years

22    and years ago.

23              And so when they came in with these things again as

24    exhibits in the pretrial, we again objected and that's in the

25    Pretrial Order.  They didn't bring it to our attention again,

 1    and here we are the day before the testimony and suddenly they

 2    have turned these into summary charts.  That's the facts.

 3              MR. BERNICK:  Your Honor, if you take a look at the

 4    end of Mr. Leveridge's statement, Mr. Loeb on behalf of Dow

 5    says:  Okay, I appreciate that.  That's a much better way of

 6    expressing it.  Thank you, Rick.

 7              All the questions that then proceed -- and we put

 8    before the Court -- are questions that were put by Mr. Loeb,

 9    Exhibit 8444.  They're all -- there are pages.  The witness is

10    then examined with respect to this chart.  The witness is able

11    to answer all of these questions.  And Mr. Leveridge does not

12    object to particular questions, but there's no continuing

13    objection at any point.  And the whole deposition then goes

14    forward --

15              THE COURT:  If he made the objection on page 96, does

16    he have to continue to object throughout the examination?

17              MR. BERNICK:  No.

18              THE COURT:  Okay.

19              MR. BERNICK:  That's not the point.  He's objecting to

20    the question that -- he's objecting to the questions Mr. Loeb

21    put on page 96.  He then makes the statement, and Mr. Loeb

22    says:  "I appreciate that.  That's a much better way of

23    expressing it."

24              THE COURT:  All right.

25              MR. BERNICK:  It's not an objection to all these

 1    questions.  This is a --

 2              MR. JOHNSON:  I --

 3              MR. BERNICK:  Excuse me, excuse me.

 4              This is a 30(b)(6) deposition.  He's produced as a

 5    corporate witness.  This whole thing was prepared so that the

 6    corporate witness could be asked these questions, and they now

 7    want to say now, no, it's no good.

 8              THE COURT:  Well, they've been saying that right

 9    through the pretrial conference, et cetera.

10              MR. BERNICK:  No, they didn't say it in the

11    deposition, your Honor, they just made an objection like they

12    objected to hundreds of other documents.

13              THE COURT:  Did they or did they not object during the

14    pretrial conference?

15              MR. BERNICK:  They objected to the underlying

16    materials in the pretrial conference, that's correct.  And they

17    can maintain the objection.  If your Honor wants to keep out

18    the summaries on the basis -- those summaries on the basis of

19    the objection --

20              THE COURT:  You're talking about the graphs?

21              MR. BERNICK:  No.  The underlying documents are the

22    summary.

23              THE COURT:  All the other --

24              MR. BERNICK:  Yes.  If your Honor is striking those or

25    saying that they're not admissible on the basis of the Pretrial

1    Order, we'll have to live with that.  I think that that would

2    be unfortunate.  All that the graph does is it takes the

3    numbers.

4           THE COURT:  I know.

5           MR. BERNICK:  I can do it myself on a board.  I could

6    tomorrow morning in the examination take the time to

7    walk-through with this witness what happened to these prices on

8    the board, and I'll draw the same line.

9           The only -- the only result of this exercise is that

10   we're going to have to have the jury see nine different pages,

11   focus on nine different prices, 20 different prices instead of

12   having a line that's drawn that includes those prices.  That

13   makes no sense.

14          THE COURT:  Okay.  I'll see you in the morning.

15          MR. JOHNSON:  I -- I can just read his objection, it's

16   not just to the question, it's to the charts.

17          THE COURT:  I'm see you in the morning.  Okay.  We'll

18   see you then.

19          Mr. Leveridge will be here in the morning.  Correct?

20          MR. JOHNSON:  Yes, he will, your Honor.

21          THE COURT:  How are things going with Judge Pisano?

22          MR. JOHNSON:  We sent some more transcripts over

23   yesterday.  I guess they're getting prepared to be sent to

24   Judge Pisano.

25          THE COURT:  Okay.

 1          MR. JOHNSON:  I think we're making progress.  I'll let

 2     Mr. Streeter say if he thinks otherwise.

 3          MR. STREETER:  We've got more to do.  We're waiting

 4     for materials from them.

 5          THE COURT:  However you proceed.  You know what the

 6     time frames are.  So, okay, I know he's going to stop by

 7     tomorrow I think to give us an update or to explain how he

 8     wants to proceed further I guess.

 9          Okay.  We'll see you in the morning.

10          (At 2:18 p.m., an adjournment is taken to Thursday,

11     March 17, 26, at 9:00 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ROUGH DRAFT TRANSCRIPT - CITING FROM THIS TRANSCRIPT PROHIBITED