James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ  07068
(973) 994-1700

Jeffrey M. Johnson
Adam Proujansky
Daniel S. Schaefer
Alex E. Hassid
BLANK ROME LLP
1825 Eye Street, NW
Washington, DC  20006
(202) 420-2200

Richard J. Leveridge
ADAMS HOLCOMB, LLP
1875 Eye Street, NW
Washington, DC  20006
(202) 580-8818

James R. Martin
ZELLE LLP
1220 L Street, NW
Suite 100-143
Washington, DC  20005
(202) 359-6688

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE URETHANE ANTITRUST LITIGATION | Master Docket No. 08-5169 (WJM)(MF)<br><br>**PLAINTIFFS' OBJECTIONS TO JUDGE PISANO'S SECOND AND THIRD SET OF FINDINGS** |

**TABLE OF CONTENTS**

**Page**

I.   DOW'S DESIGNATIONS IN THE DEPOSITION OF STUART WATSON SEEK INADMISSIBLE "DOUBLE-STANDARD" TESTIMONY..................................................................................1

II.  EVIDENCE OF PASS-THROUGH IS INADMISSIBLE .................................................4

III. CERTAIN TESTIMONY OF CARPENTER'S STANLEY PAULEY IS INADMISSIBLE.........................................................................................................7

  A.  Testimony Regarding Legal Conclusions, Lay Opinions as to Whether Conduct Was "Illegal" or "Improper," and Comparisons of Dow's Conduct to Plaintiffs' Downstream Conduct, Is Inadmissible ...................................................................7

  B.  Testimony That Mr. Pauley Will Receive All of Carpenter's Damages Is Irrelevant and Unfairly Prejudicial ..........................................................................9

IV.  TESTIMONY REGARDING PRICE-FIXING AGREEMENTS THAT EXCEEDS A WITNESS'S PERSONAL KNOWLEDGE IS INADMISSIBLE......................................................................................................12

V.   DEMONSTRATIVES CREATED BY COUNSEL DURING DEPOSITION ARE NOT EVIDENCE..............................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Coleman v. Home Depot, Inc.*, 306 F.3d 1333 (3d Cir. 2002) ........................................................ 6

*Frank v. Cnty. of Hudson*, 924 F. Supp. 620 (D.N.J. 1996) ........................................................ 10

*Gorbea v. Verizon N.Y., Inc.*, 2014 WL 2916964 (E.D.N.Y. June 25, 2014) ............................... 10

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968) .................................... 4, 5

*Ill. Brick Co. v. Illinois*, 431 U.S. 720 (1977) ................................................................................ 5

*In re K-Dur Antitrust Litig.*, 2008 WL 2699390 (D.N.J. Apr. 14, 2008) ...................................... 5

*Old Chief v. United States*, 519 U.S. 172 (1997) ........................................................................ 10

*Patrick v. Moorman*, 536 F. App'x 255 (3d Cir. 2013) ................................................................. 8

*Peer v. US Airways, Grp., Inc.*, 2007 WL 1585160 (D.N.J. May 31, 2007) ............................... 10

*Pfizer Inc. v. Teva Pharm. USA, Inc.*, 2010 WL 234923 (D.N.J. Jan. 13, 2010) ........................ 10

*Servs. Emps. Int'l Union v. Nat'l Union of Healthcare Workers*,
   718 F.3d 1036 (9th Cir. 2013) ................................................................................................ 10

*Tengood v. City of Philadelphia*, 529 F. App'x 204 (3d Cir. 2013) .............................................. 6

*United States v. Cross*, 308 F.3d 308 (3d Cir. 2002) ............................................................. 6, 10

*United States v. Murray*, 103 F.3d 310 (3d Cir. 1997) ................................................................. 7

*United States v. Sriyuth*, 98 F.3d 739 (3d Cir. 1996) ................................................................. 11

**RULES**

Fed. R. Evid. 401 ......................................................................................................................... 10

Fed. R. Evid. 402 ......................................................................................................................... 10

Fed. R. Evid. 403 .................................................................................................................. 6, 8, 11

Fed. R. Evid. 602 ......................................................................................................................... 12

Fed. R. Evid. 701 ........................................................................................................................... 8

Plaintiffs hereby make the following objections to Judge Pisano's second and third set of findings:

I.  **DOW'S DESIGNATIONS IN THE DEPOSITION OF STUART WATSON SEEK INADMISSIBLE "DOUBLE-STANDARD" TESTIMONY**

With respect to the December 22, 2011 deposition of retired Carpenter employee Stuart Watson, Dow seeks to admit "double-standard" testimony that has been excluded by the Court's Opinion on Plaintiffs' motion *in limine* regarding downstream issues.  Plaintiffs objected to several instances of this testimony on multiple grounds – relevance, prejudice, calling for a legal conclusion, and contrary to the Court's ruling on the downstream motion *in limine* as seeking double-standard testimony – and the testimony covers a variety of topics, including:

- Trade association meetings: "I shouldn't draw any inference that you were doing anything wrong by the mere fact that you were in a meeting with one of your competitors at a trade conference?" Watson Dep. at 141:11-15 (Dec. 22, 2011).[1]

- Carpenter receiving information about its competitors through customers: "There's nothing improper in your view about processing the information you received from Mr. Hurst," and "would the same rules or standards in your view apply to the Defendants' use of information about their competitors?" *Id.* at 107:10-25, 108:3; *see also id.* at 110:14-17 ("and there was nothing wrong with that, correct?"); *id.* at 111:16-18 ("Nothing wrong with that [customers sharing information about a competitor]?").

- Following announced price increases: "And does that suggest to you or imply to you that you had some prior improper communication with your competitor?" *Id.* at 118:2-5.

- Raising prices: "You don't place a double-standard on the Defendants for raising prices under situations when you were also raising prices, correct, " and "there's nothing improper from a business perspective in your view; right?" *Id.* at 211:18-212:7.  A later portion, also relating to Carpenter price increases also contains the following question: "And you would not infer any sort of improper or illegal

---

[1]  The deposition transcript of Mr. Watson that was provided to Judge Pisano is attached as Exhibit A.

1

      conduct by that supplier merely from the fact that it was raising its prices in these economic conditions; right?" *Id.* at 215:6-12.[2]

- Use of market information in setting prices: "And you don't believe that there's any inference that you conspired or colluded with your competitors, the Defendants in this case, merely from the fact that you looked at their available market information in making your decision; correct?" *Id.* at 220:16-221:10.

- Carpenter's "multifaceted relationships" (i.e., as a customer and competitor to Dow and its co-conspirators): "there shouldn't be any inference drawn that Bayer or Dow or BASF or Huntsman was trying to conspire with Carpenter to fix prices to polyol customers," and that he "didn't feel that they were doing anything wrong in having the same relationship with you?" *Id.* at 99:24-100:16, 100:18-24.

On March 9, 2016, Judge Pisano overruled Plaintiffs' objections to this testimony, *see* Hr'g Tr. at 12:12-24, but all of it is inadmissible.[3]

Plaintiffs acknowledge that Carpenter manufactures polyols, and that Mr. Watson was involved in that process. However, Carpenter manufactured polyols mainly for its own use, sold only a small portion to the market, and is nowhere alleged to be part of the conspiracy that included Dow, BASF, Bayer, Huntsman, and Lyondell.[4] Some of the testimony Dow has designated reflects an attempt to use Carpenter's production of polyols to elicit the same type of evidence that the Court prohibited with respect to Plaintiffs' downstream activities, i.e., that

---

[2] Dow's designation of Mr. Watson's testimony from page 213:10-22 run afoul of the Court's Opinion on Plaintiffs' downstream motion *in limine* in a more direct way – it discusses pricing increases by Carpenter – and should therefore also be excluded.

[3] The transcript of proceedings before Judge Pisano on March 21, 2016 is attached as Exhibit B.

[4] Because there is no allegation that Carpenter colluded with Dow and its co-conspirators in the sale of MDI, TDI, or polyether polyols, Plaintiffs object to Dow's designation of one exchange where Mr. Watson was asked "[d]id you or anyone at Carpenter ever have discussions with anyone at Bayer, Huntsman, BASF, or Dow about fixing prices to other customers?" Watson Dep. at 73:12-16. Judge Pisano overruled Plaintiffs' objections because he found that "the witness is competent to testify" about this subject. Hr'g Tr. at 122:12-17 (Mar. 9, 2016). Absent any allegation that Carpenter colluded with Dow and the other chemical suppliers, this testimony is not only irrelevant, but also unduly prejudicial, confusing, and likely to mislead the jury.

2

Plaintiffs engaged in the same practices in which Dow and its co-conspirators engaged in the urethanes market, and that Dow should not be held to a double standard.[5]

Ultimately, whether the designated testimony relates to Carpenter's manufacture of polyols or polyurethane foam is immaterial because the designated portions are designed to "tempt the jury to decide the case on an improper basis, such as the 'relative moral worth of the parties,' . . . or a sense that Plaintiffs are being hypocritical in pursuing an action against Dow when they have engaged in similar conduct." *See* Op. and Order at 3 (Dec. 21, 2015) (ECF No. 213) ("Dec. 21 Opinion") (citations omitted). Indeed, one question even confirms this by asking whether Dow and its co-conspirators should be subject to a "double standard." *See* Watson Dep. at 211:18-212:7. As the Court has held, such evidence is unfairly prejudicial, and should be excluded. Dec. 21 Op. at 3.

In addition, several of the questions call for legal conclusions, including whether the jury should infer anything about the existence of a conspiracy. *See* Watson Dep. at 99:24-100:16, 100:18-24; 141:11-15. As shown above, such questions create a "host of admissibility issues," which therefore offers a separate, independent basis for excluding Dow's designated testimony. *See* Dec. 21 Op. at 3.

Accordingly, Plaintiffs request that the Court exclude the designated portions of Mr. Watson's testimony found at 73:12-16, 99:24-100:16, 100:18-24, 107:10-25, 108:3, 110:14-17, 111:16-18, 118:2-5, 141:11-15, 211:18-212:7, 213:10-22, 215:6-12, 220:16-221:10.

---

[5] Some of the testimony Dow designates is unclear as to whether it relates to Carpenter's manufacture of polyols or downstream sales of polyurethane foam. Given that Mr. Watson's deposition will be played in clips, it will be difficult for the jury (indeed for any viewer) to parse the issues.

3

## II.   EVIDENCE OF PASS-THROUGH IS INADMISSIBLE

On March 21, 2016, Judge Pisano overruled a number of objections Plaintiffs advanced regarding testimony that raised the issue of pass-through, but held that his ruling was without prejudice to Plaintiffs' ability to raise the issue before the Court.  The argument Dow makes for the admissibility of this testimony is analogous to the argument that the Court rejected with respect to downstream evidence.  The argument that the Court rejected was that downstream evidence was admissible because Dow was not seeking to prove that Plaintiffs engaged in a price-fixing conspiracy in the downstream markets, but to prove that Plaintiffs did <u>not</u> engage in a price-fixing conspiracy in the downstream markets.  The Court saw through Dow's ruse, and held that the downstream evidence was inadmissible.  Now, Dow argues that it is not seeking the admission of pass-through evidence to prove that Plaintiffs passed through price increases to their customers, but to prove that Plaintiffs did <u>not</u> pass through price increases.  But the pass-through evidence is inadmissible under *Hanover Shoe* and its progeny regardless of whether Dow seeks to prove that Plaintiffs did or did not pass through price increases.

Dow has designated the following passages that clearly implicate pass-through:

- In the deposition of Bayer's John Phelps, the witness is asked directly "[w]hy is it important or relevant that foam prices will not increase?"  Mr. Phelps responded that "[i]f the foamers are required to pay higher prices for their raw materials and they can't get an increased price on their products, it squeezes them financially."  Phelps Dep. at 85:2-5, 85:9-21, 85:24 (Sept. 23, 2009).

- In the deposition of Woodbridge's Bruce O'Brien, Dow designated several passages regarding a document in which Woodbridge fought a price increase on the grounds that its "OEM and Tier 1 customers were contacted by our respective sales/marketing representatives regarding the increases.  The response from our automotive customers was uniform in that increases are not being accepted . . . ."  The witness further testified that the purpose of his letter was to notify BASF that Woodbridge was fighting BASF's price increase because Woodbridge was "not allowed to pass things through."  O'Brien Dep. at 260:17, 260:23-261:13, 263:21-264:3, 264:20-265:6, 265:13-22, 266:11-267:22, 268:1 (July 21, 2010).

4

- In the deposition of Bayer's Thomas Harrick, the witness testified that Woodbridge refused a price increase because its customers refused price increases, noting that after Woodbridge's automotive customers refused a price increase from Woodbridge, Woodbridge would then reject the price increase from the co-conspirators. Harrick Dep. at 147:1-11 (Nov. 10, 2010).

- In the deposition of Carpenter's Del Felter (given in his individual capacity), Mr. Felter was asked about "reselling MDI that [Carpenter] buy[s] from somebody else," and whether in reselling the product, Carpenter "charge[d] more for it than you paid to buy it." Felter Dep. at 201:3-9, 203:4-12 (Oct. 26, 2011).[6]

Dow argues that these four vignettes do not reflect that Plaintiffs passed through price increases to their customers, but rather, that Plaintiffs were unable to pass through the price increases. This is a distinction without difference, and the testimony should be excluded for several independent reasons.

*First*, it is axiomatic that "pass through" evidence is inadmissible. *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 492-94 (1968). Indeed, courts within this District have recognized that "direct purchasers are not only spared the burden of litigating the intricacies of pass-on but are also permitted to recover the full amount of the overcharge." *In re K-Dur Antitrust Litig.*, 2008 WL 2699390, at *8 (D.N.J. Apr. 14, 2008). The Court recognized as much in precluding evidence of Plaintiffs' downstream conduct. Dec. 21 Op. at 2-3 (citing *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 724-25 (1977)).[7] Evidence regarding whether Plaintiffs passed through price increases implemented by Dow and its co-conspirators is inadmissible

---

[6] The deposition transcripts of Mr. Phelps, Mr. O'Brien, Mr. Harrick, and Mr. Felter that were provided to Judge Pisano are attached as Exhibits C, D, E, and F, respectively.

[7] While Dow concedes that pass-through is not a defense, it still seeks to use such evidence defensively, thereby improperly imposing on Plaintiffs "the burden of litigating the intricacies of pass-on." *See In re K-Dur Antitrust Litig.*, 2008 WL 2699390, at *8.

5

under *Hanover Shoe* and its progeny.  It does not matter whether Dow claims it is trying to prove that pass-through occurred or that it did not.[8]

*Second*, the evidence should be excluded under Rule 403 because any probative value the evidence may have is substantially outweighed by the danger of unfair prejudice and the potential to mislead the jury.  Fed. R. Evid. 403; *see also Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1343 (3d Cir. 2002).  Evidence is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Cross*, 308 F.3d 308, 324 n.23 (3d Cir. 2002).  Here, even raising the specter of pass-through is unduly prejudicial, as the designated testimony suggests that Dow's (and its co-conspirators') price increases were, at least in some instances, "passed through" to Plaintiffs' customers.  The admission of such evidence could thus "unfairly skew the jury's findings," *Tengood v. City of Philadelphia*, 529 F. App'x 204, 213-14 (3d Cir. 2013), mislead the jury regarding harm to Plaintiffs, and potentially confuse the issues the jury believes it must assess.

Furthermore, Dow's arguments to the jury have revolved around Plaintiffs' *purchasing power* from their chemical suppliers.  Thus, what is relevant is the dynamic between Plaintiffs on the one hand, and Dow and its co-conspirators on the other, not the dynamics between Plaintiffs and their customers.  Consequently, Dow's proffered testimony has no probative value.  Thus, Dow has only minimal need for this evidence, if any, while the risk that the information will unduly prejudice, mislead, or confuse the jury is extremely high.

*Third*, and perhaps most simply, the pass-through evidence Dow has designated necessarily implicates Plaintiffs' downstream conduct, evidence of which the Court already has excluded.  *See* Dec. 21 Op. at 3-4.

---

[8]  That certain price increase announcements did not actually raise prices by the amount set forth in those announcements is not in dispute.

6

In sum, the testimony Dow seeks to admit is either irrelevant, or of such low probative value that the risk of unfair prejudice mandates exclusion. *See United States v. Murray*, 103 F.3d 310, 310 (3d Cir. 1997) (holding that where evidence has little probative value, lesser showing of unfair prejudice is required to merit exclusion). For all these reasons, Plaintiffs request that Court exclude the following testimony: Phelps Dep. at 85:2-5, 85:9-21, 85:24; O'Brien Dep. at 260:17, 260:23-261:13, 263:21-264:3, 264:20-265:6, 265:13-22, 266:11-267:22, 268:1; Harrick Dep. at 147:1-11; and Felter Dep. at 201:3-9, 203:4-12.

### III. CERTAIN TESTIMONY OF CARPENTER'S STANLEY PAULEY IS INADMISSIBLE

On March 9, 2016, Judge Pisano overruled Plaintiffs' objections to certain testimony from Carpenter's Chairman and Chief Executive Officer Stanley Pauley designated by Dow.

> A. *Testimony Regarding Legal Conclusions, Lay Opinions as to Whether Conduct Was "Illegal" or "Improper," and Comparisons of Dow's Conduct to Plaintiffs' Downstream Conduct, Is Inadmissible*

First, Dow has designated several portions of Mr. Pauley's testimony where he is asked to provide a legal conclusion. While Judge Pisano overruled these objections, the testimony at issue plainly falls into the category of evidence that the Court already excluded in its December 21, 2015 Opinion and Order on Plaintiffs' motion *in limine* to exclude downstream evidence.

For example, in one exchange, Mr. Pauley is asked by Dow's counsel "Did you see anything wrong with the price increase announcements being the same? Legally wrong or improper?" Pauley Dep. (Vol. I) at 67:5-7 (Oct. 21, 2013).[9] Similarly, Dow's counsel asked Mr. Pauley, "was there something improper or illegal in your view where a supplier said, this is the price, and I'm just not going to do the business with you?" *Id.* at 69:5-8. Both instances call for

---

[9] The deposition transcript of Mr. Pauley that was provided to Judge Pisano is attached as Exhibit G.

7

legal conclusions, but as the Court has held, "[p]laintiffs' employees' lay opinions as to the legality of certain business practices raises a host of admissibility issues." Dec. 21 Op. at 3.

Indeed, Mr. Pauley is a lay witness, not a lawyer or expert, and thus cannot opine on these issues under Rule 701. Furthermore, even if Mr. Pauley were an expert witness, he would not be permitted to opine on the law or on the ultimate legal issue in the case. *Patrick v. Moorman*, 536 F. App'x 255, 258 (3d Cir. 2013) (holding that expert witness is prohibited from testifying about law, opining about legal standards, or drawing ultimate legal conclusions). Furthermore, such testimony should be excluded under Rule 403 because its probative value is substantially outweighed by the danger of unfair prejudice and the potential to mislead the jury. Fed. R. Evid. 403. Here, the jury may accord undue weight to Mr. Pauley's testimony as the owner of one of the Plaintiffs, while its corresponding probative value is non-existent.[10]

Likewise, Plaintiffs have objected to testimony in which Mr. Pauley was asked whether he would "think it would be correct for somebody to say that Dow . . . engaged in a conspiracy because they did" things that Carpenter also did. Pauley Dep. (Vol. I) at 81:6-14; *see also* 83:9-19 ("from your own point of view as the head of Carpenter, you don't think it's right for somebody to be accused of conspiracy based upon doing things that you have acknowledged are done throughout the business for competitive reasons?").[11] Plaintiffs objected to this testimony

---

[10] Plaintiffs' objections here are similar to those Dow asserted in its motion *in limine* concerning the conspirators' antitrust compliance policies, which the Court sustained. There, the Court held that "whether Dow employees believed they violated Dow's antitrust policies is irrelevant." Opinion & Or., dated Feb. 8, 2016, at 2 (ECF No. 236). The Court further noted that any minimal relevance would be substantially outweighed by unfair prejudice because the testimony could confuse the jury on what the governing law was. *Id.*

[11] During the cross examination of Hickory Springs' David Underdown, the Court sustained Plaintiffs' objections to Dow's counsel's questions regarding whether "price-fixing" had occurred. Trial Tr. at 172:19-173:5 (Mar. 17, 2016) ("but whether or not there's price-fixing is a legal conclusion that really is for the jury or experts. He's not an expert, and that's why you have your expert and you have your expert") (attached as Exhibit H). Plaintiffs object to

8

as calling for a legal conclusion and because it ran afoul of the Court's Order on Plaintiffs' motion *in limine* regarding downstream activities. While Judge Pisano overruled Plaintiffs' legal conclusion objection, he noted that his ruling was without prejudice to Plaintiffs raising their motion *in limine* objection to the Court. Hr'g Tr. at 6:8-15 (Mar. 9, 2016).

Plaintiffs now renew their objection that such testimony called for Mr. Pauley to offer improper opinion testimony and legal conclusions, which, as shown above, is of the type the Court has already deemed inadmissible. Furthermore, the testimony also should be excluded because it runs afoul of the Court's Opinion and Order granting Plaintiffs' motion *in limine* on downstream activities. In its Opinion, the Court held that evidence that Plaintiffs conducted themselves similarly to Dow and its co-conspirators has low probative value, compared to a high risk of unfair prejudice because it "may tempt the jury to decide the case on an improper basis, such as the 'relative moral worth of the parties,' . . . or a sense that Plaintiffs are being hypocritical in pursuing an action against Dow when they have engaged in similar conduct." Dec. 21 Op. at 3 (citations omitted). This is precisely the point Dow seeks to make with such testimony, and it should not be permitted.[12]

For the reasons set forth above, Plaintiffs request that the Court exclude the testimony found at 67:5-7, 69:5-8, 81:6-14, and 83:9-19 of Volume I of the deposition of Stanley Pauley.

### B. Testimony That Mr. Pauley Will Receive All of Carpenter's Damages Is Irrelevant and Unfairly Prejudicial

Plaintiffs do not object to testimony confirming that from 1994 through 2003, Mr. Pauley owned or controlled over 90 percent of Carpenter's stock, and that today, Mr. Pauley owns or

---

questions posed to Mr. Pauley that seek similar information, and that are objectionable for the same reasons.

[12] The testimony surrounding the designations on pages 81 and 83 confirm that in context, the designated testimony relates to Carpenter's downstream activities. *See* Pauley Dep. (Vol. I) at 81:16-22, 82:4-9.

9

controls 100 percent of Carpenter's stock. Pauley Dep. (Vol. I) at 14:1-16:6. Rather, Plaintiffs object to the testimony that follows, because it is irrelevant and unfairly prejudicial:

> Q: Okay. So I take it that if your company is successful in the prosecution of this case, 100 percent of any benefit that comes from that is enjoyed by you or trusts which you control. Is that true?
>
> A: Yes.

*Id.* at 16:7-12.

Under Federal Rule of Evidence 401, evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also Old Chief v. United States*, 519 U.S. 172, 178 (1997). Under Federal Rule of Evidence 402, irrelevant evidence is not admissible. Thus, evidence that is not pertinent to the legitimate issues in the case must be excluded. *See, e.g.*, *Servs. Emps. Int'l Union v. Nat'l Union of Healthcare Workers*, 718 F.3d 1036, 1050 (9th Cir. 2013); *Gorbea v. Verizon N.Y., Inc.*, 2014 WL 2916964, at *2 (E.D.N.Y. June 25, 2014); *Pfizer Inc. v. Teva Pharm. USA, Inc.*, 2010 WL 234923, at *2 (D.N.J. Jan. 13, 2010); *Peer v. US Airways, Grp., Inc.*, 2007 WL 1585160, at *3 (D.N.J. May 31, 2007); *Frank v. Cnty. of Hudson*, 924 F. Supp. 620, 626 (D.N.J. 1996). Here, with Mr. Pauley's ownership interest in Carpenter having already been established, the fact that he will receive 100 percent of the benefits of any proceeds in this litigation that flow to Carpenter does not make any fact pertinent to this action more or less probable.

Furthermore, even if the evidence were relevant, it should be excluded under Rule 403 because it has almost no probative value, while the corresponding risk of substantial prejudice is high, and the evidence has "an undue tendency to suggest decision on an improper basis." *See Cross*, 308 F.3d at 324 n.23. In determining whether evidence should be excluded under

Rule 403, courts must balance the genuine need for such evidence against the risk that the information will improperly influence the jury. *United States v. Sriyuth*, 98 F.3d 739, 747-48 (3d Cir. 1996). Here, there is no need for the testimony regarding the proceeds of this litigation, nor is the probative value of the evidence high given the preceding testimony regarding Mr. Pauley's ownership interest. In contrast, the danger of unfair prejudice is high given that it could cause the jury to decide the case on an improper basis.

In fact, this testimony is similar to evidence for which Dow asked the Court to instruct the jury regarding their consideration of the costs of hotel rooms, the lavish nature of industry association trips, etc. Further, Dow recently sought exclusion of a video prepared at the request Plaintiffs' witness David Underdown (of Hickory Springs) on the grounds that the video would reinforce the potential negative perceptions of Dow's wealth as compared to that of Plaintiffs. Dow now seeks to have it both ways, by attempting to imply to the jury that Mr. Pauley's ownership of Carpenter and rights to collect damages that might be obtained here are untoward.

Compounding these concerns, the question and answer may mislead the jury into thinking that Mr. Pauley stands to benefit from 100 percent of the proceeds collected by all Plaintiff families, not just Carpenter. Thus, the testimony should be excluded.[13]

Accordingly, Plaintiffs request that the Court exclude the objectionable testimony, Pauley Dep. (Vol. I) at 16:7-12.

---

[13] To the extent Dow claims that the objectionable testimony could reflect Mr. Pauley's potential bias, the testimony preceding the objectionable designations regarding his ownership interest is sufficient to show Mr. Pauley's personal financial interest in Carpenter. Pauley Dep. (Vol. I) at 13:13-16:6.

### IV.  TESTIMONY REGARDING PRICE-FIXING AGREEMENTS THAT EXCEEDS A WITNESS'S PERSONAL KNOWLEDGE IS INADMISSIBLE

On March 21, 2016, Judge Pisano overruled Plaintiffs' objections to several passages of testimony in which a witness is asked whether Dow, BASF, Bayer, and the other chemical suppliers reached agreement on pricing.  In each instance, Plaintiff now renews their objections based on the witnesses' lack of foundation, lack of personal knowledge, and the speculative nature of the testimony.

These objectionable passages are best exemplified in the deposition of G. Thomas Harrick (a former Bayer employee), during which he was asked repeatedly whether Bayer had agreed with Dow and its con-conspirators to increase prices:

> Q:  Were any of those attempted price increases the result of an agreement between Bayer and its competitors to increase pricing?
>
> A:  Obviously not.
>
> \*     \*     \*     \*
>
> Q:  Were any of those attempted price increases the result of an agreement between Bayer and its competitors to increase pricing?
>
> A:  No.

Harrick Dep. at 86:3-6, 100:17-20; *see also id.* at 70:16-20, 104:11-15, 158:12-15.  Likewise, Bayer's Gerald MacCleary was asked, "Were any of those price increases between January 1, 2003 and December 31st, 2004 the result of any agreement or understanding among competitors and Bayer?" to which he responded, "No."  MacCleary Dep. at 213:3-9 (Dec. 17, 2009).[14]  All of this testimony is inadmissible.

Rule 602 states, in relevant part: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.

---

[14]  The deposition transcript of Mr. MacCleary that was provided to Judge Pisano is attached as Exhibit I.

Evidence to prove personal knowledge may consist of the witness's own testimony." Here, the "matter" in question is whether various chemical suppliers raised prices based on an agreement. Neither Mr. Harrick nor Mr. MacCleary, both Bayer employees, has personal knowledge of the reasons other companies may or may not have raised prices.

Moreover, neither witness testified as Bayer's corporate representative, despite purporting to speak on Bayer's behalf. Mr. Harrick and Mr. MacCleary do not limit their answers to their own personal knowledge (i.e., "I know of no such agreement"), and instead purport to speak for all of the co-conspirators. Thus, these witnesses not only lack personal knowledge and foundation to offer the answers they have provided, but are also speculating.

Further, this testimony is similar to testimony the Court would not allow during the cross examination of Mr. Underdown. Specifically, the Court sustained several objections to questions in which Dow's counsel sought to elicit testimony from Mr. Underdown of Hickory Springs about what chemical supplier companies were "thinking. *See, e.g.*, Trial Tr. at 143:7-14, 144:3-7 (Mar. 17, 2016). The questions posed to Mr. Harrick and Mr. MacCleary similarly seek information within the "mind" of several companies for which those witnesses did not work. The testimony should therefore be excluded on the same grounds.

Plaintiffs therefore request that the Court exclude the following testimony: Harrick Dep. at 70:16-20, 86:3-6, 100:17-20, 104:11-15, 158:12-15; and MacCleary Dep. at 213:3-9.

### V. DEMONSTRATIVES CREATED BY COUNSEL DURING DEPOSITION ARE NOT EVIDENCE

On March 21, 2016, Judge Pisano overruled several of Plaintiffs' objections to testimony relating to documents prepared by Dow's counsel during deposition. In doing so, Judge Pisano noted several times that the documents were "demonstratives," but when asked for clarification, noted that he deemed the documents "admissible." While Plaintiffs defer to Judge Pisano's

13

rulings regarding the admissibility of the testimony, and withdraw their objections to these demonstrative documents being shown to the jury while the testimony is played, Plaintiffs object to the admission of these documents as evidence. The documents are little more than Dow's counsel's effort to testify in place of the witness. Moreover, the relevant testimony confirms that the witnesses did not adopt the documents. For example, during the deposition of Frank Hurst, Dow's counsel had the following exchange with the witness regarding two such documents:

> Q: And when we talked about the business practices for sellers and buyers of MDI and TDI, that was 2C. Is that the list?
>
> A: Okay.
>
>        \*      \*      \*      \*
>
> Q: 2D is the list of market factors, right?
>
> A: Okay.

*See* Hurst Dep. at 211:11-212:17 (Oct. 18, 2013); *see also* McCormick Dep. at 78:7-18 (Sept. 23, 2013); Barbour Dep. at 240:24-241:4 (Oct. 16, 2013).[15]

In short, these documents are not evidence, and while Dow may use them as demonstratives, the documents should not be given to the jury during deliberations. Plaintiffs therefore request that the Court order that the documents attached as Exhibit M, all of which are accompanied by the testimony in question (*see* Exhibits J, K, and L), may be used as demonstratives by Dow, but will not be admitted as evidence.[16]

---

[15] The versions of the deposition transcripts for Mr. Hurst, Mr. McCormick, and Ms. Barbour are attached as Exhibits J, K, and L, respectively. The documents referenced in this section are compiled and attached as Exhibit M.

[16] Notably, Dow's response to Plaintiffs' objections in the McCormick and Barbour depositions provided to Judge Pisano notes that the documents at issue will only be used as demonstratives, and that "Dow does not seek to offer it into evidence." *See, e.g.*, Mr.Cormick Dep. at 78 (Dow's Response to Objection Box); Barbour Dep. at 238, 241 (Dow's Response to Objection Boxes). However, Dow appears to seek the admission of the documents used in Mr. Hurst's deposition. *See* Hurst Dep. at 209-10 (Dow's Response to Objection Box).

                                      Respectfully Submitted,

                                      CARELLA, BYRNE, CECCHI,
                                      OLSTEIN, BRODY & AGNELLO
                                      *Attorneys for Plaintiffs*

                                      By:   /s/ James E. Cecchi
                                                  JAMES E. CECCHI

Dated: March 23, 2016

Jeffrey M. Johnson
Adam Proujansky
Daniel P. Schaefer                          Richard J. Leveridge
Alex E. Hassid                                  ADAMS HOLCOMB, LLP
BLANK ROME LLP                      1875 Eye Street, NW
1825 Eye Street, NW                 Washington, DC 20006
Washington, DC 20006              (202) 580-8818
(202) 420-2200

James R. Martin
ZELLE LLP
1220 L Street, NW
Suite 100-143
Washington, DC 20005
(202) 359-6688

*Attorneys for Plaintiffs*

15