**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE URETHANE ANTITRUST LITIGATION<br><br>This Document Relates to:  All Actions | Civil Action No. 08-5169 (WJM) (MF) |

**DEFENDANT THE DOW CHEMICAL COMPANY'S
RESPONSE TO PLAINTIFFS' BENCH BRIEF
<u>REGARDING PROPOSED JURY INSTRUCTIONS</u>**

## **PRELIMINARY STATEMENT**

Plaintiffs' bench brief seeks to give the impression that their proposed instructions were based on a review of multiple jury instructions adopted by courts in other antitrust cases. But this is simply untrue: As shown in the redline provided in Exhibit A, Plaintiffs simply adopted wholesale the substantive instructions given by the District of Kansas in the 2013 class action from which Plaintiffs opted out. For the most part, Plaintiffs' only changes were to delete the word "class" before "Plaintiffs" and to delete references to "systems" (products that are not at issue in this case).

But Plaintiffs also deviated substantially from the Kansas instructions when convenient. For example, despite their heavy reliance on circumstantial evidence of parallel conduct, Plaintiffs deleted entirely the Kansas court's instruction on parallel conduct. (Ex. A at 7.) Similarly, Plaintiffs added a prejudicial and unnecessary instruction on the purpose of the Sherman Act that was rejected by the Kansas court. (*Id.* at 3.) And Plaintiffs inserted into the fraudulent concealment instruction an incorrect statement of the law – "that a conspiracy is, by nature, self-concealing" (*id.* at 19-20) – which is in direct conflict with this Court's holding that price-fixing conspiracies are not per se self-concealing. *See In re Magnesium Oxide Antitrust Litig.*, No. 10-5943, 2011 WL 5008090, at *21 (D.N.J. Oct. 20, 2011) ("[T]he Court cannot find that conspiracies involving price-fixing are per se self-concealing, as such a finding would render them wholly exempt from the applicable statute of limitations.").

Even without these changes, Plaintiffs' near-wholesale adoption of the Kansas instructions would be inappropriate for several reasons. First, this is not a class action. In nearly every instruction, Plaintiffs seek to gloss over the fact that in this direct action each plaintiff has an individual burden to prove each element of its claim. Simply deleting the word "class" before

the word "Plaintiffs" in the Kansas instructions is not sufficient to inform the jury that individual circumstances can drive different results for individual Plaintiffs, especially with respect to proof of injury, fraudulent concealment, causation, and damages.  And Plaintiffs' use of the phrase "Plaintiff families" is downright misleading, because it suggests that an entire corporate family can recover if just one family member proves its claim.  Plaintiffs deliberately chose to opt-out of the class litigation and to pursue direct actions.  Plaintiffs cannot now proceed as if this were a second class action.

Second, Plaintiffs' proposed instructions fail to address recent and controlling law regarding inferences the jury may draw from certain types of evidence, such as *In re Chocolate Confectionary Antitrust Litigation*, 801 F.3d 383, 396 (3d Cir. 2015) ("Antitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case" thus a plaintiff must present evidence "that tends to exclude the possibility that the alleged conspirators acted independently.").[1]  Plaintiffs argue that *Chocolate* and other similar cases are irrelevant because they were decided on summary judgment, *see* Pls.' Br. at 11, but this is nonsense.  The standard is the same.  *See Matsushita Elec. Indus., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 588 (1986) ("To survive a ***motion for summary judgment or a directed verdict***, a plaintiff seeking damages for a violation of § 1 must present evidence that 'tends to exclude the possibility that the alleged conspirators acted independently.'") (emphasis added).

Judicial opinions addressing the types of inferences that can and cannot reasonably be drawn by the fact finder from certain evidence are not only relevant, but necessary to the fulfillment of a jury's task.  If the law holds that certain evidence fails to support an inference of conspiracy, then that law must be applied by the jury at trial, regardless of whether the rule was

---

[1] The District of Kansas's summary judgment decision predated *Chocolate* by nearly two years.

2

pronounced in the context of a summary judgment motion. That, of course, is the basis of certain of Dow's proposed instructions to which Plaintiffs object. *Compare Chocolates*, 801 F.3d at 400 ("To prove a conspiracy here [in an oligopoly], the evidence must go beyond mere interdependence. Parallel pricefixing 'must be so unusual that in the absence of an advance agreement, no reasonable firm would have engaged in it.'") (*quoting In re Baby Food Antitrust Litig.*, 166 F.3d 112, 135 (3d Cir. 1999)) *with* Dow's Proposed Instruction 4.5, Dow's Responses to Pls.' Proposed Jury Instr. at p. 53 ("If the evidence shows behavior so unusual that, in the absence of advance agreement, no reasonable business would have engaged in it, then you may find for Plaintiffs."). Compare further with Plaintiffs' deletion of the entire Kansas instruction on parallel conduct (Ex. A at 7) and Plaintiffs' objection to any instruction addressing permissible inferences in an oligopoly market. Pl.'s Br. at pp. 10-13.

Plaintiffs also suggest that this Court should ignore any controlling Third Circuit law that has not been incorporated into jury instructions in other cases. This position is meritless, perversely elevating jury instructions over binding judicial opinions and thus creating a Catch 22 in which no clarification in the law could ever be adopted in a jury instruction because there would be no prior jury instruction incorporating the same.[2] To the contrary, "[a] party is entitled

---

[2] *See also* ABA Section of Antitrust Law, *Model Jury Instructions in Civil Cases* (2005) ("ABA Model Instructions") at xv ("Our goal, however, was not to find and use language that had been used in jury instructions that had been specifically sanctioned by the Supreme Court or one or more of the Courts of Appeal. There is simply too little jurisprudence on antitrust jury instructions to make that a fruitful endeavor. Rather, our goal was to distill language from the appellate antitrust decisions that, the Section believes, accurately and clearly reflect[] substantive antitrust law."). Likewise, this is what the Third Circuit Model Instructions do: they expressly rely on authority generated in other contexts, like motions to dismiss or for summary judgment. *See, e.g.*, Comment to Third Circuit Model Civil Jury Instruction 4.4, Section 1983 – Action under Color of State Law (relying on *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n.18 (1982), a case in which the Court reversed the trial court's order to dismiss for failure to state a claim); Comment to 5.1.2, Disparate Treatment – Pretext, "Failure to Rehire as an Adverse Employment Action" (relying on *Wilkerson v. New Media Tech. Charter School, Inc.*, 522 F.3d

3

to a jury instruction that accurately and fairly sets forth the *current status* of the law." *Douglas v. Owens*, 50 F.3d 1226, 1233 (3d Cir. 1995) (emphasis added); *see also McPhee v. Reichel*, 461 F.2d 947, 950 (3d Cir. 1972) ("It is the responsibility of the trial judge to provide the jury with a clear and accurate statement of the law . . . .").

Indeed, the Third Circuit has repeatedly held that jury instructions must be consistent with controlling case law and has reversed cases based on the failure of instructions to conform to controlling law, even when the controlling case was not itself addressing sufficiency of jury instructions. *See, e.g.*, *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 373 (3d Cir. 2007), *cert. denied* 553 U.S. 1093 (2008) (holding that jury instruction was contrary to Supreme Court's decision in *Armour & Co. v. Wantock*, 323 U.S. 126 (1944), a case that had absolutely nothing to do with jury instructions); *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95 (3d Cir. 1999) (ordering new trial where jury instructions failed to conform to *Lehmann v. Toys 'R' Us*, 132 N.J. 587 (1993), a case which involved an appeal from a bench trial and thus contained no jury instructions).

Third, the Kansas instructions to which Plaintiffs religiously adhere (except where they do not) are vague and incomplete. They gloss over important distinctions in the controlling law, especially with respect to the inferences that can and cannot be drawn from circumstantial evidence. The Kansas instructions are also internally inconsistent in places and confusingly conflate separate elements of the offense. Dow's proposals, based on the more detailed,

---

315, 320 (3d Cir. 2008), a case in which the Third Circuit affirmed a motion to dismiss all claims, for the applicable legal standard); Comment to 5.1.4, Harassment – Hostile Work Environment – Tangible Employment Action, "Religious Discrimination" (relying on *Abramson v. William Paterson College*, 260 F.3d 265, 277 n.5 (3d Cir. 2001) for support, a case in which the Court reversed a grant of summary judgment).

complete, and methodically sequenced ABA Model Instructions, will be more helpful and instructive to the jury and less likely to result in jury confusion.

The ABA Model Instructions are designed to be neutral to the parties and are based on uncontroversial tenets of well-settled antitrust law.[3]  Indeed, the Third Circuit has specifically found that a jury in an antitrust case was properly instructed when the district court's instructions "closely follow[ed]" the ABA Model Instructions.  *See Deutscher Tennis Bund v. ATP Tour, Inc.*, 610 F.3d 820, 829, n.6, 830 (3d Cir. 2010).  Unlike Plaintiffs, which still have not shown how their proposed instructions conform to or depart from any of the authority they cite, Dow transparently showed how Dow proposed to edit the ABA Model Instructions.  And Dow's modifications were designed to conform the ABA Model Instructions to:  (1) Plaintiffs' theory of the allegedly unlawful conspiracy; (2) Plaintiffs' theory of injury; (3) Plaintiffs' damages model (which uses a benchmark period); (4) the procedural posture of this case in which multiple Plaintiffs are pursuing individual direct actions; and (5) controlling Third Circuit law that limits the inferences that can be drawn from parallel conduct in an oligopoly market.  Contrary to Plaintiffs' criticism about "slanted" edits, even Plaintiffs concede that the ABA Model Instructions are designed to be modified to adjust for the specific facts and claims alleged in a given case.  *See* Pl.'s Bench Br. at 6; ABA Model Instructions at xvi ("We have accounted for the variety of factual circumstances in which antitrust claims arise by including bracketed directions to describe allegations or contentions of the parties.  This will allow litigants to customize the instructions to the specific facts of the case.  These instructions are but a starting point. . . .").

---

[3] The Preface to the ABA Model Instructions explains that the instructions are designed "i) to offer to the greatest extent possible, definitive instructions on the law; ii) to present balanced instructions that would be acceptable to plaintiffs and defendants alike; and iii) to write instructions in a way that juries would find helpful and instructive." ABA Model Instructions at xv.

## RESPONSES TO INDIVIDUAL PROPOSED JURY INSTRUCTIONS

**Plaintiffs' Proposed Instruction No. 1/Dow's Proposed Instruction 3.1 (Deliberations):** Plaintiffs initially proposed a hybrid instruction that combined elements of a preliminary instruction and one designed for use at the end of trial. Plaintiffs now have no objection to the Court using Third Circuit Model Civil Jury Instruction 3.1. Dow agrees.[4]

**Plaintiffs' Proposed Instruction No. 11; Dow's Proposed Instruction 4.1 (Purpose of the Sherman Act):** This instruction was rejected in the Kansas litigation. (*Se*e Ex. A at 3.) Dow recognizes that this instruction is based on the ABA Model Instructions, but Dow respectfully submits that this instruction is inappropriate for a jury, which is to apply the law as written, not as intended. This distinction is especially important in this case because lawful conduct in an oligopoly market (*e.g*., follow-the-leader pricing) can have an effect identical to that of an unlawful price fixing agreement. This instruction is likely to confuse a jury into believing that even lawful behavior violates the antitrust laws if it results in higher prices; this risk of error would be even higher if the jury does not receive an instruction on oligopoly. Dow submits that the Court should reject this unnecessary instruction on the purpose of the Sherman Act.[5]

**Plaintiffs' Proposed Instruction No. 12; Dow's Proposed Instruction 4.2 (Elements of Price-Fixing):** The parties' disagreement focuses on three issues: (1) whether the separate

---

[4] Dow's only edits to the Third Circuit model were designed to conform the instruction to this Court's instruction in *Promotion in Motion, Inc. v. Beech-Nut Nutrition Corp*., No. 09-cv-1228 (D.N.J. Jan. 7, 2013). But Dow has no objection to using the Third Circuit Model Civil Jury Instruction 3.1 as written.

[5] Dow proposed an additional sentence based on the holding of *Matsushita Elec. Indus., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 594 (1986), to balance this instruction should the Court decide to issue it. Plaintiffs' argument that this holding is limited to cases involving price cutting is incorrect. *See*, *e.g.*, *Chocolate*, 801 F.3d at 396 (antitrust law limits the range of permissible inferences in order to "avoid mistaken inferences that could impose liability for lawful conduct and, consequently, 'chill the very conduct the antitrust laws are designed to protect.'")

elements of (a) proof of agreement and (b) Dow's knowing participation in the agreement should be collapsed into a single element; (2) whether a description of the conspiracy alleged by Plaintiffs is likely to confuse the jury; and (3) whether irrelevant optional text in the ABA Model Instruction should be given here.  In each instance the answer is no.

Plaintiffs cannot genuinely complain about Dow breaking out the distinct elements of proof of agreement and proof of knowing participation in this instruction when Plaintiffs' next proposed instruction does exactly the same.  *See* Pls.' Proposed Jury Instr. No. 13 ("Plaintiffs must prove both of the following elements by the preponderance of the evidence:  <u>First</u>, that the alleged conspiracy existed, and <u>Second</u>, that Dow knowingly became a member of that conspiracy; knowingly means voluntarily and intentionally, and not because of mistake or accident or innocent reason.").  Plaintiffs would meld these two distinct "elements" together in their instruction on the "elements" of price-fixing but then break them out in their proposed definition of conspiracy.  Plaintiffs' inconsistency in describing the elements of the offense and awkward sequencing is likely to confuse the jury.

Plaintiffs also take issue with the description of their claim in Dow's proposed instruction.  Plaintiffs make a straw-man argument that the jury may believe that it must find for Dow unless Plaintiffs prove that each seller of the products, such as Lyondell, was involved in the conspiracy.  If that is a genuine concern, it can be resolved by modifying the first sentence of Dow's instruction as follows:  "Each Plaintiff claims that it was injured because <u>one or more of</u> BASF, Bayer, Huntsman, and Lyondell allegedly conspired with Dow to fix the actual prices of TDI, MDI, and/or polyether polyols sold in the United States from January 1, 1994 through December 31, 2003."

Finally, Plaintiffs complain that Dow elected not to include certain optional text (identified as optional by italicization and inclusion in brackets) in the ABA Model Instruction.  But inclusion

of this text is unnecessary because Plaintiffs do not allege, for example, that Dow agreed to minimum or maximum price ranges or fixed price formulas, shipping charges, or interest rates. Dow's proposed language: "Any agreement among competitors to set a specific price, to increase the stability or firmness of prices, or to stabilize prices is illegal," accurately describes Plaintiffs' theory of liability.

**Plaintiffs' Proposed Instruction No. 13; Dow's Proposed Instruction 4.3 (Definition, Existence, and Evidence of Agreement):** Dow proposed limited line edits to Plaintiffs' proposed instruction, most of which deleted superfluous text about elements of the claim that were already more appropriately covered more properly under the instruction on the elements of price-fixing. Plaintiffs object to Dow's insertion of a paragraph explaining why "a conscious commitment is essential." But Plaintiffs do not and cannot dispute that the Third Circuit defines "the concerted action element of a Section 1 claim as requiring proof of a conscious commitment to a common scheme designed to achieve an unlawful objective." *Fineman v. Amstrong World Indus., Inc.*, 980 F.2d 171, 212 (3d Cir. 1992); *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314-15 (3d Cir. 2010) (defining this element to require "a unity of purpose or a common design and understanding or a meeting of minds or a conscious commitment to a common scheme."). Plaintiffs' affinity for an actual jury instruction from the District of Kansas cannot supersede controlling Third Circuit case law.

Plaintiffs also take issue with Dow's deletion of the statement that "whether the agreement succeeds or fails does not matter." But again, Plaintiffs do not and cannot dispute that this statement is inconsistent with Third Circuit law holding that proof of injury is an element of the cause of action. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008). The fact that there are other instructions addressing the injury element does not render this

statement any less misleading. Nor have Plaintiffs explained how they would be prejudiced by the edit, especially when they allege and have sought to prove that they suffered injuries because, according to Plaintiffs, the agreement was successful.

**Dow's Proposed Instruction 4.4 (Limitation on Inferences from Parallel Conduct):**

Plaintiffs argue that their proposed instruction 13 already "includes Judge Lungstrum's explanation that parallel conduct by urethanes manufacturers does not in itself prove an antitrust violation," Pls.' Br. at 8, but they fail to disclose to the Court that Judge Lungstrum issued a separate and specific instruction on parallel conduct that Plaintiffs deleted in its entirety. (*See* Ex. A at 7.) In other words, Plaintiffs deleted an entire, and highly relevant, portion of the Kansas instructions when convenient to their merits arguments.

Plaintiffs also object that Dow's proposed instruction on parallel conduct combines the ABA Model Instruction at B-30 on "Similarity of Evidence" from the "Price-Fixing" section with the instruction at B-7 on "Conscious Parallelism" from the "Contract, Combination, Conspiracy" section of the instructions. But the ABA Model Instructions specifically contemplate this. *See* ABA Model Instructions at B-31 ("If appropriate to the case, Contract Combination, or Conspiracy Instruction 2, B-7, supra, should be inserted at this point.").

**Dow's Proposed Instruction 4.5 (Limitation on Inferences in Oligopoly Market):**

Plaintiffs make a Catch 22 argument that this Court cannot issue an instruction on oligopoly based on the Third Circuit's September 2015 holding in *Chocolate* because the Kansas court did not issue a similar instruction in 2013 and because no other district court in this Circuit has yet had a chance to incorporate *Chocolate* into a jury instruction. In addition to the recent vintage of *Chocolate*, there is a good reason why it has not yet been incorporated into jury instructions—in

many cases applying *Chocolate*, the case will result in summary judgment before trial. *See, e.g.*, *Valspar Corp. v. E.I. Du Pont de Nemours & Co.*, 2016 WL 304404 (D. Del. Jan. 25, 2016).

Plaintiffs characterize Dow's proposed instruction as just one of "either side's arguments about oligopolies" but Plaintiffs do not show how Dow's instructions are in any way inconsistent with the controlling holding of *Chocolate*. Rather, Plaintiffs cite to a non-controlling 2002 case in the Seventh Circuit as support for their view. Plaintiffs also attempt to distinguish *Chocolate* on the basis of Plaintiffs' naked assertion that their evidence of conspiracy, which Plaintiffs characterize as direct evidence, is better than the evidence presented in *Chocolate*. While Dow disputes that Plaintiffs have produced any direct evidence, nothing about the strength or type of Plaintiffs' evidence changes the holding of *Chocolate*, which addresses limitations on inferences to be drawn from certain *circumstantial* evidence in oligopoly markets. Nor would it change Dow's instruction, which acknowledges that the jury "should consider all of the evidence" but instructs that certain circumstantial evidence in oligopoly markets, by itself, is not sufficient to infer the existence of an agreement.

**Dow's Proposed Instruction 4.6 (Exchange of Price Information):** Plaintiffs proposed no comparable instruction, yet object to Dow's proposed instruction, arguing that direct communications between competitors about price "would establish a conspiracy standing on its own." This is not the law. *See United States v. United States Gypsum Co.*, 438 U.S. 422, 446 (1978) (holding that price exchange is not *per se* unlawful, and finding error in a jury instruction that instructed the jury to infer a Section 1 violation from the exchange of price information between competitors). Dow's instruction carefully explains, consistent with the ABA Model Instructions, that an exchange of price information "does not necessarily establish an agreement to fix prices" and "on the other hand, if you find that price information was exchanged or

announced and that Dow can offer no reasonable explanation as to why it was exchanged, you may consider whether it was being exchanged as part of an agreement to fix prices, along with all of the other evidence bearing on whether there was an agreement to fix prices."

**Plaintiffs' Proposed Instruction No. 14; Dow's Proposed Instruction 4.7 (Opportunities to Conspire):** Dow edited Plaintiffs' proposed instruction to conform it to Plaintiffs' assertions – developed through extensive testimony at trial – that Dow and other sellers had opportunities to conspire at dinners, golf outings, and in telephone calls, as well as in the trade association meetings and buy/sell transactions identified in Plaintiffs' instruction. Plaintiffs edited the Kansas instruction to add details about their allegations concerning buy/sell and other "co-producer" transactions (Ex. A at 9), but Plaintiffs did not add any references to their allegations about dinners, golf outings, and telephone calls. Plaintiffs argue that such interactions should be excluded because, according to Plaintiffs, they constitute conspiratorial communications. But this position assumes what Plaintiffs must prove. Plaintiffs do not and cannot contest that mere opportunities to conspire are not sufficient to establish a conspiracy, whether those opportunities take place during dinners, golf outings, or telephone calls, or in trade association meetings or buy/sell transactions. Such interactions do not become more than "opportunities to conspire" just because Plaintiffs allege that they were.

**Plaintiffs' Proposed Instruction No. 15; Dow's Proposed Instruction 4.8 (Evidence of Competition):** Dow offered line edits to make Plaintiffs' proposed instruction more balanced. Prior to Dow's edits, the instruction suggested that evidence of competition is irrelevant. But evidence of competition is highly relevant to several issues, including whether an agreement existed, when it existed, what products were subject to the agreement, what sellers participated in the agreement, and whether any Plaintiff was injured. The instruction still makes clear that

11

evidence of competition is not a defense, but the instruction is more balanced with Dow's edits included.

**Dow's Proposed Instruction 4.9 (Participation and Intent):** Plaintiffs did not offer a specific instruction on the element of knowing participation in a conspiracy, so Dow proposed one based on the ABA Model Instruction. Plaintiffs argue that their proposed instruction 13 (on definition of an agreement) is sufficient to cover this separate element of participation, but for reasons discussed above it is not. (*See* discussion *supra* regarding Pls.' Proposed Instr. No. 12.)

**Plaintiffs' Proposed Instruction No. 8; Dow's Proposed Instruction 4.10 (Corporations):** Dow does not object if the instruction, as modified by Dow, is supplemented by the two paragraphs that Plaintiffs cite in block text at page 18 of their Bench Brief.

**Plaintiffs' Proposed Instruction No. 16; Dow's Proposed Instruction 4.11 (Other Suppliers):** Plaintiffs' proposed instruction would violate this Court's *in limine* ruling, which prohibited the use of the term "defendants" to describe BASF, Bayer, Huntsman, and Lyondell. There is no need to use the word "defendant" in this instruction, and the last sentence, which Dow deleted, is superfluous.

**Plaintiffs' Proposed Instruction No. 17; Dow's Proposed Instruction 4.12 (Absent Witnesses):** The parties had stipulated to an instruction to prevent negative inferences from either party's failure to produce witnesses from the *settling* suppliers. Dow never agreed on an instruction that would absolve ten of the eleven groups of Plaintiffs – which are seeking hundreds of millions of dollars from Dow – of their decision, announced to Dow well after the supposed "stipulation," not to present any of their own witnesses live at trial. The instruction proposed by Dow is fair and supported by authority; it should be given.

**Plaintiffs' Proposed Instruction No. 18; Dow's Proposed Instruction 4.13 (Document Destruction)**: The parties agree on this proposed instruction.

**Dow's Proposed Instruction 4.14 (Interstate Commerce)**: Plaintiffs have no objection to this proposed instruction.

**Plaintiffs' Proposed Instruction No. 19; Dow's Proposed Instruction 4.15 (Antitrust Impact, Causation, and Injury)**: Plaintiffs do not and cannot dispute that antitrust injury is an essential element of their claim and is separate from the issue of damages. Plaintiffs argue that their proposed jury instruction does not conflate the two concepts. That is not so. The instruction discusses the elements of antitrust injury under the concept of whether "Plaintiffs are entitled to recover damages." There is no description, as there ought to be, of the two concepts as separate.

Plaintiffs at least acknowledge Dow's objection that Plaintiffs' instruction does not reflect Plaintiffs' individual burdens to show injury. But Plaintiffs' solution, changing "Plaintiff" to "Plaintiff Families," is inadequate for the reasons stated in Dow's Preliminary Statement above. *Each* plaintiff must show that it suffered injury.

**Plaintiffs' Proposed Instruction No. 23; Dow's Proposed Instruction 4.16 (Fraudulent Concealment):** There are two principal disputes here. First, Plaintiffs' proposal to include a statement that "the law recognizes that a conspiracy is, by nature, self-concealing" is inconsistent with the express holdings of this Court. *See In re Magnesium Oxide Antitrust Litig.*, No. 10-5943, 2011 WL 5008090, at *21 (D.N.J. Oct. 20, 2011).[6] Plaintiffs' reliance on a non-binding district

---

[6] Plaintiffs attempt to distinguish *Magnesium Oxide* on the basis that the plaintiff in that case was permitted to replead facts that would have been sufficient to show self-concealment. But there is world of difference between proving that a conspiracy is self-concealing in a particular case and Plaintiffs' position that that the law recognizes that a conspiracy is always self-concealing in every case.

13

court case from another jurisdiction is misplaced, and this Court should reject their unnecessary and incorrect statement of the law.

Second, Plaintiffs see no need for the jury to identify when the fraudulent concealment ended. But such an instruction is critically important in this case, because it may prove fatal to some or all of their claims, which may be untimely, regardless of any showing of fraudulent concealment, depending on when Plaintiffs knew or should have known that they had claims. *See Forbes v. Eagleson*, 228 F.3d 471 (2000) ("tolling lasts only until the plaintiff knows, or should reasonably be expected to know, the concealed facts supporting the cause of action").

**Plaintiffs' Proposed Instruction No. 20, 22; Dow's Proposed Instruction 5.1 to 5.5 (Damages Related Instructions)**: Dow's suggested instructions, based on the ABA Model Instructions, covers important aspects missing from Plaintiffs' hybrid Kansas instruction. By contrast, Plaintiffs' proposed instruction is incomplete and cursory. For example, Plaintiffs' instruction says nothing about Plaintiffs' benchmark model for overcharge damages despite the availability of a specific ABA Model Instruction addressing the issue. Instead, Plaintiffs' proposal prejudicially states only that "a proper method of calculating [Plaintiffs'] damages is to award Plaintiffs the difference between the prices they actually paid and the prices they would have paid in the absence of the alleged price-fixing conspiracy." Plaintiffs make no attempt to explain what the jury should do in determining whether Plaintiffs have provided a reasonable basis to estimate "the prices they would have paid," what it should do if it finds that reasons other than the price-fixing agreement impacted the higher prices that Plaintiffs "actually paid," what it should do if it finds it cannot apportion damages between those caused by the alleged price-fixing agreement and those resulting from other causes, or what it should do if it finds Plaintiffs' expert's model not to be a reasonable basis for calculating damages. The ABA Model Instructions, and Dow's

14

corresponding instructions, address each of these points.  Plaintiffs' cursory instruction does not. *See generally* Dow's Responses to Pls.' Proposed Jury Instr. at 86-94.  And again, Plaintiffs' only concession, changing "Plaintiffs" to "Plaintiff families," is not sufficient to remedy the manifest faults in Plaintiffs' damages instructions and misleadingly suggests that the jury need not evaluate the claim of each plaintiff.

**Plaintiffs' Proposed Instruction No. 21; Dow's Proposed Instruction 5.6 (Joint and Several Liability)**:  Dow proposed line edits to Plaintiffs' instruction to correct their failure to make any adjustment for the fact that multiple Plaintiffs bring individual suits in this case.  The instruction, which Plaintiffs adopted wholesale from the Kansas class action, states in several places that Dow is "liable for all damages caused by the conspiracy," which could be interpreted to impose liability on Dow for damages suffered by Plaintiffs that did not prove antitrust injury, as opposed to imposing joint liability on Dow for purchases made from other suppliers by a plaintiff that did prove antitrust injury.  This risk of confusion is especially great because Plaintiffs' instruction again uses the collective term "Plaintiffs" and does not distinguish between individual Plaintiffs.  Plaintiffs make no concession to address these concerns, and instead argue that there should be no concern because joint and several liability only "comes into play after injury has been found and damages awarded." Pls.' Br. at 29.   But if the jury is to be instructed on joint and several liability prior to their deliberations, Plaintiffs argument cannot be correct.  Dow respectfully submits that the Court should accept Dow's line edits to avoid jury confusion.

                          Respectfully submitted,

                          **GIBBONS P.C.**

                          By: /s/ Lawrence S. Lustberg
                            Lawrence S. Lustberg, Esq.

        Daniel J. McGrady, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Phone:  (973) 596-4500
Facsimile:  (973) 596-0545
llustberg@gibbonslaw.com
dmcgrady@gibbonslaw.com

David M. Bernick (*admitted pro hac vice*)
Jonathan R. Streeter (*admitted pro hac vice*)
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile:  (212) 698-3599
david.bernick@dechert.com
jonathan.streeter@dechert.com

*Attorneys for Defendant*
*The Dow Chemical Company*

Dated:  March 23, 2016

16

<u>**CERTIFICATE OF SERVICE**</u>

On March 23, 2016, I caused a copy of the foregoing to be served on all counsel of record via the Court's ECF system.

<u>/s/ Lawrence S. Lustberg</u>
Lawrence S. Lustberg
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102
Telephone:  (973) 596-4500
Facsimile:  (973) 596-0545
llustberg@gibbonslaw.com
