# CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.

### COUNSELLORS AT LAW

| | | | |
|---|---|---|---|
| CHARLES C. CARELLA | JAMES T. BYERS | RICHARD K. MATANLE, II | RAYMOND J. LILLIE |
| BRENDAN T. BYRNE | DONALD F. MICELI | FRANCIS C. HAND | WILLIAM SQUIRE |
| PETER G. STEWART | A. RICHARD ROSS | AVRAM S. EULE | ALAN J. GRANT* |
| ELLIOT M. OLSTEIN | CARL R. WOODWARD, III | RAYMOND W. FISHER | STEPHEN R. DANEK |
| JAN ALAN BRODY | MELISSA E. FLAX | | DONALD A. ECKLUND |
| JOHN M. AGNELLO | DAVID G. GILFILLAN | OF COUNSEL | MEGAN A. NATALE |
| CHARLES M. CARELLA | G. GLENNON TROUBLEFIELD | | ZACHARY S. BOWER+ |
| JAMES E. CECCHI | BRIAN H. FENLON | | MICHAEL CROSS |
| | LINDSEY H. TAYLOR | | CHRISTOPHER J. BUGGY |
| JAMES D. CECCHI (1933-1995) | CAROLINE F. BARTLETT | | JOHN V. KELLY III |
| JOHN G. GILFILLAN III (1936-2008) | | | *MEMBER NY BAR ONLY |
| ELLIOT M. OLSTEIN (1939-2014) | | | +MEMBER FL BAR ONLY |

5 BECKER FARM ROAD
ROSELAND, N.J.  07068-1739
PHONE (973) 994-1700
FAX (973) 994-1744
www.carellabyrne.com

March 31, 2016

<u>Via ECF</u>

The Honorable William J. Martini
United States District Judge
Martin Luther King Federal Building
50 Walnut Street
Newark, New Jersey 07102

Re:    *In re Urethane Antitrust Litigation*
       <u>Civil Action No. 08-5169 (WJM) (MF)</u>

Dear Judge Martini:

Plaintiffs write in response to Dow's request to play testimony from the 2010 deposition of Stephanie Barbour that Dow failed to timely designate.  The Court should deny Dow's request.

The testimony that Dow now seeks to introduce was not included in any of the designations or counter-designations that Judge Pisano reviewed.  Rather than include this testimony in its counter-designations in response to Plaintiffs' designations, Dow chose instead to object to Plaintiffs' designations on closely related issues, and persuaded Judge Pisano to exclude those designations as irrelevant.  Having succeeded in getting Judge Pisano to exclude Plaintiffs' designations on relevance grounds, Dow should not be permitted to turn around and play the testimony on these issues that it wishes the jury to hear.  The time to seek introduction of this testimony was when Judge Pisano was ruling on the parties' objections, not now.

Dow's failure to designate this testimony was not an oversight; it was the result of Dow's strategic choice.  As part of this strategy, Dow made a number of objections to testimony Plaintiffs designated from Ms. Barbour's 2010 deposition.  Judge Pisano sustained many of Dow's objections, including relevance objections to Plaintiffs' designations at pages 93-96 and 105-107 regarding, among other issues, Ms. Barbour's belief that Mr. Fischer "would not represent the complete facts about certain circumstances, whether it was a contract or an acquisition."[1]  *See* Tr. Proceedings before Special Master Pisano, dated Feb. 24, 2016, at 31-35 (Exhibit A) (sustaining Dow's objections to Plaintiffs' designations at pages 93-96 and 105-06

---

[1] A copy of the relevant portions of testimony and objections that the parties submitted to Judge Pisano is attached hereto as Exhibit B.  Plaintiffs' designations and objections are red; and Dow's designations and objections are blue.

The Honorable William J. Martini
March 31, 2016
Page 2

because Judge Pisano determined that the testimony related to "her beliefs of other people's motivations and character" and raise[d] confusing collateral arguments").

Dow now seeks to introduce the testimony at pages 99-105 from Ms. Barbour's 2010 deposition that falls right in between the portions of Plaintiffs' designations that Dow argued were irrelevant and which Judge Pisano excluded. Specifically, Dow's proposed designations at pages 99-105 relate to Ms. Barbour's belief that Mr. Fischer negotiated a contract with Kay Gugler of Huntsman that was disadvantageous to Dow. Barbour Dep. vol. 1, at 99-105. The testimony about the disadvantageous contract with Huntsman is directly related to Ms. Barbour's belief (also confirmed at trial by Mr. Fischer's superior, Mr. Wood) that there were times when Mr. Fischer was not candid with his superiors about contracts he had negotiated for Dow. Indeed, if Dow had designated this testimony at the appropriate time, Judge Pisano likely would have either denied Dow's objections to the surrounding testimony, or excluded the testimony designated by Dow. Therefore, not only is Dow too late, but it would unfairly prejudice Plaintiffs if the Court were to permit Dow to circumvent the special master process that the Court established.

Apparently, Dow intends to argue that the testimony it now seeks to introduce contradicts the testimony of Dow's own lawyer, Lynn Schefsky, who, as Dow concedes, testified that Ms. Barbour "made two complaints that raised potential antitrust concerns." Dow is incorrect. Ms. Barbour testified that she raised a number of antitrust concerns to Mr. Schefsky during her tenure, and she testified about these complaints in her deposition at length. Mr. Schefsky recalled two such complaints, one of which involved surreptitious face-to-face meetings in Switzerland with Mr. Gugler of Huntsman. The fact that Ms. Barbour stated, in the testimony Dow now seeks to introduce, that she also believed that Mr. Fischer and Mr. Gugler negotiated a contract that was financially disadvantageous to Dow does not contradict Mr. Schefsky's testimony that she reported a complaint that she suspected they were also having surreptitious price-fixing communications in Switzerland.

Nor was Mr. Schefsky's testimony regarding Ms. Barbour's first complaint relating to Mr. Fischer's face-to-face meetings in Switzerland in any way "equivocal," as Dow argues. Time and again during his deposition Mr. Schefsky acknowledged that Ms. Barbour's complaint related specifically to price-fixing concerns:

> Q.  All right. Did you do an investigation at any time to determine whether David Fischer **fixed prices**?
>
> A.  Yes.[2]
>
> Q.  She complained to you about David Fischer **fixing prices**?

---

[2]  Schefsky Dep. vol. 1, at 59:23-60:1, 61:11 (relevant portions of Mr. Schefsky's deposition transcript attached hereto as Exhibit C).

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION

The Honorable William J. Martini
March 31, 2016
Page 3

> A.   She indicated to me factual situations that would lead me to believe that they needed further investigation.  Remember I said earlier that when you -- when there is something that comes up that leads you to believe it may need to be further looked into and she gave me on two occasions that.[3]

> Q.   When was the first occasion in which she [Ms. Barbour] raised an issue that raised in your mind possible **price fixing** by David Fischer?

> A.   '03.

> Q.   What do you recollect about that conversation with Ms. Barbour?

> A.   Stephanie indicated to me that she thought that David was having **surreptitious private conversations** with Kay Gugler in Switzerland.[4]

> Q.   And that caused you to have an apprehension that you needed to do a preliminary investigation that would include possible **price fixing**?

> A.   It led me to believe that I better find out what was -- what was going on.[5]

> Q.   So is it correct then that as you sit back and think about it now some seven years later she may actually have said something to you, not just that he had a private conversation, but something about **price fixing**?

> A.   That's correct.[6]

The second complaint that Mr. Schefsky recalled that prompted one of his so-called "provisional investigations" arose from Ms. Barbour's concern about the unusually high phone traffic between Mr. Fischer and Dow's competitors.  Although the term "price-fixing" does not expressly appear in the following testimony, Dow cannot seriously contend that Ms. Barbour's second complaint related to anything other than price-fixing.

---

[3] Schefsky Dep. vol. 1, at 61:21-22, 62:2-8.
[4] Schefsky Dep. vol. 1, at 62:10-63:1.
[5] Schefsky Dep. vol. 1, at 65:23-66:6.
[6] Schefsky Dep. vol. 1, at 90:13-18.

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION

The Honorable William J. Martini
March 31, 2016
Page 4

Q.      Let's talk about the second provisional investigation you
        did of Mr. Fischer.  That also started with a conversation
        with Ms. Barbour, correct?

A.      That's correct.[7]

Q.      Tell me everything you recollect about that conversation
        with Ms. Barbour?

A.      Stephanie was concerned with the amount of phone traffic
        that -- that David was getting from -- from businesses in the
        polyurethanes business, from other corporations, that the
        number of phone calls coming through to him in her mind
        raised issues of at least discomfort.

Q.      And you said that the concern was that she saw an unusual
        amount of telephone traffic between -- this is the way I
        understood your answer, between Mr. Fischer on one hand
        and you stated other businesses in the industry?

A.      That's correct.

Q.      By "businesses in the industry," you mean at least in part
        competitors of Dow?

A.      That they could be competitors, they could be suppliers,
        they could be purchasers, they could be co-producers, but
        to some extent some of them were –

Q.      Competitors?

A.      -- on some level competitors.[8]

Finally, contrary to what Dow contends, nothing surprising has happened during the course of the trial that justifies Dow's belated request to designate new testimony from Ms. Barbour's 2010 deposition.  Dow attempts to cast Plaintiffs' examination of Mr. Wood as a new theory.  This couldn't be further from the truth.  Plaintiffs examined Mr. Wood regarding the fact that Mr. Schefsky testified that he conducted two separate investigations in response to complaints that Ms. Barbour made that she suspected Mr. Fischer of engaging in price-fixing.  As set forth above, this is precisely what Mr. Schefsky testified in his deposition.  Moreover, Plaintiffs' contested facts in the Final Pretrial Order – both the original version filed in June 2015 and the revised version filed in March 2016 – set forth a number of paragraphs regarding the

---

[7] Schefsky Dep. vol. 1, at 112:10-14.
[8] Schefsky Dep. vol. 1, at 117:12-118:1.

The Honorable William J. Martini
March 31, 2016
Page 5

antitrust-related complaints that Ms. Barbour made to Mr. Schefsky during her tenure at Dow. *See* Final Pretrial Order, § 4, ¶¶ 211-218.  In addition, Plaintiffs' contested facts include the following paragraphs relating to Mr. Schefsky's testimony:

> 219. Lynn Schefsky recalled **two separate instances** in which Barbour reported **suspicious communications between Fischer and Kay Gugler of Huntsman** and **unusually high phone traffic between Fischer and competitors**.  All that Schefsky did in response to these complaints was to speak privately with Fischer, who denied the allegations. Schefsky did not check Fischer's phone records or calendars or speak with Fischer's secretary or anyone else in the department. Each of Schefsky's "investigations" lasted no longer than ten to twenty minutes. Although Dow's policy required an attorney to document investigations of suspected collusion, Schefsky took no notes and notified no one else in Dow's legal department regarding Barbour's complaints.

> 220. Schefsky admitted that if he had been aware that there were anomalous increases in the amount of Fisher's phone communications with Dow's competitors immediately preceding price increase announcements, he would have conducted a more extensive investigation than he did.

Indeed, Plaintiffs set forth similar contested facts in their opposition to Dow's motion for summary judgment way back in November 2012:

> Schefsky acknowledged that Barbour twice reported **antitrust concerns** involving Fischer.  Specifically, Schefsky testified that Barbour reported **suspicious communications between Fischer and Kay Gugler in Switzerland**, and that Barbour also reported the **unusual amount of telephone traffic between Fischer and Dow's urethane competitors**.[9]

For the foregoing reasons, the Court should deny Dow's request to designate new testimony from Ms. Barbour's 2010 deposition.  Not only is Dow's request untimely, it would prejudice Plaintiffs significantly if the Court permitted Dow to designate new testimony and advance new arguments that Judge Pisano did not consider and Plaintiffs did not have an opportunity to respond to during the process before the special master.

Thank you for your continued consideration of this matter.

Respectfully Submitted,

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.

---

[9] *See* Direct Action Plaintiffs' Amended Statement of Additional Disputed Facts In Opposition To The Dow Chemical Company's Motion For Summary Judgment, ¶ 196 (MDL Dkt. 2509) (Nov. 1, 2012).

The Honorable William J. Martini
March 31, 2016
Page 6


/s/ James E. Cecchi

JAMES E. CECCHI

cc:  All Counsel (via ECF)


CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION